# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KONINKLIJKE PHILIPS ELECTRONICS N.V.
and U.S. PHILIPS CORPORATION,

      Plaintiffs and Counterclaim
      Defendants,

    v.

CINRAM INTERNATIONAL INC., CINRAM
INC., CINRAM MANUFACTURING INC., and
John Does No. 1 through 100,

      Defendants and Counterclaim
      Plaintiffs.

ECF Case

Civil Action No. 08 CV 00515 (CLB)(MDF)
The Honorable Charles L. Brieant

**DECLARATION OF EDWARD D.
JOHNSON IN SUPPORT OF PHILIPS'
MOTION TO DISMISS**

I, Edward D. Johnson, declare as follows:

1.      I am a partner at the law firm of Mayer Brown LLP, counsel of record for

Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively "Philips"),

plaintiffs and counterclaim defendants in the above-captioned action. I am admitted to practice

before this Court. I have personal knowledge of the following facts and, if called as a witness,

could and would testify competently thereto. I submit this declaration in support of Philips'

Motion to Dismiss Cinram's Patent Misuse and Tortious Interference Counterclaims and to Drop

Philips Intellectual Property Standards as a Counterclaim Defendant ("Motion to Dismiss").

2.      Attached hereto as Exhibit A is a true and correct copy of the Declaration of

Samuel Cunningham Bass in Support of Philips' Motion to Dismiss.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 23rd day of April, 2008 at Palo Alto, California.

       /s/  Edward D. Johnson

          Edward D. Johnson (EJ5259)

Johnson Declaration

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | |
| Plaintiffs and Counterclaim Defendants, | ECF Case |
| | Civil Action No. 08 CV 00515 (CLB)(MDF) The Honorable Charles L. Brieant |
| v. | |
| CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does No. 1 through 100, | **DECLARATION OF SAMUEL CUMMINGS BASS IN SUPPORT OF PHILIPS' MOTION TO DISMISS** |
| Defendants and Counterclaim Plaintiffs. | |

I, Samuel Cummings Bass, declare as follows:

1.     I have been employed by Finnegan, Henderson, Farabow, Garrett & Dunner since 2006. I am currently an associate. Unless otherwise specified I have personal knowledge of all facts set forth in this Declaration, and I would and could testify competently thereto if called upon to do so.

2.     I am admitted *pro hac vice* and currently represent Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively "Philips") in this case.

3.     On April 15, 2008 at 7:46 PM, I received an email from Gregory Carbo of Cooper & Dunham LLP, counsel for Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively "Cinram"). This email from Mr. Carbo stated that Cinram agrees to drop Philips Intellectual Property Standards from its Amended Counterclaims. Exhibit A is a true, correct, and authentic copy of this email.

44046460.1

4.      On April 18, 2008 at 1:21 PM, I received an email from Ivan Kavrukov of Cooper & Dunham LLP, counsel for Cinram.  This email from Mr. Kavrukov stated that Cinram agrees to dismiss Philips Intellectual Property Standards.  Exhibit B is a true, correct, and authentic copy of this email.

5.      On April 18, 2008 at 3:50 PM, I received an email from Gregory Carbo.  This email from Mr. Carbo stated that Cinram agrees to dismiss the suit against Philips Intellectual Property Standards.  Exhibit C is a true, correct, and authentic copy of this email.

6.      Attached hereto as Exhibit D is a true and correct copy of the Memorandum and Order issued by the United States District Court for the Southern District of New York on January 24, 2005, in the matter captioned *U.S. Philips Corp. v. Princo Corp.*, No. 04 Civ. 2825.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 23rd day of April, 2008 at Washington, District of Columbia.

_____
Samuel Cummings Bass

2

Bass Declaration

# EXHIBIT A

**From:** Gregory Carbo [GCarbo@COOPERDUNHAM.COM]
**Sent:** Tuesday, April 15, 2008 7:46 PM
**To:** Hornick, John
**Cc:** Bass, Samuel; Kovalick, Vince; Ivan S. Kavrukov; Aileen Aurich
**Subject:** RE: Philips cases
Dear John:

We will voluntarily drop Philips Intellectual Property Standards from the Amended Counterclaims provided that you tell us which Philips entity it is a part of. As you know, there also several Defendants named in the Texas suits who likewise do not have any independent existence. We ask that Philips voluntarily drop those defendants from the Texas complaints.

Separately, all of the Defendants whom we represent in the related Texas actions filed a Motion For Transfer of Venue today, requesting that Judge Crone transfer the Texas cases to the S.D.N.Y. As the resolution of the Motion For Transfer may obviate the need to move forward with these cases in Texas, these Defendants ask that Philips agree to extend the deadline to file an Answer to Philips' complaints by 30 days so that the Court will first have the opportunity to rule on the Motion For Transfer. This would make the Answer due on May 21, 2008 for these Defendants. Please let me know if Philips agrees to this extension.


Sincerely,
Greg

Bass Declaration

# EXHIBIT B

**From:** Ivan S. Kavrukov [IKAVRUKOV@COOPERDUNHAM.COM]
**Sent:** Friday, April 18, 2008 1:21 PM
**To:** Hornick, John; Gregory Carbo
**Cc:** Bass, Samuel; Kovalick, Vince; Aileen Aurich; Spencer, Jennifer
**Subject:** RE: Philips cases

**Attachments:** Stipulation of Extension re document requests.pdf

Dear John:

I'm responding to your email of last night to Greg Carbo, copied to me.

### 1. Dismissal of Philips IP Standards:

Based on your representation that Philips IP Standards is not a corporate entity, we will dismiss it, as Greg Carbo emailed you on April 15, 2008.

The discovery we have served will in due time disclose the place of Philips IP Standards in the corporate structure, but we again ask you to tell us now what corporate entity encompasses Philips IP Standards.

### 2. Adding principals and customers as defendants:

The defendants that we represent would oppose the addition of individuals and customers as defendants. We see no justifiable need or reason for such additions.

### 3. Due date for answers in the Texas cases:

Thank you for agreeing to extend the due date to respond to the Texas complaints.

We understand that there is a special procedure in Beaumont for stipulated extensions and have asked our local counsel today to work with yours on following it (and hope you have alerted your local counsel).

### 4. Time extension for document responses in SDNY case:

Attached is a proposed stipulation extending each side's time by two weeks, signed for defendants. Please sign for plaintiffs and return by email.

We appreciate your undertaking to produce the Rubenstein-related documents as quickly as possible. Please specify a date by which plaintiffs will produce the documents related to the assessment whether the '846 patent was "essential." This should not be a large volume.

**5. Transfer of the Texas cases to the SDNY:**

We appreciate your consideration of transfer of the Texas cases to the SDNY and would welcome plaintiffs' consent. Today we learned from counsel for Music City that he would support transfer. We understand that Eva-Tone has not been served; perhaps you know its position on transfer.

We think a conference with Judge Brieant at this time would be premature. We would be asking Judge Brieant for advisory decisions on an issue that is not before him. Moreover, while we believe that Judge Crone should rule for transfer, particularly if the parties consent, it still is her decision to make, not ours and not Judge Brieant's.

Regarding the schedule in the NY case, we would work with you to agree on an expeditions schedule should the transfer take place, but think it would be unrealistic to expect the exact same schedule with a dozen more defendants in the case. We accepted service of the NY complaint on March 6 but the Texas complaints had not all been served until we accepted service on March 31. The NY case is moving along but already there is a two-week slippage to respond to document requests and possible further delays should plaintiffs engage in rolling production.

We suggest that if plaintiffs consent to transfer we both try to get an indication ASAP that Judge Crone would transfer and then promptly work on a proposed schedule and seek a conference with Judge Brieant.

Ivan Kavrukov
Cooper & Dunham LLP
1185 Avenue of the Americas, 23rd Floor
New York, New York 10036
Direct tel. (212)278-0432
Direct Fax (212)391-7550
Mobile    (917)945-0121

Bass Declaration

# EXHIBIT C

**From:** Gregory Carbo [GCarbo@COOPERDUNHAM.COM]
**Sent:** Friday, April 18, 2008 3:50 PM
**To:** Hornick, John; Bass, Samuel; Kovalick, Vince
**Cc:** Ivan S. Kavrukov; Aileen Aurich; Spencer, Jennifer
**Subject:** Philips v. Cinram, et al.

Further to your April 17th email to me and Ivan Kavrukov's response thereto, we have agreed to dismiss the suit against Philips IP Standards as it is not a corporate entity. However, to drop Philips IP Standards, we need to amend our Answer and Counterclaim to reflect this change. To that end, please let me know if Cinram has Philips' consent pursuant to Rule 15(a)(2) to amend its answer.


Sincerely,
Gregory Carbo
Cooper & Dunham, LLP
1185 Avenue of the Americas
New York, NY 10036
Tel # (212) 278-0526
Fax # (212) 391-0525
Email: gcarbo@cooperdunham.com

Bass Declaration

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

U.S. PHILIPS CORPORATION,

                          Plaintiff,

          - against -

PRINCO CORPORATION and PRINCO
AMERICA CORPORATION,

                                                           02 Civ. 246 (CLB)

                          Defendants.

------------------------------------------------------x           *Memorandum and Order*

GIGASTORAGE CORPORATION and
GIGASTORAGE USA,

                          Plaintiffs,

          - against -

                                                           04 Civ. 2825 (CLB)

U.S. PHILIPS CORPORATION and
KONINKLIJKE PHILIPS ELECTRONICS
N.V.,

                          Defendants.

------------------------------------------------------x

Brieant, J.


        Before the Court are the following motions, filed on October 18, 2004, heard and fully

submitted on December 2, 2004: (1) Plaintiff U.S. Philips' ("Philips") motion to dismiss

Defendants Princo and Gigastorage's ("Defendants") antitrust claims as time-barred; (2) Philips'

motion to dismiss Defendants' antitrust claims based upon lack of antitrust injury, antitrust

standing and the application of the *Noerr-Pennington* doctrine, and (3) Philips' motion to

Copies mailed / handed / faxed to counsel __01 / 24 / 05__

-1-

bifurcate Defendants' claims of patent misuse and antitrust violations.[1]  Opposition papers to these motions were filed on November 9, 2004.

Familiarity of the reader with all prior proceedings and Court decisions in this matter will be assumed.  On January 10, 2002, Plaintiff Philips filed suit against Princo claiming that Princo infringed on six of Philips' patents relating to the manufacture of recordable compact discs ("CD-Rs") and rewritable compact discs ("CD-RWs") and requested a permanent injunction prohibiting any infringement.  Princo filed its answer, denying any infringement and raising affirmative defenses, one of which claimed that Philips' patents "are unenforceable by reason of unclean hands and patent misuse."  Def's Amended Answer at ¶ 4.  Princo also asserted one counterclaim for declaratory relief that Philips' patents are unenforceable and several counterclaims for violations of Sections 1 and 2 of the Sherman Antitrust Act, and Section 3 of the Clayton Act seeking damages and injunctive relief, based upon a 1997 disc license.

On June 24, 2002, Philips filed a complaint in the United States International Trade Commission (ITC), Investigation No. 337-TA-474, against nineteen (19) respondents, consisting of four manufacturers and fifteen distributors, claiming that their importation of certain CD-Rs and CD-RWs violated 19 U.S.C. § 337 because they infringed six patents owned by Philips, the same six patents at issue in this action.  Philips sought an exclusion order, which prevents further importation in the United States by respondents and others, and a cease and desist order, permitting seizure of infringing discs based on violations of § 337 of the Tariff Act.

---

[1] A separate Memorandum & Order will decide the parties' claim construction, infringement and patent misuse motions.

On July 26, 2002 the ITC commenced an investigation based on Philips' complaint. Although Princo was not one of the respondents named in the ITC complaint, nine of the respondents were customers of Princo, and Princo was specifically identified in the complaint as one of the manufacturers which supplied the infringing CD-Rs. On August 14, 2002, Princo was granted leave to intervene in the ITC investigation and subsequently filed its response on September 24, 2002 claiming that it had not violated § 337 because Philips' patents were unenforceable by reason of patent misuse. On September 10, 2002, Princo moved this Court to stay the proceedings in the present action. The motion was unopposed by Plaintiff and granted on October 8, 2002. Among other reasons, Princo argued that its counterclaims in the present action "involve the same issues that are involved in the proceeding before the Commission." Def's Motion to Stay, Aquino Aff. Ex. F at 4. Additionally, Princo's antitrust counterclaims are based on the "same licensing practices [that] form the basis of the defense of unenforceability due to patent misuse that has been asserted by Respondents in the ITC action." Def.s' Motion to Stay, Aquino Aff. Ex. F at 5.

In the ITC proceeding, Philips moved to strike Princo's affirmative defense of patent misuse on the grounds that it was based on the same factual allegations as Princo's antitrust counterclaims pending in the action before this Court, and thus would "circumvent the statutory requirement that counterclaims be immediately removed to federal district court." Pl.'s Memo. in Opp. at 7. Philips also contended that "a determination of the patent misuse affirmative defense by the ITC was inefficient because the ITC decision would have no preclusive effect and the same factual and legal issues would be relitigated before this Court after the ITC's investigation was complete." Pl.'s Memo. in Opp. at 7.

-3-

Princo responded and argued that a "patent misuse defense is not an antitrust counterclaim." Aquino Aff. Ex. 1 at 1. Princo asserted also that where there is parallel litigation pending before the ITC and a federal district court,

> issues dependent on common facts, such as declaratory judgment counterclaims on non-infringement and invalidity, are invariably in front of both the Commission and the district court. Such circumstances gave rise to the Federal Circuit's decision in <u>Texas Instruments Inc. v. U.S. International Trade Commission</u>, 851 F.2d 342, 344 (Fed. Cir. 1988) (noting that there is no <u>res judicata</u> effect between a Commission proceeding and a related district court action).

Aquino Aff. Ex. 1 at 12. On December 11, 2002, the Administrative Law Judge (ALJ) denied Philips' motion to strike Princo's patent misuse defense.

A nine-day hearing was held commencing on June 10, 2003, and concluding on June 20, 2003, at which time both parties had a full and fair opportunity to litigate the issues before the ALJ. On October 24, 2003, ALJ Sidney Harris issued an initial determination, concluding that although the six patents at issue in the ITC investigation were valid and infringed, they were unenforceable due to patent misuse under both the *per se* rule and under the rule of reason. See Castello Decl. Ex A. On November 5, 2003, Philips petitioned for review of the portion of the ALJ's initial determination which found that the asserted patents were unenforceable due to patent misuse. Princo and the other respondents filed a statement requesting the Commission adopt the ALJ's initial determination in its entirety.

On December 10, 2003, the Commission issued a notice, informing the public of its decision to review the ALJ's findings and conclusions insomuch as they concerned Philips'

-4-

patent misuse.  The Commission issued its final determination in the ITC investigation on March

25, 2004, upholding the ALJ's initial determination that the patents-in-suit were unenforceable

because of patent misuse both *per se* and by rule of reason.

On April 13, 2004, Plaintiff Gigastorage filed a complaint against Philips for violation of

antitrust laws.  In its Complaint, Gigastorage alleged that (1) Philips unlawfully tied nonessential

patents to licenses for essential patents, (2) that Philips was able to use its monopoly powers to

charge an unreasonably high royalty rate by virtue of the fact that Philips had discouraged

competitors from developing competing products by assuring them that its technology would be

licensed at reasonable rates, (3) that Philips had conspired with others to fix the royalty rate for a

license under its CD-R License Agreement at approximately 50% of the net sales price of a CD-R

disk, and (4) that Philips' actions constituted an illegal restraint of trade.

Philips denied the allegations in Gigastorage's Complaint and filed several counterclaims,

claiming that Gigastorage willfully infringed upon the '209, '493, '401, '825, '856, and '764

patents.  Philips requests (1) a finding that Gigastorage has willfully infringed these patents, (2)

an order permanently enjoining Gigastorage and Gigastorage USA from further infringing, (3) an

award of compensatory damages in an amount to be determined at trial, (4) an award of

reasonable attorneys' fees, costs and disbursements, and (5) any and all such relief as the Court

finds is appropriate.

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." In evaluating the record to determine whether there is a genuine issue

as to any material fact, "the evidence of the non-movant is to be believed and all justifiable

inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct.

2505, 2513 (1986).


*Antitrust Injury, Standing, and Noerr-Pennington*

  Defendant Princo advanced antitrust counterclaims under Sections 1 and 2 of the Sherman

Act for price-fixing, a grant back provision[2] in the CD-R license and mandatory royalties for

expired patents, and under Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act

for tying of undesirable patents and tying of CD-R patents. Gigastorage, in its Complaint,

brought antitrust claims under Section 1 of the Sherman Act for tying, price fixing and illegal

restraint of trade, and under Section 2 for monopolization. Philips asserts that the Defendants

have not offered any evidence to prove a causal connection between Philips' alleged

anticompetitive conduct and Defendants' injuries.


  A Plaintiff alleging an antitrust violation must demonstrate both "antitrust injury" and

"antitrust standing." Antitrust injury involves more than mere injury to the plaintiff. *See*

*Balaklaw v. Lovell*, 14 F.3d 793, 797 (2nd Cir. 1994). The Plaintiff's injury must be the type of

injury that the antitrust laws were intended to prevent and must be caused by the Defendant's

---

  [2]A grant-back provision exists where the licensee is required to "grant-back" to the
patentholder any innovation or additional patent that is developed by the licensee within the field
of the patentholder's patent.

unlawful actions. *See id. at 797.* The injury must be caused by the anticompetitive effects of the antitrust violation itself or by anticompetitive acts made possible by the violation. *See id. at 797.* Injuries that result from competition in a free-flowing market are not antitrust injuries. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488 (1977) (The antitrust laws are designed to "protect competition, and not competitors.") (quoting *Brown Shoe v. United States,* 370 U.S. 294, 320 (1962)).

A second requirement to assert an antitrust claim is "antitrust standing." Antitrust injury alone is insufficient to demonstrate antitrust standing. *See G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762, 766 (2nd Cir. 1995). Because Congress did not intend for every person who was "tangentially affected" by an antitrust violation to have a private right to sue under the antitrust laws, antitrust standing requires the Court to balance "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *See Assoc. Gen. Contractors of Cal. Inc. v. Cal. State Counsel of Carpenters.* 459 U.S. 519, 535 (1983).[3] The Plaintiff must show injury-in-fact (i.e. that it was injured because of the anticompetitive actions of the Defendant), and that it is a proper party to bring suit under the antitrust laws.

Defendants allege that Philips formed an unlawful patent pool, which caused injury to competition by restricting output. This restricted output prevented innovation and caused injury

---

[3]Additional factors to be considered include "the directness or indirectness of the asserted injury, the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement, the speculativeness of the alleged injury, and the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recovery." *See Nat. Assoc. of Pharma. Mfrs., Inc. v. Ayerst Labs.,* 850 F.2d 904, 913 (2nd Cir. 1988) (quoting *Associated,* 459 U.S. at 540-45.)

to market participants. Defendants allege that they have been unable to sell their product competitively because of this anti-competitive behavior. To further its anti-competitive patent pool, Philips entered allegedly into price-fixing arrangements with co-conspirators. These allegations are sufficient to demonstrate antitrust violations causing injury to competition in a relevant market.

The Defendants must demonstrate that Philips' actions caused their injuries. Defendants allege that they were injured when Philips sent "letters, verbally accusing Princo's customers of infringement, and the filing of complaints in the U.S. District Court and with the ITC in 2002. . . ." *See Defs.' Ex. K at 13.* Defendants' expert on damages states that "My analysis of Princo America's sales on an individual customer basis reveals a direct correlation between lost Princo America sales and the filing of Philips' ITC complaint." Princo attributes its losses to pressure by Philips on Princo's customers to stop selling Princo's CD-Rs as well as the effect of the ITC filing. *See id. at 16* ("These interviews support my analysis that Philips' conduct caused each of these customers [Princo's former customers] to cease purchasing Princo's CD-Rs and CD-RWs. . . ."). Similarly, Gigastorage attributes its lost profits to Philips' "campaign to force distributors, retailers and customers to stop buying CD-R discs from Gigastorage." Additionally, Gigastorage attributes its losses to Philips' termination of its License Agreement. Because of these actions, Princo allegedly lost $273.7 million, and Gigastorage allegedly lost $46 million.

The conduct which caused Defendants' injuries is not the same conduct which caused injury to competition in the relevant market. These specific acts are alleged to have caused only Defendants' injuries. There is no evidence that these acts caused injury to competition in a

relevant market. Defendants fail to raise a genuine issue of fact as to whether they were injured because of injury to competition caused by Defendants' antitrust violations.

Also, Defendants actions are protected by the *Noerr-Pennington* doctrine. Under the *Noerr-Pennington* doctrine, *see Eastern Railroad Presidents Conference et al. v. Noerr Motor Freight, Inc. et al.*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), one who petitions the Court for relief that has the effect of restricting competition is immune from antitrust liability. Defendants concede that Philips' filing of lawsuits is protected activity under *Noerr-Pennington, see Defs.' Memo. at 12*, but argue that antitrust liability exists because Philips informed Defendants' customers that it has filed lawsuits and they may be infringing upon Philips' patents. This claim lacks merit because *Noerr-Pennington* protects such conduct. The Supreme Court has held for nearly one hundred years that "patents would be of little value if infringers of them could not be notified of the consequences of infringement. . . Such action considered by itself cannot be said to be illegal." *See Virtue v. Creamery Package Mfg.*, 227 U.S. 8, 37-38 (1913). One of the most basic ownership rights of a patentholder is the right to inform an infringer that it is regarded as an infringer. *See Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1999). Our Court of Appeals has held pre-litigation "threat letters" to be protected activity as "incidents" of litigation. *See Primetime 24 Joint Venture v. NBC*, 219 F.3d 92,100 (2nd Cir. 2000).

Philips' communications with Defendants' customers was lawful pre-litigation communication. This Court recognizes a patent holder's property interest in its lawful monopoly. *Noerr-Pennington* acknowledges the importance of litigation in pursuing those interests.

Because of the excessive transactional costs of litigation, including attorney's fees, loss of a company's good will and other potential risks to business, attempts to resolve claims or disputes by demand letter prior to filing suit are encouraged.

Defendants argue that Philips did not act in good faith because it "knew" that certain patents were nonessential and unenforceable. Also, Defendants argue that when Philips changed its designation of certain patents from "essential" to "non-essential," it did not identify the patents that the ALJ had determined to be non-essential. We are told that Philips threatened infringers with litigation "in phone calls, at trade shows, and [at] other locations." None of these arguments change the essential fact that Philips is permitted to protect its property interest in its patents by communicating with alleged infringers and informing them that Philips may pursue litigation if they do not stop their infringing activities.

Defendants' arguments are conclusory and insufficient to overcome the *Noerr-Pennington* presumption that Philips' communications were lawful. Defendants have not offered evidence that Philips' enforcement activities were a sham, or anything other than threatening lawful activity protected by *Noerr-Pennington*. *See Professional Real Estate Investors v. Columbia Pictures Industries,* 508 U.S. 49, 63 (1993 ) (A finding that an antitrust defendant claiming *Noerr* immunity had probable cause to sue proves irrefutably that the antitrust defendant's activity was not "objectively baseless.").

This Court has determined previously that the ALJ's factual findings and legal conclusions are not preclusive in this case. Philips' failure to identify and remove from its list of

-10-

essential patents those patents that the ALJ concluded to be non-essential is not evidence that Philips has acted in bad faith. Philips is not under a legal obligation to change its opinion as to which patents are valid and enforceable until such a determination is made in this Court after a plenary trial, and affirmed by the Federal Circuit. Philips' patents did not become unenforceable merely because the ALJ, the District Court of the Hague, and the Taiwan Fair Trade Commission deemed them so. While Philips may have found it wise to consider these Opinions in the exercise of sound business judgment and to avoid litigation, these Opinions do not compel or require the conclusion that attempting to enforce allegedly "unenforceable" patents is *per se* in bad faith.[4] Accordingly, the Court concludes that Philips' conduct in informing Defendants' customers that their conduct infringed upon Philips' patents is protected under *Noerr-Pennington.*

The final ground, not argued by Defendants in their Memorandum in opposition but found in their expert's report is that Gigastorage[5] suffered injury when Philips' terminated its License Agreement.[6] Philips terminated this license after Gigastorage failed to pay royalties due under the License Agreement. Gigastorage claims it did not pay these royalties because the royalty rate

---

[4]In any event, Philips' subsequent removal of certain patents from its patent list is inadmissible as proof that it tied essential and non-essential patents. *See Fed. R. Evid. 407.*

[5]This basis, assuming that it is sufficient to satisfy antitrust injury, would only satisfy Gigastorage's requirement. Princo has not alleged this basis.

[6]Defendants are specific in their memorandum about what caused injury. *See Defs.' Memo. at 11-12* ("The evidence also shows that Philips, as a means of furthering its anticompetitive conduct, engaged in selective enforcement of the pool through intimidating personal contacts, phone calls, threatening letters and lawsuits.") While operating a patent pool may be unlawful, the only causal connection attributed by Defendants stems from protected conduct.

-11-

royalty rate was unlawfully high as a result of Philips' antitrust violations.

Not every business decision supports liability under the federal antitrust laws. *See Brooke Group v. Brown & Williamson Tobacco Group*, 509 U.S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; these laws do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'") (internal citation omitted). Antitrust injury is not synonymous with anticompetitive conduct. Gigastorage claims that it was injured when Philips terminated its License Agreement. Its harm therefore flowed from the termination of the agreement. A license termination is not inherently an anticompetitive act. Good cause may exist in fact to take such action. Philips claims that it terminated the license after Gigastorage failed to pay royalties. Such recourse was within its rights under the License Agreement. *See Pl's. Ex. B at ¶10.05*:

> Philips shall have the right to revoke the license granted in this Agreement and to terminate the same for failure by Licensee to pay the royalties due for three consecutive quarters of the year, which revocation shall start upon written notification thereof by Philips sent by certified mail to Licensee, who shall have right to cure such revocation.

Gigastorage's injury flowed from lawful action. Antitrust injury must flow from unlawful anticompetitive conduct causing injury to a relevant market. Accordingly, Gigastorage cannot base a claim of antitrust injury on Philips' lawful termination of the License Agreement due to Gigastorage's failure to pay royalties due under that Agreement.[7]

---

[7]Defendants do not have antitrust standing to assert antitrust claims for price-fixing of the discs themselves. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 582-583 (1986) (holding that price-fixing does indeed violate the Sherman Act, but that a competitor does not have standing to bring a claim because a rise in the price of goods would benefit a seller of those goods).

*Statute of Limitations*

A claim for antitrust violations generally arises as soon as injury to competition occurs. *See Higgens v. New York Stock Exchange*, 942 F.2d 829, 832 (2nd Cir. 1991). A Plaintiff may recover for each individual instance where the Defendant's antitrust violations injure the Plaintiff's business. The statute of limitations may be tolled where there is a continuing conspiracy by the Defendant to violate the antitrust laws. The "continuing violation" theory of tolling the antitrust statute of limitations requires an overt act causing new and independent harm to the plaintiff in order to extend the limitations period. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (a continuing violation occurs where an overt act is part of the ongoing violation and injures the plaintiff); *Bankers Trust v. Rhoades*, 859 F.2d 1096, 1104 (2nd Cir. 1988) ("In the context of a continuing antitrust violation with continuing injuries, this has usually been understood to mean that each time plaintiff suffers an injury caused by an illegal act of defendants, a cause of action accrues to plaintiff to recover damages based on that injury.").

The Defendants raise four theories of antitrust violations: (1) tying; (2) monopolization; (3) price-fixing; and (4) illegal restraint of trade. Defendants assert that "the statute of limitations has not run on Count I [tying] because Philips has not ended its tying arrangements." *See Defs.' Memo. at 8*. The tying claim arose when the Defendants first entered into a contractual relationship with Philips. This occurred on June 23, 1997 for Princo and October 12, 1999 for Gigastorage. Defendants have not alleged that the continued existence of the tying arrangement is causing them new and independent injury. The continued existence of the contractual arrangement is insufficient to toll the statute of limitations, because merely continuing to offer the license does not constitute a new and independent injury under the antitrust law.

-13-

Defendants offer case law arguing that the "overt act" requirement may be satisfied by the continuing contractual relationship between the parties. However, the cases offered by Defendants in support, *Nat'l Souvenir Center, Inc. v. Historic Figures, Inc.*, 728 F.2d 503, 510 (D.C. Cir. 1984) and *KFC Corp. v. Marion-Kay Co.*, 620 F. Supp. 1160, 1167-68 (S.D. Ind. 1985), are not controlling upon this Court. Defendants have not offered evidence of any overt act committed by Philips during the limitations period which caused them harm and could serve as the basis of an antitrust claim for tying. Accordingly, the Defendants antitrust claim based upon tying is time-barred.

The Defendants next claim that Philips used its monopoly power as part of a conspiracy to extract unlawfully high and anti-competitive royalty rates. Philips argues that this claim is barred because the Defendants have not demonstrated an overt act that could serve to extend the statute of limitations. The only act alleged by Defendants in furtherance of the conspiracy was Philips' decreasing of royalties in 2001. Defendants assert that this act was in furtherance of the conspiracy because it was done in response to falling CD-R disc prices, and that even though the royalty was decreased, the royalty rate as a percentage of a disc's price remained the same.

Defendants have not offered evidence that Philips' lowering of royalties in 2001 caused them new injury. Princo has admitted that it had stopped paying royalties by early 1998. *See Pl's. Ex. 10 at 988-89.* It had stopped paying royalties because the royalty rate "is like about 60 or 70 percent of the net selling price. It's too high, too high. We cannot keep paying." Similarly, Gigastorage stopped paying royalties in August 2000. *See Pl's. Ex. 9 at 851-52.* Whatever injury was suffered by the Defendants because of the royalty rate occurred prior to the royalty rate being

-14-

lowered. As the Defendants had already stopped paying royalties at the time that the royalty rate was lowered, they did not suffer any new injury when Philips allegedly changed the royalty rate to accommodate it to the falling disc prices. Accordingly, Defendants' claim based on monopolization is time-barred.

Defendants' third antitrust claim is for price-fixing. The Court need not consider the timeliness of Defendants' price fixing claim, as the Court has concluded that the Defendants, as competitors of Philips and sellers of CD-Rs, do not have standing to assert this claim.

The Defendants final antitrust claim is for illegal restraint of trade. Defendants allege that Philips' tying arrangements, royalty rates and price-fixing scheme individually and in the aggregate serve to extend the limitations period because they are overt acts that occurred within the limitations period and restrain trade. Also, the Defendants allege that Philips restrained trade when it contacted Defendants' customers. The Court has concluded that Defendants' claims based upon tying and royalty rate violations are time-barred. The Court has concluded as well that Defendants do not have standing to assert their price-fixing claim. Finally, Philips' actions to protect its patent rights constitute protected conduct under the *Noerr-Pennington* doctrine. The conduct alleged by Defendants does not satisfy the overt act requirement and cannot serve to extend the statute of limitations. Accordingly, Defendants antitrust claim for illegal restraint of trade is time-barred.

-15-

## Conclusion

Philips' motion to dismiss Defendants' antitrust claims for lack of antitrust injury, antitrust standing and *Noerr-Pennington* immunity is granted. Philips' motion to dismiss these same claims as time-barred is granted, and Philips' motion to bifurcate is denied as moot. The Court declines at this time to make the findings contemplated by Fed. R. Civ. Pro. 54(b).


SO ORDERED.

Dated: White Plains, New York
     January 24, 2005

                                       Charles L. Bricant, U.S.D.J.