UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : |
| Plaintiffs, | : |
| v. | : |
| CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does | : |
| Defendants. | : |

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.08-cv-0515
(CLB)(MDF)

ECF Case

———————————————————————

**DEFENDANT CINRAM'S MEMORANDUM OF LAW IN SUPPORT OF
(1) MOTION FOR LEAVE TO FILE A SECOND AMENDED ANSWER, AND
(2) OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Page(s)

I.     BACKGROUND …………………………………..………..…………....……..1

II.    INTRODUCTION…………………………………………………………………...2

II.    ARGUMENT…………………………………………….……………………........3

      A.    Cinram's Motion For Leave to File a Second Amended Answer and
            Counterclaims Should be Granted…………..………..………………...……...3

      B.    Philips' Motion To Dismiss Should be Denied…...…..………......…….....5

          1. Rule 21, Alleged Misjoinder………..…………………………………5

          2. Rule 12(b)(6), False Letters to Cinram Customers…………....…..…..6

      C.    Patent Misuse…………………......……………………….……………9

III.    CONCLUSION …………..…………………………......…….………..….……12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Brulotte v. Thys. Co.*, 379 U.S. 29 (1964)……………………………………………………4

*Discovery Group, Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp.2d 78 (E.D.N.Y. 2004)……6, 7

*Forman v. Davis*, 371 U.S. 178 (1962)……………………………………………………4

*U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005)……………10

## RULES

Fed. R. Civ. P. 12(b)(6)…………………………………………………..…4, 6, 9, 12

Fed. R. Civ. P. 15(a)(2)……………………………….……….....….............…………….3

Fed. R. Civ. P. 21…………………………………………………………...5, 12

Defendants cross-move pursuant to Federal Rule of Civil Procedure 15(a)(2) for leave to file a Second Amended Answer and Counterclaims (Exh. 1)[1] that revises counterclaim Counts III, IV and V and should moot plaintiff's motion to dismiss. Defendants also oppose plaintiffs' motion under Federal Rules of Civil Procedure 12(b)(6) and 21 to dismiss Counts III, IV and V of defendants' counterclaims.

## I.    BACKGROUND

Plaintiff Koninklijke Philips Electronics, N.V. ("Philips N.V.") is a Netherlands corporation and plaintiff U.S. Philips Corporation ("U.S. Philips") is a related Delaware Corporation. (collectively "Philips"). Defendant Cinram International Inc. is a Canadian company and together with its U.S. subsidiaries Cinram Inc. and Cinram Manufacturing Inc., (collectively, "Cinram"), is one of the largest manufacturers of prerecorded compact discs (CDs) for customers such as music companies who own the content.

On January 18, 2008, Philips N.V. by itself filed a complaint against Cinram alleging that Philips N.V. owns U.S. Patent 5,068,846 ("the `846 Patent") (Exh. 2 ¶¶ 2, 17) and that Cinram infringes the patent and owes royalties for that patent under a CD Patent License Agreement ("the Agreement").

On January 30, 2008, Philips N.V. and U.S. Philips (collectively, "Philips") filed an amended complaint that alleged, contrary to the January 18 complaint, that U.S. Philips rather than Philips N.V. owns the `846 Patent (Exh. 3 ¶ 17), and repeated the allegations regarding the Agreement.  Cinram's counsel agreed to accept service.

A scheduling order has been entered, the parties have agreed to respond to initial document request on May 15, 2008, and have responded to initial interrogatories.  No depositions have been taken.

---

[1]  Exh. 1 through Exh. 15 are identified in the attached declaration of Gregory Carbo.

On April 9, 2008, Cinram filed a (First) Amended Answer and Counterclaim (Exh. 4) to add Philips Intellectual Property and Standards ("Philips IPS") as a counterclaim defendant and allege in Count V tortious interference with business relationships. On April 11, 2008 Cinram asked Philips counsel to accept service (Exh. 5) but in a response four days later, on April 15, 2008, Philips's counsel declined and represented that Philips IPS is not a corporate entity. (Exh. 6). The same day, Cinram notified Philips' counsel that Cinram will drop Philips IPS as a counterclaim defendant (Exh. 7) based on that representation, and confirmed this on April 18 (Exh. 8, 9). On April 23, 2008, before Philips filed its motion to dismiss as to Philips IPS, Cinram emailed Philips' counsel a proposed Second Amended Complaint and Counterclaims (Exh. 10) that did not counterclaim against Philips IPS. Philips nevertheless proceeded to file its motion to dismiss Count V by dropping Philips IPS as a party, without further contact with Cinram's counsel.

## II.    INTRODUCTION

Cinram's motion for leave to file its Second Amended Answer and Counterclaims (Exh. 1) should be granted because the case is at an early stage, it states additional facts concerning the conduct of plaintiffs that support defendants' counterclaim causes of action, and it would likely moot Philips' motion to dismiss.

In addition, Philips' motion under Federal Rule of Civil Procedure 21 to drop Philips IPS as a counterclaim defendant should be denied because of Cinram's prior agreement to dismiss Philips IPS, Cinram's prior submission to Philips of a draft Second Amended Answer and Counterclaims that does not counterclaim against Philips IPS, and Philips' refusal to provide evidence that Philips IPS in fact is not a corporate entity,

despite multiple requests from Cinram.[2]  Cinram's proposed Second Amended Answer and Counterclaims does not counterclaim against Philips IPS. (Exh. 1).

Philips' motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Cinram's counterclaims for Tortious Interference with Business Relationships (Counterclaim Count IV) and Patent Misuse (Counterclaim Count III) also should be denied because the relevant averments contained in Cinram's (First) Amended Answer and Counterclaim (Exh. 4) sufficiently plead the elements of these causes of action. Again, these issues should be mooted by grant of Cinram's motion for leave to file its Second Amended Answer and Counterclaims. (Exh. 1).

## III.     ARGUMENT

### A.  CINRAM'S MOTION FOR LEAVE TO FILE A SECOND AMENDED ANSWER AND COUNTERCLAIMS SHOULD BE GRANTED

While Cinram submits that its (First) Amended Answer and Counterclaim (Exh. 4) adequately pleads counterclaim Counts III, IV and V, Cinram moves pursuant to Federal Rule of Civil Procedure 15(a)(2) to file a Second Amended Answer and Counterclaims (Exh. 1) that (1) removes Philips IPS as a counterclaim defendant and thus moots the portion of Philips' pending motion addressing Count V, and (2) revises counterclaim Counts III and IV by stating additional facts that  further illustrate plaintiffs' harmful conduct and should moot the remainder of Philips' motion.

Cinram submits that leave to amend should be granted because the case is at an early stage, well before the scheduled date for adding or dropping parties, and will not be delayed. Accordingly, there can be no prejudice to plaintiffs.

---

[2]   While Cinram relies on the representation of Philips' counsel that Philips IPS is not a corporate entity, the evidence at hand leaves uncertainty.  A letter dated April 30, 2008 (Exh. 12) is on the letterhead of Philips IPS but appears to speak for "Philips," which the letter identifies as the plaintiffs in this case, and states that "Philips has removed these manufacturers from our publicly available Licensee Database."

Cinram has not previously requested leave to amend because their (First) Amended Answer and Counterclaim (Exh. 4) was filed as of right, and there has been no prior failure to cure deficiencies by amendment. *Forman v. Davis*, 371 U.S. 178 (1962).

There should be no question that grant of leave to file Cinram's Second Amended Answer and Counterclaims (Exh. 1), which does not counterclaim against Philips IPS and specifically alleges in paragraphs 48-64 tortious acts of Philips and the elements necessary for the relief sought, should moot the portion of Philips's motion addressing Philips IPS and Count 5.

Further, Cinram submits that the specific allegations in paragraphs 21-42 (Exh. 1) contain more than the necessary averments of misuse needed to moot Philips' Rule 12 motion regarding the patent misuse counterclaim, and that the allegations in paragraphs 43-58 also contain the averments sufficient to moot Philips Rule 12(b)(6) motion regarding tortious interference by harmful and unfair misrepresentations to Cinram's customers.  The allegations regarding misuse aver, among other things, that Philips is misusing the '846 patent and another patent to temporally extend the purported patent monopoly of expired patents included in a pool patent license, as in *Brulotte v. Thys. Co.*, 379 U.S. 29 (1964), where the patent owner was found guilty of patent misuse by seeking continuing royalties after expiration of the patents that were actually used despite the subsistence of other patents that were included in the package license but were not used by the licensee.

## B.  PHILIPS' MOTION TO DISMISS SHOULD BE DENIED

(1) Rule 21, Alleged Misjoinder

Philips has moved under Federal Rule of Civil Procedure 21 for an order dismissing Philips IPS as a counterclaim defendant on the ground that "Philips IPS is not an independent legal entity." (Philips Mem., p. 9). Philips' motion to drop Philips IPS as a party is a waste of judicial and party resources and should be denied.

The draft Second Amended Answer and Counterclaims that Cinram emailed to Philips before Philips filed this motion (Exh.10), does not counterclaim against Philips IPS.  It adequately avers in Count V that plaintiffs Philips N.V. and/or U.S. Philips caused misleading changes in a website for the sole purpose of harming Cinram and its relationship with its customers.

It is not disputed that Philips IPS administers a website that contains information concerning Philips and the `846 Patent. (Exh. 11).  Cinram's (First) Amended Answer and Counterclaim (Exh. 4) alleged that Philips IPS had caused these unwarranted website changes.   When Philips' counsel emailed to represent that Philips IPS is not an independent corporate entity, Cinram replied the same day that it would dismiss Philips IPS and soon provided Philips with a draft Second Amended Answer and Counterclaims that did not include Philips IPS as a counterclaim defendant. (Exh. 5-10).

All along, Cinram asked Philips for evidence of the alleged non-entity status of Philips IPS but none has been received.  To the contrary, doubt is cast by the evidence at hand. Each letter to a purchaser of defendants' CDs and containing false or misleading information was on the letterhead of Philips IPS. (Exhs. 12, 13A).  The letter of Exh. 12, dated after plaintiffs' motion to dismiss, identifies "Philips" as the plaintiffs in this action

and states that "Philips has removed these manufacturers" (including Cinram) from the website at issue, although the letter is on the letterhead of Philips IPS. The letter of Exh. 13A indicates Philips IPS to be a part of or affiliated with "Philips Electronic North America Corporation," at 345 Scarborough Road, P.O. Box 3001, Briarcliff Manor, N.Y. (the same address as plaintiff U.S. Philips Corporation).  The email of Exh. 13B is signed by a "Director" of Philips IPS, William J. Lenihan.    Philips has yet to come clean concerning the status of Philips IPS and has refused to consent to the filing of Cinram's draft Second Amended Answer and Counterclaims (Exh. 10) that would have mooted this portion of Philips' motion.

In all events, grant of leave to file Cinram's Second Amended Answer and Counterclaims (Exh. 1), which does not counterclaim against Philips IPS, should moot the issue Philips raised under Rule 21.

### (2)  Rule 12(b)(6), False Letters to Cinram Customers

Philips contends that the averments contained in Count IV of Cinram's counterclaims (Exh. 4) are insufficient under Federal Rule 12 (b)(6) and should be dismissed.  Philips contends that business relationships have not been identified, that damages have not been identified, and that Philips' knowledge of business relationships and Philips' malice have not been averred.

Philips' position is disingenuous. Philips received discovery regarding these facts by March 7, 2008, well before Cinram's Answer and Counterclaim (Exh. 15) was filed on March 24, 2008, so Philips had full knowledge of the basis for Cinram's tort claims. Moreover, the cases cited by Philips do not require "malice," only that Philips has acted dishonestly or unfairly, which it has. Philips cited *Discovery Group, Inc. v. Lexmark Int'l,*

*Inc.*, 333 F. Supp.2d 78, 86 (E.D.N.Y. 2004) for the proposition that tortious interference claims under New York law require, *inter alia,* allegations of "malice," but the case actually states that the required pleading is that the defendant in that case "… acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses <u>dishonest, unfair,</u> or improper means;…" (Philips' Mem., p. 3, emphasis added). Cinram's (First) Amended Answer and Counterclaim so averred (Exh. 4 ¶¶ 30-32).

Specifically, on February 21, 2008 Cinram wrote a letter to this Court (Exh. 13) requesting a pre-motion conference concerning a proposed motion for an order directing Philips to refrain from sending false and misleading letters to customers who purchase Cinram's CDs. The Philips letters of which Cinram was aware, along with Philips' documents concerning the patents referred to in those letters, were attached to Cinrams' written request for a pre-motion conference and were served on Philips. (Exh. 13). The material that Cinram filed and served reveals (1) Philips' knowledge of the identity of the customers involved, (2) knowledge of manufacturers who allegedly "do not pay Philips CD royalties," (3) an effort to divert a customer for Cinram CD to another replicator, (4) threats by Philips of infringement of U.S. Patent 5,790,512 ("`512 Patent") that is not in suit here and is not relevant to products involved in this lawsuit, (5) knowledge of each false and misleading statement, and (6) Philips' statements that Cinram and others are, in effect, "deadbeats" for failing to pay royalties.

The issues raised by this evidence were before the Court at a status conference held on March 7, 2008. At that status conference each of the Philips letters at issue, each false statement, each customer involved, each business relationship and the harm done to Cinram were thoroughly discussed in open court. Philips' corporate representative who

was present in Court and invited to speak to the Court admitted that he had sent the letter (Exh. 13A) and the email (Exh. 13B), and the hearing confirmed that the CDs in question had been produced by Cinram. (Exh. 14).

At the direction of the Court, the parties met privately in a jury room and resolved the issue in part.  Philips agreed to send to those customers of Cinram who received such letters, new letters limited to U.S. Patent 5,068,846 ("`846 Patent") and without the false statements.  Philips agreed that all future letters would be limited to the `846 Patent and would not contain the other false and misleading statements about which Cinram complained. However, Philips would not agree to admit to the recipients that any statements contained in those letters were false or misleading. Accordingly, Cinram submits that it may maintain its tort claims, at least with respect to Philips' improper acts directed to previously identified customers, although it is likely that other Cinram customers would have been similarly treated, and Cinram will rely on discovery to determine if this is true.

Cinram's Answer and Counterclaim (Exh. 15) was served and filed on March 24, 2008.  The facts demonstrate that before then, and at least by the status conference on March 7, Philips was fully on notice of the basis for Cinram's tort claims. Philips' waited a month before filing this motion to dismiss Count IV, and this motion is belated, is without merit, and should be denied.

 Again, grant of Cinram's motion for leave to file a Second Amended Answer and Counterclaims, which expressly sets out information that Philips received in connection with the March 8, 2008 hearing, should moot the foregoing issue.

### C.  PATENT MISUSE

Philips has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Cinram's counterclaim of patent misuse (Count III) on the ground that Cinram has failed to plead the elements necessary to support such a claim. Cinram contends that the motion under Rule 12(b)(6) should be denied.

Cinram's (First) Amended Answer and Counterclaims (Exh. 4) shows that Cinram's patent misuse claim arises out of certain undisputed facts alleged in Philips' Amended Complaint. (Exh. 3). For example, paragraph 22 of Count III (Exh. 4) specifically includes all preceding allegations. Paragraph 29 of Count IV also specifically includes all preceding allegations, including those contained in Count III at issue. Accordingly, the allegations preceding Counts III, the allegations contained in Count III and those contained in Count IV combine to include all necessary elements to support a claim of patent misuse.

The pleadings demonstrate that Cinram's misuse claim is grounded on Philips' unfair and anticompetitive use of a license and side letter dated December 1, 2004 between Cinram and plaintiff Philips N.V.  The license and side letter identified the `846 Patent as an "essential" patent for making CDs. (Exh. 3, FACTS RELATED TO CINRAM, ¶¶ 19-25). The license required a royalty payment for each CD sold in a country where a Licensed Patent "essential" to making a CD exists. (Exh. 3, FACTS RELATED TO CINRAM, ¶ 30). Cinram avers that the `846 Patent is not "essential" because there is a commercially viable, practicable alternative to use of the `846 Patent in meeting the Standard Specifications for manufacturing CDs. (Exh. 4, COUNT III, ¶¶ 25-26).

Cinram avers in Count IV (Exh. 4) that Philips sent the false and misleading letters described above to purchasers of Cinram CDs threatening those purchasers with suits for infringing the `846 Patent based on false allegations that the patent is "essential" and, moreover threatening those purchasers with suits for infringing the `512 DVD patent that is not in suit and is known by Philips to be irrelevant to Cinrams' types of CDs at issue, improperly and deliberately urging purchasers to switch to other suppliers of CDs based on the foregoing threats, including statements implying that Cinram is a "deadbeat" for not paying royalties under the license agreements it had with Philips. Cinram avers that Philips knew these acts were improper, but undertook them to harm Cinram's business if Cinram did not also pay royalties allegedly due on the `846 Patent.

These knowingly false statements threatening purchasers of Cinram's CDs with lawsuits under the `846 Patent and `512 Patent, and the attempt to divert such purchasers to other suppliers to harm Cinram by threatening Cinram's business, constitutes a misuse of the `846 Patent with anticompetitive effect. These activities as averred by Cinram constitute patent misuse.

Philips relies upon *U.S. Philips Corp. v. Int'l Trade Comm'n,* 424 F.3d 1179 (Fed. Cir. 2005) to support its argument that such facts cannot give rise to patent misuse. *U.S. Philips Corp.* is inapposite. *U.S. Philips* was a tying case while the misuse counterclaim in this case does not deal with tying but rather with wrongful temporal extension of expired patents and other misuse. Specifically, *U.S. Philips* dealt with whether it was patent misuse to include in a patent license both "essential" and non-"essential" patents when it made no difference to the royalty rate or amount. The Court also concluded that,

under the circumstances, the package tying agreement did not provide Philips with a market advantage.

In this case, there is only one patent involved, the `846 patent, and whether it is "essential" and thereby royalty-bearing makes all the difference. Plaintiffs claim no royalty for the types of CDs at issue under any other patent. The present case does not involve a patent-to-patent or other tying arrangement. Here, while the `846 Patent had been part of a package license, all the other patents in the package have expired or were otherwise not relevant to the CDs in issue. Cinram's allegation is that the `846 Patent is not "essential" and is not used and that royalties need not be paid. Cinram's misuse counterclaim involves allegations that Philips has been misusing the `846 Patent to gain royalties from licensed suppliers of CDs, or their customers, by misrepresenting that the `846 Patent remains "essential," by threatening purchasers of Cinram CDs with lawsuits based on false and misleading statements, and by trying to divert them to other suppliers to the market detriment of Cinram. This is wrongful temporal extension of the expired patents in the pool. The averments in Cinram's (First) Amended Answer and Counterclaim (Exh. 4) are sufficient to plead a claim of patent misuse and Philips' motion to dismiss should be denied.

Yet again, grant of Cinram's motion for leave to file a Second Amended Answer and Counterclaims, with its much more detailed allegations of patent misuse and tortious interference in revised counterclaim Counts III and IV, should moot the foregoing issue.

## IV.     CONCLUSION

For the reasons stated, Cinram respectfully requests (1) leave to file its proposed Second Amended Answer and Counterclaim, and (2) denial of Philips' motion under Rules 21 and 12(b)(6).

Dated:  May 12, 2008                              Respectfully submitted,


                                                   /s/ William E. Pelton
                                                  Ivan Kavrukov
                                                  William E. Pelton
                                                  Tonia A. Sayour
                                                  Gregory J. Carbo
                                                  COOPER & DUNHAM LLP
                                                  1185 Avenue of the Americas
                                                  New York, New York 10036
                                                  Tel:  (212) 278-0400
                                                  Fax:  (212) 391-7550
                                                  wpelton@cooperdunham.com
                                                  ikavrukov@cooperdunham.com
                                                  gcarbo@cooperdunham.com

                                                  Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.08-cv-0515 |
| | : | (CLB)(MDF) |
| | : | |
| v. | : | ECF Case |
| | : | |
| CINRAM INTERNATIONAL INC., | : | |
| CINRAM INC., CINRAM | : | |
| MANUFACTURING INC., and John Does | : | |
| | : | |
| Defendants. | : | |
| | : | |

### DECLARATION OF GREGORY J. CARBO

I, Gregory J. Carbo, declare as follows:

    1.    I am an attorney in the law firm of Cooper & Dunham LLP, attorneys for the

defendants in this action, CINRAM INTERNATIONAL INC., CINRAM INC.,

CINRAM MANUFACTURING INC. ("CINRAM").  I am a member in good standing of

the bar of the States of New York and of this Court.  I make this declaration in support of

Defendant Cinram's Memorandum of Law in Support of (1) Motion For Leave to File A

Second Amended Answer, and (2) Opposition to Plaintiff's Motion to Dismiss.

    2.    Attached as Exhibit 1 is a true and correct copy of Defendants' Second

Amended Answer and Counterclaims which is the subject of Defendants' Motion For

Leave to File it.

    3.    Attached as Exhibit 2 is a true and correct copy of Plaintiffs' Complaint filed

January 18, 2008.

4.      Attached as Exhibit 3 is a true and correct copy of Plaintiffs' First Amended Complaint filed January 30, 2008.

5.      Attached as Exhibit 4 is a true and correct copy of Defendants' Amended Answer and Counterclaim filed April 9, 2008.

6.      Attached as Exhibit 5 is a true and correct copy of an email from Mr. Carbo to Mr. Hornick dated April 11, 2008.

7.      Attached as Exhibit 6 is a true and correct copy of an email from Mr. Hornick to Mr. Carbo dated April 15, 2008.

8.      Attached as Exhibit 7 is a true and correct copy of an email from Mr. Carbo to Mr. Hornick dated April 15, 2008.

9.      Attached as Exhibit 8 is a true and correct copy of an email from Mr. Kavrukov to Mr. Hornick dated April 18, 2008.

10.      Attached as Exhibit 9 is a true and correct copy of an email from Mr. Carbo to Mr. Hornick dated April 18, 2008.

11.      Attached as Exhibit 10 is a true and correct copy of an email from Mr. Carbo to Mr. Hornick dated April 23, 2008, together with the draft Second Amended Answer and Counterclaim attached thereto.

12.      Attached as Exhibit 11 is a true and correct copy of web pages downloaded from http://www.ip.philips.com on May 8, 2008, identifying plaintiff Koninklijke Philips Electronics N.V. as the copyright owner.

13.      Attached as Exhibit 12 is a true and correct copy of a letter from Philips Intellectual Property & Standards to Digital Excellence LLC dated April 30, 2008.

14.     Attached as Exhibit 13 is a true and correct copy of Cinram's letter of February 21, 2008 to Judge Brieant with Exhibits 13A-13C.

15.     Attached as Exhibit 14 is a true and correct copy of the March 7, 2008 Hearing Transcript.

16.     Attached as Exhibit 15 is a true and correct copy of Defendants' Answer and Counterclaim filed March 24, 2008.


Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.


Dated:  May 12, 2006                              /s/ Gregory J. Carbo
                                                  Gregory J. Carbo

EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : : : : | |
| Plaintiffs, | : : | Civil Action No.08-cv-0515 (CLB)(MDF) |
| v. | : : | ECF Case |
| CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does No. 1 through 100, | : : : : : | **SECOND AMENDED ANSWER AND COUNTERCLAIM** |
| Defendants and Counterclaim Plaintiffs. | : : : : | |

Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively referred to as "Cinram"), hereby respond to the First Amended Complaint by Koninklijke Philips Electronics N.V. ("Philips N.V.") and U.S. Philips Corporation ("U.S. Philips") (collectively referred to as "Philips") by and through their counsel as follows:

1.      The allegations contained in Paragraph 1 appear to characterize the nature of this case.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 1.

## THE PARTIES

2.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2, and, therefore, denies them.

3.      Cinram admits the allegations contained in Paragraph 3.

4.      Cinram admits the allegations contained in Paragraph 4.

5.      Cinram admits the allegations contained in Paragraph 5.

6.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6, and, therefore, denies them.

## JURISDICTION AND VENUE

7.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7, and, therefore, denies them.

8.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, and, therefore, denies them.

9.      The allegations contained in Paragraph 9 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 9.

10.     The allegations contained in Paragraph 10 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 10.

11.     Cinram denies the allegations contained in Paragraph 11.

## FACTS RELATED TO PHILIPS

12.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and, therefore, denies them.

13.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and, therefore, denies them.

14.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 and, therefore, denies them.

15.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and, therefore, denies them.

16.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and, therefore, denies them.

17.      Cinram admits Exhibit A to the Amended Complaint is a purported copy of the '846 patent but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 17 and, therefore, denies them, and specifically denies that the '846 was duly and legally issued after full and fair examination or that it is valid and subsisting.

18.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and, therefore, denies them.

## FACTS RELATED TO CINRAM

19.      Cinram admits that Philips N.V. and Cinram are parties to a license agreement which bears the title "CD Disc Patent License Agreement" ("License Agreement") and that Exhibit B to the Amended Complaint purports to be a copy of that License Agreement, which states that it was entered into on December 1, 2004, but denies the remaining allegations contained in numbered Paragraph 19.

20.      Cinram admits that Philips N.V. and Cinram are parties to a "Side Letter" and that Exhibit C to the Complaint purports to be a copy of that Side Letter, which states that it has "an effective date of December 1, 2004" and that it was signed by Cinram on December 22, 2004, but denies the remaining allegations contained in numbered Paragraph 20

21.      Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 21.

22.      Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 22.

3

23.     Cinram admits that the '846 patent is and was listed in Annex A1 but denies the remaining allegations contained in Paragraph 23.

24.     Cinram admits that ¶1.23 of the Agreement refers to Philips N.V. commissioning an independent expert to review the patents listed in Annexes A1 through A8 to determine whether each patent is "essential", but denies the remaining allegations contained in Paragraph 24.

25.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 25.

26.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and, therefore, denies them.

27.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 27.

28.     Cinram denies Philips' characterization of the Agreement and the remaining allegations contained in Paragraph 28.

29.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 29.

30.     Cinram admits that the agreement contains the quoted language but denies the remaining allegations contained in Paragraph 30.

31.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and, therefore, denies them.

32.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 32.

33.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 33.

34.      The allegations contained in Paragraph 34 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 34.

35.     Cinram admits that the agreement contains the quoted language but denies the remaining allegations contained in Paragraph 35.

36.     The allegations contained in Paragraph 36 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 36.

## FACTS RELATING TO BREACH OF CONTRACT CLAIM

37.     Cinram admits that the Agreement contains the quoted language but denies Philips' characterization of the Agreement and the remaining allegations contained in Paragraph 37.

38.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 38.

39.     Cinram denies the allegations contained in Paragraph 39.

40.     Cinram admits that it has paid royalties for CD-Discs but denies the remaining allegations contained in Paragraph 40.

41.     Cinram admits that it manufactures CD-Discs at two U.S. plants, Olyphant, PA ("Olyphant") and Richmond, IN ("Richmond"), and in Canada, but denies the remaining allegations contained in Paragraph 41.

42.     Cinram denies the allegations contained in Paragraph 42.

43.     Cinram denies the allegations contained in Paragraph 43.

44.     Cinram denies the allegations contained in Paragraph 44.

45.     Cinram denies the allegations contained in Paragraph 45.

46.     Cinram admits that CD-Discs it makes are sold in the United States but denies the remaining allegations contained in Paragraph 46.

47.     Cinram denies the allegations contained in Paragraph 47.

48.     Cinram denies the allegations contained in Paragraph 48.

## FACTS RELATING TO PATENT INFRINGEMENT CLAIM

49.     Cinram denies the allegations contained in Paragraph 49.

50.     The allegations contained in Paragraph 50 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 50.

51.     Cinram denies the allegations contained in Paragraph 51.

52.     Cinram denies the allegations contained in Paragraph 52.

53.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53, and, therefore, denies them.

## COUNT I
## BREACH OF CONTRACT

54.     Cinram repeats and reasserts all responses to Paragraphs 1 through 53 as if they were stated in full herein.

55.     Cinram admits that it has not terminated the Agreement and Side Letter with Philips N.V. but denies the remaining allegations contained in Paragraph 55.

56.     The allegations contained in Paragraph 56 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 56.

57.     The allegations contained in Paragraph 57 are legal conclusions to which no response is required.  To the extent a response is required, Cinram admits that the Agreement contains language to the effect that Philips is bound to seek resolution of any disputes related to the Agreement in the Courts of New York but denies the remaining allegations contained in Paragraph 57.

58.     Cinram denies the allegations contained in Paragraph 58.

59.     Cinram denies the allegations contained in Paragraph 59.

60.     Cinram denies the allegations contained in Paragraph 60.

61.     Cinram denies the allegations contained in Paragraph 61.

62.     Cinram lacks denies Philips' characterization of the Agreement and denies the remaining allegations contained in Paragraph 62.

63.     The allegations contained in Paragraph 63 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies Philips' characterization of the Agreement and denies the remaining allegations contained in Paragraph 63.

64.     Cinram denies the allegations contained in Paragraph 64.

## COUNT II
## PATENT INFRINGEMENT

65.     Cinram repeats and reasserts all responses to Paragraphs 1 through 64 as if they were stated in full herein.

66.     Cinram denies the allegations contained in Paragraph 66.

67.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67, and, therefore denies them.

68.    Cinram denies the allegations contained in Paragraph 68.

69.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69, and, therefore denies them.

70.    Cinram admits that records show that a Reexamination Request for the '846 patent was filed in the Patent Office on December 8, 2004 and that Exhibit D to the Amended Complaint purports to be a copy of a Reexamination Certificate but denies the allegations contained in Paragraph 70.

71.    Cinram admits that the '846 patent has been listed in Annex 1 of the Agreement but denies the remaining allegations contained in Paragraph 71.

72.    Cinram denies the allegations contained in Paragraph 72.

73.    Cinram denies the allegations contained in Paragraph 73.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Cinram has not directly or contributorily infringed any claim of the patent-in-suit, nor has it induced others to infringe the patent-in-suit.

### SECOND AFFIRMATIVE DEFENSE

The patent-in-suit is unenforceable due to Philips' patent misuse, prosecution laches, and inequitable conduct, namely, Philips' intentional failure to timely inform the Patent Examiner of material prior art and other information known to Philips, including by Philips abandoning an allowed patent application in favor of a continuing patent application with the same claims, and

by Philips submitting prior art in a reexamination proceeding in a manner ensuring that the

Patent Office would not consider it on the merits.

### THIRD AFFIRMATIVE DEFENSE

The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35

of the United States Code related to patentability.

### FOURTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by waiver.

### EIGHTH AFFIRMATIVE DEFENSE

If plaintiffs suffered damages as alleged, plaintiffs failed to mitigate such damages.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff U.S. Philips Corporation lacks standing to assert breach of contract claims

because it is not the licensing entity, and plaintiff Koninklijke Philips Electronics N.V. lacks

standing to assert patent infringement or contract claims under the '846 patent because it does

not own the licensed patent.

### TENTH AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim on which relief may be granted.

## ELEVENTH AFFIRMATIVE DEFENSE

Philips is estopped to construe the claims to of the '846 Patent to cover any products made, used, sold, offered for sale or imported by Cinram because of statements, amendments, or actions taken during the prosecution of the '846 Patent.

## TWELVTH AFFIRMATIVE DEFENSE

The claims of the '846 Patent cannot be construed to cover any product made, used, sold, offered for sale or imported by Cinram and avoid the prior art.

## THIRTEENTH AFFIRMATIVE DEFENSE

Philips is not entitled to an injunction or any other equitable remedy because it has an adequate remedy at law.

## COUNTERCLAIMS

Cinram counterclaims against Philips as follows:

## EXISTENCE OF ACTUAL CONTROVERSY

1.      These counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§2201(a) and 2202.

2.      An actual justiciable controversy, as set forth in this counterclaim, exists between Cinram and Philips concerning the validity, enforceability and infringement of the patent-in-suit.

## THE PARTIES

3.      Plaintiff-in-Counterclaim, Cinram International Inc. is a corporation organized under the laws of Canada with a place of business at 2255 Markham Road, Scarborough, Ontario, Canada.

4.      Plaintiff-in-Counterclaim, Cinram Inc. is a corporation organized under the laws of Delaware with a place of business at 1600 Rich Road, Richmond, Indiana.

5.      Plaintiff-in-Counterclaim, Cinram Manufacturing Inc. is a corporation organized under the laws of Delaware with a place of business at 1400 East Lackawanna Ave., Olyphant, Pennsylvania.  Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. are collectively referred to as "Cinram".

6.      Upon information and belief, Defendant-in-Counterclaim Koninklijke Philips Electronics N.V. is a corporation organized under the laws of The Netherlands with its place of business in Amsterdam, the Netherlands.

7.      Upon information and belief, Defendant-in-Counterclaim U.S. Philips Corporation is a corporation organized under the laws of Delaware with places of business at 1251 Avenue of the Americas, New York, New York, and at 345 Scarborough Rd., Briarcliff Manor, New York.  Defendants-in-Counterclaim Koninklijke Philips Electronics N.V. and U.S. Philips Corporation are collectively referred to as "Philips".


## JURISDICTION AND VENUE

8.       The Court has jurisdiction over Cinram, Philips, and over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338, 2201 and 2202 and under the doctrines of pendent and supplemental jurisdiction.

9.      By filing its Complaint, Philips has consented to the personal jurisdiction of this Court.

10.     Venue for the counterclaims is proper in this Court under 28 U.S.C. §§1391(b) and 1400(b).

**COUNT I**
**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT)**

11.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

12.    Cinram has not infringed, nor does it now infringe, any claim of the patent-in-suit.

13.    Cinram has not induced, nor does it now induce, infringement of any claim of the patent-in-suit.

14.    Cinram has not contributorily infringed, nor does it now contributorily infringe, any claim of the patent-in-suit.

15.    Cinram is entitled to a declaratory judgment that it has not directly, contributorily, or by inducement, infringed any claim of the patent-in-suit.

**COUNT II**
**(DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY)**

16.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

17.    The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability.

18.    On information and belief, Philips repeatedly delayed issuance of the '846 patent by unreasonable and unexplained delays in the prosecution of the chain of continuing patent applications commencing with the initial filing in 1973 culminating in the issuance of the patent in 1991 and an Ex Parte Reexamination Certificate in 2006, making the patent unenforceable because of prosecution laches.

19.    On information and belief, Philips unreasonably delayed submitting prior art to the Patent Examiner, or withheld prior art from the Patent Examiner, making it impractical or

impossible for the Patent Examiner to fully consider such prior art and thereby rendering the '846 patent unenforceable.

20.     Cinram is entitled to a declaratory judgment that the patent-in-suit is invalid.

## COUNT III
## (DECLARATORY JUDGMENT OF PATENT MISUSE)

21.     Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

22.     On information and belief, in the early 1980's plaintiff Philips N.V. promulgated Standard Specifications for pre-recorded CD-Discs ("CDs") and has modified them over the years.

23.     Plaintiff Philips N.V. extended to Cinram, and Cinram accepted, licenses under a pool of patents that purportedly were "essential" for making CDs ("the Licenses"), falsely representing therein that Philips N.V. owns certain of the pooled patents ("the Philips Patents"), including the `846 Patent, when in fact the Philips Patents were not owned by plaintiff Philips N.V.

24.     Cinram paid royalties under the pool Licenses with Philips N.V. for CDs made by Cinram.

25.     By 2005, all Philips Patents purportedly "essential" for the types of CDs described as CD-Audio, CD-ROM Mode 1, and CD-ROM Mode 2 made by Cinram ("the CD types at issue") had expired, except for the `846 Patent, which expires on November 26, 2008.

26.     By 2005, an alternative economically viable and practicable method of making the CD types at issue existed which did not require the `846 Patent, establishing that the '846 patent is not "essential." Cinram practiced this alternative method to make the CD types at issue and stopped paying royalties under the `846 Patent because it was not practicing the `846 Patent.

27.     Cinram continued and still continues to pay U.S. Philips royalties under the

Philips N.V. Licenses for the CDs that it makes other than the CD types at issue.

28.     As a result of Cinram's discontinuing to pay royalties under the `846 Patent,

plaintiffs instituted a wrongful plan, particularly directed to Cinram customers, by which an

alleged non-entity agent, Philips Intellectual Property & Standards ("Philips IPS"), falsely

represents, and continues to falsely represent, that the '846 Patent is "essential" in order to make

any CD, including the CD types at issue.

29.     As a purported non-entity agent Philips IPS has at various times been represented

by one William Lenihan, who identified himself as a "Director." Alleged non-entity Philips IPS

has also been represented on Philips IPS letterhead by one Christopher Horgan, whose title is

unknown, but who purports to perform Anti-Piracy Investigations for Philips IPS. Mr. Horgan's

email address is "Chris.Horgan@Philips.com."  At various times, Philips IPS stationary indicates

it is affiliated at least with one Philips Electronics North America Corporation in Briarcliff

Manor, N.Y., or with an unnamed entity located in San Jose, CA.

30.     As a part of plaintiffs' deceptive plan directed at Cinram's customers, Philips IPS

has sought royalties from Cinram's customers under the `846 Patent, a patent it could not own as

a purported non-entity, for sales of the CD types at issue.  As a purported non-entity Philips IPS

has threatened Cinram's customers with infringement lawsuits and resulting damages for

infringement of the `846 Patent, under which it has no rights, if royalties are not paid by Cinram

or by the targeted Cinram's customers on sales of the CD types at issue made by Cinram, and has

attempted to divert a Cinram customer to another supplier of CDs.

31.     On information and belief, a part of plaintiffs' wrongful plan was to utilize the

alleged non-entity Philips IPS to make false statements and threats based on false statements in

order to protect the plaintiffs from potential liability for such false statements, making threats with which it could not itself comply, and engaging in other improper and unfair behavior designed to disrupt Cinram's market for the CD types at issue.

32.    Plaintiffs have refused to reveal the structure of Philips IPS.

33.    On information and belief, plaintiffs acting together as part of their wrongful plan control or direct the activities of Philips IPS relevant to this action.

34.    The '846 Patent is not "essential" for the CD types at issue and does not cover those products.

35.    Cinram does not owe royalties for the manufacture and sale of the CD types at issue.

36.    The effect of plaintiffs' wrongful behavior is to restrain competition in the market of the CD types at issue by diverting Cinram customers to other suppliers on false pretenses, with the intention of putting Cinram out of the business of making and selling the CD types at issue.

37.    Philips has misused the '846 Patent by promulgating Standard Specifications for pre-recorded CDs and wrongfully and anti-competitively seeking to impose mandatory licensing of the `846 Patent through knowing intimidation of Cinram's customers by falsely representing that the `846 Patent is "essential" to enable customers to meet the Standard Specifications and threatening ruinous litigation if back and future royalties are not paid under that patent.   Such actions seek improperly to extend the temporal monopoly for the CD types at issue that U.S. Philips claimed for the expired Philips Patents from the original package license.

38.    Philips has further misused the `846 Patent by falsely representing to Cinram customers that royalties are due to Philips under that patent for all types of CDs, thereby further

seeking to extend the monopoly U.S. Philips claimed for the expired Philips Patents from the original package license.

39.     Philips has misused the '846 Patent by falsely representing that royalties are due to U.S. Philips on all CDs for another Philips Patent (U.S. Patent 5,790,512) that admittedly has no relevance to the CD type at issue, including in a letter to Eagles Recording Company ("Eagles") dated January 31, 2008 and in an email to H&R Block dated February 13, 2008.

40.     Philips has further misused the `846 Patent by seeking falsely to extend the temporal monopoly U.S. Philips claimed for the expired Philips Patents from the original package license by alleging to customers of Cinram, including Eagles and H&R Block, that Cinram does not pay royalties for CDs and as a result the customers must pay such royalties on all CDs manufactured and sold by them in the past and in the future.

41.     On information and belief, these acts of Philips were with knowledge of the business relationships of Cinram and Cinram's customers, with intent to harm those business relationships and Cinram's good will, and with intent to interfere with those business relationships, with malice or unfair or improper means, with intent to wrongfully extend the purported patent monopoly of the Philips Patents in the original package license that had expired, and have harmed Cinram in its relationship with said customers and in its good will.

42.     The '846 Patent is unenforceable based on Philips' misuse of this patent and Cinram is entitled to a declaration as such.

## COUNT IV
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)

43.     Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

44.     Plaintiffs know that Eagles Recording Company in Chantilly, VA. ("Eagles") is a customer of Cinram for the CD types at issue.

45.     On January 31, 2008, Philips Intellectual Property & Standards ("Philips IPS") sent a letter to Eagles, which act on information and belief was directed by plaintiffs.

46.     Philips IPS is purported by plaintiffs to be a non-entity without any existence or property and, on information and belief, plaintiffs have been acting in the name of Philips IPS as part of a wrongful and deceptive plan to collect royalties for patents that are not being practiced.

47.     The January 31 letter from Philips IPS to Eagles states that plaintiffs administer a "worldwide joint licensing program for essential patents…" The letter went on to say that "Every CD, CD-R/RW, DVD, DVR/RW and player and disc made, used, offered for sale, sold or imported into the United States or Canada is covered by…" the patents contained in an attached list of "essential" patents. The letter falsely states that U.S. Patent Nos. 5,790,512 ("`512 Patent") and 5,068,846 ("`846 Patent") were "essential" patents for the manufacture of CDs, including the CD types at issue, and were infringed by unlicensed sellers. Since Eagles is a customer of Cinram, a false and misleading representation in the letter was that Cinram is unlicensed and was selling CDs to Eagles that infringe the `512 and `846 Patents.

48.     Plaintiffs knew that the `512 Patent does not relate to the CDs at issue and therefore the `512 Patent was not infringed by either Cinram or Eagles. According to material published or caused to be published by Philips, the `512 Patent does not apply to CDs of the type that Eagles had purchased from Cinram.

49.     Philips also knows that the `846 Patent is not an "essential" patent for making all CDs. Thus, the false and misleading statements to Eagles that selling Cinram's CDs by Eagles is

an infringement of these two patents were designed to harm and disrupt Cinram's business relationship with Eagles and Cinram's good will.

50.     Cinram is licensed and is known by plaintiffs to be licensed to make, use and sell CDs and therefore the implication that Cinram is unlicensed is false and misleading and designed to harm and disrupt Cinram's business relationship with Eagles and Cinram's good will.

51.     The letter also falsely implies that Cinram does not pay royalties for CDs it produces and that Eagles is therefore liable for infringement of "patents belonging to Philips and others." Philips knows that Cinram does pay royalties for CDs it produces, and that Eagles does not infringe "patents belonging to Philips and others" by purchasing the CDs at issue from Cinram.  This statement in the January 31 letter to Eagles is misleading and intended by plaintiffs to harm and disrupt Cinram's business relationship with Eagles by frightening Eagles into changing its supplier for CDs with anticompetitive effect and harming Cinram's good will.

52.     On February 13, 2008, Philips on information and belief caused Philips IPS to send an email communication to H&R Block, a purchaser of CDs made by Cinram (Exh. 13B). This email misleadingly alleges that all of the CDs purchased by H&R Block went unreported and unpaid, when in fact CDs made by Cinram other than the CD types at issue were both reported and paid for.  In addition, Philips improperly attempted to divert H&R Block to another supplier of CD Discs based on the allegations made in its February 13 letter.

53.     On April 30, 2008, on information and belief, plaintiffs caused Philips IPS to send a letter to Digital Excellence LLC, stating that Philips N.V. and U.S. Philips own essential patents on, among other things, all types of CDs and DVDs. The letter asserts that licensed manufacturers of CDs are identified on a publicly available Licensee Database.

54.     Many purchasers and distributors of CDs refer to the mentioned Licensee Database in selecting a supplier of CDs.

55.     The letter states that manufacturers who have breached their license have been removed from the Licensee Database.

56.     Cinram is and remains a licensed supplier of CDs. Philips has wrongfully and unfairly removed Cinram from that Database and Cinram has thereby been prejudiced in its business and customer relationships and its good will.  Cinram was deliberately removed to harm Cinram in conducting its business in making and selling CDs and in its good will.

57.     On information and belief, plaintiffs acting in concert under the name of Philips IPS caused the statements in the January 31 and February 13, 2008 letters and communications to be made and caused the acts revealed in the April 30, 2008 letter to be made knowing that these statements were false and misleading and that the acts undertaken were intentionally prejudicial to Cinram.  On information and belief, plaintiffs caused these statements to be made with the sole purpose of harming Cinram.  As a direct result of the knowingly false and misleading allegations caused by plaintiffs to be made, Cinram's business relationship with its customers and Cinram's good will have been harmed causing Cinram damages of a currently unknown amount.

58.     Plaintiffs have tortiously interfered with Cinram's business relationships, and Cinram is entitled to a declaration as such, along with monetary and injunctive relief.

## COUNT V
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)

59.     Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

60.     On information and belief, plaintiff Philips N.V. and/or plaintiff U.S. Philips have caused a list of companies to be published on a website identified with Philips N.V., together with threats against customers who may consider buying CDs from companies not on the list.

61.     On information and belief, Cinram's existing and prospective customers periodically check the website to confirm that Cinram is not absent from that list.

62.     On information and belief, as of at least April 3, 2008, Philips N.V. and/or U.S. Philips caused Cinram to be removed from the list.

63.     On information and belief, one or both of Philips N.V. and U.S. Philips caused this change in the list to be made with the sole purpose of harming Cinram.  As a direct result of such change, Cinram's business relationship with its customers and Cinram's good will have been harmed, causing Cinram damages of a currently unknown amount.

64.     One or both of Philips N.V. and U.S. Philips have tortiously interfered with Cinram's business relationships, and Cinram is entitled to a declaration as such, along with monetary and injunctive relief.


## EXCEPTIONAL CASE

65.     This is an exceptional case entitling Cinram to an award of its attorneys' fees incurred in connection with defending and prosecuting this action pursuant to 35 U.S.C. §285, as a result of, *inter alia*, Philips' assertion of the '846 patent against Cinram with the knowledge that the '846 patent is not infringed and/or is invalid.


## REQUEST FOR RELIEF

WHEREFORE, Cinram respectfully requests that:

1.      The First Amended Complaint be dismissed with prejudice as to Cinram and Cinram be awarded its costs for this action;

2.      Judgment be entered declaring that the patent-in-suit is not infringed by Cinram and is invalid and unenforceable;

3.      Judgment be entered declaring that Cinram has not contributorily infringed the patent-in-suit, and has not induced others to infringe the patent-in-suit;

4.      Judgment be entered declaring that Philips has tortiously interfered with Cinram's business relationships and Cinram be awarded damages as well as an injunction prohibiting Philips from sending further false and misleading communications to Cinram's customers.

5.      Judgment be entered declaring that one or both of Philips N.V. and U.S. Philips have tortiously interfered with Cinram's business relationships and Cinram be awarded damages as well as an injunction prohibiting such interference.

6.      Judgment be entered declaring this to be an exceptional case under 35 U.S.C. §285, and Cinram be awarded its attorneys' fees and expert fees incurred for defending  this action and prosecuting its counterclaim; and

7.      Cinram be granted such other relief as the Court deems just and proper.


## JURY TRIAL

Cinram requests a jury trial on all its claims.

Dated: May __, 2008                    Respectfully submitted,


_____

Ivan Kavrukov
William E. Pelton
Tonia A. Sayour
Gregory J. Carbo
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York 10036
Tel:  (212) 278-0400
Fax:  (212) 391-7550
ikavrukov@cooperdunham.com
gcarbo@cooperdunham.com

Attorneys for Defendants
Cinram International Inc., Cinram Inc.,
And Cinram Manufacturing Inc.

EXHIBIT 2

JUDGE BRIEANT UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V., <br><br> Plaintiff, <br><br> v. <br><br> CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does No. 1 through 100, <br><br> Defendants. | **08 CV 00515** <br><br> Civil Action No. |

## COMPLAINT

Plaintiff Koninklijke Philips Electronics N.V. alleges as follows based upon knowledge as to its own acts, and upon information and belief as to all other allegations:

1.      This is an action for breach of contract under the laws of the State of New York and, in the alternative, patent infringement under 35 U.S.C. 271 *et seq.*

### The Parties

2.      Plaintiff Koninklijke Philips Electronics N.V. ("Philips") is a corporation organized under the laws of The Netherlands with a principal place of business in Eindhoven, the Netherlands and an office at 345 Scarborough Road, P.O. Box 3001, Briarcliff Manor, New York.

3.      Defendant Cinram International Inc. is a corporation organized under the laws of Canada with a principal place of business at 2255 Markham Road, Scarborough, Ontario, Canada.

4.      Defendant Cinram Inc. is a corporation organized under the laws of Delaware with a principal place of business at 1600 Rich Road, Richmond, Indiana.

1

5.     Defendant Cinram Manufacturing Inc. is a corporation organized under the laws of Delaware with a principal place of business at 1400 East Lackawanna Ave., Olyphant, Pennsylvania.   Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. are sometimes collectively referred to in this Complaint as "Cinram".

6.     Defendants John Doe No. 1 through John Doe No. 100 inclusive are or may be other Cinram-related entities or Cinram customers, the identities of which are unknown at this time.

### Jurisdiction and Venue

7.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367(a), and 35 U.S.C. §§ 271 and 281.

8.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.     Venue in this Court is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

10.     This Court has personal jurisdiction over Cinram under the New York Long Arm Statute, N.Y. C.P.L.R. 301, 302, 317 (McKinney 2007).

11.     Cinram has irrevocably waived any objections to the jurisdiction, process, and venue of this Court, and to the effectiveness, execution, and enforcement of any order or judgment (including a default judgment) with respect to the Agreement and Side Letter identified in ¶¶ 19-20 of this Complaint.

### Facts Related to Philips

12.     Philips and its related companies have engaged for many years in research and development ("R&D") of systems in which signals encoded in digital form and stored on a disc are read and reproduced by means of devices using an optical read-out beam.

13.    One of the achievements of such R&D efforts was a revolutionary high-fidelity sound storage and reproduction system, known as the Compact Disc Digital Audio System ("CD-Audio System").

14.    Philips and Sony Corporation ("Sony") developed the Compact Disc Data System ("CD-ROM System") from the CD-Audio System.

15.    Philips and Sony also developed a multi-session CD system, known as the Enhanced Music Compact Disc System ("Enhanced Music CD System" or "CD Extra System").

16.    The CD-Audio System, CD-ROM System, and CD Extra System are referred to collectively in this Complaint as the "CD Systems".

17.    Philips owns U.S. Patent No. 5,068,846, entitled "Reflective, Optical Record Carrier," relating to the CD Systems ("the '846 patent"). The '846 patent was duly and legally issued by the U.S. Patent and Trademark Office on November 26, 1991, after full and fair examination, and is valid and subsisting in the United States. A true copy of the '846 patent is attached as **Exhibit A**.

18.    The CD Systems are defined by "Standard Specifications", namely, the CD-Audio Standard Specifications, CD-Audio Maxi-Single Standard Specifications, CD-ROM Standard Specifications, CD-ROM-XA Specifications, and the Enhanced Music CD Standard Specifications.

### Facts Related to Cinram

19.    Effective December 1, 2004, Philips and Cinram International Inc. entered into a "CD Disc Patent License Agreement" whereby Philips granted Cinram International Inc. worldwide rights under certain patents related to CD Systems, including for the territory of Canada (the "Agreement") (**Exhibit B**).

3

20.    Also effective December 1, 2004, Philips entered into a "Side Letter" with Cinram International Inc., Cinram Inc., Cinram Manufacturing Inc., and other entities related to Cinram International Inc., and under ¶ 1 thereof the Side Letter is "a legally binding and integral part of the Agreement". Such Side Letter extends the terms and conditions of the Agreement to Cinram Inc., Cinram Manufacturing Inc., and other entities related to Cinram International Inc., makes them "Licensees" under the Agreement, and modifies and amends the Agreement. Under the Side Letter, Philips granted to Cinram Inc. and Cinram Manufacturing Inc. worldwide rights under certain patents related to CD Systems, including for the territory of the United States, its territories, and possessions. Cinram Inc. and Cinram Manufacturing Inc. signed the Side Letter on December 22, 2004. (**Exhibit C**)

21.    The Agreement identifies the Standard Specifications for CD System discs, specifically, "CD-Audio Discs", "CD-Audio Maxi-Singles", "CD-ROM Discs", "CD-ROM Disc mode 1", "CD-ROM Disc mode 2", "CD-ROM XA Disc sub-mode 1", "CD-ROM XA Disc sub-mode 2", "CD Extra Discs", "CD Extra Discs sub-mode 1", and "CD Extra Discs sub-mode 2". Such CD System discs are referred to collectively in this Complaint as "CD-Discs".

22.    Paragraph 1.23 of the Agreement, as amended by ¶ 4 of the Side Letter, defines "Licensed Patents" as "any one or more of the essential patents for the manufacture and/or sale of the various types of CD-Discs", breaks out such patents into Categories I through III, and incorporates the specific patents listed in Annexes A1 through A8. Under ¶ 1.23 of the Agreement, Licensed Patents identified in Annex A1 cover all CD-Discs, in Categories I through III.

23.    The '846 patent was listed in Annex A1 when Cinram signed the Agreement and Side
Letter and is currently listed in Annex A1, and therefore is a Licensed Patent applicable to all
CD-Discs manufactured and/or sold by Cinram under the Agreement and Side Letter.

24.    Under ¶ 1.23 of the Agreement, Philips and Cinram agreed that Philips would
commission an independent expert to review the patents listed in Annexes A1 through A8 to
confirm that each patent is "essential" to the manufacture and sale of CD-Discs made according
to the Standard Specifications.  Philips did so.

25.    Under ¶ 1.23 of the Agreement, the term "essential" as used in relation to Licensed
Patents means "patents, the use of which is necessary (either directly or as a practical matter) for
compliance with the Standard Specifications defining the relevant CD System(s)."

26.    The independent expert commissioned by Philips determined that the '846 patent is an
essential patent and is properly listed in Annex A1 of the Agreement.

27.    Paragraph 1.22 of the Agreement  defines "Licensed Product(s)" by eleven "Options",
Option A through K, "as selected by Licensee, manufactured and/or sold in accordance with the
provisions hereof, which are duly reported and on which the royalties due hereunder are paid in
accordance with the provisions of this Agreement."  Each Option corresponds to a different type
of CD-Disc defined in ¶¶ 1.2 through 1.11 of the Agreement, made in compliance with the
Standard Specifications for each type of CD-Disc defined in ¶¶ 1.12 through 1.16 of the
Agreement.   For example, Option A is "CD-Audio Discs and/or CD-Audio Maxi Singles"
defined in ¶¶ 1.2 and 1.3, respectively, made in compliance with the ¶¶ 1.12 and 1.13 Standard
Specifications, and Option C is "CD-ROM Discs mode 1" defined in ¶ 1.5, made in compliance
with the ¶ 1.14 Standard Specifications.

28.     Cinram International Inc. selected all Licensed Products, namely, Options A through K, for itself and the companies to which the Agreement is extended by the Side Letter, including Cinram Inc. and Cinram Manufacturing Inc.

29.     Under ¶¶ 2.1 and 1.25 of the Agreement and ¶ 2 of the Side Letter, Philips granted to Cinram "a non-exclusive, non-transferable license under the Licensed Patents" (listed in the Annexes corresponding to the Options selected by Cinram International Inc.) "to manufacture Licensed Products" corresponding to Options A-K (as selected by Cinram International Inc.), "in accordance with the . . . Standard Specifications" set forth in ¶¶ 1.12 through 1.16 of the Agreement, within the United States and its territories and possessions and Canada, "and to sell or otherwise dispose of such Licensed Products so manufactured in all countries of the world.".

30.     Under ¶ 5.2 of the Agreement and ¶ 2 of the Side Letter, Cinram promised to "pay to Philips a royalty for each CD-Disc sold or otherwise disposed of by Licensee, any of Licensee's Associated Companies [as defined in ¶ 1.24] or an agent of Licensee, in any country where at least one of the Licensed Patents essential to the type(s) of CD-Discs as selected by Licensee . . . exists."

31.     The '846 patent exists in the United States, and has existed at all times relevant to this action.

32.     With respect to the royalty required by the Agreement, Cinram agreed to pay Philips the "Standard Rate" of 3 cents (3¢) per relevant CD-Disc covered by this Complaint, as defined in ¶ 5.2 of the Agreement.

33.     With respect to CD-Discs sold on or after July 1, 2002, Philips permitted Cinram to pay the "Compliance Rate" of 1.75 cents (1.75¢) per relevant CD-Disc covered by this Complaint,

also as defined in ¶ 5.2 of the Agreement, provided that Cinram meets the "Compliance Requirements" specified in ¶ 34 of this Complaint.

34.    To be eligible to pay the Compliance Rates under the Agreement, Cinram was required to be in full compliance with their obligations under the Agreement and Side Letter.

35.    Paragraph 5.2 of the Agreement further provides that "[i]n the event that Licensee fails to comply at any time with any of its obligations under this Agreement, the Standard Rates, as applicable, shall apply to Licensee's manufacture and sale of CD-Discs instead of the Compliance Rates, as applicable, with immediate effect from the first day of the reporting period to which the occurrence of non-compliance relates until such moment that Philips confirms in writing to Licensee that Licensee's non-compliance has been remedied in full."

36.    Paragraphs 5.3 and 5.10 of the Agreement (as modified by ¶ 9 of the Side Letter) require Cinram to submit quarterly "Royalty Reporting Forms" to Philips listing all CD-Discs that it manufactures and sells, and to keep complete and accurate books and records relating to Cinram's manufacture and sale or other disposal of CD-Discs.

## Facts Relating to Breach of Contract Claim

37.    Cinram selected Licensed Product Options A-K.  To be Licensed Products, selected CD-Discs must be manufactured and sold in compliance with the corresponding Standard Specifications and the provisions of the Agreement, such sales must be reported to Philips, and royalties for the sale of such CD-Discs must be paid to Philips.  For example, a CD-Audio Disc is defined by ¶ 1.2 of the Agreement to "mean a Disc [as defined in ¶ 1.1 of the Agreement] comprising audio information encoded in digital form, which is optically readable by a CD-Audio Player [as defined in ¶ 1.18 of the Agreement] and which conforms to the CD-Audio Standard Specifications [as defined in ¶ 1.12 of the Agreement]."  Paragraph 1.12 defines the

7

CD-Audio Standard Specifications to "mean the specifications for the CD-Audio System [as defined in the second "Whereas" clause of the Agreement], including, if applicable, the Subcode/Control and Display System, Channels R . .W, chapter 5.8, the CD-TEXT mode, as made available, modified or extended from time to time."

38.     Under ¶ 2.1 of the Agreement, Cinram is licensed only to manufacture selected Licensed Products "**in accordance with the relevant CD Standard Specifications** and to sell or otherwise dispose of such Licensed Products **so manufactured** in all countries of the world." (Emphasis added.)

39.     Because the '846 patent exists in the United States, under ¶ 5.2 of the Agreement, Cinram must pay Philips either the Standard Rates or the Compliance Rates "for each CD-Disc sold or otherwise disposed of" by Cinram, its associated companies, or its agents in the U.S.

40.     Beginning in or about February 2005, Cinram began paying royalties under the Agreement for the Fourth Quarter of 2004, according to the Compliance Rates, for the manufacture and sale of CD-Audio Discs (1.75 cents (1.75¢) per disc), CD-Audio Max Single Discs (1.55 cents (1.55¢) per disc), and CD-ROM Discs (1.75 cents (1.75¢) per disc) in the United States.

41.     Cinram manufactures CD-Discs under the Agreement at two U.S. plants, Olyphant, PA ("Olyphant") and Richmond, IN ("Richmond"), and in Canada.

42.     Beginning in or about the beginning of the Second Quarter of 2005, Cinram ceased paying royalties for all CD-Discs made at its Olyphant plant and sold in the U.S.

43.     Beginning in or about the beginning of the Third Quarter of 2005, Cinram ceased paying royalties for all CD-Discs made at its Richmond plant and sold in the U.S.

44.    After the Quarters identified in ¶¶ **42-43** of this Complaint, Cinram has continued to make and sell the following CD-Discs in the U.S., without providing royalty reports or paying royalties to Philips:

      a.      CD-Discs made at its Olyphant plant, at least 500 million CD-Discs;

      b.      CD-Discs made at its Richmond plant, at least 320 million CD-Discs.

45.    Cinram has sold an unknown quantity of CD-Discs in the U.S. that Cinram manufactured in Canada, without providing royalty reports or paying royalties to Philips for such U.S. sales.

46.    The CD-Discs made and sold by Cinram after they stopped paying royalties to Philips have been and are available for purchase on the open market in the U.S. and in this district.

47.    Cinram does not contest that the CD-Discs made and/or sold in the U.S. by Cinram after they stopped paying royalties to Philips comply with the relevant Standard Specifications.

48.    Cinram has failed to submit quarterly "Royalty Reporting Forms" to Philips listing all CD-Discs that they manufacture and sell, and/or to keep complete and accurate books and records, relating to Cinram's manufacture and sale or other disposal of all CD-Discs in the U.S., as required by ¶¶ 5.3 and 5.10 of the Agreement (as modified by ¶ 9 of the Side Letter).

### Facts Relating to Patent Infringement Claim

49.    The CD-Discs made and sold by Cinram in the U.S. without paying royalties to Philips fall within the claims of the '846 patent.

50.    Cinram's license to make and sell such CD-Discs in the U.S. is contingent upon Cinram's payment of royalties to Philips. Under ¶ 5 of the Side Letter, Philips agreed not to assert against Cinram claims of the Licensed Patents only for as long as Cinram remained in full compliance with all material terms and conditions of the Agreement. As set forth in this Complaint, Cinram is in material breach of the Agreement.

51.    As set forth in this Complaint, Cinram is making and selling CD-Discs covered by the '846 patent in the U.S. without paying royalties to Philips.

52.    Because Cinram has not paid royalties to Philips and is in material breach of the Agreement, as set forth in this Complaint, the CD-Discs made and sold by Cinram since the breach began are not Licensed Products, and are not licensed, under the '846 patent.

53.    The John Doe Defendants are making and/or selling CD-Discs covered by the '846 patent in the U.S. without a license from Philips under the Licensed Patents, and/or without paying royalties to Philips.

## Count I
## <u>Breach of Contract</u>

54.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

55.    The Agreement and Side Letter are valid and subsisting agreements under New York law between Philips and Cinram.   The Agreement and Side Letter are supported by adequate consideration. Neither Philips nor Cinram has terminated the Agreement or Side Letter.

56.    In ¶ 13.7 of the Agreement, Philips and Cinram agreed that New York law controls the construction of the Agreement.

57.    In ¶ 29 of the Side Letter, Cinram and Philips agreed to submit to the state or federal courts of New York any dispute related to the Agreement.

58.    Cinram has materially breached the Agreement and Side Letter by failing to pay royalties on their manufacture and sale of CD-Discs, as set forth in this Complaint.

59.    Cinram has materially breached the Agreement and Side Letter in other ways, the details of which are unknown at this time.

60.    In view of Cinram's breach of the Agreement and Side Letter, Philips is entitled to receive royalties for Cinram's manufacture and sale in the U.S. of CD-Discs after the Quarters

10

identified in ¶¶ **42-43** at the Standard Rates (3 cents (3¢) per disc for CD-Audio Discs and CD-ROM Discs).

61.     Cinram has materially breached the Agreement and Side Letter by failing to provide accurate audit statements to Philips, failing to submit quarterly "Royalty Reporting Forms" to Philips listing all CD-Discs that they manufacture and sell, and/or failing to keep complete and accurate books and records relating to Cinram's manufacture and sale or other disposal of CD-Discs in the U.S., in breach of ¶¶ 5.2, 5.3, 5.5, and/or 5.10 of the Agreement.

62.     Under ¶ 5.7 of the Agreement, Philips is entitled to interest on all unpaid royalties owed to Philips by Cinram, accruing at the rate of 2% (two percent) per month, or the maximum amount permitted by applicable law, whichever is lower.

63.     Under ¶ 13.5 of the Agreement, Cinram agreed that neither Philips' failure nor delay in enforcing any provision of the Agreement shall constitute a waiver of such provision or of Philips' right to enforce any provision of the Agreement.

64.     Philips has suffered monetary and other damages, in an as-yet undetermined amount, as the direct and proximate result of Cinram's material breach of the Agreement and Side Letter.

### Count II
### Patent Infringement

65.     Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

66.     In the alternative to Philips' breach of contract claim, Cinram have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, the '846 patent by practicing one or more claims of the '846 patent in their manufacture, use, offering for sale, sale, and/or importation of products, and/or by inducing or contributing to the infringement of the '846 patent, under 35 U.S.C. § 271.

11

67.     The John Doe Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, the '846 patent by practicing one or more claims of the '846 patent in their manufacture, use, offering for sale, sale, and/or importation of products, and/or by inducing or contributing to the infringement of the '846 patent, under 35 U.S.C. § 271.

68.     The '846 patent is valid and subsisting and is entitled to a presumption of validity under 35 U.S.C. § 282.

69.     Philips is the assignee of all rights, title, and interest in and to the '846 patent and possesses all rights of recovery under the '846 patent.

70.     A Reexamination Request for the '846 patent was filed in the U.S. Patent and Trademark Office on December 8, 2004.  Ex Parte Reexamination Certificate No. US 5,068,846 C1 (the "Reexamination Certificate"), confirming the patentability of claims 1 through 7 of the '846 patent, was issued by the U.S. Patent and Trademark Office on September 19, 2006.  A true copy of the Reexamination Certificate is attached as **Exhibit D**.

71.     Cinram has had knowledge of the '846 patent at all times relevant to this action.

72.     Cinram's infringement of the '846 patent has been and continues to be willful, and therefore Philips is entitled to treble damages under 35 U.S.C. § 284.

73.     Philips has suffered monetary and other damages in an as-yet undetermined amount, and irreparable injury, as the direct and proximate result of Cinram's infringement of the '846 patent. Philips has no adequate remedy at law.  Unless enjoined, Cinram will continue to infringe and to damage Philips irreparably.

**Prayer for Relief**

Wherefore, Philips requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to a judgment and order as follows:

A.    holding Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. jointly and severally liable for breach of contract;

B.    In the alternative, holding Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. jointly and severally liable for patent infringement;

C.    holding the John Doe Defendants jointly and severally liable for patent infringement;

D.    directing Cinram to pay to Philips its actual damages for:

    a.    Cinram's breach of contract; or

    b.    in the alternative, Cinram's patent infringement, under 35 U.S.C. § 284;

E.    directing the John Doe Defendants to pay to Philips its actual damages for patent infringement, under 35 U.S.C. § 284;

F.    directing Cinram to pay unpaid royalties at the Standard Rates;

G.    directing Cinram and the John Doe Defendants to pay Philips' other damages, including but not limited to direct, consequential, indirect, compensatory, and punitive damages;

H.    directing Cinram to pay interest on all unpaid royalties;

I.    holding that Cinram's and the John Doe Defendants' patent infringement has been and continues to be willful, and trebling Philips' damages;

J.    enjoining Cinram and the John Doe Defendants from making, having made, using, importing, or selling CD-Discs under 35 U.S.C. § 283;

K.    directing Cinram and the John Doe Defendants to pay Philips' attorneys' fees and costs

under 35 U.S.C. § 285;

L.    directing Cinram and the John Doe Defendants to pay prejudgment and post-judgment

interest;

M.    providing such other and further relief as this Court deems just and appropriate.

### <u>Jury Trial</u>

Philips demands a jury trial on all claims set forth in this Complaint.


Date:  January 16, 2008                             Respectfully submitted,


                                                    _____
                                                    Edward D. Johnson
                                                    MAYER BROWN LLP
                                                    Two Palo Alto Square, Suite 300
                                                    3000 El Camino Real
                                                    Palo Alto, California 94306-2112
                                                    Tel: (650) 331-2000
                                                    Fax: (650) 331-2060

                                                    Vince P. Kovalick
                                                    John F. Hornick
                                                    Samuel C. Bass
                                                    FINNEGAN, HENDERSON, FARABOW,
                                                        GARRETT & DUNNER, L.L.P.
                                                    901 New York Avenue, N.W.
                                                    Washington, D.C.  20001
                                                    Tel: (202) 408-4000
                                                    Fax: (202) 408-4400

                                                    Christopher J. Houpt
                                                    MAYER BROWN LLP
                                                    1675 Broadway
                                                    New York, New York 10019
                                                    Tel: (212) 506-2380
                                                    Fax: (212) 849-5830

                                                    *Attorneys for Plaintiff*
                                                    *Koninklijke Philips Electronics N.V.*

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KONINKLIJKE PHILIPS ELECTRONICS
N.V. and U.S. PHILIPS CORPORATION,

        Plaintiffs,

       v.

CINRAM INTERNATIONAL INC.,
CINRAM INC., CINRAM
MANUFACTURING INC., and John Does
No. 1 through 100,

        Defendants.

Civil Action No.
08 CV 00515 (CLB)(MDF)



## <u>FIRST AMENDED COMPLAINT</u>

    Plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation allege as follows based upon knowledge as to their own acts, and upon information and belief as to all other allegations:

1.    This is an action for breach of contract under the laws of the State of New York and, in the alternative, patent infringement under 35 U.S.C. 271 *et seq.*

### <u>The Parties</u>

2.    Plaintiff Koninklijke Philips Electronics N.V. is a corporation organized under the laws of The Netherlands with its principal place of business in Amsterdam, the Netherlands. Plaintiff U.S. Philips Corporation is a corporation organized under the laws of Delaware with its principal place of business at 1251 Avenue of the Americas, New York, New York, and an office at 345 Scarborough Rd., Briarcliff Manor, New York. Plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation are collectively referred to as "Philips."

3.    Defendant Cinram International Inc. is a corporation organized under the laws of Canada with a principal place of business at 2255 Markham Road, Scarborough, Ontario, Canada.

4.    Defendant Cinram Inc. is a corporation organized under the laws of Delaware with a principal place of business at 1600 Rich Road, Richmond, Indiana.

5.    Defendant Cinram Manufacturing Inc. is a corporation organized under the laws of Delaware with a principal place of business at 1400 East Lackawanna Ave., Olyphant, Pennsylvania.   Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. are sometimes collectively referred to in this Complaint as "Cinram".

6.    Defendants John Doe No. 1 through John Doe No. 100 inclusive are or may be other Cinram-related entities or Cinram customers, the identities of which are unknown at this time.

### Jurisdiction and Venue

7.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367(a), and 35 U.S.C. §§ 271 and 281.

8.    The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.    Venue in this Court is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

10.    This Court has personal jurisdiction over Cinram under the New York Long Arm Statute, N.Y. C.P.L.R. 301, 302, 317 (McKinney 2007).

11.    Cinram has irrevocably waived any objections to the jurisdiction, process, and venue of this Court, and to the effectiveness, execution, and enforcement of any order or judgment (including a default judgment) with respect to the Agreement and Side Letter identified in ¶¶ 19-20 of this Complaint.

2

**Facts Related to Philips**

12.     Philips and its related companies have engaged for many years in research and development ("R&D") of systems in which signals encoded in digital form and stored on a disc are read and reproduced by means of devices using an optical read-out beam.

13.     One of the achievements of such R&D efforts was a revolutionary high-fidelity sound storage and reproduction system, known as the Compact Disc Digital Audio System ("CD-Audio System").

14.     Philips and Sony Corporation ("Sony") developed the Compact Disc Data System ("CD-ROM System") from the CD-Audio System.

15.     Philips and Sony also developed a multi-session CD system, known as the Enhanced Music Compact Disc System ("Enhanced Music CD System" or "CD Extra System").

16.     The CD-Audio System, CD-ROM System, and CD Extra System are referred to collectively in this Complaint as the "CD Systems".

17.     U.S. Philips Corporation is the owner by assignment of all right, title, and interest in U.S. Patent No. 5,068,846, entitled "Reflective, Optical Record Carrier," relating to the CD Systems ("the '846 patent"). The '846 patent was duly and legally issued by the U.S. Patent and Trademark Office on November 26, 1991, after full and fair examination, and is valid and subsisting in the United States. A true copy of the '846 patent is attached as **Exhibit A**.

18.     The CD Systems are defined by "Standard Specifications", namely, the CD-Audio Standard Specifications, CD-Audio Maxi-Single Standard Specifications, CD-ROM Standard Specifications, CD-ROM-XA Specifications, and the Enhanced Music CD Standard Specifications.

3

**Facts Related to Cinram**

19.    Effective December 1, 2004, Philips and Cinram International Inc. entered into a "CD Disc Patent License Agreement" whereby Philips granted Cinram International Inc. worldwide rights under certain patents related to CD Systems, including for the territory of Canada (the "Agreement") **(Exhibit B)**.

20.    Also effective December 1, 2004, Philips entered into a "Side Letter" with Cinram International Inc., Cinram Inc., Cinram Manufacturing Inc., and other entities related to Cinram International Inc., and under ¶ 1 thereof the Side Letter is "a legally binding and integral part of the Agreement". Such Side Letter extends the terms and conditions of the Agreement to Cinram Inc., Cinram Manufacturing Inc., and other entities related to Cinram International Inc., makes them "Licensees" under the Agreement, and modifies and amends the Agreement. Under the Side Letter, Philips granted to Cinram Inc. and Cinram Manufacturing Inc. worldwide rights under certain patents related to CD Systems, including for the territory of the United States, its territories, and possessions. Cinram Inc. and Cinram Manufacturing Inc. signed the Side Letter on December 22, 2004. **(Exhibit C)**

21.    The Agreement identifies the Standard Specifications for CD System discs, specifically, "CD-Audio Discs", "CD-Audio Maxi-Singles", "CD-ROM Discs", "CD-ROM Disc mode 1", "CD-ROM Disc mode 2", "CD-ROM XA Disc sub-mode 1", "CD-ROM XA Disc sub-mode 2", "CD Extra Discs", "CD Extra Discs sub-mode 1", and "CD Extra Discs sub-mode 2". Such CD System discs are referred to collectively in this Complaint as "CD-Discs".

22.    Paragraph 1.23 of the Agreement, as amended by ¶ 4 of the Side Letter, defines "Licensed Patents" as "any one or more of the essential patents for the manufacture and/or sale of the various types of CD-Discs", breaks out such patents into Categories I through III, and

incorporates the specific patents listed in Annexes A1 through A8. Under ¶ 1.23 of the Agreement, Licensed Patents identified in Annex A1 cover all CD-Discs, in Categories I through III.

23.     The '846 patent was listed in Annex A1 when Cinram signed the Agreement and Side Letter and is currently listed in Annex A1, and therefore is a Licensed Patent applicable to all CD-Discs manufactured and/or sold by Cinram under the Agreement and Side Letter.

24.     Under ¶ 1.23 of the Agreement, Philips and Cinram agreed that Philips would commission an independent expert to review the patents listed in Annexes A1 through A8 to confirm that each patent is "essential" to the manufacture and sale of CD-Discs made according to the Standard Specifications. Philips did so.

25.     Under ¶ 1.23 of the Agreement, the term "essential" as used in relation to Licensed Patents means "patents, the use of which is necessary (either directly or as a practical matter) for compliance with the Standard Specifications defining the relevant CD System(s)."

26.     The independent expert commissioned by Philips determined that the '846 patent is an essential patent and is properly listed in Annex A1 of the Agreement.

27.     Paragraph 1.22 of the Agreement defines "Licensed Product(s)" by eleven "Options", Option A through K, "as selected by Licensee, manufactured and/or sold in accordance with the provisions hereof, which are duly reported and on which the royalties due hereunder are paid in accordance with the provisions of this Agreement." Each Option corresponds to a different type of CD-Disc defined in ¶¶ 1.2 through 1.11 of the Agreement, made in compliance with the Standard Specifications for each type of CD-Disc defined in ¶¶ 1.12 through 1.16 of the Agreement. For example, Option A is "CD-Audio Discs and/or CD-Audio Maxi Singles" defined in ¶¶ 1.2 and 1.3, respectively, made in compliance with the ¶¶ 1.12 and 1.13 Standard

5

Specifications, and Option C is "CD-ROM Discs mode 1" defined in ¶ 1.5, made in compliance with the ¶ 1.14 Standard Specifications.

28.     Cinram International Inc. selected all Licensed Products, namely, Options A through K, for itself and the companies to which the Agreement is extended by the Side Letter, including Cinram Inc. and Cinram Manufacturing Inc.

29.     Under ¶¶ 2.1 and 1.25 of the Agreement and ¶ 2 of the Side Letter, Philips granted to Cinram "a non-exclusive, non-transferable license under the Licensed Patents" (listed in the Annexes corresponding to the Options selected by Cinram International Inc.) "to manufacture Licensed Products" corresponding to Options A-K (as selected by Cinram International Inc.), "in accordance with the . . . Standard Specifications" set forth in ¶¶ 1.12 through 1.16 of the Agreement, within the United States and its territories and possessions and Canada, "and to sell or otherwise dispose of such Licensed Products so manufactured in all countries of the world."

30.     Under ¶ 5.2 of the Agreement and ¶ 2 of the Side Letter, Cinram promised to "pay to Philips a royalty for each CD-Disc sold or otherwise disposed of by Licensee, any of Licensee's Associated Companies [as defined in ¶ 1.24] or an agent of Licensee, in any country where at least one of the Licensed Patents essential to the type(s) of CD-Discs as selected by Licensee . . . exists."

31.     The '846 patent exists in the United States, and has existed at all times relevant to this action.

32.     With respect to the royalty required by the Agreement, Cinram agreed to pay Philips the "Standard Rate" of 3 cents (3¢) per relevant CD-Disc covered by this Complaint, as defined in ¶ 5.2 of the Agreement.

33.    With respect to CD-Discs sold on or after July 1, 2002, Philips permitted Cinram to pay the "Compliance Rate" of 1.75 cents (1.75¢) per relevant CD-Disc covered by this Complaint, also as defined in ¶ 5.2 of the Agreement, provided that Cinram meets the "Compliance Requirements" specified in ¶ 34 of this Complaint.

34.    To be eligible to pay the Compliance Rates under the Agreement, Cinram was required to be in full compliance with their obligations under the Agreement and Side Letter.

35.    Paragraph 5.2 of the Agreement further provides that "[i]n the event that Licensee fails to comply at any time with any of its obligations under this Agreement, the Standard Rates, as applicable, shall apply to Licensee's manufacture and sale of CD-Discs instead of the Compliance Rates, as applicable, with immediate effect from the first day of the reporting period to which the occurrence of non-compliance relates until such moment that Philips confirms in writing to Licensee that Licensee's non-compliance has been remedied in full."

36.    Paragraphs 5.3 and 5.10 of the Agreement (as modified by ¶ 9 of the Side Letter) require Cinram to submit quarterly "Royalty Reporting Forms" to Philips listing all CD-Discs that it manufactures and sells, and to keep complete and accurate books and records relating to Cinram's manufacture and sale or other disposal of CD-Discs.

### Facts Relating to Breach of Contract Claim

37.    Cinram selected Licensed Product Options A-K. To be Licensed Products, selected CD-Discs must be manufactured and sold in compliance with the corresponding Standard Specifications and the provisions of the Agreement, such sales must be reported to Philips, and royalties for the sale of such CD-Discs must be paid to Philips. For example, a CD-Audio Disc is defined by ¶ 1.2 of the Agreement to "mean a Disc [as defined in ¶ 1.1 of the Agreement] comprising audio information encoded in digital form, which is optically readable by a CD-

7

Audio Player [as defined in ¶ 1.18 of the Agreement] and which conforms to the CD-Audio Standard Specifications [as defined in ¶ 1.12 of the Agreement]." Paragraph 1.12 defines the CD-Audio Standard Specifications to "mean the specifications for the CD-Audio System [as defined in the second "Whereas" clause of the Agreement], including, if applicable, the Subcode/Control and Display System, Channels R . .W, chapter 5.8, the CD-TEXT mode, as made available, modified or extended from time to time."

38.     Under ¶ 2.1 of the Agreement, Cinram is licensed only to manufacture selected Licensed Products "**in accordance with the relevant CD Standard Specifications** and to sell or otherwise dispose of such Licensed Products **so manufactured** in all countries of the world." (Emphasis added.)

39.     Because the '846 patent exists in the United States, under ¶ 5.2 of the Agreement, Cinram must pay Philips either the Standard Rates or the Compliance Rates "for each CD-Disc sold or otherwise disposed of" by Cinram, its associated companies, or its agents in the U.S.

40.     Beginning in or about February 2005, Cinram began paying royalties under the Agreement for the Fourth Quarter of 2004, according to the Compliance Rates, for the manufacture and sale of CD-Audio Discs (1.75 cents (1.75¢) per disc), CD-Audio Max Single Discs (1.55 cents (1.55¢) per disc), and CD-ROM Discs (1.75 cents (1.75¢) per disc) in the United States.

41.     Cinram manufactures CD-Discs under the Agreement at two U.S. plants, Olyphant, PA ("Olyphant") and Richmond, IN ("Richmond"), and in Canada.

42.     Beginning in or about the beginning of the Second Quarter of 2005, Cinram ceased paying royalties for all CD-Discs made at its Olyphant plant and sold in the U.S.

8

43.     Beginning in or about the beginning of the Third Quarter of 2005, Cinram ceased paying royalties for all CD-Discs made at its Richmond plant and sold in the U.S.

44.     After the Quarters identified in ¶¶ 42-43 of this Complaint, Cinram has continued to make and sell the following CD-Discs in the U.S., without providing royalty reports or paying royalties to Philips:

    a. ·     CD-Discs made at its Olyphant plant, at least 500 million CD-Discs;

    b.     CD-Discs made at its Richmond plant, at least 320 million CD-Discs.

45.     Cinram has sold an unknown quantity of CD-Discs in the U.S. that Cinram manufactured in Canada, without providing royalty reports or paying royalties to Philips for such U.S. sales.

46.     The CD-Discs made and sold by Cinram after they stopped paying royalties to Philips have been and are available for purchase on the open market in the U.S. and in this district.

47.     Cinram does not contest that the CD-Discs made and/or sold in the U.S. by Cinram after they stopped paying royalties to Philips comply with the relevant Standard Specifications.

48.     Cinram has failed to submit quarterly "Royalty Reporting Forms" to Philips listing all CD-Discs that they manufacture and sell, and/or to keep complete and accurate books and records, relating to Cinram's manufacture and sale or other disposal of all CD-Discs in the U.S., as required by ¶¶ 5.3 and 5.10 of the Agreement (as modified by ¶ 9 of the Side Letter).

**Facts Relating to Patent Infringement Claim**

49.     The CD-Discs made and sold by Cinram in the U.S. without paying royalties to Philips fall within the claims of the '846 patent.

50.     Cinram's license to make and sell such CD-Discs in the U.S. is contingent upon Cinram's payment of royalties to Philips. Under ¶ 5 of the Side Letter, Philips agreed not to assert against Cinram claims of the Licensed Patents only for as long as Cinram remained in full compliance

with all material terms and conditions of the Agreement. As set forth in this Complaint, Cinram is in material breach of the Agreement.

51.    As set forth in this Complaint, Cinram is making and selling CD-Discs covered by the '846 patent in the U.S. without paying royalties to Philips.

52.    Because Cinram has not paid royalties to Philips and is in material breach of the Agreement, as set forth in this Complaint, the CD-Discs made and sold by Cinram since the breach began are not Licensed Products, and are not licensed, under the '846 patent.

53.    The John Doe Defendants are making and/or selling CD-Discs covered by the '846 patent in the U.S. without a license from Philips under the Licensed Patents, and/or without paying royalties to Philips.

### Count I
### Breach of Contract

54.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

55.    The Agreement and Side Letter are valid and subsisting agreements under New York law between Philips and Cinram. The Agreement and Side Letter are supported by adequate consideration. Neither Philips nor Cinram has terminated the Agreement or Side Letter.

56.    In ¶ 13.7 of the Agreement, Philips and Cinram agreed that New York law controls the construction of the Agreement.

57.    In ¶ 29 of the Side Letter, Cinram and Philips agreed to submit to the state or federal courts of New York any dispute related to the Agreement.

58.    Cinram has materially breached the Agreement and Side Letter by failing to pay royalties on their manufacture and sale of CD-Discs, as set forth in this Complaint.

59.    Cinram has materially breached the Agreement and Side Letter in other ways, the details of which are unknown at this time.

10

60.    In view of Cinram's breach of the Agreement and Side Letter, Philips is entitled to receive royalties for Cinram's manufacture and sale in the U.S. of CD-Discs after the Quarters identified in ¶¶ 42-43 at the Standard Rates (3 cents (3¢) per disc for CD-Audio Discs and CD-ROM Discs).

61.    Cinram has materially breached the Agreement and Side Letter by failing to provide accurate audit statements to Philips, failing to submit quarterly "Royalty Reporting Forms" to Philips listing all CD-Discs that they manufacture and sell, and/or failing to keep complete and accurate books and records relating to Cinram's manufacture and sale or other disposal of CD-Discs in the U.S., in breach of ¶¶ 5.2, 5.3, 5.5, and/or 5.10 of the Agreement.

62.    Under ¶ 5.7 of the Agreement, Philips is entitled to interest on all unpaid royalties owed to Philips by Cinram, accruing at the rate of 2% (two percent) per month, or the maximum amount permitted by applicable law, whichever is lower.

63.    Under ¶ 13.5 of the Agreement, Cinram agreed that neither Philips' failure nor delay in enforcing any provision of the Agreement shall constitute a waiver of such provision or of Philips' right to enforce any provision of the Agreement.

64.    Philips has suffered monetary and other damages, in an as-yet undetermined amount, as the direct and proximate result of Cinram's material breach of the Agreement and Side Letter.

## Count II
## Patent Infringement

65.    Plaintiff repeats and realleges each and every allegation set forth in this Complaint.

66.    In the alternative to Philips' breach of contract claim, Cinram have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, the '846 patent by practicing one or more claims of the '846 patent in their manufacture, use, offering for sale, sale,

11

and/or importation of products, and/or by inducing or contributing to the infringement of the '846 patent, under 35 U.S.C. § 271.

67.     The John Doe Defendants have infringed and are continuing to infringe, literally and/or under the doctrine of equivalents, the '846 patent by practicing one or more claims of the '846 patent in their manufacture, use, offering for sale, sale, and/or importation of products, and/or by inducing or contributing to the infringement of the '846 patent, under 35 U.S.C. § 271.

68.     The '846 patent is valid and subsisting and is entitled to a presumption of validity under 35 U.S.C. § 282.

69.     U.S. Philips Corporation is the assignee of all rights, title, and interest in and to the '846 patent and possesses all rights of recovery under the '846 patent.

70.     A Reexamination Request for the '846 patent was filed in the U.S. Patent and Trademark Office on December 8, 2004. Ex Parte Reexamination Certificate No. US 5,068,846 C1 (the "Reexamination Certificate"), confirming the patentability of claims 1 through 7 of the '846 patent, was issued by the U.S. Patent and Trademark Office on September 19, 2006. A true copy of the Reexamination Certificate is attached as **Exhibit D.**

71.     Cinram has had knowledge of the '846 patent at all times relevant to this action.

72.     Cinram's infringement of the '846 patent has been and continues to be willful, and therefore Philips is entitled to treble damages under 35 U.S.C. § 284.

73.     Philips has suffered monetary and other damages in an as-yet undetermined amount, and irreparable injury, as the direct and proximate result of Cinram's infringement of the '846 patent. Philips has no adequate remedy at law. Unless enjoined, Cinram will continue to infringe and to damage Philips irreparably.

12

### Prayer for Relief

Wherefore, Philips requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to a judgment and order as follows:

A. holding Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. jointly and severally liable for breach of contract;

B. In the alternative, holding Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. jointly and severally liable for patent infringement;

C. holding the John Doe Defendants jointly and severally liable for patent infringement;

D. directing Cinram to pay to Philips its actual damages for:

  a. Cinram's breach of contract; or

  b. in the alternative, Cinram's patent infringement, under 35 U.S.C. § 284;

E. directing the John Doe Defendants to pay to Philips its actual damages for patent infringement, under 35 U.S.C. § 284;

F. directing Cinram to pay unpaid royalties at the Standard Rates;

G. directing Cinram and the John Doe Defendants to pay Philips' other damages, including but not limited to direct, consequential, indirect, compensatory, and punitive damages;

H. directing Cinram to pay interest on all unpaid royalties;

I. holding that Cinram's and the John Doe Defendants' patent infringement has been and continues to be willful, and trebling Philips' damages;

J. enjoining Cinram and the John Doe Defendants from making, having made, using, importing, or selling CD-Discs under 35 U.S.C. § 283;

13

K.    directing Cinram and the John Doe Defendants to pay Philips' attorneys' fees and costs under 35 U.S.C. § 285;

L.    directing Cinram and the John Doe Defendants to pay prejudgment and post-judgment interest;

M.    providing such other and further relief as this Court deems just and appropriate.

### Jury Trial

Philips demands a jury trial on all claims set forth in this Complaint.

Date:   January 30, 2008                                    Respectfully submitted,

                                                            Edward D. Johnson
                                                            MAYER BROWN LLP
                                                            Two Palo Alto Square, Suite 300
                                                            3000 El Camino Real
                                                            Palo Alto, California 94306-2112
                                                            Tel: (650) 331-2000
                                                            Fax: (650) 331-2060

                                                            Vince P. Kovalick
                                                            John F. Hornick
                                                            Samuel C. Bass
                                                            FINNEGAN, HENDERSON, FARABOW,
                                                                GARRETT & DUNNER, L.L.P.
                                                            901 New York Avenue, N.W.
                                                            Washington, D.C. 20001
                                                            Tel: (202) 408-4000
                                                            Fax: (202) 408-4400

14

Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2380
Fax: (212) 849-5830

*Attorneys for Plaintiffs*
*Koninklijke Philips Electronics N.V. and*
*U.S. Philips Corporation*

15

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : | |
| Plaintiffs, | : : | Civil Action No.08-cv-0515 (CLB)(MDF) |
| v. | : | ECF Case |
| CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does No. 1 through 100, | : : : : | **AMENDED ANSWER AND COUNTERCLAIM** |
| Defendants and Counterclaim Plaintiffs, | : : | |
| v. | : : | |
| PHILIPS INTELLECTUAL PROPERTY AND STANDARDS, | : : : | |
| Counterclaim Defendants. | : | |

Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively referred to as "Cinram"), hereby respond to the First Amended Complaint by Koninklijke Philips Electronics N.V. ("Philips N.V.") and U.S. Philips Corporation ("U.S. Philips") (collectively referred to as "Philips") by and through their counsel as follows:

1.      The allegations contained in Paragraph 1 appear to characterize the nature of this case.   To the extent a response is required, Cinram denies the allegations contained in Paragraph 1.

### THE PARTIES

2.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2, and, therefore, denies them.

1.

3.    Cinram admits the allegations contained in Paragraph 3.

4.    Cinram admits the allegations contained in Paragraph 4.

5.    Cinram admits the allegations contained in Paragraph 5.

6.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6, and, therefore, denies them.

## JURISDICTION AND VENUE

7.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7, and, therefore, denies them.

8.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, and, therefore, denies them.

9.    The allegations contained in Paragraph 9 are legal conclusions to which no response is required. To the extent a response is required, Cinram denies the allegations contained in Paragraph 9.

10.    The allegations contained in Paragraph 10 are legal conclusions to which no response is required. To the extent a response is required, Cinram denies the allegations contained in Paragraph 10.

11.    Cinram denies the allegations contained in Paragraph 11.

## FACTS RELATED TO PHILIPS

12.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and, therefore, denies them.

13.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and, therefore, denies them.

2

14.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 and, therefore, denies them.

15.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and, therefore, denies them.

16.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and, therefore, denies them.

17.    Cinram admits Exhibit A to the Amended Complaint is a purported copy of the '846 patent but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 17 and, therefore, denies them, and specifically denies that the '846 was duly and legally issued after full and fair examination or that it is valid and subsisting.

18.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and, therefore, denies them.

## FACTS RELATED TO CINRAM

19.    Cinram admits that Philips N.V. and Cinram are parties to a license agreement which bears the title "CD Disc Patent License Agreement" ("License Agreement") and that Exhibit B to the Amended Complaint purports to be a copy of that License Agreement, which states that it was entered into on December 1, 2004, but denies the remaining allegations contained in numbered Paragraph 19.

20.    Cinram admits that Philips N.V. and Cinram are parties to a "Side Letter" and that Exhibit C to the Complaint purports to be a copy of that Side Letter, which states that it has "an effective date of December 1, 2004" and that it was signed by Cinram on December 22, 2004, but denies the remaining allegations contained in numbered Paragraph 20

3

21.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 21.

22.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 22.

23.     Cinram admits that the '846 patent is and was listed in Annex A1 but denies the remaining allegations contained in Paragraph 23.

24.     Cinram admits that ¶1.23 of the Agreement refers to Philips N.V. commissioning an independent expert to review the patents listed in Annexes A1 through A8 to determine whether each patent is "essential", but denies the remaining allegations contained in Paragraph 24.

25.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 25.

26.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and, therefore, denies them.

27.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 27.

28.     Cinram denies Philips' characterization of the Agreement and the remaining allegations contained in Paragraph 28.

29.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 29.

30.     Cinram admits that the agreement contains the quoted language but denies the remaining allegations contained in Paragraph 30.

31.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and, therefore, denies them.

32.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 32.

33.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 33.

34.     The allegations contained in Paragraph 34 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 34.

35.     Cinram admits that the agreement contains the quoted language but denies the remaining allegations contained in Paragraph 35.

36.     The allegations contained in Paragraph 36 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 36.

### FACTS RELATING TO BREACH OF CONTRACT CLAIM

37.     Cinram admits that the Agreement contains the quoted language but denies Philips' characterization of the Agreement and the remaining allegations contained in Paragraph 37.

38.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 38.

39.     Cinram denies the allegations contained in Paragraph 39.

40.     Cinram admits that it has paid royalties for CD-Discs but denies the remaining allegations contained in Paragraph 40.

5

41.     Cinram admits that it manufactures CD-Discs at two U.S. plants, Olyphant, PA ("Olyphant") and Richmond, IN ("Richmond"), and in Canada, but denies the remaining allegations contained in Paragraph 41.

42.     Cinram denies the allegations contained in Paragraph 42.

43.     Cinram denies the allegations contained in Paragraph 43.

44.     Cinram denies the allegations contained in Paragraph 44.

45.     Cinram denies the allegations contained in Paragraph 45.

46.     Cinram admits that CD-Discs it makes are sold in the United States but denies the remaining allegations contained in Paragraph 46.

47.     Cinram denies the allegations contained in Paragraph 47.

48.     Cinram denies the allegations contained in Paragraph 48.

### FACTS RELATING TO PATENT INFRINGEMENT CLAIM

49.     Cinram denies the allegations contained in Paragraph 49.

50.     The allegations contained in Paragraph 50 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 50.

51.     Cinram denies the allegations contained in Paragraph 51.

52.     Cinram denies the allegations contained in Paragraph 52.

53.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53, and, therefore, denies them.

### COUNT I
### BREACH OF CONTRACT

54.     Cinram repeats and reasserts all responses to Paragraphs 1 through 53 as if they were stated in full herein.

55.     Cinram admits that it has not terminated the Agreement and Side Letter with Philips N.V. but denies the remaining allegations contained in Paragraph 55.

56.     The allegations contained in Paragraph 56 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 56.

57.     The allegations contained in Paragraph 57 are legal conclusions to which no response is required.  To the extent a response is required, Cinram admits that the Agreement contains language to the effect that Philips is bound to seek resolution of any disputes related to the Agreement in the Courts of New York but denies the remaining allegations contained in Paragraph 57.

58.     Cinram denies the allegations contained in Paragraph 58.

59.     Cinram denies the allegations contained in Paragraph 59.

60.     Cinram denies the allegations contained in Paragraph 60.

61.     Cinram denies the allegations contained in Paragraph 61.

62.     Cinram lacks denies Philips' characterization of the Agreement and denies the remaining allegations contained in Paragraph 62.

63.     The allegations contained in Paragraph 63 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies Philips' characterization of the Agreement and denies the remaining allegations contained in Paragraph 63.

64.     Cinram denies the allegations contained in Paragraph 64.

## COUNT II
## PATENT INFRINGEMENT

65.    Cinram repeats and reasserts all responses to Paragraphs 1 through 64 as if they were stated in full herein.

66.    Cinram denies the allegations contained in Paragraph 66.

67.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67, and, therefore denies them.

68.    Cinram denies the allegations contained in Paragraph 68.

69.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69, and, therefore denies them.

70.    Cinram admits that records show that a Reexamination Request for the '846 patent was filed in the Patent Office on December 8, 2004 and that Exhibit D to the Amended Complaint purports to be a copy of a Reexamination Certificate but denies the allegations contained in Paragraph 70.

71.    Cinram admits that the '846 patent has been listed in Annex 1 of the Agreement but denies the remaining allegations contained in Paragraph 71.

72.    Cinram denies the allegations contained in Paragraph 72.

73.    Cinram denies the allegations contained in Paragraph 73.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Cinram has not directly or contributorily infringed any claim of the patent-in-suit, nor has it induced others to infringe the patent-in-suit.

## SECOND AFFIRMATIVE DEFENSE

The patent-in-suit is unenforceable due to Philips' patent misuse, prosecution laches, and inequitable conduct, namely, Philips' intentional failure to timely inform the Patent Examiner of material prior art and other information known to Philips, including by Philips abandoning an allowed patent application in favor of a continuing patent application with the same claims, and by Philips submitting prior art in a reexamination proceeding in a manner ensuring that the Patent Office would not consider it on the merits.

## THIRD AFFIRMATIVE DEFENSE

The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability.

## FOURTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by waiver.

## EIGHTH AFFIRMATIVE DEFENSE

If plaintiffs suffered damages as alleged, plaintiffs failed to mitigate such damages.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff U.S. Philips Corporation lacks standing to assert breach of contract claims because it is not the licensing entity, and plaintiff Koninklijke Philips Electronics N.V. lacks

standing to assert patent infringement or contract claims under the '846 patent because it does not own the licensed patent.

### TENTH AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim on which relief may be granted.

### ELEVENTH AFFIRMATIVE DEFENSE

Philips is estopped to construe the claims to of the '846 Patent to cover any products made, used, sold, offered for sale or imported by Cinram because of statements, amendments, or actions taken during the prosecution of the '846 Patent.

### TWELVTH AFFIRMATIVE DEFENSE

The claims of the '846 Patent cannot be construed to cover any product made, used, sold, offered for sale or imported by Cinram and avoid the prior art.

### THIRTEENTH AFFIRMATIVE DEFENSE

Philips is not entitled to an injunction or any other equitable remedy because it has an adequate remedy at law.

### COUNTERCLAIMS

Cinram counterclaims against Philips and Philips Intellectual Property Standards ("Philips IPS") as follows:

### EXISTENCE OF ACTUAL CONTROVERSY

1.    These counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§2201(a) and 2202.

2.    An actual justiciable controversy, as set forth in this counterclaim, exists between Cinram and Philips concerning the validity, enforceability and infringement of the patent-in-suit.

10

## THE PARTIES

3.    Plaintiff-in-Counterclaim, Cinram International Inc. is a corporation organized under the laws of Canada with a place of business at 2255 Markham Road, Scarborough, Ontario, Canada.

4.    Plaintiff-in-Counterclaim, Cinram Inc. is a corporation organized under the laws of Delaware with a place of business at 1600 Rich Road, Richmond, Indiana.

5.    Plaintiff-in-Counterclaim, Cinram Manufacturing Inc. is a corporation organized under the laws of Delaware with a place of business at 1400 East Lackawanna Ave., Olyphant, Pennsylvania.  Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. are collectively referred to as "Cinram".

6.    Upon information and belief, Defendant-in-Counterclaim Koninklijke Philips Electronics N.V. is a corporation organized under the laws of The Netherlands with its place of business in Amsterdam, the Netherlands.

7.    Upon information and belief, Defendant-in-Counterclaim U.S. Philips Corporation is a corporation organized under the laws of Delaware with places of business at 1251 Avenue of the Americas, New York, New York, and at 345 Scarborough Rd., Briarcliff Manor, New York.  Defendants-in-Counterclaim Koninklijke Philips Electronics N.V. and U.S. Philips Corporation are collectively referred to as "Philips".

8.    Upon information and belief, Defendant-in-Counterclaim Philips Intellectual Property Standards has places of business in Eindhoven, the Netherlands and 345 Scarborough Rd., Briarcliff Manor, New York.

11

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over Cinram, Philips and Philips IPS, and over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338, 2201 and 2202 and under the doctrines of pendent and supplemental jurisdiction.

10.    By filing its Complaint, Philips has consented to the personal jurisdiction of this Court.

11.    Venue is proper in this Court under 28 U.S.C. §§1391(b) and 1400(b).

## COUNT I
### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

12.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

13.    Cinram has not infringed, nor does it now infringe, any claim of the patent-in-suit.

14.    Cinram has not induced, nor does it now induce, infringement of any claim of the patent-in-suit.

15.    Cinram has not contributorily infringed, nor does it now contributorily infringe, any claim of the patent-in-suit.

16.    Cinram is entitled to a declaratory judgment that it has not directly, contributorily, or by inducement, infringed any claim of the patent-in-suit.

## COUNT II
### (DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY)

17.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

18.    The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability.

19.    On information and belief, Philips repeatedly delayed issuance of the '846 patent by unreasonable and unexplained delays in the prosecution of the chain of continuing patent applications commencing with the initial filing in 1973 culminating in the issuance of the patent in 1991 and an Ex Parte Reexamination Certificate in 2006, making the patent unenforceable because of prosecution laches.

20.    On information and belief, Philips unreasonably delayed submitting prior art to the Patent Examiner, or withheld prior art from the Patent Examiner, making it impractical or impossible for the Patent Examiner to fully consider such prior art and thereby rendering the '846 patent unenforceable.

21.    Cinram is entitled to a declaratory judgment that the patent-in-suit is invalid.

## COUNT III
### (DECLARATORY JUDGMENT OF PATENT MISUSE)

22.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

23.    On information and belief, Philips imposed Standards Specifications as a *de facto* requirement in the CD industry for the manufacture of CD-Discs.

24.    Philips declared that the '846 patent was "essential" for compliance with the Standard Specifications by all CD-Discs.

25.    The '846 patent is not "essential" for manufacturing CD-Discs that meet the Standard Specifications.

26.    Manufacturing innovations made by Cinram make it possible to manufacture CD-Discs that meet the Standard Specifications without use of the '846 patent

27.    Philips has misused its patent rights by claiming that the use of the '846 patent is necessary for compliance with the Standard Specifications when in fact it is not.

13

28.    The '846 patent is unenforceable based on Philips' misuse of this patent, and Cinram is entitled to a declaration as such.

## COUNT IV
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)

29.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

30.    On January 31, 2008, Philips sent a letter to Cinram customers for CD-Discs, misleadingly alleging that a royalty was owed on the customers' CDs because they were purchased from manufacturers who do not pay Philips CD Disc royalties. However, Cinram does pay Philips CD Disc royalties when they are required under other patents pursuant to the License Agreement. Further, Philips misleadingly alleged in the same letter that the CD-Discs that the customer had purchased infringe a patent that is not in suit and, according to material published by Philips, does not apply to CD-Discs of the type that the customer had purchased.

31.    On February 13, 2008, Philips sent a letter to another, indirect customer of Cinram, misleadingly alleging that all of the CDs purchased by the customer went unreported and unpaid, when in fact CDs covered by existent patents were both reported and paid for. In addition, Philips improperly attempted to divert the customer to another supplier of CD Discs based on the allegations made in its February 13 letter.

32.    On information and belief, Philips made the statements in its January 31 and February 13, 2008 letters knowing that theses statements were false and misleading. On information and belief, Philips made these statements with the sole purpose of harming Cinram. As a direct result of Philips' knowingly false and misleading allegations, Cinram's business relationship with its customers has been harmed causing Cinram damages of a currently unknown amount.

14

33.     Philips has tortiously interfered with Cinram's business relationships, and Cinram

is entitled to a declaration as such, along with monetary and injunctive relief.

**COUNT V**
**(TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)**

34.     Cinram repeats and reasserts all allegations in the paragraphs above as if they

were stated in full herein.

35.     On information and belief, Philips IPS is involved in the formulation of formal

standards and regulations as well as the licensing of intellectual property.  Philips IPS maintains

a website with a searchable database of manufacturers who are licensed to make CDs.

36.     On information and belief, Cinram's existing and prospective customers

periodically check Philips IPS' database of licensed manufacturers to confirm that Cinram has a

subsisting "joint" patent license from Philips.

37.     As of at least April 3, 2008, Philips and Philips IPS removed Cinram from the

database of licensed CD manufacturers for the U.S. Territory even though the CD License

Agreement between Philips N.V. and Cinram is subsisting and has not been canceled by Philips

nor by Cinram, as stated in ¶55 of Philips' Amended Complaint.

38.     On information and belief, Philips and Philips IPS publicly asserted that Cinram

is not a licensed manufacturer of CDs in the U.S., by removing Cinram from the list of licensed

CD manufacturers maintained on Philips IPS' website, knowing that this assertion is false and

misleading.  On information and belief, Philips and Philips IPS made this assertion with the sole

purpose of harming Cinram.  As a direct result of Philips and Philips IPS' knowingly false and

misleading allegations, Cinram's business relationship with its customers has been harmed,

causing Cinram damages of a currently unknown amount.

15

39.    Philips and Philips IPS have tortiously interfered with Cinram's business

relationships, and Cinram is entitled to a declaration as such, along with monetary and injunctive

relief.

## EXCEPTIONAL CASE

40.    This is an exceptional case entitling Cinram to an award of its attorneys' fees

incurred in connection with defending and prosecuting this action pursuant to 35 U.S.C.

§285, as a result of, *inter alia*, Philips' assertion of the '846 patent against Cinram with

the knowledge that the '846 patent is not infringed and/or is invalid.

## REQUEST FOR RELIEF

WHEREFORE, Cinram respectfully requests that:

1.    The First Amended Complaint be dismissed with prejudice as to Cinram
      and Cinram be awarded its costs for this action;

2.    Judgment be entered declaring that the patent-in-suit is not infringed by
      Cinram and is invalid and unenforceable;

3.    Judgment be entered declaring that Cinram has not contributorily
      infringed the patent-in-suit, and has not induced others to infringe the
      patent-in-suit;

4.    Judgment be entered declaring that Philips has tortiously interfered with
      Cinram's business relationships and Cinram be awarded damages as well
      as an injunction prohibiting Philips from sending further false and
      misleading communications to Cinram's customers.

5.   Judgment be entered declaring that Philips and Philips IPS have tortiously interfered with Cinram's business relationships and Cinram be awarded damages as well as an injunction prohibiting Philips and Philips IPS from falsely stating on its website that Cinram is not a licensed manufacturer of CDs in the U.S..

6.   Judgment be entered declaring this to be an exceptional case under 35 U.S.C. §285, and Cinram be awarded its attorneys' fees and expert fees incurred for defending this action and prosecuting its counterclaim; and

7.   Cinram be granted such other relief as the Court deems just and proper.


**JURY TRIAL**

Cinram requests a jury trial on all its claims.


Dated: April 9, 2008                    Respectfully submitted,


                                        S/ Gregory J. Carbo
                                        Ivan Kavrukov
                                        William E. Pelton
                                        Tonia A. Sayour
                                        Gregory J. Carbo
                                        COOPER & DUNHAM LLP
                                        1185 Avenue of the Americas
                                        New York, New York 10036
                                        Tel: (212) 278-0400
                                        Fax: (212) 391-7550
                                        ikavrukov@cooperdunham.com
                                        gcarbo@cooperdunham.com

                                        Attorneys for Defendants
                                        Cinram International Inc., Cinram Inc.,
                                        And Cinram Manufacturing Inc.

17

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of April, 2008, I electronically filed the foregoing

AMENDED ANSWER AND COUNTERCLAIM with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to the following:

> Edward D. Johnson
> MAYER BROWN LLP
> Two Palo Alto Square, Suite 300
> 3000 El Camino Real
> Palo Alto, California 94306-2112
> wjohnson@mayerbrown.com
>
> Vince P. Kovalick
> John F. Hornick
> Samuel C. Bass
> FINNEGAN, HENDERSON, FARABOW,
>   GARRETT & DUNNER, L.L.P.
> 901 New York Avenue, N.W.
> Washington, D.C. 20001
> vince.kovalick@finnegan.com
> John.Hornick@finnegan.com
> Samuel.Bass@finnegan.com
>
> Christopher J. Houpt
> MAYER BROWN LLP
> 1675 Broadway
> New York, New York 10019
> choupt@mayerbrown.com

> S/ Gregory J. Carbo
> Gregory J. Carbo

EXHIBIT 5

-----Original Message-----
**From:** Gregory Carbo
**Sent:** Friday, April 11, 2008 5:20 PM
**To:** 'John.Hornick@finnegan.com'
**Cc:** 'Samuel.Bass@finnegan.com'; 'vince.kovalick@finnegan.com'; Ivan S. Kavrukov; Maria Arap
**Subject:** Philips cases

John,

Please let me know if you will you accept service on behalf of Philips Intellectual Property and Standards who is a counterclaim defendant in the SDNY action.

Separately, we understand from our earlier inquiry and your response that Philips will not agree to transfer the Texas cases to the Southern District of New York.  Please let us know if this is no longer the case.

Sincerely,
Gregory Carbo
Cooper & Dunham, LLP
1185 Avenue of the Americas
New York, NY 10036
Tel # (212) 278-0526
Fax # (212) 391-0525
Email:  gcarbo@cooperdunham.com

EXHIBIT 6

-----Original Message-----
**From:** Hornick, John [mailto:John.Hornick@finnegan.com]
**Sent:** Tuesday, April 15, 2008 7:14 PM
**To:** Gregory Carbo
**Cc:** Bass, Samuel; Kovalick, Vince; Ivan S. Kavrukov; Maria Arap
**Subject:** RE: Philips cases

Dear Greg:

We cannot accept service for Philips Intellectual Property Standards because it is not a legal entity with an independent existence. Accordingly, Philips asks that Cinram voluntarily drop Philips Intellectual Property Standards from the Amended Counterclaims. If not, Philips will move to dismiss.

We will address your question about the Texas cases in a separate email soon.

Sincerely,

John

EXHIBIT 7

-----Original Message-----
**From:** Gregory Carbo
**Sent:** Tuesday, April 15, 2008 7:46 PM
**To:** 'Hornick, John'
**Cc:** Bass, Samuel; Kovalick, Vince; Ivan S. Kavrukov; Aileen Aurich
**Subject:** RE: Philips cases

Dear John:

We will voluntarily drop Philips Intellectual Property Standards from the Amended Counterclaims provided that you tell us which Philips entity it is a part of.  As you know, there also several Defendants named in the Texas suits who likewise do not have any independent existence.  We ask that Philips voluntarily drop those defendants from the Texas complaints.

Separately, all of the Defendants whom we represent in the related Texas actions filed a Motion For Transfer of Venue today, requesting that Judge Crone transfer the Texas cases to the S.D.N.Y.  As the resolution of the Motion For Transfer may obviate the need to move forward with these cases in Texas, these Defendants ask that Philips agree to extend the deadline to file an Answer to Philips' complaints by 30 days so that the Court will first have the opportunity to rule on the Motion For Transfer.  This would make the Answer due on May 21, 2008 for these Defendants.  Please let me know if Philips agrees to this extension.

Sincerely,
Greg

EXHIBIT 8

-----Original Message-----
**From:** Ivan S. Kavrukov
**Sent:** Friday, April 18, 2008 1:21 PM
**To:** 'Hornick, John'; Gregory Carbo
**Cc:** Bass, Samuel; Kovalick, Vince; Aileen Aurich; Spencer, Jennifer
**Subject:** RE: Philips cases

Dear John:

I'm responding to your email of last night to Greg Carbo, copied to me.

## 1. Dismissal of Philips IP Standards:

Based on your representation that Philips IP Standards is not a corporate entity, we will dismiss it, as Greg Carbo emailed you on April 15, 2008.

The discovery we have served will in due time disclose the place of Philips IP Standards in the corporate structure, but we again ask you to tell us now what corporate entity encompasses Philips IP Standards.

## 2. Adding principals and customers as defendants:

The defendants that we represent would oppose the addition of individuals and customers as defendants.  We see no justifiable need or reason for such additions.

## 3. Due date for answers in the Texas cases:

Thank you for agreeing to extend the due date to respond to the Texas complaints.

We understand that there is a special procedure in Beaumont for stipulated extensions and have asked our local counsel today to work with yours on following it (and hope you have alerted your local counsel).

## 4. Time extension for document responses in SDNY case:

Attached is a proposed stipulation extending each side's time by two weeks, signed for defendants.  Please sign for plaintiffs and return by email.

We appreciate your undertaking to produce the Rubenstein-related documents as quickly as possible.  Please specify a date by which plaintiffs will produce the documents related to the assessment whether the '846 patent was "essential."  This should not be a large volume.

## 5. Transfer of the Texas cases to the SDNY:

We appreciate your consideration of transfer of the Texas cases to the SDNY and would welcome plaintiffs' consent.  Today we learned from counsel for Music City that he would

support transfer.  We understand that Eva-Tone has not been served; perhaps you know its position on transfer.

We think a conference with Judge Brieant at this time would be premature.  We would be asking Judge Brieant for advisory decisions on an issue that is not before him.  Moreover, while we believe that Judge Crone should rule for transfer, particularly if the parties consent, it still is her decision to make, not ours and not Judge Brieant's.

Regarding the schedule in the NY case, we would work with you to agree on an expeditions schedule should the transfer take place, but think it would be unrealistic to expect the exact same schedule with a dozen more defendants in the case.  We accepted service of the NY complaint on March 6 but the Texas complaints had not all been served until we accepted service on March 31.  The NY case is moving along but already there is a two-week slippage to respond to document requests and possible further delays should plaintiffs engage in rolling production.

We suggest that if plaintiffs consent to transfer we both try to get an indication ASAP that Judge Crone would transfer and then promptly work on a proposed schedule and seek a conference with Judge Brieant.

Ivan Kavrukov
Cooper & Dunham LLP
1185 Avenue of the Americas, 23rd Floor
New York, New York  10036
Direct tel. (212)278-0432
Direct Fax  (212)391-7550
Mobile     (917)945-0121

EXHIBIT 9

-----Original Message-----
**From:** Gregory Carbo
**Sent:** Friday, April 18, 2008 3:50 PM
**To:** 'John.Hornick@finnegan.com'; 'Samuel.Bass@finnegan.com'; 'vince.kovalick@finnegan.com'
**Cc:** Ivan S. Kavrukov; Aileen Aurich; Spencer, Jennifer
**Subject:** Philips v. Cinram, et al.

Further to your April 17th email to me and Ivan Kavrukov's response thereto, we have agreed to dismiss the suit against Philips IP Standards as it is not a corporate entity.  However, to drop Philips IP Standards, we need to amend our Answer and Counterclaim to reflect this change. To that end, please let me know if Cinram has Philips' consent pursuant to Rule 15(a)(2) to amend its answer.

Sincerely,
Gregory Carbo
Cooper & Dunham, LLP
1185 Avenue of the Americas
New York, NY 10036
Tel # (212) 278-0526
Fax # (212) 391-0525
Email:  gcarbo@cooperdunham.com

EXHIBIT 10

-----Original Message-----
**From:** Gregory Carbo
**Sent:** Wednesday, April 23, 2008 4:44 PM
**To:** 'Hornick, John'; 'Samuel.Bass@finnegan.com'; 'vince.kovalick@finnegan.com'; Spencer, Jennifer
**Cc:** Ivan S. Kavrukov; Tonia Sayour; Aileen Aurich
**Subject:** RE: Philips v. Cinram, et al.

Dear John:

Attached please find Cinram's proposed Second Amended Answer and Counterclaim which does not mention Philips Intellectual Property Standards.  I apologize for the confusion – I have been out of the office on jury duty the past two days and believe I inadvertently directed Tonia to an earlier draft (mentioning Philips IPS) which she then forwarded to you.

As for your concerns regarding Philips' Answer, Rule 15(a)(3), would provide Philips an additional ten days to respond to Cinram's Second Amended Answer.  As Cinram is only seeking to amend several paragraphs in its counterclaims, which we have already disclosed to you, we do not believe that Philips would have a problem answering in a timely manner.  Philips could of course answer in less than ten days if it is concerned with avoiding any potential delays.

Best regards,
Greg

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | **DRAFT** |
| KONINKLIJKE PHILIPS ELECTRONICS | : | |
| N.V. and U.S. PHILIPS CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.08-cv-0515 |
| | : | (CLB)(MDF) |
| v. | : | ECF Case |
| | : | |
| CINRAM INTERNATIONAL INC., | : | **SECOND AMENDED** |
| CINRAM INC., CINRAM | : | **ANSWER AND** |
| MANUFACTURING INC., and John Does | : | **COUNTERCLAIM** |
| No. 1 through 100, | : | |
| | : | |
| Defendants and | : | |
| Counterclaim Plaintiffs. | : | |

Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively referred to as "Cinram"), hereby respond to the First Amended Complaint by Koninklijke Philips Electronics N.V. ("Philips N.V.") and U.S. Philips Corporation ("U.S. Philips") (collectively referred to as "Philips") by and through their counsel as follows:

1.      The allegations contained in Paragraph 1 appear to characterize the nature of this case.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 1.

## THE PARTIES

2.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2, and, therefore, denies them.

3.      Cinram admits the allegations contained in Paragraph 3.

4.      Cinram admits the allegations contained in Paragraph 4.

5.      Cinram admits the allegations contained in Paragraph 5.

6.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6, and, therefore, denies them.

## JURISDICTION AND VENUE

7.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7, and, therefore, denies them.

8.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, and, therefore, denies them.

9.      The allegations contained in Paragraph 9 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 9.

10.      The allegations contained in Paragraph 10 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 10.

11.      Cinram denies the allegations contained in Paragraph 11.

## FACTS RELATED TO PHILIPS

12.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and, therefore, denies them.

13.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and, therefore, denies them.

14.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 and, therefore, denies them.

15.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and, therefore, denies them.

16.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and, therefore, denies them.

17.     Cinram admits Exhibit A to the Amended Complaint is a purported copy of the '846 patent but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 17 and, therefore, denies them, and specifically denies that the '846 was duly and legally issued after full and fair examination or that it is valid and subsisting.

18.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and, therefore, denies them.

## FACTS RELATED TO CINRAM

19.     Cinram admits that Philips N.V. and Cinram are parties to a license agreement which bears the title "CD Disc Patent License Agreement" ("License Agreement") and that Exhibit B to the Amended Complaint purports to be a copy of that License Agreement, which states that it was entered into on December 1, 2004, but denies the remaining allegations contained in numbered Paragraph 19.

20.     Cinram admits that Philips N.V. and Cinram are parties to a "Side Letter" and that Exhibit C to the Complaint purports to be a copy of that Side Letter, which states that it has "an effective date of December 1, 2004" and that it was signed by Cinram on December 22, 2004, but denies the remaining allegations contained in numbered Paragraph 20

21.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 21.

22.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 22.

23.     Cinram admits that the '846 patent is and was listed in Annex A1 but denies the remaining allegations contained in Paragraph 23.

24.     Cinram admits that ¶1.23 of the Agreement refers to Philips N.V. commissioning an independent expert to review the patents listed in Annexes A1 through A8 to determine whether each patent is "essential", but denies the remaining allegations contained in Paragraph 24.

25.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 25.

26.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and, therefore, denies them.

27.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 27.

28.     Cinram denies Philips' characterization of the Agreement and the remaining allegations contained in Paragraph 28.

29.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 29.

30.     Cinram admits that the agreement contains the quoted language but denies the remaining allegations contained in Paragraph 30.

31.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and, therefore, denies them.

32.     Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 32.

33.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 33.

34.    The allegations contained in Paragraph 34 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 34.

35.    Cinram admits that the agreement contains the quoted language but denies the remaining allegations contained in Paragraph 35.

36.    The allegations contained in Paragraph 36 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 36.

## FACTS RELATING TO BREACH OF CONTRACT CLAIM

37.    Cinram admits that the Agreement contains the quoted language but denies Philips' characterization of the Agreement and the remaining allegations contained in Paragraph 37.

38.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 38.

39.    Cinram denies the allegations contained in Paragraph 39.

40.    Cinram admits that it has paid royalties for CD-Discs but denies the remaining allegations contained in Paragraph 40.

41.    Cinram admits that it manufactures CD-Discs at two U.S. plants, Olyphant, PA ("Olyphant") and Richmond, IN ("Richmond"), and in Canada, but denies the remaining allegations contained in Paragraph 41.

42.    Cinram denies the allegations contained in Paragraph 42.

43.    Cinram denies the allegations contained in Paragraph 43.

44.    Cinram denies the allegations contained in Paragraph 44.

45.    Cinram denies the allegations contained in Paragraph 45.

46.    Cinram admits that CD-Discs it makes are sold in the United States but denies the remaining allegations contained in Paragraph 46.

47.    Cinram denies the allegations contained in Paragraph 47.

48.    Cinram denies the allegations contained in Paragraph 48.

## FACTS RELATING TO PATENT INFRINGEMENT CLAIM

49.    Cinram denies the allegations contained in Paragraph 49.

50.    The allegations contained in Paragraph 50 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 50.

51.    Cinram denies the allegations contained in Paragraph 51.

52.    Cinram denies the allegations contained in Paragraph 52.

53.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53, and, therefore, denies them.

## COUNT I
## BREACH OF CONTRACT

54.    Cinram repeats and reasserts all responses to Paragraphs 1 through 53 as if they were stated in full herein.

55.    Cinram admits that it has not terminated the Agreement and Side Letter with Philips N.V. but denies the remaining allegations contained in Paragraph 55.

56.     The allegations contained in Paragraph 56 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 56.

57.     The allegations contained in Paragraph 57 are legal conclusions to which no response is required.  To the extent a response is required, Cinram admits that the Agreement contains language to the effect that Philips is bound to seek resolution of any disputes related to the Agreement in the Courts of New York but denies the remaining allegations contained in Paragraph 57.

58.     Cinram denies the allegations contained in Paragraph 58.

59.     Cinram denies the allegations contained in Paragraph 59.

60.     Cinram denies the allegations contained in Paragraph 60.

61.     Cinram denies the allegations contained in Paragraph 61.

62.     Cinram lacks denies Philips' characterization of the Agreement and denies the remaining allegations contained in Paragraph 62.

63.     The allegations contained in Paragraph 63 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies Philips' characterization of the Agreement and denies the remaining allegations contained in Paragraph 63.

64.     Cinram denies the allegations contained in Paragraph 64.

## COUNT II
## PATENT INFRINGEMENT

65.     Cinram repeats and reasserts all responses to Paragraphs 1 through 64 as if they were stated in full herein.

66.     Cinram denies the allegations contained in Paragraph 66.

67.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67, and, therefore denies them.

68.    Cinram denies the allegations contained in Paragraph 68.

69.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69, and, therefore denies them.

70.    Cinram admits that records show that a Reexamination Request for the '846 patent was filed in the Patent Office on December 8, 2004 and that Exhibit D to the Amended Complaint purports to be a copy of a Reexamination Certificate but denies the allegations contained in Paragraph 70.

71.    Cinram admits that the '846 patent has been listed in Annex 1 of the Agreement but denies the remaining allegations contained in Paragraph 71.

72.    Cinram denies the allegations contained in Paragraph 72.

73.    Cinram denies the allegations contained in Paragraph 73.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Cinram has not directly or contributorily infringed any claim of the patent-in-suit, nor has it induced others to infringe the patent-in-suit.

## SECOND AFFIRMATIVE DEFENSE

The patent-in-suit is unenforceable due to Philips' patent misuse, prosecution laches, and inequitable conduct, namely, Philips' intentional failure to timely inform the Patent Examiner of material prior art and other information known to Philips, including by Philips abandoning an allowed patent application in favor of a continuing patent application with the same claims, and

by Philips submitting prior art in a reexamination proceeding in a manner ensuring that the Patent Office would not consider it on the merits.

### THIRD AFFIRMATIVE DEFENSE

The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability.

### FOURTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by waiver.

### EIGHTH AFFIRMATIVE DEFENSE

If plaintiffs suffered damages as alleged, plaintiffs failed to mitigate such damages.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff U.S. Philips Corporation lacks standing to assert breach of contract claims because it is not the licensing entity, and plaintiff Koninklijke Philips Electronics N.V. lacks standing to assert patent infringement or contract claims under the '846 patent because it does not own the licensed patent.

### TENTH AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim on which relief may be granted.

## ELEVENTH AFFIRMATIVE DEFENSE

Philips is estopped to construe the claims to of the '846 Patent to cover any products made, used, sold, offered for sale or imported by Cinram because of statements, amendments, or actions taken during the prosecution of the '846 Patent.

## TWELVTH AFFIRMATIVE DEFENSE

The claims of the '846 Patent cannot be construed to cover any product made, used, sold, offered for sale or imported by Cinram and avoid the prior art.

## THIRTEENTH AFFIRMATIVE DEFENSE

Philips is not entitled to an injunction or any other equitable remedy because it has an adequate remedy at law.

## COUNTERCLAIMS

Cinram counterclaims against Philips as follows:

## EXISTENCE OF ACTUAL CONTROVERSY

1.      These counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§2201(a) and 2202.

2.      An actual justiciable controversy, as set forth in this counterclaim, exists between Cinram and Philips concerning the validity, enforceability and infringement of the patent-in-suit.

## THE PARTIES

3.      Plaintiff-in-Counterclaim, Cinram International Inc. is a corporation organized under the laws of Canada with a place of business at 2255 Markham Road, Scarborough, Ontario, Canada.

4.      Plaintiff-in-Counterclaim, Cinram Inc. is a corporation organized under the laws of Delaware with a place of business at 1600 Rich Road, Richmond, Indiana.

5.      Plaintiff-in-Counterclaim, Cinram Manufacturing Inc. is a corporation organized under the laws of Delaware with a place of business at 1400 East Lackawanna Ave., Olyphant, Pennsylvania.  Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. are collectively referred to as "Cinram".

6.      Upon information and belief, Defendant-in-Counterclaim Koninklijke Philips Electronics N.V. is a corporation organized under the laws of The Netherlands with its place of business in Amsterdam, the Netherlands.

7.      Upon information and belief, Defendant-in-Counterclaim U.S. Philips Corporation is a corporation organized under the laws of Delaware with places of business at 1251 Avenue of the Americas, New York, New York, and at 345 Scarborough Rd., Briarcliff Manor, New York.  Defendants-in-Counterclaim Koninklijke Philips Electronics N.V. and U.S. Philips Corporation are collectively referred to as "Philips".

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over Cinram, Philips, and over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338, 2201 and 2202 and under the doctrines of pendent and supplemental jurisdiction.

9.      By filing its Complaint, Philips has consented to the personal jurisdiction of this Court.

10.      Venue for the counterclaims is proper in this Court under 28 U.S.C. §§1391(b) and 1400(b).

## COUNT I
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

11.     Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

12.     Cinram has not infringed, nor does it now infringe, any claim of the patent-in-suit.

13.     Cinram has not induced, nor does it now induce, infringement of any claim of the patent-in-suit.

14.     Cinram has not contributorily infringed, nor does it now contributorily infringe, any claim of the patent-in-suit.

15.     Cinram is entitled to a declaratory judgment that it has not directly, contributorily, or by inducement, infringed any claim of the patent-in-suit.

## COUNT II
## (DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY)

16.     Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

17.     The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability.

18.     On information and belief, Philips repeatedly delayed issuance of the '846 patent by unreasonable and unexplained delays in the prosecution of the chain of continuing patent applications commencing with the initial filing in 1973 culminating in the issuance of the patent in 1991 and an Ex Parte Reexamination Certificate in 2006, making the patent unenforceable because of prosecution laches.

19.     On information and belief, Philips unreasonably delayed submitting prior art to the Patent Examiner, or withheld prior art from the Patent Examiner, making it impractical or

impossible for the Patent Examiner to fully consider such prior art and thereby rendering the '846 patent unenforceable.

20.    Cinram is entitled to a declaratory judgment that the patent-in-suit is invalid.

## COUNT III
## (DECLARATORY JUDGMENT OF PATENT MISUSE)

21.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

22.    On information and belief, Philips imposed Standards Specifications as a *de facto* requirement in the CD industry for the manufacture of CD-Discs.

23.    Philips declared that the '846 patent was "essential" for compliance with the Standard Specifications by all CD-Discs.

24.    The '846 patent is not "essential" for manufacturing CD-Discs that meet the Standard Specifications.

25.    Manufacturing innovations made by Cinram make it possible to manufacture CD-Discs that meet the Standard Specifications without use of the '846 patent

26.    Philips has misused its patent rights by claiming that the use of the '846 patent is necessary for compliance with the Standard Specifications when in fact it is not.

27.    The '846 patent is unenforceable based on Philips' misuse of this patent, and Cinram is entitled to a declaration as such.

## COUNT IV
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)

28.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

29.     On January 31, 2008, Philips sent a letter to Cinram customers for CD-Discs, misleadingly alleging that a royalty was owed on the customers' CDs because they were purchased from manufacturers who do not pay Philips CD Disc royalties.  However, Cinram does pay Philips CD Disc royalties when they are required under other patents pursuant to the License Agreement.  Further, Philips misleadingly alleged in the same letter that the CD-Discs that the customer had purchased infringe a patent that is not in suit and, according to material published by Philips, does not apply to CD-Discs of the type that the customer had purchased.

30.     On February 13, 2008, Philips sent a letter to another, indirect customer of Cinram, misleadingly alleging that all of the CDs purchased by the customer went unreported and unpaid, when in fact CDs covered by existent patents were both reported and paid for.  In addition, Philips improperly attempted to divert the customer to another supplier of CD Discs based on the allegations made in its February 13 letter.

31.     On information and belief, Philips made the statements in its January 31 and February 13, 2008 letters knowing that theses statements were false and misleading.  On information and belief, Philips made these statements with the sole purpose of harming Cinram.  As a direct result of Philips' knowingly false and misleading allegations, Cinram's business relationship with its customers has been harmed causing Cinram damages of a currently unknown amount.

32.     Philips has tortiously interfered with Cinram's business relationships, and Cinram is entitled to a declaration as such, along with monetary and injunctive relief.

**COUNT V**
**(TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)**

33.     Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

34.     On information and belief, Philips N.V. and/or U.S. Philips have caused a list of companies to be published on a website identified with Philips N.V., together with threats against customers who may consider buying CDs from companies not on the list.

35.     On information and belief, Cinram's existing and prospective customers periodically check the website to confirm that Cinram is not absent from that list.

36.     As of at least April 3, 2008, Philips N.V. and/or U.S. Philips removed Cinram from the list.

37.     On information and belief, one or both of Philips N.V. and U.S. Philips made this change in the list with the sole purpose of harming Cinram.  As a direct result of such change, Cinram's business relationship with its customers has been harmed, causing Cinram damages of a currently unknown amount.

38.     One or both of Philips N.V. and U.S. Philips have tortiously interfered with Cinram's business relationships, and Cinram is entitled to a declaration as such, along with monetary and injunctive relief.

## EXCEPTIONAL CASE

39.     This is an exceptional case entitling Cinram to an award of its attorneys' fees incurred in connection with defending and prosecuting this action pursuant to 35 U.S.C. §285, as a result of, *inter alia*, Philips' assertion of the '846 patent against Cinram with the knowledge that the '846 patent is not infringed and/or is invalid.

## REQUEST FOR RELIEF

WHEREFORE, Cinram respectfully requests that:

1.    The First Amended Complaint be dismissed with prejudice as to Cinram and Cinram be awarded its costs for this action;

2.    Judgment be entered declaring that the patent-in-suit is not infringed by Cinram and is invalid and unenforceable;

3.    Judgment be entered declaring that Cinram has not contributorily infringed the patent-in-suit, and has not induced others to infringe the patent-in-suit;

4.    Judgment be entered declaring that Philips has tortiously interfered with Cinram's business relationships and Cinram be awarded damages as well as an injunction prohibiting Philips from sending further false and misleading communications to Cinram's customers.

5.    Judgment be entered declaring that one or both of Philips N.V. and U.S. Philips have tortiously interfered with Cinram's business relationships and Cinram be awarded damages as well as an injunction prohibiting such interference.

6.    Judgment be entered declaring this to be an exceptional case under 35 U.S.C. §285, and Cinram be awarded its attorneys' fees and expert fees incurred for defending  this action and prosecuting its counterclaim; and

7.    Cinram be granted such other relief as the Court deems just and proper.


## **JURY TRIAL**

Cinram requests a jury trial on all its claims.

16

Dated: April __, 2008                    Respectfully submitted,

 

_____

Ivan Kavrukov
William E. Pelton
Tonia A. Sayour
Gregory J. Carbo
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, New York 10036
Tel:  (212) 278-0400
Fax:  (212) 391-7550
ikavrukov@cooperdunham.com
gcarbo@cooperdunham.com

Attorneys for Defendants
Cinram International Inc., Cinram Inc.,
And Cinram Manufacturing Inc.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the __th day of April, 2008, I electronically filed the foregoing

SECOND AMENDED ANSWER AND COUNTERCLAIM with the Clerk of the Court using

the CM/ECF system, which will send notification of such filing to the following:

> Edward D. Johnson
> MAYER BROWN LLP
> Two Palo Alto Square, Suite 300
> 3000 El Camino Real
> Palo Alto, California 94306-2112
> wjohnson@mayerbrown.com
>
> Vince P. Kovalick
> John F. Hornick
> Samuel C. Bass
> FINNEGAN, HENDERSON, FARABOW,
>     GARRETT & DUNNER, L.L.P.
> 901 New York Avenue, N.W.
> Washington, D.C. 20001
> vince.kovalick@finnegan.com
> John.Hornick@finnegan.com
> Samuel.Bass@finnegan.com
>
> Christopher J. Houpt
> MAYER BROWN LLP
> 1675 Broadway
> New York, New York 10019
> choupt@mayerbrown.com

> _____
> Gregory J. Carbo

# EXHIBIT 11



**PHILIPS**

sense and simplicity

| Choose country / language |
| Search ► |

Consumer Products    Healthcare    Lighting    Product Support    Company and Press

Intellectual Property & Standards

You are here: Home   **Intellectual Property & Standards**

Company profile
News Center
Licensing
Trademarks, Domain
Names & Designs
Standardization
Licensee database
Sitemap
Partner Area

**My Account**
  + Log in

# Intellectual Property & Standards

**How to search our licensing programs?**
Click the image to search.

   

by market/technology    by product    by keyword

## Welcome to the IP&S website
**All Philips intellectual property and standards topics in
one overview.**
Here you can find information about our broad range of
licensing products and services and activities such as
standardization, trademarks, domain names and designs. In
addition this website will give you information about the
organization behind the Philips' IP&S business, such as office
and contact details, backgrounders on actual topics and latest
news. The site will grow gradually with new information and
interesting features. Please find out more and check the site
regularly. Do you have suggestions for improvement, please
contact us.

**News Center**
The latest press releases, news
items, background information
executive profiles and
presentations. More...

**Trademarks, Domain Names
and Designs**
These valuable company
assets, help us distinguish
ourselves from our competitors.
They support Philips' businesses
efforts to increase
competitiveness and drive
growth. More...

**Licensing**
Licensing information in
complete licensing programs,
the services and ordering
sections. All about Veeza and
more...

**Standardization**
All about Philips' contribution to
Industry Standards and the
active role we play in Formal
Standards and Regulations
which are enforced by
governments. More.

**Latest News**

**Monday, April 28, 2008**
Philips and Dacon reach long term
licensing agreements for CD and
DVD recordable discs

**Wednesday, April 2, 2008**
Philips introduces patent licenses
for Blu-ray Disc

**Wednesday, November 14,
2007**
Philips to reduce CD Rewritable
Disc compliant royalty rate by 44%

**Tuesday, October 2, 2007**
Philips statement on the Norcent
case

**Thursday, September 20, 2007**
Workshop on DVD player and
recorder patent licensing Saturday,
October 13, 2007

+ RSS What is RSS?

AEX | EUR 24.96

Careers | Philips | Privacy policy | Terms of use | Site Map

©2004-2008 Koninklijke Philips Electronics N.V. All rights reserved

http://www.ip.philips.com/                                                    5/8/2008



**PHILIPS**

sense and simplicity

Choose country / language

Search

Consumer Products    Healthcare    Lighting    Product Support    Company and Press

Intellectual Property & Standards

**You are here:** Home    Intellectual Property & Standards    Licensing    Check your supplier

Company profile

News Center

**Licensing**

  Introduction

  Licensing programs

  Licensing policy

  **Check your supplier**

  Ordering & Services

  Open source

Trademarks, Domain
Names & Designs

Standardization

Licensee database

Sitemap

Partner Area

**My Account**

  + Log in

# Check your supplier - Buyer page

## (For CD and DVD related products only)

**Check your supplier**
Does your company import or buy-in CD, DVD, or other optical
media products from a third-party manufacturer? If so, we
strongly advise you to check that your supplier sells licensed
products. In many countries, if you receive unlicensed products
you could be liable for patent infringement.

We provide two tools that allow you to check whether your
supplier is licensed:
1. Licensee Database
2. Licensing Status Conformation Document (LSCD)

To reduce to risk of liability for infringement that may result from
importing, selling, and/or using unlicensed products, we strongly
recommend you follow the steps below and take all necessary
precautions to ensure your products are licensed.

**1. Check the Licensee Database**
Check your supplier is listed in the Licensee Database on this
website for the particular product you are buying. A company
listed as a CD licensee may not have a license agreement for
DVD.
**2. Demand an LSCD for each shipment**
Ask your supplier to provide an LSCD specifically identifying the
products and quantities you are purchasing.
**3. Verify the validity of the LSCD**
Check the date of shipping. LSCDs must be requested on or
before the shipping date. They are free of charge and usually
issued within a day or so. If your supplier says it will take longer,
we suggest you contact us. LSCDs will not be issued if the goods
are close to or already at their destination.

**Please note:** in the absence of an LSCD, assurances and
indemnifications from your supplier will not provide a valid
defense against any claims for patent infringement.

Checking whether your supplier is listed as a licensee in our
Licensee Database is essential. But it is not be enough to ensure
that you, as a buyer, are free of liability for patent infringement.
Your supplier must also give Philips an accurate report of each
optical disc, drive or player sold to you and must pay all royalties
due.

In our license agreements, 'licensed products' are limited to those
'which are duly reported and for which the royalties due
hereunder are paid in accordance with the provisions of this
Agreement'. If your supplier does not accurately report the
products sold to you and / or does not pay the royalties due, then
the supplier was not 'licensed' or 'authorized' by us to sell those
products. Any downstream buyer receiving such unlicensed
products may be held liable for damages for patent infringement.

If you are in any doubt or have any questions, don't hesitate to
contact us.

**The Licensed Status Confirmation Document (LSCD)**
The Licensed Status Confirmation Document enables
manufacturers, importers and traders to demonstrate the

licensed status of products to customers and customs authorities. We supply licensees with LSCDs for shipments of specified CD and DVD products on request and at no additional charge.

This LSCD confirms that, according to the information submitted by the licensee to Philips via this website, the goods specified in the document originate from a licensed manufacturer and the products identified in the LSCD have been reported to Philips.

Licensees should be able to make an LSCD available well before shipping, as soon as the product, quantities and delivery date are known. Beware of licensees who are unable to supply an LSCD: they may be infringing patents. LSCDs will not be issued for shipments that are close to entering a new territory: 1 week by ship or 1 day by plane.

**FAQs**

**Who can request an LSCD?**
All licensed manufacturers who have accepted the conditions related to the supply of data for this document.

**How can I check the validity of an LSCD?**
You should check that the date and other details on the LSCD match the purchase order and shipment. Furthermore, you can always contact us. Please include the reference number (it starts with LD), the model number of the product, the quantities involved and the expected date of delivery to the final destination.

**What does an LSCD look like?**



**I'm a licensed manufacturer, how do I get an LSCD?**
The conditions, how to apply and the application form

Careers | Philips | Privacy policy | Terms of use | Site Map
©2004-2008 Koninklijke Philips Electronics N.V. All rights reserved.



**PHILIPS**
sense and simplicity

Choose country / language
Search

Consumer Products    Healthcare    Lighting    Product Support    Company and Press

Intellectual Property & Standards

You are here: Home   Intellectual Property & Standards

Company profile
News Center
Licensing
Trademarks,
Domain Names &
Designs
Standardization
Licensee database
Sitemap
Partner Area

My Account
+ Log in

# Licensee Database

**LICENSED MANUFACTURERS BY ROYAL PHILIPS ELECTRONICS**

| | |
|---|---|
| Company Name | |
| Territory | United States | reset |
| Agreement | CD Disc | reset |

Search

Search on "United States, CD Disc" has 75 results (8 pages)

**SEARCH RESULTS**

| | Company | Agreement | Territory |
|---|---|---|---|
| 1 | AWA DVD, Inc.<br>*Products supplied by this company are licensed under the essential patents of Philips provided the shipment is accompanied by a valid LSCD (\*).* | CD Disc | United States |
| 2 | Action Duplication Inc.<br>*Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 3 | Advanced Audio Technology<br>*Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 4 | American Media International, LLC<br>Also known as: American Multimedia, Inc.<br>*Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 5 | Arcube Optical Manufacturing LLC aka Arcube Multimedia Inc<br>*Products supplied by this company are licensed under the essential patents of Philips.* | CD Disc | United States |
| 6 | Arvato Digital Services LLC<br>*Products supplied by this company are licensed under the essential patents of Philips provided the shipment is accompanied by a valid LSCD (\*).* | CD Disc | United States |
| 7 | Ass. for Blind/Visually Impaired - Goodwill Industries Inc<br>*Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 8 | Audio Video Color Corp.<br>*Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 9 | Audio and Video Labs, Inc.dba Disc Makers<br>Also known as: Disc Makers<br>*Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 10 | C&C Duplicators, Inc.<br>*Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |

More results: **1-10** | 11-20  21-30  31-40 [next >

+ conditions of publications
(\*) For manufacturers with an asterisk: this manufacturer has entered into an agreement with Philips under which it is required to submit, before each shipment, an application for a Licensed Status Confirmation Document (LSCD), confirming that the products included in the shipment are property licensed. Under the terms of that agreement, products that are not covered by an LSCD issued by Philips are deemed to be unlicensed and as a result may infringe Philips' patent rights. Consequently, traders or importers who order products from this source are advised to ensure that they are in possession of an LSCD issued by Philips in relation to the shipment(s) concerned, prior to delivery of the goods by the manufacturer.

Careers | Philips | Privacy policy | Terms of use | Site Map
©1994-2008 Koninklijke Philips Electronics N.V. All rights reserved.

## PHILIPS
sense and simplicity

Consumer Products    Healthcare    Lighting    Product Support    Company and Press

Intellectual Property & Standards

You are here: Home  Intellectual Property & Standards

Company profile
News Center
Licensing
Trademarks,
Domain Names &
Designs
Standardization
Licensee database
Sitemap
Partner Area

My Account
• Log in

# Licensee Database

**LICENSED MANUFACTURERS BY ROYAL PHILIPS ELECTRONICS**

Company Name
Territory   United States                          reset
Agreement  CD Disc                                  reset

Search

Search on "United States, CD Disc" has 75 results (8 pages)

**SEARCH RESULTS**

| | Company | Agreement | Territory |
|---|---|---|---|
| 11 | CD Video Manufacturing, Inc. *Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 12 | CDI Media Formerly known as Optical Media Technologies. *Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 13 | Cine Magnetics Video & Digital Labs *Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 14 | Coda, Inc. *Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 15 | Color Film Corporation *Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 16 | Corporate Disk Company *Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 17 | Custom Media Services Inc. *Products supplied by this company are licensed under the essential patents of Philips provided the shipment is accompanied by a valid LSCD (*).* | CD Disc | United States |
| 18 | Denon Digital LLC *Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |
| 19 | Digital International Corporation *Products supplied by this company are licensed under the essential patents of Philips and Sony provided the shipment is accompanied by a valid LSCD (*).* | CD Disc | United States |
| 20 | Digital Media Services, Inc. *Products supplied by this company are licensed under the essential patents of Philips and Sony.* | CD Disc | United States |

More results: < previous| 1-10 |11-20| 21-30  31-40  41-50 |next >

+ conditions of publications

(*) For manufacturers with an asterisk: this manufacturer has entered into an agreement with Philips under which it is required to submit, before each shipment, an application for a Licensed Status Confirmation Document (LSCD), confirming that the products included in the shipment are properly licensed. Under the terms of that agreement, products that are not covered by an LSCD issued by Philips are deemed to be unlicensed and as a result may infringe Philips' patent rights. Consequently, traders or importers who order products from this source are advised to ensure that they are in possession of an LSCD issued by Philips in relation to the shipment(s) concerned, prior to delivery of the goods by the manufacturer.

Careers | Philips | Privacy policy | Terms of use | Site Map
© 2004-2008 Koninklijke Philips Electronics N.V. All rights reserved.



**PHILIPS**
sense and simplicity

Choose country / language

Search

| Consumer Products | Healthcare | Lighting | Product Support | Company and Press |

 Intellectual Property & Standards

**You are here:** Home   Intellectual Property & Standards

Company profile

News Center

Licensing

Trademarks,
Domain Names &
Designs

Standardization

Licensee database

Sitemap

Partner Area

**My Account**

+ Log in

# Licensee Database

**LICENSED MANUFACTURERS BY ROYAL PHILIPS ELECTRONICS**

Company Name   Cinram                                        reset
Territory   United States                                    reset
Agreement   CD Disc

[ Search ]

Search on "Cinram, United States, CD Disc" has 0 results (0 pages)

**SEARCH RESULTS**
   **Company   Agreement   Territory**

+ conditions of publications
(*) For manufacturers with an asterisk: this manufacturer has entered into an agreement with Philips
under which it is required to submit, before each shipment, an application for a Licensed Status
Confirmation Document (LSCD), confirming that the products included in the shipment are properly
licensed. Under the terms of that agreement, products that are not covered by an LSCD issued by
Philips are deemed to be unlicensed and as a result may infringe Philips' patent rights. Consequently,
traders or importers who order products from this source are advised to ensure that they are in
possession of an LSCD issued by Philips in relation to the shipment(s) concerned, prior to delivery of
the goods by the manufacturer.

NYSE | US$ 38.37                       Careers | Philips | Privacy policy | Terms of use | Site Map
©2004-2008 Koninklijke Philips Electronics N.V. All rights reserved.

# EXHIBIT 12



## Philips Intellectual Property & Standards

Direct Dial:  (408) 904-3631
E-Mail:  Chris.Hoang@philips.com

<u>VIA FEDERAL EXPRESS</u>

April 30, 2008

Mr. Richard Stevens
Digital Excellence LLC
EMC Corporation
300 York Ave, Dept. TR
St. Paul, MN 55101-4082

Re:   Unlicensed Manufacturers and Suppliers of DVD/Blu-ray Players/Recorders
      and CD-R/DVD+R/DVD-R/Blu-ray Discs

Dear Mr. Stevens:

Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively, "Philips") own essential patents on DVD and CD technologies covering every CD (Audio and ROM), CD-R and CD-RW ("CD-R/RW"), DVD, DVD+R and DVD+RW ("DVD+R/RW"), DVD-R and DVD-RW ("DVD-R/RW"), SACD and Blu-ray player and disc manufactured in, imported into, offered for sale or sold within the United States and/or Canada (except for CD-Audio and certain CD-ROM products in Canada). Lists of the essential patents that are the subject of CD (Audio and ROM), CD-R/RW, DVD, DVD+R/+RW, DVD-R/RW, SACD and Blu-ray player and disc licensing programs for each format are available at our website http://www.ip.philips.com and attached hereto. This letter shall constitute effective notice of these patents under 35 U.S.C. §287.

### Litigation Against North American Suppliers of Pre-Recorded Discs: CD-Audio and CD-ROM

In January 2008, Philips filed lawsuits against various North American disc manufacturers for breach of contract and patent infringement which are identified in the attached "Pre-recorded CD Disc Litigation List". Note that some of the Pre-recorded CD Discs distributed by suppliers such as Universal Music Group and Warner Music Group, among others, are unlicensed and the manufacturers of such CD Discs are defendants in such lawsuits. The Complaints in this lawsuit allege that each of the defendants has breached its License Agreement with Philips under which each company was licensed to sell CD-Audio and CD-ROM discs. Accordingly, Philips has removed these manufacturers from our publicly available Licensee Database (see link below).



370 W... ....  .....
MS 41-1MG
San Jose, CA 95111

Tel  (408) 304-2596
Fax  (408) 304-3635

## Importation of CD-R/RW Discs

On February 5, 2007, the United States International Trade Commission issued a General Exclusion Order (attached hereto) barring the import of unlicensed CD-R and CD-RW discs into the United States. Under the Philips VEEZA CD-R disc licensing program, any manufacturer having a VEEZA license agreement must request and obtain an authentic Licensed Status Confirmation Document ("LSCD") (also attached hereto) from Philips with each shipment for the CD-R discs to be licensed and properly imported. U.S. Customs can block imports of CD-R/RW discs not licensed by Philips. Should any unlicensed CD-R/RW discs improperly pass through U.S. ports, Customs is empowered to recall such unlicensed discs. Furthermore, companies that violate the General Exclusion Order may be subject to additional civil and criminal penalties.

## Unlicensed suppliers of CD-R/RW, DVD-R, DVD-RW, DVD+R, DVD+RW Discs and DVD Players and/or Recorders

Suppliers and brands distributing or that have distributed *at least some* CD-R, CD-RW, DVD-R, or DVD+RW discs and DVD Players and/or Recorders that are not licensed by Philips are listed in the attached Unlicensed Suppliers List.

## Website and LSCDs

Philips maintains a publicly available database ("Licensee Database") which lists its licensees at the following address: http://www.ip.philips.com/services/?module=IpsLicensee. Please note that companies in the database with an asterisk (*) beside their name also have license agreements with Philips that require an LSCD for each shipment. If there isn't an LSCD, then the product is not licensed. An easy way to insure that you are buying product which has been reported to Philips is to (1) purchase optical media products that are produced by manufacturers listed in the Licensee Database and (2) request an authentic LSCD issued by Philips with every shipment that you purchase. Note that customers can now receive, directly from the Philips server, an electronic copy of LSCD's issued to their suppliers. Request that your licensed supplier include your email address in each LSCD application it submits covering shipments to your company and Philips will email a copy of the LSCD to the specified email address. For LSCD's not emailed to you directly by Philips, we encourage you to contact our offices to verify the authenticity of each LSCD.

## Blu-ray Products

Philips has recently introduced licenses for media and hardware products under the Philips patents essential to the Blu-ray Disc format. These essential patents are listed in the attached Optical Media Player Patent and Optical Media Disc Patent Lists. Information on the Blu-ray licenses can be found at our website www.ip.philips.com.
We thank you for your attention to this matter.

Sincerely,

*Chris Horgan / AV.*

Christopher J. Horgan
Anti-Piracy Investigations
Philips Intellectual Property & Standards

Enclosures:
Optical Media Disc Patent List
Optical Media Player Patent List
Pre-recorded CD Disc Litigation List
ITC General Exclusion Order
Sample LSCD
Unlicensed Suppliers List

### U.S. and Canada Optical Media Disc Patents

### U.S. Patents (patent numbers and expiry dates/ * indicates "Non-essential" patents)

**U.S. Philips Corp and Sony patents infringed by CD disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 5068846 | Nov 26, 2008 | 5587979* | Jan 17, 2009 | 5684786* | Nov 04, 2014 | 5745641* | Apr 28, 2015 | 5825731* | Nov 27, 2016 |
| 5305301 | Apr 19, 2011 | 5606539* | Feb 25, 2014 | 5699476* | Dec 16, 2014 | 5754521* | Dec 14, 2015 | 5844867* | Dec 01, 2015 |
| 5341356* | Jan 07, 2012 | 5608697 | Mar 04, 2014 | 5740310* | Apr 14, 2015 | 5778257* | Jan 29, 2016 | 5859821* | Oct 30, 2016 |
| 5390159* | Feb 14, 2012 | 5661715* | Oct 20, 2014 | 5745454* | Sep 20, 2016 | 5798990* | Sep 16, 2016 | 5878019* | Mar 02, 2016 |

**Royal Philips Electronics N.V., U.S. Philips, Sony and Pioneer patents infringed by DVD Video, DVD Audio, DVD ROM and DVD RAM disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 5068846 | Nov 26, 2008 | 5544247 | Oct 25, 2014 | 5740317 | Apr 14, 2015 | 5864530 | Dec 29, 2013 | 6289308 | Jun 01, 2010 |
| 5214678 | May 31, 2010 | 5605782 | Dec 22, 2014 | 5790056 | Aug 30, 2015 | 5878080 | Feb 07, 2017 | 6301389 | Jan 30, 2016 |
| 5323396 | Jun 01, 2010 | 5606618 | Jun 01, 2010 | 5790512 | Dec 22, 2014 | 5920272 | Feb 08, 2015 | 6370102 | Dec 18, 2015 |
| 5481643 | Mar 18, 2013 | 5610985 | Jan 21, 2014 | 5818943 | Oct 25, 2014 | 5920674 | Nov 16, 2015 | 6388982 | Nov 16, 2015 |
| 5511057 | Dec 29, 2013 | 5642113 | Feb 15, 2015 | 5838696 | Feb 16, 2015 | 5960037 | Apr 09, 2017 | |
| 5530655 | June 01, 2010 | 5677903 | Oct 14, 2014 | 5841753 | Apr 18, 2012 | 5991715 | Nov 23, 2016 | |
| 5539829 | Jun 01, 2010 | 5696505 | Feb 08, 2015 | 5850456 | Feb 06, 2017 | 6023490 | Apr 09, 2017 | |

**Royal Philips Electronics N.V., U.S. Philips, Sony and Taiyo Yuden patents infringed by CD-Recordable (CD-R) and CD-ReWritable (CD-RW) disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4413340 | May 20, 2011 | 5126994 | Nov 21, 2009 | 5606539* | Feb 25, 2014 | 5745454* | Sep 20, 2016 | 5844867* | Dec 01, 2015 |
| 4999825 | Nov 01, 2008 | 5155723 | Oct 13, 2009 | 5608697 | Mar 04, 2014 | 5745641* | Apr 28, 2015 | 5859821* | Oct 30, 2016 |
| 5021879* | Apr 25, 2008 | 5305301 | Apr 19, 2011 | 5654947 | Aug 05, 2014 | 5754521* | Dec 14, 2015 | 5878019* | Mar 02, 2016 |
| 5023656 | Jun 11, 2008 | 5341356* | Jan 07, 2012 | 5661715* | Oct 20, 2014 | 5778257* | Jan 29, 2016 | RE34719 | Jul 29, 2008 |
| 5068846 | Nov 26, 2008 | 5390159* | Feb 14, 2012 | 5684786* | Nov 04, 2014 | 5798990* | Sep 16, 2016 | |
| 5080946 | Jan 14, 2009 | 5418764 | May 23, 2012 | 5699476* | Dec 16, 2014 | 5825731* | Nov 27, 2016 | |
| 5090009 | Feb 18, 2009 | 5587979* | Jan 17, 2009 | 5740310* | Apr 14, 2015 | 5835462 | Sep 30, 2016 | |

**Royal Philips Electronics N.V., U.S. Philips, Sony, Hewlett-Packard and Pioneer patents infringed by DVD+R, DVD+RW, DVD-R, and DVD-RW disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 5660219 | Dec 20, 2008 | 5605782 | Dec 22, 2014 | 5605564 | May 29, 2016 | 5970045 | Mar 17, 2017 | 6282166 | Apr 02, 2017 |
| 5068846 | Nov 26, 2008 | 5610980 | Jan 30, 2011 | 5818367 | July 07, 2015 | 5978351 | Dec 02, 2017 | 6330210 | Apr 29, 2019 |
| 5150354 | Oct 31, 2009 | 5629924 | Nov 07, 2014 | 5835462 | Sep 30, 2016 | 5987066 | Dec 03, 2016 | 6388662 | Nov 16, 2015 |
| 5293293 | Mar 8, 2011 | 5642113 | Feb 15, 2015 | 5838656 | Jan 30, 2011 | 6046968 | Apr 04, 2017 | 6526005 | April 29, 2022 |
| 5418764 | May 23, 2012 | 5654947 | Aug 06, 2014 | 5838696 | Feb 16, 2015 | 6047397 | Feb 16, 2015 | 6538982 | Jan 24, 2020 |
| 5488605 | Feb 24, 2014 | 5682365 | Oct 28, 2014 | 5898655 | Jun 24, 2016 | 6075761 | Apr 02, 2017 | RE37428 | Feb 12, 2012 |
| 5508981 | Apr 16, 2013 | 5696505 | Feb 08, 2015 | 5901123 | Jan 08, 2017 | 6181672 | Oct 18, 2019 | |
| 5515346 | May 07, 2013 | 5757733 | Jan 30, 2011 | 5917857 | Dec 12, 2016 | 6219308 | Jan 30, 2011 | |
| 5533001 | Jul 02, 2013 | 5790056 | Aug 30, 2016 | 5920272 | Feb 08, 2015 | 6236804 | Feb 26, 2017 | |
| 5587990 | Jan 30, 2011 | 5790512 | Dec 22, 2016 | 5969651 | Jul 07, 2015 | 6243338 | Sep 08, 2018 | |

**Royal Philips Electronics N.V., U.S. Philips and Sony patents infringed by SACD disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 5068846 | Nov 26, 2008 | 5732065 | Sep 04, 2016 | 5850456 | Feb 06, 2017 | 5995493 | May 07, 2017 | 6266368 | Jan 15, 2018 |
| 5305301 | Apr 19, 2011 | 5745454* | Sep 20, 2016 | 5859821* | Oct 30, 2016 | 6005837 | May 18, 2018 | 6269338 | Sep 25, 2017 |
| 5508981 | Apr 16, 2013 | 5790576 | Aug 30, 2016 | 5864530 | Dec 29, 2013 | 6014364 | Dec 21, 2015 | 6275176 | Mar 18, 2019 |
| 5511057 | Dec 29, 2013 | 5790512 | Dec 22, 2014 | 5872755 | Nov 18, 2016 | 6023490 | Apr 09, 2017 | 6275457 | Apr 01, 2019 |
| 5515346 | May 07, 2013 | 5798990* | Sep 16, 2016 | 5878080 | Feb 07, 2017 | 6026008 | Dec 29, 2013 | 6285301 | Mar 16, 2019 |
| 5587979* | Jan 17, 2009 | 5805564 | May 29, 2016 | 5920272 | Feb 08, 2015 | 6041302 | Nov 10, 2017 | 6289306 | Nov 07, 2017 |
| 5587990 | Jan 30, 2011 | 5818367 | Jul 07, 2015 | 5920874 | Nov 16, 2015 | 6047397 | Feb 16, 2015 | |
| 5605782 | Dec 22, 2014 | 5825731 | Nov 27, 2016 | 5960037 | Apr 09, 2017 | 6076062 | Dec 09, 2016 | |
| 5610980 | Jan 30, 2011 | 5828648 | Dec 21, 2015 | 5960367 | Dec 21, 2015 | 6144320 | Mar 19, 2019 | |
| 5689497 | Oct 11, 2016 | 5838696 | Feb 16, 2015 | 5969670 | Apr 09, 2016 | 6224693 | Mar 15, 2019 | |

**Royal Philips Electronics N.V. and U.S. Philips patents infringed by Blu-ray ROM Data Discs**

| | | | | | | |
|---|---|---|---|---|---|---|
| 5511057 | Dec 29, 2013 | 5864530 | Dec 29, 2013 | 6628584 | Oct 25, 2021 | 7200795 | March 26, 2023 |
| 5724327 | Jan 12, 2012 | 6363041 | Jan 12, 2012 | 7172797 | Dec 12. 2024 | |

**Royal Philips Electronics N.V. and U.S. Philips patents infringed by Blu-ray Recordable Discs**

| | | | | | | |
|---|---|---|---|---|---|---|
| 5339301 | Aug 16, 2011 | 6388962 | Nov 16, 2015 | 7085209 | May 7, 2023 | 7158472 | Jan 29, 2025 |
| 5511057 | Dec 29, 2013 | 6526005 | Nov 16, 2015 | 7110336 | May 15, 2023 | 7172797 | Dec 12, 2024 |
| 5864530 | Dec 29, 2013 | 6285647 | Feb 12, 2018 | 7113467 | Oct 11, 2023 | 7200795 | Mar 26, 2023 |

**Royal Philips Electronics N.V. and U.S. Philips patents infringed by Blu-ray RE Discs**

| | | | | | | |
|---|---|---|---|---|---|---|
| 5339301 | Aug 16, 2011 | 6388962 | Nov 16, 2015 | 6986150 | May 15, 2023 | 7113467 | Oct 11, 2023 | 7200795 | Mar 26, 2023 |
| 5511057 | Dec 29, 2013 | 6526005 | Nov 16, 2015 | 7085209 | May 7, 2023 | 7158472 | Jan 29, 2025 | 7221643 | Feb 22, 2021 |
| 5864530 | Dec 29, 2013 | 6285647 | Feb 12, 2018 | 7110336 | May 15, 2023 | 7172797 | Dec 12, 2024 | |

**Canadian Patents (patent numbers and expiry dates/* indicates "Non-essential" patents)**

**Royal Philips Electronics N.V. and Sony patents infringed by CD disc products**

| | | | | | |
|---|---|---|---|---|---|
| 2043670* | May 31, 2011 | 2335403 | May 31, 2011 | 1322593* | Sep 28, 2010 |
| 2036585* | Feb 19, 2011 | 2064511* | Mar 31, 2012 | | |

**Royal Philips Electronics N.V., Sony and Pioneer patents infringed by DVD Video, DVD Audio, DVD ROM and DVD RAM disc products**

| | | | | | |
|---|---|---|---|---|---|
| 1320571 | Jul 20, 2010 | 2043670* | May 31, 2011 | 2335403 | May 31, 2011 |

**Royal Philips Electronics N.V., Sony and Taiyo Yuden patents infringed by CD-Recordable (CD-R) and CD-ReWritable (CD-RW) disc products**

| | | | | | |
|---|---|---|---|---|---|
| 1326710 | Feb 01, 2011 | 1331807 | Aug 30, 2011 | 1332466 | Oct 11, 2011 | 2043670* | May 31, 2011 |
| 2036585* | Feb 19, 2011 | 1322593* | Sep 28, 2010 | 2021026 | Jul 05, 2012 | 2335403 | May 31, 2011 |

**Royal Philips Electronics N.V., Sony, Hewlett-Packard and Pioneer patents infringed by DVD+R, DVD+RW, DVD-R, and DVD-RW disc products**

| | | | | | |
|---|---|---|---|---|---|
| 1305253 | Dec 16, 2008 | 1330591 | Jul 05, 2011 | 2002481 | Nov 08, 2009 | 2016055 | May 04, 2010 |

**Royal Philips Electronics N.V. and Sony patents infringed by SACD disc products**

| | |
|---|---|
| 1322593* | Sep 28, 2010 |

Note: This list is subject to revision.  Updated patent lists may be found at http://www.ip.philips.com.

## U.S. and Canadian Optical Media Player Patents

**U.S. Patents (patent numbers and expiry dates/ * indicates "Non-essential" patents)**

**Philips and Sony patents infringed by CD player products**

| | | | | | |
|---|---|---|---|---|---|
| 5068846 | Nov 26, 2008 | 5745454* | Sep 20, 2016 | 5859821* | Oct 30, 2016 |
| 5587979* | Jan 17, 2009 | 5798990* | Sep 16, 2016 | | |

**Philips, Sony, LGE and Pioneer patents infringed by DVD Video and DVD ROM player products**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4953035 | Sep 23, 2008 | 5610880 | Jan 30, 2011 | 5886965 | Jun 27, 2016 | 6085267 | Jul 3, 2016 | 6301389 | Jan 30, 2016 |
| 5016113 | Sep 22, 2008 | 5642113 | Feb 15, 2015 | 5889564 | Apr 2, 2016 | 6088506 | Apr 1, 2017 | 6370102 | Dec 18, 2015 |
| 5043826 | Jan 31, 2009 | 5677903 | Oct 14, 2014 | 5889746 | Mar 20, 2017 | 6091674 | Mar 17, 2017 | 6396997 | Feb 26, 2017 |
| 5063551 | Jan 31, 2009 | 5679911 | Oct 21, 2014 | 5892983 | Jul 3, 2016 | 6104684 | Mar 18, 2017 | 6463210 | Sep 3, 2013 |
| 5065252 | Feb 15, 2009 | 5684542 | Dec 20, 2014 | 5895876 | May 26, 2014 | 6108281 | Mar 17, 2017 | 6487293 | Jul 19, 2016 |
| 5068846 | Nov 26, 2008 | 5696505 | Feb 8, 2015 | 5920874 | Nov 16, 2015 | 6108423 | Jul 19, 2016 | 6501903 | Mar 17, 2017 |
| 5097349 | Mar 17, 2009 | 5721591 | Jan 30, 2017 | 5933569 | Mar 13, 2017 | 6108486 | Mar 6, 2017 | 6538978 | Apr 18, 2012 |
| 5315400 | Sep 23, 2008 | 5740152 | Nov 7, 2014 | 5936925 | Apr 7, 2017 | 6122434 | Mar 13, 2017 | 6535467 | Sep 16, 2014 |
| 5336844 | Aug 9, 2011 | 5742569 | Mar 21, 2017 | 5960152 | Mar 11, 2017 | 6137954 | Mar 21, 2017 | 6621786 | Dec 18, 2015 |
| 5455684 | Sep 22, 2013 | 5748256 | Mar 21, 2018 | 5966182 | Jan 30, 2017 | 6143138 | Mar 13, 2017 | 6661467 | Dec 13, 2015 |
| 5463607 | Oct 31, 2012 | 5758008 | Jun 26, 2016 | 5966352 | Mar 18, 2017 | 6157769 | Mar 14, 2017 | RE37052 | Dec 1, 2015 |
| 5466883 | May 25, 2014 | 5771075 | Dec 5, 2015 | 5987066 | Dec 3, 2016 | 6160951 | Jul 8, 2016 | RE36919 | Dec 1, 2015 |
| 5508981 | Apr 16, 2013 | 5787222 | Jul 9, 2016 | 6006004 | Feb 26, 2017 | 6175718 | Mar 5, 2017 | | |
| 5511057 | Dec 29, 2013 | 5790056 | Aug 30, 2016 | 6014495 | Mar 17, 2017 | 6185687 | Jul 19, 2016 | | |
| 5515346 | May 13, 2007 | 5793726 | Oct 24, 2015 | 6031962 | Mar 13, 2017 | 6212330 | Mar 21, 2017 | | |
| 5568274 | Oct 22, 2013 | 5805537 | Mar 17, 2017 | 6034942 | Apr 7, 2017 | 6215952 | Apr 3, 2017 | | |
| 5587990 | Jan 30, 2011 | 5818367 | Jul 7, 2015 | 6047397 | Feb 16, 2015 | 6236804 | Feb 26, 2017 | | |
| 5608715 | Jul 20, 2015 | 5841753 | Apr 18, 2012 | 6085021 | Mar 14, 2017 | 6289103 | Jul 19, 2016 | | |

**Philips, Sony, Ricoh, and Yamaha patents infringed by CD-Recordable (CD-R) and CD-ReWriteable (CD-RW) recorder/player products**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4901300 | Nov 1, 2008 | 5124966 | Sep 5, 2009 | 5418764 | May 23, 2012 | 5740149 | Jan 29, 2017 | 5859821 | Oct 30, 2016 |
| 4999825 | Nov 1, 2008 | 5126894 | Nov 21, 2009 | 5453968 | Sep 26, 2012 | 5745454 | Sep 20, 2016 | 5867462 | Mar 12, 2011 |
| 5001692 | Apr 8, 2008 | 5148418 | Oct 16, 2009 | 5485449 | May 4, 2013 | 5761179 | Apr 12, 2016 | 6118741 | May 14, 2018 |
| 5003527 | Nov 14, 2008 | 5177720 | Feb 6, 2010 | 5502702 | Aug 5, 2014 | 5793737 | Dec 6, 2016 | 6134209 | Dec 6, 2016 |
| 5023856 | Jun 11, 2008 | 5187699 | Feb 16, 2010 | 5587979 | Jan 17, 2009 | 5798990 | Sep 16, 2016 | 6704263 | Oct 10, 2020 |
| 5060219 | Dec 20, 2008 | 5226027 | Jul 6, 2010 | 5654947 | Aug 5, 2014 | 5802032 | Feb 18, 2017 | | |
| 5065388 | Sep 5, 2009 | 5339301 | Aug 16, 2011 | 5682365 | Oct 28, 2014 | 5825731 | Nov 27, 2016 | | |
| 5068846 | Nov 26, 2008 | 5406538 | Apr 11, 2012 | 5737289 | May 31, 2015 | 5835462 | Sep 30, 2016 | | |

**Philips, Sony, Hewlett-Packard and Pioneer patents infringed by DVD+R, DVD+RW, DVD-R, and DVD-RW recorder/player products**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5060219 | Dec 20, 2008 | 5605782 | Dec 22, 2014 | 5790512 | Dec 22, 2016 | 5969651 | Jul 07, 2016 | 6243338 | Sep 08, 2018 |
| 5068846 | Nov 26, 2008 | 5610880 | Jan 30, 2011 | 5805564 | May 29, 2016 | 5970045 | Mar 17, 2017 | 6282166 | Apr 02, 2017 |
| 5150354 | Oct 31, 2009 | 5629924 | Nov 07, 2014 | 5818367 | July 07, 2015 | 5978351 | Dec 02, 2017 | 6330210 | Apr 29, 2019 |
| 5293293 | Mar 08, 2011 | 5642113 | Feb 15, 2015 | 5835462 | Sep 30, 2016 | 5987066 | Dec 03, 2016 | 6388962 | Nov 16, 2015 |
| 5418764 | May 23, 2012 | RE37428 | Feb 12, 2012 | 5838656 | Jan 30, 2011 | 6046968 | Apr 04, 2017 | 6526006 | April 29, 2022 |
| 5488605 | Feb 24, 2014 | 5654947 | Aug 05, 2014 | 5838696 | Feb 16, 2015 | 6047397 | Feb 16, 2015 | 6538982 | Jan 24, 2020 |
| 5508981 | Apr 16, 2013 | 5682365 | Oct 28, 2014 | 5898655 | Jun 24, 2016 | 6075761 | Apr 02, 2017 | | |
| 5515346 | May 07, 2013 | 5696505 | Feb 08, 2015 | 5901123 | Jan 08, 2017 | 6181672 | Oct 18, 2019 | | |
| 5533001 | Jul 02, 2013 | 5757733 | Jan 30, 2011 | 5917857 | Dec 12, 2016 | 6219308 | Jan 30, 2011 | | |
| 5587990 | Jan 30, 2011 | 5790056 | Aug 30, 2016 | 5920272 | Feb 08, 2015 | 6236804 | Feb 26, 2017 | | |

**Philips and Sony patents infringed by SACD player products**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5068846 | Nov 26, 2008 | 5610880 | Jan 30, 2011 | 5838696 | Feb 16, 2015 | 5995493 | May 07, 2017 | 6266368 | Jan 15, 2018 |
| 5212678 | Sep 28, 2010 | 5696505 | Feb 08, 2008 | 5850456 | Feb 06, 2017 | 6023490 | Apr 09, 2017 | 6269338 | Sep 25, 2017 |
| 5463607 | Oct 31, 2012 | 5745454 | Sep 20, 2016 | 5859821 | Oct 30, 2016 | 6041302 | Nov 10, 2017 | 6275176 | Mar 18, 2017 |
| 5508981 | Apr 16, 2013 | 5790056 | Aug 30, 2016 | 5878080 | Feb 07, 2017 | 6047397 | Feb 16, 2015 | 6275457 | Apr 01, 2019 |
| 5515346 | May 07, 2013 | 5798990 | Sep 16, 2016 | 5960037 | Apr 09, 2017 | 6076062 | Dec 09, 2016 | 6285301 | Mar 16, 2019 |
| 5587979 | Jan 17, 2009 | 5818367 | Jul 07, 2015 | 5920272 | Feb 08, 2015 | 6144320 | Mar 19, 2019 | 6289306 | Nov 07, 2017 |
| 5587990 | Jan 30, 2011 | 5825731 | Nov 27, 2016 | 5920874 | Nov 16, 2015 | 6229463 | Mar 15, 2019 | 6370090 | Jun 8, 2019 |

**Philips, Sony, MEI, JVC, France Telecom and IRT patents infringed by VCD player products**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5068846 | Nov 26, 2008 | 5214678 | May 31, 2010 | 5539829 | Jun 1, 2010 | 5844867 | Dec 1, 2015 | RE34965 | Jan 18, 2010 |
| 5113255 | May 11, 2010 | 5223949 | Apr 17, 2012 | 5606539 | Feb 25, 2014 | 5991715 | Nov 23, 2016 | | |
| 5128758 | July 7, 2009 | 5323396 | Jun 1, 2010 | 5745641 | Apr 28, 2015 | 6691086 | Jul 19, 2021 | | |
| 5179442 | Jan 12, 2010 | 5530655 | Jun 1, 2010 | 5777992 | Jun 1, 2010 | RE35158 | Apr 26, 2010 | | |

**Royal Philips Electronics N.V. and U.S. Philips patents infringed by Blu-ray Players**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5737286 | Dec 1, 2012 | 6226244 | Dec 1, 2012 | 6628584 | Oct 25, 2021 | 7200795 | Mar 26, 2023 |
| 5930210 | Dec 1, 2012 | 6370102 | Dec 18, 2015 | 7178083 | May 29, 2024 | | |

**Royal Philips Electronics N.V. and U.S. Philips patents infringed by Blu-ray PC Drives**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5737286 | Dec 1, 2012 | 6226244 | Dec 1, 2012 | 6628584 | Oct 25, 2021 | 7200795 | Mar 26, 2023 |
| 5930210 | Dec 1, 2012 | 6370102 | Dec 18, 2015 | 7178083 | May 29, 2024 | | |

**Royal Philips Electronics N.V. and U.S. Philips patents infringed by Blu-ray Recorders**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4901300 | Nov 1, 2008 | 5835462 | Sept 30, 2016 | 7046596 | Dec 20, 2023 | 7158472 | Jan 29, 2025 |
| 5339301 | Aug 16, 2011 | 6115340 | Feb 14, 2017 | 7085209 | May 7, 2023 | 7200795 | Mar 26, 2023 |
| 5682365 | Oct 28, 2014 | 6952381 | Jun 12, 2023 | 7113467 | Oct 11, 2023 | | |

**Canadian Patents**

**Philips and Sony patents infringed by CD player products**

| | |
|---|---|
| 1322593 | Sep 28, 2010 |

**Philips, Sony , LGE and Pioneer patents infringed by DVD Video and DVD ROM player products**

| | | | |
|---|---|---|---|
| 2043670 | May 31, 2011 | 2335403 | May 31, 2011 |

**Philips, Sony, Ricoh, and Yamaha patents infringed by CD-ReWriteable (CD-RW) recorder/player products**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1266425 | Feb 25, 2009 | 1322052 | Sep 7, 2010 | 1332466 | Oct 11, 2011 | 2036585 | Feb 19, 2011 |
| 1305253 | Dec 16, 2008 | 1322593 | Sep 28, 2010 | 2013052 | Mar 26, 2010 | 2043670 | May 31, 2011 |
| 1319983 | Jul 6, 2010 | 1326710 | Feb 01, 2011 | 2016055 | May 4, 2010 | 2335403 | May 31, 2011 |
| 1319984 | Jul 6, 2010 | 1330591 | Jul 5, 2011 | 2021026 | Jul 05, 2012 | | |
| 1319985 | Jul 6, 2010 | 1331807 | Aug 30, 2011 | 2025644 | Sep 18, 2010 | | |

**Philips, Sony, Hewlett-Packard and Pioneer patents infringed by DVD+R, DVD+RW, DVD-R and DVD-RW recorder/player products**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1305253 | Dec 16, 2008 | 1330591 | Jul 05, 2011 | 2002481 | Nov 08, 2009 | 2016055 | May 04, 2010 |

**Philips and Sony patents infringed by SACD player products**

| | |
|---|---|
| 1322593 | Sep 28, 2010 |

**Philips, Sony, MEI, JVC and IRT patents infringed by VCD player products**

| | | | | | | |
|---|---|---|---|---|---|---|
| 2017841 | May 30, 2010 | 2018031 | Jun 1, 2010 | 2043670 | May 31, 2011 |
| 2017935 | May 30, 2010 | 2036585 | Feb 19, 2011 | 2304917 | Jun 1, 2010 |

Note: This list is subject to revision. Updated patent lists may be found at www.licensing.philips.com.

9

## Pre-recorded CD Disc Litigation List

ADVANCED DUPLICATION SERVICES LLC

CINRAM INTERNATIONAL INC.
CINRAM INC.
CINRAM MANUFACTURING INC.

ENTERTAINMENT DISTRIBUTION COMPANY (USA) LLC
ENTERTAINMENT DISTRIBUTION COMPANY
UNIVERSAL MUSIC GROUP
UNIVERSAL MUSIC GROUP MANUFACTURING & LOGISTICS

INOVERIS LLC
METATEC INTERNATIONAL, INC.
MTI ACQUISITION, LLC
ZOMAX INCORPORATED

OPTICAL EXPERTS MANUFACTURING, INC

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
Washington, D.C. 20436

In the Matter of

CERTAIN RECORDABLE COMPACT
DISCS AND REWRITABLE COMPACT
DISCS

Investigation No. 337-TA-474

## GENERAL EXCLUSION ORDER

The Commission has determined in this investigation that there is a violation of section
337 of the Tariff Act of 1930, as amended (19 U.S.C. § 1337), in the unlawful importation, sale
for importation, and/or sale after importation of certain recordable and rewritable compact discs
that infringe certain claims of one or more of the following patents:  U.S. Patent Nos. 4,807,209;
4,962,493; 4,972,401; 5,023,856; 4,999,825; and 5,418,764.

Having reviewed the record in this investigation, including the written submissions of the
parties, the Commission has made its determinations on the issues of remedy, the public interest,
and bonding.  The Commission has determined that a general exclusion from entry for
consumption is necessary to prevent circumvention of an exclusion order limited to products of
named persons because there is a pattern of violation of section 337 and it is difficult to identify
the source of infringing products.  Accordingly, the Commission has determined to issue a
general exclusion order prohibiting the unlicensed importation of infringing recordable and
rewritable compact discs.

The Commission has also determined that the public interest factors enumerated in 19
U.S.C. §§ 1337(d), (f), and (g) do not preclude the issuance of the general exclusion order, and

that the bond during the Presidential review period shall be in the amount of US$0.06 for each

covered article in question.

Accordingly, the Commission hereby ORDERS that:

1.    Recordable and rewritable compact discs covered by one or more of the following
      claims of the following patents:

          claims 1, 5, and 6 of U.S. Patent No. 4,807,209;
          claim 11 of U.S. Patent No. 4,962,493;
          claims 1-3 of U.S. Patent No. 4,972,401;
          claims 1, 3, and 4 of U.S. Patent No. 5,023,856;
          claims 1, 2, 4-6 of U.S. Patent No. 4,999,825; and
          claims 20, 23-34 of U.S. Patent No. 5,418,764

      are excluded from entry for consumption, entry for consumption from a foreign-
      trade zone, and withdrawal from warehouse for consumption for the remaining
      terms of those patents, except under license of the patent owner or as provided by
      law.

2.    Notwithstanding paragraph 1 of this Order, the aforesaid recordable and
      rewritable compact discs are entitled to entry into the United States for
      consumption, entry for consumption from a foreign-trade zone, and withdrawal
      from warehouse for consumption, under bond in the amount of US$0.06 per such
      articles, pursuant to subsection (j) of section 337 of the Tariff Act of 1930, as
      amended, 19 U.S.C § 1337(j), and the Presidential Memorandum for the United
      States Trade Representative of July 21, 2005 (70 *Fed. Reg.* 43251), from the day
      after this Order is received by the United States Trade Representative, until such
      time as the United States Trade Representative notifies the Commission that she
      approves or disapproves this action, but in any event, not later than sixty (60) days
      after the date of receipt of this Order.

3.    Notwithstanding paragraphs 1 and 2 of this Order, the aforesaid recordable or
      rewritable compact discs are entitled to entry for consumption into the United
      States, without posting of bond, if upon importation they accompany a person
      arriving in the United States and are for the arriving person's personal use, or
      which are otherwise imported into the United States in such small quantities and
      under such circumstances so as to reasonably indicate to the satisfaction of the
      U.S. Customs Service that they are being imported for personal use rather than for
      commercial purposes.

4.    When the U.S. Bureau of Customs and Border Protection (Customs) is unable to

2

determine by inspection whether recordable and rewritable compact discs fall within the scope of this Order, it may, in its discretion, accept a certification, pursuant to procedures specified and deemed necessary by Customs, from persons seeking to import said recordable and rewritable compact discs that they are familiar with the terms of this Order, that they have made appropriate inquiry, and thereupon state that, to the best of their knowledge and belief, the products being imported are not excluded from entry under paragraph 1 of this Order. At its discretion, Customs may require persons who have provided the certification described in this paragraph to furnish such records or analyses as are necessary to substantiate the certification.

5.    In accordance with 19 U.S.C. § 1337(l), the provisions of this Order shall not apply to recordable and rewritable compact discs imported by and for the use of the United States, or imported for, and to be used for, the United States with the authorization or consent of the Government.

6.    The Commission may modify this Order in accordance with the procedure described in section 210.76 of the Commission's Rules of Practice and Procedure (19 C.F.R. § 210.76).

7.    The Secretary to the Commission shall serve copies of this Order upon each party of record in this investigation and upon the Department of Health and Human Services, the Department of Justice, the Federal Trade Commission, and the Bureau of Customs and Border Protection.

8.    Notice of this Order shall be published in the *Federal Register*.

By order of the Commission.

Marilyn R. Abbott
Secretary to the Commission

Issued: February 5, 2007

3

**Philips Intellectual Property & Standards**  

P.O. box 220, 5600 AE Eindhoven, The Netherlands

TO WHOM IT MAY CONCERN                                    Date: February 20, 2007

Subject: LICENSED STATUS CONFIRMATION DOCUMENT      Ref: LE006609

Auth. code: W07221

This Licensed Status Confirmation Document (LSCD), whether in hard copy or in electronic form, confirms that the products specified below ("Products") originate from either

a.    a Licensed Manufacturer duly licensed by Philips under the essential patent rights of Philips to manufacture the Products in China and to sell or otherwise dispose of such Products worldwide; or

b.    an Authorized Reseller duly authorized by Philips to trade in the Products worldwide.
      (Licensed Manufacturer or Authorized Reseller hereinafter referred to as Applicant)

| | |
|---|---|
| Product: | DVD-Video Player |
| Brand Name: | XYZ Brand |
| Model: | XYZ-300 |
| Quantity: | 1000 |
| Serial Numbers: | 00001 - 01000 |
| Recipient Name: | XYZ Electronics Corp. |
| Country of Destination: | United States |
| Container number: | ABCD1234567 |
| Delivery date (ETA): | March 2007 |
| Invoice number: | 123456 |
| Add. information: | Sample LSCD |

Philips has issued this LSCD to Applicant based on Applicant's representation to Philips that the above information is accurate, complete and true. Applicant remains fully responsible for the continued correctness, accuracy and completeness of all information contained in this LSCD. This LSCD is without prejudice to any rights of Philips and/or any third party right holder, as the case may be, and neither Philips nor such third party right holder are bound by any information provided by Applicant in connection with this LSCD. Philips expressly reserves the right to revoke any confirmation herein in the event that any information provided to Philips in connection with this LSCD is inaccurate, incomplete and/or untrue. This LSCD does not constitute any waiver of any condition, covenant or term from either the relevant license agreement or the authorized re-seller agreement concluded between Philips and Applicant or any existing rights, powers or privileges therein. This LSCD is void if issued after the Shipment started.

Any changes to this LSCD will render it invalid. If you have any doubts about the authenticity of this LSCD, or would like to contact Philips for any reason concerning licensing discs or players, please send an email to info.licensing@philips.com or check our website www.ip.philips.com.

Philips Intellectual Property & Standards.

Philips Intellectual Property & Standards
Commercial Register Eindhoven no. 17047664

## Unlicensed Suppliers List

### Unlicensed Suppliers of CD-R Discs
**Suppliers and Brands distributing at least some CD-R Discs that are not licensed by Philips**

**CHINA**
Chongqing Xinhua Multimedia Development Co., Ltd.
Dongguan Starcassette Tape Products Co., Ltd.
Dongguan Xin Wei Plastics Products Co Ltd
Dynex Brand
Fortune (Jiangsu) Multimedia Limited
Guangdong Angle Audiovisual Co Ltd
Guangdong Aolin Magnetic Electric Industrial Co., Ltd.
Guangzhou TCL Digital Storage Technologies Co Ltd
Guangdong Yuedong Magneto-Electric Co.
Hangzhou Nature Industrial Co., Ltd.
Jin Long (Yan Tai) DVD Electronics Co., Ltd.
Kunshan Hutek Co., Ltd.
Liao Sheng Trading Company
LongMa Optical Technology Co., Guangdong
Nanhai Mingzhu Film & Tape Co
Nanhai Pearl Audio & Video Co.
Prodisc Technology Inc. (China)
Puning Goldisc Hi-Tech Co., Ltd
Ritek Corporation
Shanghai Dayuo Technologies Development Co Ltd (Grand Technology)
Shanghai Grand Technology Limited
ShanTou Xinaolin Magnetic Electric CO.,Ltd
Shenzhen Guanyu Industry Co., Ltd.
Shenzhen SG and SAST Digital Optical Discs Co.
Well Glory Industrial Limited
**HONG KONG**
ACME Productions Industries Company
CMC Magnetics (HK) Ltd.
Daily Star Technology Limited
Early Light Digital Holdings Limited
Highway Technology Development Ltd.
Mediastar Technology Limited
Pacific Digital Technology Limited
Pop Hero Holdings Ltd.
Pro Power International Ltd.
T.C. Lawson Optical Technology Limited
Viva Magnetics Ltd.
Wealth Fair Investment Limited

**INDIA**
Computer Skill Ltd.
Euro Multivision Limited
Exon Technologies Limited
Super Cassettes Industries Limited
**KOREA**
BeAll Developers, Inc.
Future Media Co., Ltd.
Tae Il Media Co., Ltd.
Woongjin Cuchen Co., Ltd.
**MALAYSIA**
Memory Tech Sdn Bhd
**MEXICO**
Vigobyte de Mexico S.A. de C.V.
**SINGAPORE**
MJC (Singapore) PTE LTD
**TAIWAN**
Auristar Ind. Co., Ltd.
Besidisc Technology Corp.
CMC Magnetics Corporation (Khypermedia)
Digital Storage Technology Ltd. (Taiwan)
Fornex Technology Corp.
Gigastorage Corporation
KingPro Mediatek Inc.
Khypermedia Brand
Postech Corporation
Princo Corporation
Prodisc Technology Inc.
Ramedia Corporation
Ritek Corporation
Superbase Industrial Limited
Taroko International Co., Ltd.
Vanguard Disc Inc.
Xcitek Inc.
**THAILAND**
Panstar Electronics Ltd.
**UNITED STATES**
Skymedia Manufacturing, LLC

### Unlicensed Suppliers of CD-RW Discs
**Suppliers and Brands distributing at least some CD-RW Discs that are not licensed by Philips**

**AUSTRALIA**
U-Tech Media Australia Pty Limited
**INDIA**
Computer Skill Ltd.
**SINGAPORE**
Fornet International Pte Ltd.
**TAIWAN**
Delphi Technology Inc.
Digital Storage Technology Ltd. (Taiwan)

Fornex Technology Corp.
KingPro Mediatek Inc.
Postech Corporation
Princo Corporation
Ramedia Corporation
Vanguard Disc Inc.
**THAILAND**
Panstar Electronics Ltd.

### Unlicensed Suppliers of DVD+R Discs
**Suppliers and Brands distributing at least some DVD+R Discs that are not licensed by Philips**

**HONG KONG**
Advance Media Ltd.
CMC Magnetics (HK) Ltd.
Highway Technology Development Ltd.
Infoworld Technology Limited
Mega Century Limited
Rapid Success Enterprise Limited
Starview Technology Ltd.
T.C. Lawson Optical Technology Limited
Wing Shing Optical Disc Company Limited

**MALAYSIA**
Memory Tech Sdn Bhd
**SINGAPORE**
MJC (Singapore) PTE LTD
**TAIWAN**
CMC Magnetics Corporation (Khypermedia)
HI-LE Optical Disc Technology Corp.
Princo Corporation
Prodisc Technology Inc.
Ritek Corporation
Xcitek Inc.

### Unlicensed Suppliers of DVD-R Discs
**Suppliers and Brands distributing at least some DVD-R Discs that are not licensed by Philips**

**HONG KONG**
ACME Productions Industries Company
Advance Media Ltd.
Aus Disc Digital Technology Company Limited
Chuen Wui Group Limited
Daily Star Technology Limited
Grand Strong Technology Limited
Highway Technology Development Ltd.
Infoworld Technology Limited
Mega Century Limited
Rapid Success Enterprise Limited
Starview Technology Ltd.
T.C. Lawson Optical Technology Limited
Wing Shing Optical Disc Company Limited
**INDIA**
Euro Multivision Limited

**MALAYSIA**
Memory Tech Sdn Bhd
**SINGAPORE**
MJC (Singapore) PTE LTD
**TAIWAN**
CMC Magnetics Corporation (Khypermedia)
HI-LE Optical Disc Technology Corp.
Postech Corporation
Princo Corporation
Prodisc Technology Inc.
Ritek Corporation
Taroko International Co., Ltd.
Vanguard Disc Inc.
Xcitek Inc.
**THAILAND**
Panstar Electronics Ltd.

## Unlicensed Suppliers of DVD-Video Players and Recorders

Suppliers and Brands distributing at least some DVD-Video Players and Recorders that are not licensed by Philips

**CHINA**
Adomax Zia Electronic Enterprise Co. (Zhaoqing) Ltd.
Advanced Video & Communication Inc. (DongGuan China office)
Amoisonic Electronics Co., Ltd
Asia Innovative Technology Co., Ltd.
Behavior Tech Computer Corporation (China)
Beijing Golden Yuxing Electronics and Technology Co., Ltd.
Benti Electronics Co., Ltd.
Changzhou Xingqiu Electronic Co., Ltd.
Chengdu Book Digital Co., Ltd.
CIS Technology Inc.
Citron Electronic Co., Ltd.
Coby Electronics Co., Ltd.
Cosmic Digital Technology, Inc.
Cyberbase Holding Shares Ltd.
Dingtian Electronics Industry Co. Ltd.
Dongguan Dongquan Electronic Equipment Co., Ltd.
Dongguan Great Vision Technology Co., Ltd.
Dongguan Hanhua Photo Electricity Co., Ltd.
Dongguan Lelai Electronics Co., Ltd.
Dongguan Qisheng Electronics Industrial Co., Ltd.
Dongwan Aomeijia Electric Co., Ltd.
Emprex Technologies Corp.
Enlight Corp.
Favor Digital Technology Co., Ltd.
Foshan Fengtai Gaoke Electric Appliance Co., Ltd.
Foshan Xing Guang Gao Fei Electron Co. Ltd.
Foxconn Electronics
Foxda Technology Industrial (Shenzhen) Co., Ltd.
Futic Electronics Ltd.
Giant Video Electronics Company Limited
Global Brands Manufacture Limited
Guangdong Mintaus Electronics Co., Ltd.
Guangdong Xin Tianli Electronics Co., Ltd.
Guangzhou Huadu Fortune Star Electronics Factory
Guangzhou Huadu Koda Electronics Co., Ltd.
Guangzhou Panyu Juda Car Audio Equipment Co., Ltd.
Guangzhou Rowa Electronics Co. Ltd.
Hon Hai Precision Inc. Co. Ltd.
Innovate Technology Co., Ltd.
Jiangmen Nobel Electronics Technology Co., Ltd.
Jiangsu Hongtu High Technology Co., Ltd.
Jiangsu Syber Electronic Co., Ltd.
Jinhua Electronic Equipment Co., Ltd.
Kenka Group Company Limited
Link Concept Technology, Ltd.
Pro-Tech Industries Corporation
Sampo Electric (Suzhou) Co., Ltd.
Shanghai General Digital Technology Co., Ltd.
Shanghai Kingway Electronic Co., Ltd.
Shanghai SVA-DAV Electronics Co., Ltd.
Shanghai Wing Sum Electronics Technology Co., Ltd.
Shantou Idall Enterprise Co., Ltd.
Shenzhen A&V Lab Technology Co., Ltd.
Shenzhen AKI Digital Electrical Appliance Co. Ltd.
Shenzhen Artink Tech Co., Ltd.
Shenzhen Fugle Technology Co., Ltd.
Shenzhen GIEC Electronics Co., Ltd.
Shenzhen Godwing Electronics Co., Ltd.
Shenzhen Harma Technology Co., Ltd.
Shenzhen Jin Jia Electronics Industrial Co., Ltd.
Shenzhen JinMeiWei Electron Co., Ltd
Shenzhen Kaiser Electronic Co., Ltd.
Shenzhen Kingcorp Technology Co., Ltd.
Shenzhen Kingup Electrical Co., Ltd.
Shenzhen Messo Electron Technology Co., Ltd.
Shenzhen Million Industry Co., Ltd.
Shenzhen Mizuda Electronic Co., Ltd.
Shenzhen Oriental Digital Technology Co
Shenzhen Paragon Industries (China) Inc.
Shenzhen SAST Electronics Co., Ltd.
Shenzhen Shanling Electronic Co., Ltd.
Shenzhen Skywood Info-Tech Industries Co., Ltd.
Shenzhen Soben Digital Technology Development Co., Ltd.
Shenzhen Vali Technology Co., Ltd.

Shenzhen Well Joint Electronics Co., Ltd.
Shenzhen Xing Feng Industry Company Limited
Shenzhen Zhongcaixing Electronics Co., Ltd.
Tianjin Mitsumi Electric Co., Ltd.
Ultrastar Technology (Shenzhen) Co. Ltd.
Unitek Electronics (Shenzhen) Co., Ltd.
World Connect Enterprises Limited
Xingzhen-Yu Electronics (Shenzhen) Co., Ltd.
Ya Hsin Electronics (Suzhou) Co., Ltd.
Zhenjiang Jiangtui Group Co., Ltd.
Zhongshan Kenloon Digital Technology Co., Ltd.
Zhongshan Temei Video & Audio Electronics Ltd.
Zhongshanaki Oingcai AV Technology Co., Ltd.
Zhuhai Liming Industries Co. Ltd.
**HONG KONG**
Amtron Technology Limited
Apollo Electronics Group Limited
Asane Internationals Limited
Congii Electronics (Hong Kong) Limited
DongJuan ShiPai FuLong Llanke Electronics! Factory
Eagle Group International Ltd
Eagle Trading International Ltd.
Express Luck Industrial Ltd.
FLX (HK) Ltd.
Full Luck Plastic Electronics Factory
Futic Electronics Ltd.
GBM Advanced Technology International Inc.
Giant Video Electronics Co., Ltd.
Great Wall Electronics Limited
Guangdong Cosmic Digital Technology., Ltd.
GVG Digital Technology Holdings (HK) Limited
Leaderwave Electronics (Q.X) Factory
Le Hong Po Company Limited
Micro Electric (Hong Kong) Ltd.
Pro-Tech Industries Corporation
Sounding Audio Industrial Ltd.
Sounding Industries Ltd.
Team Force Electronic Company Limited
Wust Multimedia Limited
**KOREA**
Advanced Digital Technology Co., Ltd.
BK Solution Ltd.
Fine DNC Co., Ltd.
Tae Young Telstar Co., Ltd.
Techsan I&C Co., Ltd.
Wigooglobal Co., Ltd
**MACAU**
Futic Electronics Ltd. (sub. Futic Electronics Ltd., Hong Kong)
**TAIWAN**
Accesstek Inc.
Acer Incorporated
Actima Tech. Corp.
ADI Corporation
Advanced Video & Communication Inc.
Align Machine Tool Co., Ltd
Aopen Incorporated
Argus Electronics Co., Ltd.
Behavior Tech Computer Corporation
CIS Technology Inc.
Citron Electronics Co., Ltd.
Comjet Information Sys. Corp.
Create Century High-Tech Corp.
Dai Hwa Industrial Co., Ltd.
Datavideo Technologies Co., Ltd.
E-Lead Electronic Co., Ltd.
Emprex Technologies Corp.
Enlight Corp.
EPO Science & Technology Inc.
Hon Hai Precision Inc. Co., Ltd.
Quanta Storage (QSI)
Sampo Corporation
Talung Co.
TECO Electric & Machinery Co., Ltd.
Ya Hsin Industrial Co., Ltd.

## Unlicensed Suppliers of DVD Recorders

Suppliers and Brands distributing at least some DVD Recorders that are not licensed by Philips

**TAIWAN**
Asustek Computer Inc

October, 2007

EXHIBIT 13

# COOPER & DUNHAM LLP

ATTORNEYS AT LAW

1185 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10036

TELEPHONE: (212) 278-0400

CHRISTOPHER C. DUNHAM
NORMAN H. ZIVIN
JOHN P. WHITE
ROBERT B.G. HOROWITZ
ERIC D. KIRSCH
GARY J. GERSHIK
WENDY E. MILLER
ROBERT T. MALDONADO
MARIA V. MARUCCI
JEFFREY C. SHIEH
TONIA A. SAYOUR
ASHOK G. CHANDRA*
LISA E. HORWITZ*

IVAN S. KAVRUKOV
PETER D. MURRAY
WILLIAM E. PELTON
ROBERT D. KATZ
PAUL TENG
PETER J. PHILLIPS
RICHARD S. MILNER
RICHARD F. JAWORSKI
AUDE GERSPACHER
BRIAN J. AMOS
GREGORY J. CARBO
JOSEPH A. SHERINSKY*
HINDY R. DYM*

FACSIMILE: (212) 391-0525
(212) 391-0526
(212) 391-0630
(212) 391-0631
(212) 827-0247

SCIENTIFIC ADVISOR
JAMES R. MAJOR, D. PHIL.
AMANDA L. WILLIS, PH.D.

FOUNDED 1887
www.cooperdunham.com

February 21, 2008

*NEW YORK STATE BAR ADMISSION PENDING

**BY FEDERAL EXPRESS**
Judge Charles L. Brieant
United States Courthouse
300 Quarropas St., Room 275
White Plains, NY 10601

      Re:    Koninklijke Philips Electronics N.V., et al. v. Cinram International Inc. et al.,
          Civil Action No.: 08-00515 (CLB)

Dear Judge Brieant:

This action involves a claim for alleged patent infringement of U.S. Patent 5,068,846 coupled with a contract count that is entirely contingent on the patent claim. The defendants firmly deny any infringement or breach of contract.

Defendants request a pre-motion conference to discuss their proposed motion for preliminary relief directing plaintiffs to refrain from sending misleading threats to defendants' customers and to produce copies of such communications to allow for remedial advice to customers.

The communications at issue include threats that are objectively baseless. Defendants do not contest any effort by plaintiffs to send a legitimate notice of patent rights or intent to enforce such rights.[1] Defendants only seek relief regarding misleading content of plaintiffs' communications to customers, such as:

- Plaintiffs improperly threatened a customer by a letter dated January 31, 2008 (copy attached as Exhibit A) (1) alleging that the customer buys compact discs ("CDs") that

---

[1] Injunctions granted in case of objectively baseless threats to customers: *Etna Products Co., Inc. v. Harold Finney*, 1993 U.S. Dist. LEXIS 2796, *9-10 (S.D.N.Y. 1993); *Lucasey Mfg. Corp. v. Anchor Pad Intern., Inc.*, 698 F.Supp. 190, 193 (N.D. Cal. 1988); *T.J. Roaco, Ltd. v. Syntex Pharmaceuticals Int'l, Ltd.*, 227 U.S.P.Q. 1033, 1036 (D.N.J. 1985). Injunctions denied where a notice of patent rights was not objectively baseless: *Golan v. Pingel Enter., Inc.*, 310F.3d 1360, 1371 (Fed.Cir. 2002); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377.

infringe U.S. Patent 5,790,512, when in fact this patent is not the patent-in-suit and has no application to CDs even according to plaintiffs' representations to industry[2], and (2) misrepresenting that the customer bought CDs from "manufacturers who do not pay Philips CD Disc royalties;" and

- Plaintiffs improperly threatened another customer in an email dated February 13, 2008 (copy attached as Exhibit B), alleging that "All CD discs manufactured by Zomax go unreported/unpaid and therefore infringe," when in fact Zomax has both reported and paid for CD discs.[3]   Moreover, the communication improperly seeks, on that basis, to divert the customer to another supplier of CD discs.

These objectively baseless communications harm valuable business relationships that defendants have built with their customers.  Their misleading content takes them outside the scope of protected advice regarding patent rights.  Absent the requested relief, it will not be possible for defendants to identify and compute damages from plaintiffs' conduct or to take remedial steps

Defendants requested but did not receive plaintiffs' voluntary cooperation in identifying such communications to customers and taking remedial action.

Accordingly, defendants request a pre-motion conference to seek permission to file a motion for a preliminary injunction directing plaintiffs to (1) refrain from sending such communications to customers, (2) produce the communications sent to such customers since the filing of or pertaining to this action and related actions that plaintiffs concurrently filed in Texas but have not yet served, and (3) cooperate in sending communications to customers withdrawing the misleading allegations.

Respectfully submitted,

*Ivan Kavrukov*

Ivan S. Kavrukov
Attorney for Defendants

Cc:     Vince P. Kovalick (by email, confirmation by Federal Express)
Edward D. Johnson (by email, confirmation by First Class Mail)
Christopher J. Houpt (by email, confirmation by First Class Mail)
Trey Yarbrough (by email, confirmation by First Class Mail)

---

[2]  *See* (a) last page of Exhibit A hereto, in which Philips identifies patent 5,790,512 as applicable only to discs other than CDs, and (b) Exhibit C attached hereto, downloaded from plaintiffs' webpage on February 21, 2008, which identifies patents allegedly applicable to CDs but does not include patent 5,790,512.
[3]  Zomax is named as a defendant in a complaint that plaintiffs filed in the Eastern District of Texas concurrently with their complaint in this court and alleging infringement of the same patent.  Moreover, some of the CDs at issue were made for Zomax by defendants in this action.

EXHIBIT 13A

# PHILIPS

## Philips Intellectual Property & Standards

January 31, 2008

**RECEIVED**

FEB 05 2008

BOULEVARD MANAGEMENT

Eagles Recording Company
21731 Ventura Boulevard
Suite 300,
Woodlands Hills, CA 91364
Chantilly, VA 20151

Re:    *Philips' Intellectual Property Rights Covering CD and DVD Products*

Dear Sir or Madame:

We represent Koninklijke Philips Electronics, N.V., U.S. Philips Corporation and their related companies (collectively, "Philips") and write regarding your companies' purchase and sale of Compact Discs (CD Discs").

As you may know, Philips administers worldwide joint licensing programs for essential patents covering CD and DVD disc technologies. Every CD, CD-R/RW, DVD, DVD-R/RW and player and disc made, used, offered for sale, sold or imported into the United States or Canada is covered by these essential patents. A list of patents infringed by CD discs is attached to this letter, placing you and your company on notice of these patents in accordance with 35 U.S.C. § 287.

Philips is informed that your company, the Eagles Recording Company, purchased and sold CD Discs made from manufacturers who do not pay Philips CD Disc royalties and therefore is selling and trading in unlicensed products. Philips wishes to advise you that under 35 U.S.C. § 271, companies such as the Eagles Recording Company that sell unlicensed products are infringers of patents belonging to Philips and others.

For example, we specifically call your attention to the fact that United States Philips Corporation is the owner of U.S. Patents 5,790,512 ("the '512 Patent"), entitled "Optical Information Carrier". Please also note U.S. Patent No. 5,068,846, entitled "Reflective, Optical Record Carrier," relating to the CD Systems ("the '846 patent"). Therefore, under 35 U.S.C. § 271, companies that make,



Philips Electronics North America Corporation    Tel: (914) 945-6000
345 Scarborough Road    Fax: (914) 332-0615
P.O. Box 3001
Briarcliff Manor, NY 10510-8001

Eagles Recording Company
January 31, 2008
Page 2


use, offer to sell, sell and or import unlicensed CD discs into the United States infringe
upon these patents and are subject to liability, including enhanced damages for willful
patent infringement and liability for Philips' attorneys' fees.

This Philips website will also provide you with more information about the worldwide
joint licensing programs and a list of essential patents (www.licensing.philips.com).

Philips demands that the Eagles Recording Company immediately cease and desist from
selling or trading in unlicensed CD's and provide an accounting of and payment of
royalties for all unlicensed CD discs sold or otherwise disposed of by your company. We
expect to receive written confirmation of your willingness to cease such infringing
conduct **within ten (10) days** of receipt of this notice.

Kindly be advised that nothing contained in this letter shall constitutes a waiver of any
rights or remedies that Philips may have against the Eagles Recording Company and all
such rights and remedies whether in law or equity, arising under state, federal or other
law, are hereby expressly reserved.


Very truly yours,

William J. Lenihan


Enclosures:

Optical Media Disc Patent List

**U.S. and Canada Optical Media Disc Patents**

## U.S. Patents (patent numbers and expiry dates/ * indicates "Non-essential" patents)

**Royal Philips Electronics N.V., U.S. Philips and Sony patents infringed by CD disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 5021879* | Apr 25, 2008 | 5390159* | Feb 14, 2012 | 5684786* | Nov 04, 2014 | 5754521* | Dec 14, 2015 | 5859821* | Oct 30, 2016 |
| 5068846 | Nov 26, 2008 | 5587991* | Jan 17, 2009 | 5699476* | Dec 16, 2014 | 5778257* | Jan 29, 2016 | 5878019* | Mar 02, 2016 |
| 5305301 | Apr 19, 2011 | 5606539* | Feb 25, 2014 | 5740310* | Apr 14, 2015 | 5798990* | Sep 16, 2016 | | |
| 5341356* | Jan 07, 2012 | 5608697 | Mar 04, 2014 | 5745454* | Sep 20, 2016 | 5825731* | Nov 27, 2016 | | |
| | | 5661715* | Oct 20, 2014 | 5745641* | Apr 28, 2015 | 5844867* | Dec 01, 2015 | | |

**Royal Philips Electronics N.V., U.S. Philips, Sony and Pioneer patents infringed by DVD Video, DVD Audio, DVD ROM and DVD RAM disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4961077 | Feb 19, 2008 | 5530655 | June 01, 2010 | 5677903 | Oct 14, 2014 | 5841753 | Apr 18, 2012 | 5991715 | Nov 23, 2016 |
| 4972484 | Nov 20, 2007 | 5539829 | Jun 01, 2010 | 5696505 | Feb 08, 2015 | 5850456 | Feb 08, 2015 | 6023490 | Apr 09, 2017 |
| 5068846 | Nov 26, 2008 | 5544247 | Oct 25, 2014 | 5740317 | Apr 14, 2015 | 5864530 | Dec 29, 2013 | 6289308 | Jun 01, 2010 |
| 5214678 | May 31, 2010 | 5605782 | Dec 22, 2014 | 5790056 | Aug 30, 2015 | 5878080 | Feb 07, 2017 | 6301389 | Jan 30, 2016 |
| 5323396 | Jun 01, 2010 | 5606618 | Jun 01, 2010 | 5790512 | Dec 22, 2014 | 5920272 | Feb 08, 2015 | 6370102 | Dec 18, 2015 |
| 5481643 | Mar 18, 2013 | 5610985 | Jan 21, 2014 | 5818943 | Oct 25, 2014 | 5920874 | Nov 16, 2015 | 6388962 | Nov 16, 2015 |
| 5511057 | Dec 29, 2013 | 5642113 | Feb 15, 2015 | 5838696 | Feb 16, 2015 | 5960037 | Apr 09, 2017 | | |

**Royal Philips Electronics N.V., U.S. Philips, Sony and Taiyo Yuden patents infringed by CD-Recordable (CD-R) and CD-ReWritable (CD-RW) disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4413340 | May 20, 2011 | 5023856 | Jun 11, 2008 | 5418764 | May 23, 2012 | 5745454* | Sep 20, 2016 | 5878019* | Mar 02, 2016 |
| 4940618 | Jul 10, 2007 | 5068846 | Nov 26, 2008 | 5587979* | Jan 17, 2009 | 5745641* | Apr 28, 2015 | RE34719 | Jul 29, 2008 |
| 4942565 | Sep 28, 2007 | 5080946 | Jan 14, 2009 | 5606539* | Feb 25, 2014 | 5754521* | Dec 14, 2015 | | |
| 4962493 | Oct 09, 2007 | 5090009 | Feb 18, 2009 | 5608697 | Mar 04, 2014 | 5778257* | Jan 29, 2016 | | |
| 4972401 | Nov 20, 2007 | 5126994 | Nov 21, 2009 | 5654947 | Aug 05, 2014 | 5798990* | Sep 16, 2016 | | |
| 4990388 | Feb 05, 2008 | 5155723 | Oct 13, 2009 | 5661715* | Oct 20, 2014 | 5825731* | Nov 27, 2016 | | |
| 4999825 | Nov 01, 2008 | 5305301 | Apr 19, 2011 | 5684786* | Nov 04, 2014 | 5835462 | Sep 30, 2016 | | |
| 5021879* | Apr 25, 2008 | 5341356* | Jan 07, 2012 | 5699476* | Dec 16, 2014 | 5844867* | Dec 01, 2015 | | |
| | | 5390159* | Feb 14, 2012 | 5740310* | Apr 14, 2015 | 5859821* | Oct 30, 2016 | | |

**Royal Philips Electronics N.V., U.S. Philips, Sony, Hewlett-Packard and Pioneer patents infringed by DVD+R, DVD+RW, DVD-R, and DVD-RW disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4949332 | May 09, 2008 | 5508981 | Apr 16, 2013 | 5757733 | Jan 30, 2011 | 5920272 | Feb 08, 2015 | 6243338 | Sep 08, 2018 |
| 4962493 | Oct 09, 2007 | 5515346 | May 07, 2013 | 5790056 | Aug 30, 2016 | 5969651 | Jul 07, 2015 | 6282166 | Apr 02, 2017 |
| 4972401 | Nov 20, 2007 | 5533001 | Jul 02, 2013 | 5790512 | Dec 22, 2014 | 5970045 | Mar 17, 2017 | 6330210 | Apr 29, 2019 |
| 5001692 | Apr 08, 2008 | 5587990 | Jan 30, 2011 | 5805564 | May 29, 2016 | 5978351 | Dec 02, 2017 | 6388962 | Nov 16, 2015 |
| 5025435 | May 09, 2008 | 5605782 | Dec 22, 2014 | 5818943 | July 07, 2015 | 5987066 | Dec 03, 2016 | 6526005 | April 29, 2022 |
| 5060219 | Dec 20, 2008 | 5610880 | Jan 30, 2011 | 5835462 | Sep 30, 2016 | 6046968 | Apr 04, 2017 | 6538982 | Jan 24, 2020 |
| 5068846 | Nov 26, 2008 | 5629924 | Nov 07, 2014 | 5838656 | Jan 30, 2011 | 6047397 | Feb 16, 2015 | RE37428 | Feb 12, 2012 |
| 5150354 | Oct 31, 2009 | 5642113 | Feb 15, 2015 | 5838696 | Feb 16, 2015 | 6075761 | Apr 02, 2017 | | |
| 5293293 | Mar 8, 2011 | 5654947 | Aug 05, 2014 | 5898655 | Jun 24, 2016 | 6181672 | Oct 18, 2019 | | |
| 5418764 | May 23, 2012 | 5682365 | Oct 28, 2014 | 5901123 | Jan 08, 2017 | 6219308 | Jan 30, 2011 | | |
| 5488605 | Feb 24, 2014 | 5696505 | Feb 08, 2015 | 5917857 | Dec 12, 2016 | 6236804 | Feb 26, 2017 | | |

**Royal Philips Electronics N.V., U.S. Philips and Sony patents infringed by SACD disc products**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 5068846 | Nov 26, 2008 | 5696505 | Feb 08, 2008 | 5838696 | Feb 16, 2015 | 5989670 | Apr 09, 2016 | 6229463 | Mar 15, 2019 |
| 5305301 | Apr 19, 2011 | 5732065 | Sep 04, 2016 | 5850456 | Feb 06, 2017 | 5995493 | May 07, 2017 | 6266368 | Jan 15, 2018 |
| 5508981 | Apr 16, 2013 | 5745454* | Sep 20, 2016 | 5859821* | Oct 30, 2016 | 6005837 | May 18, 2018 | 6269338 | Sep 25, 2017 |
| 5511057 | Dec 29, 2013 | 5790056 | Aug 30, 2016 | 5864530 | Dec 29, 2013 | 6014364 | Dec 21, 2015 | 6275176 | Mar 18, 2019 |
| 5515346 | May 07, 2013 | 5790512 | Dec 22, 2014 | 5872755 | Nov 18, 2016 | 6023490 | Apr 09, 2017 | 6275457 | Apr 01, 2019 |
| 5587979* | Jan 17, 2009 | 5798990* | Sep 16, 2016 | 5878080 | Feb 07, 2017 | 6026069 | Dec 29, 2013 | 6285301 | Mar 16, 2019 |
| 5587990 | Jan 30, 2011 | 5805564 | May 29, 2016 | 5920272 | Feb 08, 2015 | 6041302 | Nov 10, 2017 | 6289306 | Nov 07, 2017 |
| 5605782 | Dec 22, 2014 | 5818367 | Jul 07, 2015 | 5920874 | Nov 16, 2015 | 6047397 | Feb 16, 2015 | | |
| 5610880 | Jan 30, 2011 | 5825731 | Nov 27, 2016 | 5960037 | Apr 09, 2017 | 6076062 | Dec 09, 2016 | | |
| 5689497 | Oct 11, 2016 | 5828648 | Dec 21, 2015 | 5966765 | Dec 21, 2015 | 6144320 | Mar 19, 2019 | | |

## Canadian Patents (patent numbers and expiry dates/* indicates "Non-essential" patents)

**Royal Philips Electronics N.V. and Sony patents infringed by CD disc products**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1280208 | Feb 12, 2008 | 2036585* | Feb 19, 2011 | 2064511* | Mar 31, 2012 | 1322593* | Sep 28, 2010 |
| 2043670* | May 31, 2011 | 2335403 | May 31, 2011 | | | | |

**Royal Philips Electronics N.V., Sony and Pioneer patents infringed by DVD Video, DVD Audio, DVD ROM and DVD RAM disc products**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1320571 | Jul 20, 2010 | 2043670* | May 31, 2011 | 2335403 | May 31, 2011 |

**Royal Philips Electronics N.V., Sony and Taiyo Yuden patents infringed by CD-Recordable (CD-R) and CD-ReWritable (CD-RW) disc products**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1280208 | Feb 12, 2008 | 1331807 | Aug 30, 2011 | 1332466 | Oct 11, 2011 | 2043670* | May 31, 2011 |
| 1326710 | Feb 01, 2011 | 1322593* | Sep 28, 2010 | 2021026 | Jul 05, 2012 | 2335403 | May 31, 2011 |
| 2036585* | Feb 19, 2011 | | | | | | |

**Royal Philips Electronics N.V., Sony, Hewlett-Packard and Pioneer patents infringed by DVD+R, DVD+RW, DVD-R, and DVD-RW disc products**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1305253 | Dec 16, 2008 | 1330591 | Jul 05, 2011 | 2002481 | Nov 08, 2009 | 2016055 | May 04, 2010 |

**Royal Philips Electronics N.V. and Sony patents infringed by SACD disc products**

| | | | |
|---|---|---|---|
| 1207443 | Jul 08, 2008 | 1322593* | Sep 28, 2010 |

Note: This list is subject to revision. Updated patent lists may be found at http://www.ip.philips.com.

EXHIBIT 13B

**From:** William Lenihan [mailto:william.lenihan@philips.com]
**Sent:** Wednesday, February 13, 2008 10:37 AM
**To:**  REDACTED
**Subject:**  REDACTED

Dear  REDACTED

All CD discs manufactured by Zomax go unreported / unpaid and therefore infringe the essential Philips CD Disc patent. Last month, Philips filled litigation against Zomax for patent infringement / breach of contract.

I will forward a copy of that court filling / litigation for your reference.

Any CD Disc produced by Sony DADC is considered Licensed and in good standing.

To that end, we can offer  REDACTED  assistance in directing you to other Licensed replicators in good standing.

Philips will protect it's patent rights to the fullest the law and may ultimately look to  REDACTED  to resolve the unpaid royalties for discs manufactured on your behalf by Zomax.

To our knowledge, Zomax ceased to report / pay royalties on CD Disc at or around the middle of 2006.

Please feel free to call to further discuss.

regards,

William J. Lenihan
Director
Philips Intellectual Property & Standards
P.O.Box 3001
345 Scarborough Road
Briarcliff Manor, New York, 10510-8001
Phone: (914) 333-9622
Fax: (914) 332-0615
Intranet:pww.ips.philips.com
Internet:www.ip.philips.com

EXHIBIT 13C

**Annex A1 to the CD Disc Patent License Agreement**

Essential Philips and Sony patents relevant to CD Disc / CD-General part

| COUNTRY | REFERENCE | | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|---|
| AR | Q 080007 | - | 285958 | 02-Jul-81 | | 06-Jun-97 | 250649 | 06-Jun-12 | Block N to K compact disc modulation code (EFM) |
| AR | Q 080009 | - | 285400 | 20-May-81 | | 04-Jun-97 | 250648 | 04-Jun-12 | Error correctable data transmission method |
| AT | Q 080007 | - | 81-A3107 | 14-Jul-81 | | 25-Jan-99 | 404652 | 15-May-16 | Block N to K compact disc modulation code (EFM) |
| AT | Q 080009 | - | 81-A2215 | 18-May-81 | 395794 | 25-Mar-93 | 395794 | 15-Jul-10 | Error correctable data transmission method |
| BW | Q 080007 | - | 98-00033 | 21-Apr-98 | | 02-Oct-02 | BW/P/02/00035 | 21-Apr-18 | Block N to K compact disc modulation code (EFM) |
| US | N 006493 | D | 06/858550 | 23-Apr-86 | | 26-Nov-91 | 5068846 | 26-Nov-08 | Video disc with disc body acting as protection |
| US | N 006493 | K | 90/007336 | | | | | 26-Mar-08 | Video disc with disc body acting as protection |
| US | P15.688 | - | 890316 | 30-Mar-82 | | 19-Apr-94 | 5305301 | 19-Apr-11 | Optical readable carriers |

*Version date : 04 December 2007*

# EXHIBIT 14

857ikonm ag                    CONFERENCE

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   KONINKLIJKE PHILIPS
    ELECTRONICS, N.V., et ano,
4
                 Plaintiffs,
5
           v.                          08 Civ. 515 CLB
6
    CINRAM INTERNATIONAL, INC., et ano.,
7
                 Defendants.
8
    ------------------------------x
9
                                    White Plains, N.Y.
10                                  March 7, 2008
                                    11:00 a.m.
11
    Before:
12
                     HON. CHARLES L. BRIEANT,
13
                                      District Judge
14
                        APPEARANCES
15  MAYER BROWN
         Attorney for Plaintiffs
16  CHRISTOPHER JAMES HOUPT

17  FINNEGAN HENDERSON FARABOW GARRETT & DUNNER
         Attorney for Plaintiffs
18  JOHN F. HORNICK

19  COOPER & DUNHAM
         Attorney for Defendants
20  IVAN S. KAVRUKOV
    WILLIAM EDWARD PELTON
21
    WILLIAM LENIHAN also present
22

23

24                      CONFERENCE

25

2

857ikonm ag                    CONFERENCE

1      THE COURTROOM DEPUTY:  Philips v. Cinram.

2      THE COURT:  Well, we have some letters here.  And the

3  Court will be pleased to hear counsel and perhaps disregard the

4  letters.  So if someone would cut directly to the chase and

5  tell me directly what the problem is and who has the problem,

6  I'll hear everybody else and do it.  Who wants to start?

7      MR. PELTON:  Your Honor, I guess we should since we

8  sent the first letter.  William Pelton for defendant Cinram,

9  your Honor.  We, in our view -- we're sorry to get the Court

10 involved.

11     THE COURT:  That's my job.  But it's very difficult to

12 do anything with a single-spaced, multipage letter met by

13 another letter of equal size.

14     MR. PELTON:  I just want to say that we have never

15 contested Philips' right, the plaintiff's right, to provide

16 people with legitimate information concerning their patents.

17 But here our customers have complained to us that letters have

18 been sent to them which go far beyond that.  Letters have been

19 sent which indicate or which contain inaccurate statements.

20 And those letters were attached to our first letter.  But one

21 of our customers, Eagles Recording Company --

22     THE COURT:  What's the date of the letter we're

23 dealing with?

24     MR. PELTON:  January 31, 2008.  It's exhibit A to our

25 letter of February 21st.

857ikonm ag                    CONFERENCE

1      THE COURT:  All right.  Let me follow you.  This is a

2   letter that you've written?

3      MR. PELTON:  The letter that we wrote is dated

4   February 21st addressed to the Court.  And Exhibit A to that

5   letter is a letter addressed to Eagles Recording Company.  And

6   it was sent on behalf of plaintiff Philips.  It contains a

7   statement there which upset our client, and it says in effect

8   that Eagles purchased and sold disks made from manufacturers

9   who do not pay Philips CD disk royalties.  There are many

10  licenses out there and our client is a licensee and there are

11  others.  But that is an untrue statement.  In fact, royalties

12  are being paid by Cinram.  Cinram is a manufacturer who

13  supplies CDs to Eagles.  Except for this patent in suit in this

14  case, it's a single patent in suit here.  And there's a dispute

15  about whether that patent covers the disks currently being

16  made.  But it is incorrect to say as a general statement that

17  Eagles is purchasing from manufacturers who do not pay

18  royalties.  Royalties have been paid except for this single

19  patent in suit.

20      THE COURT:  That's the 512 patent?

21      MR. PELTON:  No, that's the so-called 846 patent, U.S.

22  patent 5068846.  That's the patent in suit.  The reference to

23  the 512 patent, that's 5790512 is another inaccuracy in that

24  letter.  That patent is not in suit here.  It does not cover

25  any disks that this customer manufactures.  And there was no

857ikonm ag                    CONFERENCE

1    reason to state it or make any reference to it in this letter.

2    And on the second page it says Philips has stated that

3    companies that make and sell CDs into the United States

4    infringe these patents.  So that is language that encompasses

5    the 512 patent which is not in suit and which does not cover

6    any disk that our client manufactures.

7            So we tried to work this out.  There's another letter

8    which is Exhibit B which was addressed to a customer which has

9    not been identified in this letter, but we know who it is, of a

10   company called Somax which is another defendant, but not in

11   this case.  They're a defendant on the same patent in the case

12   pending in Texas.  The letter says all CD disks manufactured by

13   Somax go unreported.  That's entirely untrue.  The only disks

14   that are unreported are those that relate to the patent in suit

15   here, and because there's a view and a dispute here about

16   whether that patent is covered.  But it is not true to say that

17   all disks manufactured by Somax go unreported.  And we have the

18   reports to show that.  It's an untrue statement.

19           Secondly, that letter to, this is a letter dated, this

20   is Exhibit B, a letter dated February 13th to a redacted

21   customer of Somax states that -- well, there's a provision in

22   the governing license agreement that says in effect that the

23   reports are confidential and there's an undertaking to restrict

24   those reports only to the accounting people at Philips.

25   Somehow this got out so that Philips was able to send a letter

857ikonm ag                    CONFERENCE

1   to a customer of Somax.  They shouldn't have known about that

2   customer.  And they're still harassing that customer.  They're

3   making phone calls and sending e-mails and I don't know, I

4   guess they're trying to leverage that customer against Somax

5   for purposes of some sort of a settlement.

6           In any event, these are the incorrect statements that

7   we think Philips should back off of and should send corrected

8   letters.  And that's why we're here.  We tried to work with

9   Philips, pointing out that these statements were inaccurate.

10  They ignored us completely.  Instead of filing a motion, we

11  thought we might get some better traction if we asked for a

12  premotion conference.  What we'd like the Court to do is to

13  order Philips essentially to work with us to prepare corrected

14  letters which would be sent to the customers.  The other thing

15  we'd like is we don't know how many customers they've sent

16  letters to like this.  So we'd need information concerning each

17  customer that was sent a letter like this type and we'd like to

18  work with them to send a corrected letter.

19          THE COURT:  What is the status of this underlying

20  case?  This is not the original case we had on these.  This is

21  a 2008 docket number.

22          MR. KAVRUKOV:  Ivan Kavrukov.  I believe that's the

23  only case involving Philips and Cinram in your court, your

24  Honor.  Some years ago Philips had a case in your court against

25  a number of Taiwanese companies.  This is the only case in your

857ikonm ag                    CONFERENCE

1   court involving these parties.  Philips initially filed a

2   complaint I believe late December or late January.

3              THE COURT:  Do we have a case management plan on the

4   Cinram case?

5              MR. KAVRUKOV:  Not yet, your Honor.  We have a Rule 16

6   conference before you scheduled for March 28th.  Philips filed

7   initially a complaint that did not list as a plaintiff the

8   owner of the patent in suit.  And later, a little bit later,

9   filed an amended complaint adding as a party the owner of the

10  patent, the alleged owner of the patent.

11             MR. PELTON:  And as of Monday of this week, service

12  was made on our clients, your Honor.  We accepted service as of

13  Monday.

14             THE COURT:  I didn't mean to interrupt you.

15             MR. PELTON:  I was finished, your Honor.

16             THE COURT:  Who wants to respond?

17             MR. HORNICK:  Good morning, your Honor, John Hornick

18  for Philips.  None of the relief that Cinram is requesting is

19  appropriate here, and therefore filing a motion would be

20  inappropriate and it would be a waste of everybody's time.

21             THE COURT:  I have always felt that premotion

22  conferences were a waste of everybody's time.  But I suppose

23  there are unusual circumstances.  It seems to me that we start

24  off with a problem if the Court is going to be asked, in

25  violation of somebody's First Amendment rights, to tell them

857ikonm ag                    CONFERENCE

1    that you have to make a statement.  And on the other hand, I
2    can see that something is happening here which may be diverting
3    the main thrust of this lawsuit as to which the Court has had
4    no case management conference as of yet, although you tell me
5    one is scheduled for the 28th.  And maybe it's not in
6    everyone's interest to be doing whatever is being done or not
7    done.  And if that's true, I suppose there comes a point where
8    I have a right to tell you that maybe you shouldn't do it.
9        I don't quite have the point here of what's being
10    done.  We have a lawsuit, right.  We're going to see you on the
11    28th.  What's the lawsuit for?
12        MR. HORNICK:  Patent infringement and breach of the
13    patent license agreements.  Cinram is saying that the
14    statements made in these letters are untrue and in fact those
15    statements go to the very heart of the case that we have filed
16    against them.  So it's impossible to determine at this stage of
17    the litigation whether those statements are true or not because
18    that's what the lawsuit is all about.  But it's our allegation
19    that they are true and everything in the letters is true and I
20    can explain why.
21        THE COURT:  And if you win your lawsuit you're going
22    to get paid.
23        MR. HORNICK:  That's right, your Honor.
24        THE COURT:  So it doesn't necessarily -- well, go
25    ahead.  I may have lost the thrust here.  Maybe I should

857ikonm ag                    CONFERENCE

1    listen.

2           MR. HORNICK:  I think essentially what's happening

3    here is that Philips filed a complaint, it was filed this year,

4    it was filed on January 18th, and filed an amended complaint a

5    couple of weeks later.  The Court issued an order setting a

6    scheduling conference on March 28th and the parties are in the

7    process of meeting and conferring and putting together a

8    Rule 26(f) report and the form that the Court uses that we will

9    be bringing to the case management conference as the order

10   said.

11          But a couple of weeks ago, Cinram requested a

12   premotion conference because they wanted to file a motion for

13   preliminary injunction to prevent Philips from sending out

14   patent notice letters to potential infringers, and they wanted

15   to get some discovery about that before we even have a case

16   management conference.

17          THE COURT:  If such a motion were made, nothing

18   prevents your client from suing these people.

19          MR. HORNICK:  That's right, your Honor.

20          THE COURT:  You can bring a plenary lawsuit anywhere

21   in the United States where they have been infringing.

22          MR. HORNICK:  Yes.  But patent owners will typically

23   send out notice letters to hundreds, maybe even thousands of

24   potential infringers, to put them on notice that they may

25   eventually be called to task or they may not.  It's a standard

857ikonm ag                     CONFERENCE

1  practice to send these letters out.

2         THE COURT:  What do you gain in the context of this

3  case?

4         MR. HORNICK:  In this particular case, these letters

5  were sent out to customers, no one knew that they were Cinram

6  customers.  Cinram isn't mentioned in those letters.  We didn't

7  know that they were Cinram customers until Cinram filed this

8  request for a premotion conference.  So Philips was only in the

9  process of doing its regular everyday business of sending out

10 these notice letters.  It had nothing to do with this lawsuit.

11        THE COURT:  You want affirmative relief from the Court

12 at this time or shortly thereafter, is that right?

13        MR. KAVRUKOV:  I'm sorry, your Honor.

14        THE COURT:  You want affirmative relief to be granted

15 by the Court of some type?

16        MR. KAVRUKOV:  Yes, your Honor.

17        THE COURT:  What is it you really want?

18        MR. KAVRUKOV:  Again, your Honor, we do not contest

19 any right --

20        THE COURT:  I don't care what you don't contest.  What

21 do you really want?  This is a place where people come in and

22 they tell what they want.  If I can't find an excuse not to

23 give it, I give it, and then they go take an appeal.

24        MR. KAVRUKOV:  We would like Philips not to send what

25 clearly is misleading information to our customers because that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

857ikonm ag                    CONFERENCE

1    interferes with the customer-supplier relationship.  Philips

2    can send letters to their heart's content, whether it's wise or

3    not, to customers saying, we, Philips have a patent, you people

4    infringe our patent.  But not to send misleading information.

5         THE COURT:  What was misleading about it?

6         MR. KAVRUKOV:  Misleading is this, your Honor.  The

7    letters and e-mails say the suppliers, our clients, are not

8    paying royalties, any royalties.  In fact, your Honor, they are

9    paying royalties on CDs that are different from the alleged

10   patent.  The alleged patent covers certain flavors of CD, we

11   believe it doesn't, but according to Philips it covers certain

12   flavors of CD.  Our clients, the manufacturers of CDs, pay

13   every quarter royalties on compact disks as to which --

14        THE COURT:  To Philips?

15        MR. KAVRUKOV:  Yes.  To Philips.  So it's incorrect

16   for Philips to characterize our clients as people who pay no

17   royalties as irresponsive companies.  They pay royalties.  As

18   to this particular patent that's in suit, our client does not

19   pay royalties because in our view that patent does not cover

20   that type of CD.  Every quarter our clients send very large

21   checks to Philips for compact disc royalties under a license.

22   So to characterize our clients in those letters to customers of

23   our clients' as deadbeats who pay no royalties is incorrect and

24   harmful.  So we would like that to stop.  That's all.

25        MR. HORNICK:  Your Honor, first of all, counsel is

857ikonm ag                    CONFERENCE

1    focusing on the word misleading.  And that is not the legal

2    standard.  The standard is whether it's objectively baseless.

3    And I can talk about that.

4          THE COURT:  Wait a minute.  Right now we have no

5    pending motion.  We have what looks to be the beginning of a

6    major litigation.  We, all of us, including the Court, have a

7    duty to be practical.  We have a duty to be reasonable if we

8    can be reasonable and if it's in the interests of our client to

9    do so, and it usually is.  I'm trying to focus on it from a

10   practical point of view, trying to see what can be done so that

11   this controversy, whatever it is, doesn't take precedence over

12   the underlying case which will be commercially reasonable for

13   everybody.  And that's what I'd like to do.  And I think you

14   ought to at least in the beginning make an effort to work with

15   that.  If you can't or you come to the point where you say no,

16   then I've done my duty.  And I have to either make a decision

17   or hear a motion or issue an order or do something.  That's

18   what we're here to do, do something.

19         MR. HORNICK:  The problem is that there is nothing

20   incorrect about these letters.  And they don't relate to this

21   lawsuit.

22         THE COURT:  What do they do?

23         MR. HORNICK:  They put potential infringers on notice

24   that they may be or are using or buying CDs that are not

25   licensed.

857ikonm ag                    CONFERENCE

1         THE COURT:  Do they go beyond that?

2         MR. HORNICK:  They do not go beyond that.

3         THE COURT:  I assume, maybe this is stupid on my part,

4    I assume that there's express or implied indemnification, isn't

5    there?

6         MR. HORNICK:  I think that's a question for the

7    defendants to answer.

8         THE COURT:  I know that.

9         Aren't you indemnifying these buyers?

10        MR. KAVRUKOV:  I don't believe there is express

11   indemnification your Honor.  There may be under the Uniform

12   Commercial Code.

13        THE COURT:  I would think so.  Isn't the smart thing

14   to do to stop it and go litigate the case?  Isn't that the

15   reasonable intelligent thing to do, even if the Court can't

16   make you do it?  I'm not saying it can't.

17        MR. HORNICK:  As I was explaining, these letters don't

18   have anything to do with this lawsuit.

19        THE COURT:  What do they have to do with it?

20        MR. HORNICK:  The Court of Appeals for the Federal

21   Circuit has said the patent owners have the right to send these

22   letters.

23        THE COURT:  Sure they do.  Because they want to get

24   paid.  You have a solvent defendant here, don't you?

25        MR. HORNICK:  As I said, these letters don't have

857ikonm ag                    CONFERENCE

1   anything to do with this lawsuit.  When Philips sent them out,

2   they didn't know they were sending them out to Cinram

3   customers.  If they sent out another letter tomorrow they might

4   not know if they were going to a Cinram customer.  The only way

5   they can stop is by stoping their entire program of sending out

6   letters, which they can't do.  They have a system in place

7   where they do go after infringers.

8            THE COURT:  Other people are doing this besides

9   Cinram?

10           MR. HORNICK:  Yes, your Honor.  There are plenty of

11  other manufacturers.  In fact, Philips filed three other

12  lawsuits the same day in the Eastern District of Texas against

13  a total of about ten other defendants.

14           THE COURT:  What can he do to separate your people

15  from them?

16           MR. KAVRUKOV:  We don't separate them, your Honor.  In

17  fact, at some point there may be an effort to consolidate these

18  lawsuits because they do involve the same patent and the same

19  issues.  But again to the extent Philips wants to send letters

20  notifying anybody that Philips has a patent and they believe

21  that patent is infringed, our clients have no problem with

22  that.  Our clients have a problem with being mislabeled,

23  mischaracterized.  And we would like to work with Philips.

24           In fact, when this first letter to Eagles came to our

25  attention, I personally got in touch with the Philips licensing

857ikonm ag                    CONFERENCE

1     people with whom I have dealt, spoke with them about it.  So

2     the letters do have to do with this litigation.  And we would

3     like, as your Honor said, a practical resolution.  We would

4     like to work with Philips.

5          THE COURT:  I can encourage that.  But I have some

6     doubt as to how far I can go in ordering it absent a

7     willingness to be reasonable about the issue.  And virtue is

8     its own reward.  You have a lawsuit here.  Go take care of your

9     lawsuit.  Don't go causing a lot of trouble that's of no point.

10         I'm trying to find out what they want you to do in

11    order for you to get what you want them to do.  That's what I'm

12    trying to really reach here.  Maybe it would be better to send

13    you all in the jury room and ask you to talk firsthand on a

14    clean slate.  It's not quite clear to me what you want them to

15    do, and it's not quite clear to me what they have to do, what

16    you have to do, in order to get them to do what you want them

17    to do.  Leave your customers alone?

18         MR. KAVRUKOV:  We'll be happy to speak to them, your

19    Honor.  Again, what we would like is for Philips to write their

20    letters as to what is allowed by precedent and by one of your

21    decisions as well, to tell people that we have a patent and we

22    believe you infringe it, and not then say, by the way, your

23    supplier is a deadbeat.

24         THE COURT:  Who is the client?

25         MR. KAVRUKOV:  Cinram.  It's probably the largest

857ikonm ag                    CONFERENCE

1  company in the business, manufacturer of CD business.  It's

2  customers are content owners.

3       THE COURT:  The average users of the disc doesn't care

4  if the supplier is a deadbeat.  Where is the advantage in this

5  thing?  I can't see it.

6       MR. HORNICK:  Your Honor, the problem here is that the

7  defendants want us to stop doing something that is a standard

8  business practice.

9       THE COURT:  I don't think they do.  I think they want

10 you to stop using prejudicial language like deadbeat.

11      MR. HORNICK:  We didn't use the word deadbeat.

12      THE COURT:  You said they weren't paying.

13      MR. HORNICK:  And that's true.

14      THE COURT:  They said they are paying.

15      MR. HORNICK:  They're not.

16      MR. KAVRUKOV:  I have here quarterly statements from

17 both of these companies in question to Philips.  And they

18 contain some very large numbers, hundreds of thousands of

19 dollars.

20      MR. HORNICK:  They stopped paying.  And that's what

21 the complaint says.

22      THE COURT:  When did you stop?

23      MR. KAVRUKOV:  No, they continue paying.  Even the

24 last quarter.

25      THE COURT:  One of you has to be wrong on that.

857ikonm ag                    CONFERENCE

1   That's just not making sense to me.

2          MR. HORNICK:  If you give me a moment, I'd like to

3   speak with the person who knows the answer.

4          THE COURT:  Sure.  He can come up here if he wants.

5          (Pause).

6          MR. HORNICK:  There are royalty statements, but

7   they're being severely underpaid which is what the lawsuit is

8   about.  There is only, the only letters that we know of are the

9   two that Cinram has brought to the Court's attention.

10         THE COURT:  Did you tell him that?

11         MR. HORNICK:  I don't know if we've told him that or

12  not.

13         THE COURT:  If you had told him that, I think you

14  would have saved a trip to White Plains.

15         MR. HORNICK:  I don't think so.  They want you to do

16  something remedially.

17         THE COURT:  They're already out so they can't be

18  recalled.

19         MR. HORNICK:  They want us to stop sending any other

20  letters and to do remedial.  There's nothing incorrect about

21  the letters under the law.  Philips has the right to send them.

22  Philips does not want to be enjoined from sending them.  That

23  would be improper under the law and there is no reason why they

24  should take any remedial action.  The fact that there are only

25  two letters in our mind is really irrelevant.

857ikonm.ag                    CONFERENCE

1    MR. KAVRUKOV: We'll be happy to accept the

2    representation of counsel that these are the only two letters.

3        THE COURT: I'm amazed that no one told you that

4    earlier.

5        MR. KAVRUKOV: We tried to find out, your Honor. I

6    personally contacted by telephone and spoke with the Philips

7    licensing people, including Mr. Lenihan who is sitting here,

8    when the first letter came to our attention. Then well before

9    we wrote to the Court, we wrote to outside counsel --

10       THE COURT: It's that kind of conduct that makes

11   litigation so expensive. And so burdensome. You're going to

12   be together for a while. You're going to have to do fool

13   discovery together. You're going to be taking depositions of

14   people. And it's a bad way to get started off.

15       MR. HORNICK: The problem is this. We don't know --

16   I'm not willing to say there are no other letters. What I'm

17   willing to say is I'm unaware of any other letters that go to

18   their customers, because we didn't know that those letters went

19   to their customers until they sent this letter to the Court

20   saying they they are our customers.

21       THE COURT: You sent letters to other people you think

22   are not their customers.

23       MR. HORNICK: There could be thousands. I don't know.

24   They're asking for letters sent since the lawsuit was filed.

25   These are the only two we know of that fall into this category.

857ikonm ag                    CONFERENCE

1         THE COURT:  Is there any reason why at least for the

2    time being as a matter of good will to advance the litigation

3    and save a lot of money that you let them know what letters

4    you're sending and they can tell you that this is our client,

5    this is not our client.  It seems to me that this calls for

6    something practical.  Maybe a court couldn't order that.  But

7    it would be a sensible thing to do.

8         MR. HORNICK:  Our client would consider that, your

9    Honor.

10        THE COURT:  Why don't you take a lunch break and come

11   back and tell me what you've worked out.  Or go and sit

12   together in the conference room without me and see what you can

13   agree to.

14        MR. KAVRUKOV:  We're happy to do that, your Honor.

15        THE COURT:  You can agree for the time being.  It

16   doesn't have to go for all eternity, you know.  It looks to me

17   like you may get into a multi-district transferee litigation,

18   and if you do, it may very well be in Texas,.

19        MR. KAVRUKOV:  That's down the road, your Honor.

20        THE COURT:  It's down the road, but it's not that far

21   down the road.  This case was filed in January.

22        MR. KAVRUKOV:  Correct.

23        THE COURT:  It's already March.

24        MR. KAVRUKOV:  The complaints in Texas to our

25   knowledge have not been served yet, but I assume they will be.

857ikonm ag                    CONFERENCE

1          MR. HORNICK:  The parties are in negotiation.  They're

2     being served as we speak, except with respect to a couple of

3     parties.

4          THE COURT:  All right.

5          MR. KAVRUKOV:  Fine.  And we are discussing with

6     counsel whether it makes sense to have those lawsuits all in

7     one place.  We have not come to an understanding, but we are

8     discussing that issue.

9          THE COURT:  You can save a lot of agony, a lot of

10    expense, and maybe some delay if you expose these topics with

11    each other early.  If you can't agree, you can't agree.  But

12    you're both experienced, you've done it before, you can use

13    common sense, you know.  You don't need me to do that.

14         MR. KAVRUKOV:  That's what we believe, your Honor.

15    And we did send an invitation to Philips to talk to us and they

16    ignored us.

17         THE COURT:  You shouldn't ignore them.  If you want to

18    give them a short, evasive answer, you have a right to do that.

19         MR. HORNICK:  I can't address that because I wasn't

20    involved in that process.

21         THE COURT:  But that was yesterday.  This is the first

22    day of the rest of our lives.  You have a big piece of

23    litigation here.  It's important to both your clients.  It's

24    important for the public.  I would put all that behind you and

25    go forward and see what you can do that makes sense.  That's

857ikonm ag                    CONFERENCE

1   just an exhortation, that's not an order or a direction or

2   anything like that.  Do you want to enter your March 28th order

3   today instead of coming back?

4          MR. HORNICK:  We're not prepared to do that yet.

5   We're still talking.

6          There's an issue which I wanted to raise which may

7   help.  The form that the Court sent out said that there would

8   be a trial ready date by October 24th of this year.  And it

9   says take that date seriously and it shall be strictly

10  construed.  In the process of talking, Cinram wants to extend

11  discovery to a year and Philips doesn't want to.  If the Court

12  can give some guidance as to whether we really can rely on that

13  date, it would simplify the meeting and confer.

14         THE COURT:  If the case goes to MDL and they send it

15  to Texas, the answer has got to be no, because once it gets to

16  Texas, the transferee judge is exempted from all my orders.  If

17  it stays here as a multi-district case, which is unlikely but

18  it could happen, probably the answer is no, because the case

19  will have been magnified by the addition of so many other

20  parties, more cases, right?

21         MR. HORNICK:  Yes, your Honor.

22         THE COURT:  So I can only do business while the case

23  is here.  And I can only do business with this case.  I would

24  have -- we put that deadline on everybody, including the vast

25  run of cases we get here of different kinds of cases.  And

857ikonm ag                    CONFERENCE

1   obviously when you have a patent infringement case, you know

2   that you can't do that.  And we know that the attorneys are

3   going to come there and they're going to say we agree we need X

4   months, and the judge has no reason to disbelieve that

5   representation.  All right.  X months.  If you both agree on

6   dates, it's easy.  If you can't agree, then I have to make sure

7   that the time period is not too long.

8              MR. HORNICK:  That's the point, your Honor.

9              THE COURT:  It won't mean a thing if the

10  Multi-District Panel takes it.  I have to go forward.  I have

11  to keep going.

12             MR. HORNICK:  I don't see that that's happening any

13  time soon.  Cinram has asked whether Philips could be amenable

14  to moving the Texas cases to New York.  The answer is no.  They

15  don't know that yet.  They just asked me yesterday.  So I don't

16  see those cases coming here any time soon.

17             THE COURT:  Only if the panel says so.  The panel can

18  be quite arbitrary.  But they'll send it to one single place.

19             MR. HORNICK:  I understand that, your Honor, but

20  Philips doesn't plan to move for that.  I don't know if Cinram

21  and the other defendants do or not.  The point is this, we'll

22  be back here again in a couple of weeks and when we do we'll

23  have a proposal.

24             THE COURT:  You almost have to go to the panel because

25  if you don't you're going to get other people in and you're

857ikonm ag                    CONFERENCE

1  going to get the people with the declaratory judgment that they

2  don't infringe, they're going to be butting into the

3  litigation.

4          MR. HORNICK:  I expect that each defendant will

5  probably have that as a counterclaim, but I don't expect other

6  parties to intervene.  We are meeting and conferring now and

7  Philips would like to see that October 28th date stick.  And if

8  the Court were willing to say that assuming this case states

9  here, the other cases aren't joined with it, it doesn't go

10  multi-district, it's going to have a trial in October, then

11  that would facilitate our meeting and conferring.

12          THE COURT:  What I could do is I could set a trial

13  readiness date in October.  We're not setting a date certain

14  for obvious reasons.  But we have a goal for you to come in and

15  tell me that:  All our pretrial discovery is finished.  We have

16  exhausted mediation or settlement discussions to the extent we

17  want to -- some of these cases are tried to a jury -- and we

18  want a date.  Then I would expect to give you my nearest

19  available date.  We have criminal cases, other things going on.

20          MR. HORNICK:  I'm not asking for a trial date, I'm

21  asking if we can rely on the trial ready date for purposes of

22  meeting and conferring.

23          THE COURT:  If you meet and confer you can agree on a

24  trial readiness date.

25          MR. HORNICK:  We can't agree.  They want to extend to

857ikonm ag                    CONFERENCE

1   a year from now.  If there's a chance that we're going to get

2   that, then we will meet and confer in a different way.

3          THE COURT:  I don't know how different it will be.

4          MR. KAVRUKOV:  This is a patent case and your Honor

5   has had a few patent cases.  The Court understands how

6   complicated they can get.  And yes, we're meeting and

7   conferring.  We're proposing at the moment the 12 month

8   discovery.

9          THE COURT:  It would be helpful if you came in with a

10  compromise figure somewhere between the standard six months

11  we're giving people and whatever you think you need.  It would

12  be helpful to try to meet each other in the middle.  If you

13  agree on a date, I have no reason to second-guess it.

14         MR. KAVRUKOV:  We'll try, your Honor.  And if we

15  can't, we'll each present our points to you.

16          THE COURT:  And then we'll cut the baby in half.

17         MR. KAVRUKOV:  In that case we'll ask for 16 months,

18  your Honor.

19         THE COURT:  The trouble is you and I are joking.  And

20  when we get on the record it looks like we are not.  And I find

21  that humor doesn't go very far in this work any more.  So those

22  last comments on my part were meant to be facetious.

23         What do you want to do?

24         MR. HORNICK:  Your Honor, what we would like ideally

25  is for the Court to say that such a motion is inappropriate.

857ikonm ag                    CONFERENCE

1    We don't believe that any of the relief that they've requested

2    is appropriate and unsupported by the law and the facts.

3           THE COURT:  I'm not totally certain of that.  And I

4    think it would be only as a last reresort the Court would tell

5    some lawyer that he can't make a motion that he or she thinks

6    would be permissible.  The Court might give an indication that

7    such a motion would be denied or that any relief granted under

8    it would be very limited.  Or frankly, as we see in other

9    contexts, you know the answer if you're watching your

10   television every night, the answer to slander is more slander.

11   And they're just going to find retaliation and they'll be

12   writing to your customers.

13          It doesn't make sense to have this battle within a

14   battle.  Whether I can resolve it or end it without your help

15   is an open question which I'm not prepared to respond to.  No

16   one should underestimate the power of a district court.

17          MR. HORNICK:  Can I have a moment?

18          MR. LENIHAN:  I know the parties pretty well.  The

19   letter --

20          MR. HORNICK:  This is William Lenihan for Philips.

21          MR. LENIHAN:  I was the author of this particular

22   letter, your Honor.  What's at stake here is we have a lot of

23   other licensees that do pay royalties.  And three years ago I

24   sent out over 50,000 letters informing end users of these type

25   of products if the people who provide these products do not pay

857ikonm ag                    CONFERENCE

1   royalties they can actually inheriting the responsibilities to

2   pay the royalties for them.

3           This is a coincidence with the Eagles.  This

4   particular rock 'n' roll band, which is a very fabulous band,

5   produced this record themselves and solely distributed it

6   through Wal-Mart.  So for us to monitor our licensing program,

7   we look for transparency.  And in this case we saw that this

8   particular product, very successful, we thought it would be

9   very apropos to put this particular record label and this

10  particular group on notice that they should probably make sure

11  if they're managing their business properly that their supplier

12  is making sure that they cover the payment of those royalties

13  if in fact they apply.  We didn't tell them --

14          THE COURT:  You don't have to answer this because a

15  fellow who has a watchdog shouldn't have to do his own barking,

16  and you have very fine lawyers.  Would it be reasonable to

17  accomplish the same purpose without accusing anybody of being a

18  deadbeat?

19          MR. LENIHAN:  My question, I would like to hear from

20  Ivan as to what they would like us to tell these customers.

21  Maybe they could draft something on how to inform these people

22  as to what's going on.

23          THE COURT:  I gather you're not a lawyer, is that

24  right?  You're not a member of the bar?

25          MR. LENIHAN:  No.

857ikonm ag                      CONFERENCE

1           THE COURT:  Ordinarily it's the last thing you can

2   ever do, is to get the other side to draft the paper.  But

3   maybe you can.

4           MR. LENIHAN:  It's unusual in this case.

5           THE COURT:  It is.  I agree with you.  It is.

6           MR. LENIHAN:  The only way we can effectively do our

7   job is to make sure other people, and we're not looking to

8   poison somebody's well here, we just want them to be aware of

9   what is happening in the trade.  Frankly, when you purchase or

10  produce a disk it may cost you only ten cents.  I don't even

11  know if they're passing on these cost savings to these

12  customers, but it raises the questions.  If Ivan would like to

13  draft the letter and say:  By the way, Eagles Recording

14  Company, we're not paying Philips their royalty any more and we

15  haven't deducted that from your invoice because we retain that

16  as profit, maybe that would solve the issue.  We haven't done

17  this *en masse* subsequent to this issue so I don't think that

18  we're going out there attacking.

19          By the way, the other letter in question was not a

20  letter either.  It was a communique of myself to a company

21  called H & R Block's Tax Services.  We saw a disk in the trade,

22  we asked them:  Do you know that these products have royalties

23  that could be paid?  And they volunteered to us that the people

24  producing their disks was Sony and Somax.  Never was Cinram

25  mentioned in the correspondence.  There was no letter, e-mail.

857ikonm ag                        CONFERENCE

1    And then I went out into the trade and looked to see who was

2    producing the disk.  And it shows that Somax isn't even

3    producing the disk for this particular client.

4        To make a long story short, Ivan, let's sit down and

5    come up with what you want us to tell the public at large.

6        MR. KAVRUKOV:  We'll sit down in the jury room and if

7    we can't agree we'll be back after lunch.

8        THE COURT:  The clerk will let you in the jury room.

9    If you come to a point where you want to put anything on the

10   record or you want to report to me what you're doing or what

11   you plan to do, you can come around and press the button there

12   and tell us.  And we're going to available until around two

13   o'clock, maybe a little later.  If you want us to wait, we will

14   wait a little while.

15       It's nice to see you all, but I don't feel that it's

16   possible to get very far with the present state of the matter.

17       Thank you.

18       (Proceedings adjourned)

19

20

21

22

23

24

25

EXHIBIT 15

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | : |
| KONINKLIJKE PHILIPS ELECTRONICS | : |
| N.V. and U.S. PHILIPS CORPORATION, | : |
| | : |
| Plaintiffs, | :      Civil Action No.08-cv-0515 |
| | :      (CLB)(MDF) |
| | : |
| v. | :      ECF Case |
| | : |
| CINRAM INTERNATIONAL INC., | : |
| CINRAM INC., CINRAM | :      **ANSWER AND** |
| MANUFACTURING INC., and John Does | :      **COUNTERCLAIM** |
| No. 1 through 100, | : |
| | : |
| Defendants. | : |
| | : |

Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively referred to as "Cinram"), hereby respond to the First Amended Complaint by Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively referred to as "Philips") by and through their counsel as follows:

1.      The allegations contained in Paragraph 1 appear to characterize the nature of this case.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 1.


**THE PARTIES**

2.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2, and, therefore, denies them.

3.      Cinram admits the allegations contained in Paragraph 3.

4.      Cinram admits the allegations contained in Paragraph 4.

5.      Cinram admits the allegations contained in Paragraph 5.

6.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6, and, therefore, denies them.

## JURISDICTION AND VENUE

7.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7, and, therefore, denies them.

8.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, and, therefore, denies them.

9.      The allegations contained in Paragraph 9 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 9.

10.      The allegations contained in Paragraph 10 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 10.

11.      Cinram denies the allegations contained in Paragraph 11.

## FACTS RELATED TO PHILIPS

12.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 and, therefore, denies them.

13.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and, therefore, denies them.

14.      Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 and, therefore, denies them.

15.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and, therefore, denies them.

16.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and, therefore, denies them.

17.    Cinram admits Exhibit A to the Amended Complaint is a purported copy of the '846 patent but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 17 and, therefore, denies them, and specifically denies that the '846 was duly and legally issued after full and fair examination or that it is valid and subsisting.

18.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and, therefore, denies them.

## FACTS RELATED TO CINRAM

19.    Cinram admits that Philips and Cinram are parties to a license agreement which bears the title "CD Disc Patent License Agreement" ("License Agreement") and that Exhibit B to the Amended Complaint purports to be a copy of that License Agreement, which states that it was entered into on December 1, 2004, but denies the remaining allegations contained in numbered Paragraph 19.

20.    Cinram admits that Philips and Cinram are parties to a "Side Letter" and that Exhibit C to the Complaint purports to be a copy of that Side Letter, which states that it has "an effective date of December 1, 2004" and that it was signed by Cinram on December 22, 2004, but denies the remaining allegations contained in numbered Paragraph 20

21.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 21.

22.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 22.

23.    Cinram admits that the '846 patent is and was listed in Annex A1 but denies the remaining allegations contained in Paragraph 23.

24.    Cinram admits that ¶1.23 of the Agreement refers to Philips commissioning an independent expert to review the patents listed in Annexes A1 through A8 to determine whether each patent is "essential", but denies the remaining allegations contained in Paragraph 24.

25.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 25.

26.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and, therefore, denies them.

27.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 27.

28.    Cinram denies Philips' characterization of the Agreement and the remaining allegations contained in Paragraph 28.

29.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 29.

30.    Cinram admits that the agreement contains the quoted language but denies the remaining allegations contained in Paragraph 30.

31.    Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and, therefore, denies them.

32.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 32.

4

33.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 33.

34.    The allegations contained in Paragraph 34 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 34.

35.    Cinram admits that the agreement contains the quoted language but denies the remaining allegations contained in Paragraph 35.

36.    The allegations contained in Paragraph 36 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 36.

## FACTS RELATING TO BREACH OF CONTRACT CLAIM

37.    Cinram admits that the Agreement contains the quoted language but denies Philips' characterization of the Agreement and the remaining allegations contained in Paragraph 37.

38.    Cinram admits that the Agreement contains the quoted language but denies the remaining allegations contained in Paragraph 38.

39.    Cinram denies the allegations contained in Paragraph 39.

40.    Cinram admits that it has paid royalties for CD-Discs but denies the remaining allegations contained in Paragraph 40.

41.    Cinram admits that it manufactures CD-Discs at two U.S. plants, Olyphant, PA ("Olyphant") and Richmond, IN ("Richmond"), and in Canada, but denies the remaining allegations contained in Paragraph 41.

42.    Cinram denies the allegations contained in Paragraph 42.

43.     Cinram denies the allegations contained in Paragraph 43.

44.     Cinram denies the allegations contained in Paragraph 44.

45.     Cinram denies the allegations contained in Paragraph 45.

46.     Cinram admits that CD-Discs it makes are sold in the United States but denies the remaining allegations contained in Paragraph 46.

47.     Cinram denies the allegations contained in Paragraph 47.

48.     Cinram denies the allegations contained in Paragraph 48.

## FACTS RELATING TO PATENT INFRINGEMENT CLAIM

49.     Cinram denies the allegations contained in Paragraph 49.

50.     The allegations contained in Paragraph 50 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 50.

51.     Cinram denies the allegations contained in Paragraph 51.

52.     Cinram denies the allegations contained in Paragraph 52.

53.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53, and, therefore, denies them.

## COUNT I
## BREACH OF CONTRACT

54.     Cinram repeats and reasserts all responses to Paragraphs 1 through 53 as if they were stated in full herein.

55.     Cinram admits that it has not terminated the Agreement and Side Letter but denies the remaining allegations contained in Paragraph 55.

56.    The allegations contained in Paragraph 56 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies the allegations contained in Paragraph 56.

57.    The allegations contained in Paragraph 57 are legal conclusions to which no response is required.  To the extent a response is required, Cinram admits that the Agreement contains language to the effect that Philips is bound to seek resolution of any disputes related to the Agreement in the Courts of New York but denies the remaining allegations contained in Paragraph 57.

58.    Cinram denies the allegations contained in Paragraph 58.

59.    Cinram denies the allegations contained in Paragraph 59.

60.    Cinram denies the allegations contained in Paragraph 60.

61.    Cinram denies the allegations contained in Paragraph 61.

62.    Cinram lacks denies Philips' characterization of the Agreement and denies the remaining allegations contained in Paragraph 62.

63.    The allegations contained in Paragraph 63 are legal conclusions to which no response is required.  To the extent a response is required, Cinram denies Philips' characterization of the Agreement and denies the remaining allegations contained in Paragraph 63.

64.    Cinram denies the allegations contained in Paragraph 64.

### COUNT II
### PATENT INFRINGEMENT

65.    Cinram repeats and reasserts all responses to Paragraphs 1 through 64 as if they were stated in full herein.

66.    Cinram denies the allegations contained in Paragraph 66.

67.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67, and, therefore denies them.

68.     Cinram denies the allegations contained in Paragraph 68.

69.     Cinram lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69, and, therefore denies them.

70.     Cinram admits that records show that a Reexamination Request for the '846 patent was filed in the Patent Office on December 8, 2004 and that Exhibit D to the Amended Complaint purports to be a copy of a Reexamination Certificate but denies the allegations contained in Paragraph 70.

71.     Cinram admits that the '846 patent has been listed in Annex 1 of the Agreement but denies the remaining allegations contained in Paragraph 71.

72.     Cinram denies the allegations contained in Paragraph 72.

73.     Cinram denies the allegations contained in Paragraph 73.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Cinram has not directly or contributorily infringed any claim of the patent-in-suit, nor has it induced others to infringe the patent-in-suit.

## SECOND AFFIRMATIVE DEFENSE

The patent-in-suit is unenforceable due to Philips' patent misuse, prosecution laches, and inequitable conduct, namely, Philips' intentional failure to timely inform the Patent Examiner of material prior art and other information known to Philips, including by Philips abandoning an allowed patent application in favor of a continuing patent application with the same claims, and

by Philips submitting prior art in a reexamination proceeding in a manner ensuring that the

Patent Office would not consider it on the merits.

### THIRD AFFIRMATIVE DEFENSE

The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35

of the United States Code related to patentability.

### FOURTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by waiver.

### EIGHTH AFFIRMATIVE DEFENSE

If plaintiffs suffered damages as alleged, plaintiffs failed to mitigate such damages.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff U.S. Philips Corporation lacks standing to assert breach of contract claims

because it is not the licensing entity, and plaintiff Koninklijke Philips Electronics N.V. lacks

standing to assert patent infringement or contract claims under the '846 patent because it does

not own the licensed patent.

### TENTH AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim on which relief may be granted.

### ELEVENTH AFFIRMATIVE DEFENSE

Philips is estopped to construe the claims to of the '846 Patent to cover any products made, used, sold, offered for sale or imported by Cinram because of statements, amendments, or actions taken during the prosecution of the '846 Patent.

## TWELVTH AFFIRMATIVE DEFENSE

The claims of the '846 Patent cannot be construed to cover any product made, used, sold, offered for sale or imported by Cinram and avoid the prior art.

## THIRTEENTH AFFIRMATIVE DEFENSE

Philips is not entitled to an injunction or any other equitable remedy because it has an adequate remedy at law.

## COUNTERCLAIMS

Cinram counterclaims against Philips as follows:

## EXISTENCE OF ACTUAL CONTROVERSY

1.      These counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§2201(a) and 2202.

2.      An actual justiciable controversy, as set forth in this counterclaim, exists between Cinram and Philips concerning the validity, enforceability and infringement of the patent-in-suit.

## THE PARTIES

3.      Plaintiff-in-Counterclaim, Cinram International Inc. is a corporation organized under the laws of Canada with a place of business at 2255 Markham Road, Scarborough, Ontario, Canada.

4.      Plaintiff-in-Counterclaim, Cinram Inc. is a corporation organized under the laws of Delaware with a place of business at 1600 Rich Road, Richmond, Indiana.

5.      Plaintiff-in-Counterclaim, Cinram Manufacturing Inc. is a corporation organized under the laws of Delaware with a place of business at 1400 East Lackawanna Ave., Olyphant, Pennsylvania.  Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. are collectively referred to as "Cinram".

6.      Upon information and belief, Defendant-in-Counterclaim Koninklijke Philips Electronics N.V. is a corporation organized under the laws of The Netherlands with its place of business in Amsterdam, the Netherlands.

7.      Upon information and belief, Defendant-in-Counterclaim U.S. Philips Corporation is a corporation organized under the laws of Delaware with places of business at 1251 Avenue of the Americas, New York, New York, and at 345 Scarborough Rd., Briarcliff Manor, New York.  Defendants-in-Counterclaim Koninklijke Philips Electronics N.V. and U.S. Philips Corporation are collectively referred to as "Philips".

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over Cinram and Philips, and over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338, 2201 and 2202 and under the doctrines of pendent and supplemental jurisdiction.

9.      By filing its Complaint, Philips has consented to the personal jurisdiction of this Court.

10.     Venue is proper in this Court under 28 U.S.C. §§1391(b) and 1400(b).

## COUNT I
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

11.     Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

12.     Cinram has not infringed, nor does it now infringe, any claim of the patent-in-suit.

11

13.     Cinram has not induced, nor does it now induce, infringement of any claim of the patent-in-suit.

14.     Cinram has not contributorily infringed, nor does it now contributorily infringe, any claim of the patent-in-suit.

15.     Cinram is entitled to a declaratory judgment that it has not directly, contributorily, or by inducement, infringed any claim of the patent-in-suit.

## COUNT II
## (DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY)

16.     Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

17.     The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability.

18 .     On information and belief, Philips repeatedly delayed issuance of the '846 patent by unreasonable and unexplained delays in the prosecution of the chain of continuing patent applications commencing with the initial filing in 1973 culminating in the issuance of the patent in 1991 and an Ex Parte Reexamination Certificate in 2006, making the patent unenforceable because of prosecution laches.

19 .     On information and belief, Philips unreasonably delayed submitting prior art to the Patent Examiner, or withheld prior art from the Patent Examiner, making it impractical or impossible for the Patent Examiner to fully consider such prior art and thereby rendering the '846 patent unenforceable.

20.     Cinram is entitled to a declaratory judgment that the patent-in-suit is invalid.

## COUNT III
## (DECLARATORY JUDGMENT OF PATENT MISUSE)

21.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

22.    On information and belief, Philips imposed Standards Specifications as a *de facto* requirement in the CD industry for the manufacture of CD-Discs.

23.    Philips declared that the '846 patent was "essential" for compliance with the Standard Specifications by all CD-Discs.

24.    The '846 patent is not "essential" for manufacturing CD-Discs that meet the Standard Specifications.

25.    Manufacturing innovations made by Cinram make it possible to manufacture CD-Discs that meet the Standard Specifications without use of the '846 patent

26.    Philips has misused its patent rights by claiming that the use of the '846 patent is necessary for compliance with the Standard Specifications when in fact it is not.

27.    The '846 patent is unenforceable based on Philips' misuse of this patent, and Cinram is entitled to a declaration as such.

## COUNT IV
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)

28.    Cinram repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

29.    On January 31, 2008, Philips sent a letter to Cinram customers for CD-Discs, misleadingly alleging that a royalty was owed on the customers' CDs because they were purchased from manufacturers who do not pay Philips CD Disc royalties.  However, Cinram does pay Philips CD Disc royalties when they are required under other patents.  Further, Philips

13

misleadingly alleged in the same letter that the CD-Discs that the customer had purchased infringe a patent that is not in suit and, according to material published by Philips, does not apply to CD-Discs of the type that the customer had purchased.

30.    On February 13, 2008, Philips sent a letter to another, indirect customer of Cinram, misleadingly alleging that all of the CDs purchased by the customer went unreported and unpaid, when in fact CDs covered by existent patents were both reported and paid for.  In addition, Philips improperly attempted to divert the customer to another supplier of CD Discs based on the allegations made in its February 13 letter.

31.    On information and belief, Philips made the statements in its January 31 and February 13, 2008 letters knowing that theses statements were false and misleading.  On information and belief, Philips made these statements with the sole purpose of harming Cinram. As a direct result of Philips' knowingly false and misleading allegations, Cinram's business relationship with its customers has been harmed causing Cinram damages of a currently unknown amount.

32.    Philips has tortiously interfered with Cinram's business relationships, and Cinram is entitled to a declaration as such, along with monetary and injunctive relief.

## **EXCEPTIONAL CASE**

33. This is an exceptional case entitling Cinram to an award of its attorneys' fees incurred in connection with defending and prosecuting this action pursuant to 35 U.S.C. §285, as a result of, *inter alia*, Philips' assertion of the '846 patent against Cinram with the knowledge that the '846 patent is not infringed and/or is invalid.

## REQUEST FOR RELIEF

WHEREFORE, Cinram respectfully requests that:

1.    The First Amended Complaint be dismissed with prejudice as to Cinram and Cinram be awarded its costs for this action;

2.    Judgment be entered declaring that the patent-in-suit is not infringed by Cinram and is invalid and unenforceable;

3.    Judgment be entered declaring that Cinram has not contributorily infringed the patent-in-suit, and has not induced others to infringe the patent-in-suit;

4.    Judgment be entered declaring that Philips has tortiously interfered with Cinram's business relationships and Cinram be awarded damages as well as an injunction prohibiting Philips from sending further false and misleading communications to Cinram's customers.

5.    Judgment be entered declaring this to be an exceptional case under 35 U.S.C. §285, and Cinram be awarded its attorneys' fees and expert fees incurred for defending  this action and prosecuting its counterclaim; and

6.    Cinram be granted such other relief as the Court deems just and proper.


## JURY TRIAL

Cinram requests a jury trial on all its claims.

15

Dated: March 24, 2008                    Respectfully submitted,


                                          S/ Gregory J. Carbo
                                         Ivan Kavrukov
                                         William E. Pelton
                                         Tonia A. Sayour
                                         Gregory J. Carbo
                                         COOPER & DUNHAM LLP
                                         1185 Avenue of the Americas
                                         New York, New York 10036
                                         Tel:  (212) 278-0400
                                         Fax:  (212) 391-7550
                                         ikavrukov@cooperdunham.com
                                         gcarbo@cooperdunham.com

                                         Attorneys for Defendants
                                         Cinram International Inc., Cinram Inc.,
                                         And Cinram Manufacturing Inc.

CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of March, 2008, I electronically filed the foregoing

ANSWER AND COUNTERCLAIM with the Clerk of the Court using the CM/ECF system,

which will send notification of such filing to the following:

      Edward D. Johnson
      MAYER BROWN LLP
      Two Palo Alto Square, Suite 300
      3000 El Camino Real
      Palo Alto, California 94306-2112
      wjohnson@mayerbrown.com

      Vince P. Kovalick
      John F. Hornick
      Samuel C. Bass
      FINNEGAN, HENDERSON, FARABOW,
        GARRETT & DUNNER, L.L.P.
      901 New York Avenue, N.W.
      Washington, D.C. 20001
      vince.kovalick@finnegan.com
      John.Hornick@finnegan.com
      Samuel.Bass@finnegan.com

      Christopher J. Houpt
      MAYER BROWN LLP
      1675 Broadway
      New York, New York 10019
      choupt@mayerbrown.com

                S/ Gregory J. Carbo
                Gregory J. Carbo