UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : : : | |
| Plaintiffs, | : : : | Civil Action No.08-cv-0515 (CLB)(MDF) |
| v. | : : | ECF Case |
| CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does No. 1 through 100, | : : : : : : | |
| Defendants. | : : | |

## DECLARATION OF GREGORY J. CARBO IN SUPPORT OF THE MOTION OF NON-PARTIES COOPER & DUNHAM LLP AND IVAN S. KAVRUKOV, ESQ. TO QUASH PLAINTIFFS' SUBPOENAS *DUCES TECUM* PURSUANT TO RULES 26 AND 45(c)(3), FED.R.CIV.P.

I, Gregory J. Carbo, do hereby declare and state as follows:

1.    I am an associate at the law firm of Cooper & Dunham LLP, attorneys for Defendants Cinram International Inc., Cinram Inc. and Cinram Manufacturing Inc. (collectively "Cinram") and for non-parties Cooper & Dunham LLP ("Cooper & Dunham") and Ivan S. Kavrukov, Esq. ("Attorney Kavrukov").   I have personal knowledge of the facts set forth in this declaration and if called upon to testify as to the content of this declaration, I would do so competently.

2.    Attached at Exhibit A is a true and correct copy of a Subpoena *Duces Tecum* served on Attorney Kavrukov by Plaintiffs Koninklijke Philips Electronics, N.V.'s and U.S. Philips Corporation's (collectively referred to as "Philips") on May 23, 2008.

1

3.     Attached at Exhibit B is a true and correct copy of a Subpoena *Duces Tecum* served on Cooper & Dunham by Philips on May 23, 2008.

4.     Attached at Exhibit C is a true and correct copy of Philips' First Request for the Production of Documents and Things served on March 27, 2008.

5.     Attached at Exhibit D is a true and correct copy of Cinram's Responses and Objections to Plaintiffs' First Request for the Production of Documents and Things served on May 15, 2008.

6.     Attached at Exhibit E is a true and correct copy of Attorney Kavrukov and Cooper & Dunham's Objections To Philips' Subpoenas served today.

7.     Attached at Exhibit F is a true and correct copy of a letter I sent to counsel for Philips on June 2, 2008, requesting that they withdraw the Subpoenas *Duces Tecum* to Attorney Kavrukov and Cooper & Dunham.

8.     During a telephone conference with counsel for Philips on June 3, 2008, counsel for Philips stated that it would not withdraw the Subpoenas *Duces Tecum*.

9.     Attached at Exhibit G is a true and correct copy of a letter received from counsel for Philips on June 5, 2008.


I hereby declare that the foregoing statements are true under the penalties for perjury.

Declared at New York, New York, this 6th day of June, 2008.

__/s Gregory J. Carbo/_____
Gregory J. Carbo

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of June, 2008, I electronically filed the foregoing **DECLARATION OF GREGORY J. CARBO IN SUPPORT OF THE MOTION OF NON-PARTIES COOPER & DUNHAM LLP AND IVAN S. KAVRUKOV, ESQ. TO QUASH PLAINTIFFS' SUBPOENAS *DUCES TECUM* PURSUANT TO RULES 26 AND 45(c)(3), FED.R.CIV.P.** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Edward D. Johnson
> MAYER BROWN LLP
> Two Palo Alto Square, Suite 300
> 3000 El Camino Real
> Palo Alto, California 94306-2112
> wjohnson@mayerbrown.com
>
> Vince P. Kovalick
> John F. Hornick
> Samuel C. Bass
> FINNEGAN, HENDERSON, FARABOW,
>  GARRETT & DUNNER, L.L.P.
> 901 New York Avenue, N.W.
> Washington, D.C. 20001
> vince.kovalick@finnegan.com
> John.Hornick@finnegan.com
> Samuel.Bass@finnegan.com
>
> Christopher J. Houpt
> MAYER BROWN LLP
> 1675 Broadway
> New York, New York 10019
> choupt@mayerbrown.com

> /s/ Gregory J. Carbo
> Gregory J. Carbo

# Exhibit A

AO88 (Rev. 12/07) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

Southern District of New York

Koninklijke Philips Electronics N.V., et al.

V.

Cinram International Inc., et al.

### SUBPOENA IN A CIVIL CASE

Case Number:[1]   08 CV 00515 (CLB) (MDF)

TO:   Ivan S. Kavrukov
c/o Cooper & Dunham LLP
1185 Avenue of the Americas
New York, N.Y. 10036

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE    Mayer Brown LLP | DATE AND TIME |
|---|---|
| 1675 Broadway, New York, N.Y. 10019 | 6/6/2008 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _(signature)_  attorney for plaintiff | 5/21/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Christopher J. Houpt / (212) 506-2380
MAYER BROWN LLP, 1675 Broadway, New York, NY 10019-5820

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

# ATTACHMENT A
## DEFINITIONS

Notwithstanding any definition stated below, each word, term, or phrase used in the Documents To Be Produced ("Requests") below is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.      YOU, YOUR, and KAVRUKOV mean Ivan S. Kavrukov, attorney for Defendants in the above-captioned matter, his employees, agents, representatives, all persons acting on his behalf, and any and all persons associated or affiliated with, or controlled by Ivan S. Kavrukov with respect to the subject matter of this litigation.

2.      PHILIPS means U.S. Philips Corporation and Koninklijke Philips Electronics N.V., Plaintiffs in the above-captioned matter, their employees, agents, representatives, all persons acting on their behalf, and any and all persons associated or affiliated with, or controlled by them with respect to the subject matter of this litigation.

3.      AGREEMENT means the "CD Disc Patent License Agreement" and "Side Letter" attached collectively hereto as Exhibit 1.

4.      STANDARD SPECIFICATIONS means the CD-Disc Standard Specifications defined in the AGREEMENT.

5.      CD and CDs mean any CD-Audio Discs, CD-Audio Maxi-Singles, CD-ROM Discs, CD-ROM Disc mode 1, CD-ROM Disc mode 2, CD-ROM XA Disc sub-mode 1, CD-ROM XA Disc sub-mode 2, CD Extra Discs, CD Extra Discs sub-mode 1, and CD Extra Discs sub-mode 2, as defined in the STANDARD SPECIFICATIONS.

6.      ANALYSIS includes but is not limited to any claim construction and/or any assessment of infringement, invalidity, and/or essentiality to the STANDARD SPECIFICATIONS or to any other CD or optical disc standard.

7.      CLIENT means any person represented or retained by YOU for the provision of legal services.

8.      RELATE TO, RELATING TO, and REGARDING mean analyzing, containing, concerning, dealing with, constituting, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, referring to, setting forth, showing, stating, summarizing, supporting, or in any way pertaining to the subject matter of the relevant Request.

9.      DOCUMENT and DOCUMENTS are defined to be synonymous in meaning equal in scope to the usage of these terms in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

10.     COMMUNICATION, COMMUNICATE, and COMMUNICATED mean any transmittal of information (in the form of facts, ideas, inquiries or otherwise).

11.     PERSON means any natural person or any business, legal or governmental entity or association.

12.     The terms "and" as well as "or" shall be read in the disjunctive, conjunctive, or both, as the case may be, consistent with an interpretation that results in the broader reading of the relevant Request.

13.     For the purposes of these Requests, whenever necessary to ensure completeness or accuracy, words importing the masculine gender include the feminine and neuter, words importing the neuter gender include the masculine and feminine, and words importing the singular include the plural.

## INSTRUCTIONS

1.      If, in responding to these Requests, you claim that any Request, or a definition or instruction applicable thereto, is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as part of the response the language you claim is ambiguous and the interpretation you have used to respond to the individual Request.

2.      If, in answering these Requests, you object to any part of a Request, each part of said Request shall be treated separately. If an objection is made to one subpart, the remaining subpart(s) shall be answered. If an objection is made on the basis that the Request or subpart

2

thereof calls for information that is beyond the scope of discovery, the Request or subpart thereof shall be answered to the extent that it is not objectionable.

3.    If any Request is not answered due to a claim of privilege, in order that the Court and the parties may determine the validity of the claim of privilege, provide sufficient information, including the nature of the claim of privilege, all facts relied upon in support of the claim of privilege or related thereto, the general subject matter of the information being withheld, all documents related to the claim of privilege, all persons having knowledge of any facts related to the claim of privilege, and all events, transactions, or occurrences related to the claim of privilege.

4.    If any document identified, referred to, or relied upon, in any answer to any Request, was, but is no longer in your possession, custody, or control, or in existence, state whether it: (1) is missing or lost; (2) has been destroyed; (3) has been transferred, voluntarily or involuntarily, to others; and/or (4) otherwise disposed of, and in each instance state:

      a) the type of document;

      b) the date and author of the document;

      c) a brief summary of the contents of the document;

      d) the date or approximate date that it was lost, destroyed, transferred, and/or otherwise disposed of;

      e) the reasons for discarding, destroying, transferring, and/or otherwise disposing of the document;

      f) the circumstances and manner in which the document was lost, destroyed, transferred, and/or otherwise disposed of;

      g) the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document; and

      h) the identity of all persons having knowledge of the contents thereof.

3

5.      Each of these Requests shall be construed independently and shall not be limited by any other Request, except that documents responsive to more than one Request need be produced only once.

6.      The documents identified and produced in response to these Requests shall be organized either to correspond to the relevant Requests, or as they are kept in the ordinary course of business. All documents produced shall:

> a) be produced with all associated file labels, file headings, and file folders together with the responsive documents from each file, and each file shall be identified by its owner or custodian; for any document originally stored in electronic media, the file name, path, and directory information for each such document shall also be provided and Philips shall have the option of receiving electronic documents in native electronic format;
>
> b) if produced in hard copy, all pages now stapled or fastened together shall be produced stapled or fastened together, and shall include all attachments currently or previously appended to each document, regardless of whether such attachments themselves would be independently responsive to these Requests;
>
> c) all documents that cannot be legibly copied shall be produced in original form; and
>
> d) each page of each document produced shall bear a unique number that includes a symbol or abbreviation that identifies the producing party.

7.      In the event that more than one copy of a document exists, produce every copy on which there appears any notation or marking of any sort not appearing on any other copy (including routing or filing instructions) or any copy containing different attachments from any other copy.

8.      If you refuse to identify or produce any document requested and/or responsive to a Request or any portion thereof on the grounds of privilege, identify in a privilege each such

4

document or portion thereof as to which objection is made, and with respect to each document so identified, state:

      a) the type of document, *e.g.*, letter or memorandum;

      b) the general subject matter of the document;

      c) the author(s) and addressee(s);

      d) the date of the document;

      e) the author of the document;

      f) the addressees of the document;

      g) any other recipients of the document;

      h) the relationship of the author, addressees, and recipients to each other;

      g) the document request herein to which the document responds; and

      h) the exact basis, legal or otherwise, for your claim that such document (or any portion thereof) need not be disclosed.

If an attachment to a document is also being withheld on the ground of privilege, in addition to being identified as required by subpart (b) above, such attachment shall be identified in the privilege log as a separate document.

## DOCUMENTS TO BE PRODUCED

Unless otherwise specified, the relevant time period governing the following Requests is the period between April 28, 1998 and the present.

1.     All DOCUMENTS and/or things RELATING TO U.S. Patent No. 5,068,846 ("the '846 Patent").

2.     Each COMMUNICATION between YOU and any other PERSON REGARDING the '846 Patent.

3.     Each COMMUNICATION between YOU and any PERSON who is not a CLIENT REGARDING the '846 Patent

4.     All DOCUMENTS and/or things RELATING TO the licensing of patented technology for the manufacture of CDs, including, but not limited to, any DOCUMENTS

5

RELATING TO the licensing of patented CD technology by PHILIPS or the validity and/or enforceability of the '846 Patent.

5.      Each COMMUNICATION between YOU and any other PERSON RELATING TO the licensing of patented technology for the manufacture of CDs, including, but not limited to, COMMUNICATIONS RELATING TO the licensing of patented CD technology by PHILIPS or the validity and/or enforceability of the '846 Patent.

6.      Each COMMUNICATION between YOU and any PERSON that is not a CLIENT RELATING TO the licensing of patented technology for the manufacture of CDs, including, but not limited to, COMMUNICATIONS RELATING TO the validity and/or enforceability of the '846 Patent.

7.      Each COMMUNICATION between YOU and any other PERSON REGARDING the licensing of patented technology for the manufacture of CDs, including, but not limited to, PHILIPS's CD licensing program.

.       8.      To the extent not otherwise requested here, each ANALYSIS of the '846 Patent by YOU or by any other PERSON, including, but not limited to, opinions of counsel, prior art references, and drafts of, and revisions to, opinions of counsel.

9.      To the extent not otherwise requested here, each ANALYSIS of patented technology for the manufacture of CDs by YOU or by any other PERSON, including, but not limited to, opinions of counsel, prior art references, and drafts of, and revisions to, opinions of counsel.

6

# Exhibit 1

1

# CD DISC PATENT LICENSE AGREEMENT

This Agreement is entered into this <u>1st</u> day of <u>December</u>, 2004 by and between

KONINKLIJKE PHILIPS ELECTRONICS N.V., having its registered office in Eindhoven, The Netherlands, (hereinafter referred to as "Philips")

and

CINRAM INTERNATIONAL INC., having its registered office in 2255 Markham Road, Scarborough, Ontario M1B 2W 3 Canada (hereinafter referred to as "Licensee").

WHEREAS, the Philips' group of companies has for many years been engaged in research and development of systems, in which signals encoded in digital form and stored on a disc are read and reproduced by means of devices using an optical read-out beam, and has acquired valuable know-how and expertise therein;

WHEREAS, one of the achievements of such research and development efforts has been a revolutionary high-fidelity sound storage and reproduction system, of which the specifications have been further defined in a joint-research and development co-operation with Sony Corporation ("Sony") and which has been presented under the name "Compact Disc Digital Audio System" (CD-Audio System);

WHEREAS, on the basis of the CD-Audio System Philips and Sony have developed a further system, which has been presented under the name "Compact Disc Data System" (CD-ROM System);

WHEREAS, Philips and Sony have developed an additional multi-session CD system, which has been presented under the name "Enhanced Music Compact Disc System" ("Enhanced Music CD System" or "CD Extra System" (the CD-Audio System, the CD-ROM System and the CD Extra System are collectively referred to as "the CD Systems");

WHEREAS, Philips and Sony each own certain patents relating to the CD·Systems;

WHEREAS, Philips has been authorized by Sony to grant licenses under certain patents relating to the CD Systems, which are owned or controlled by Sony and its Associated Companies (as hereinafter defined), as well as under such patents relating to the CD Systems as are jointly owned by Philips and Sony;

WHEREAS, Philips and Sony have each retained their rights to license their respective patents separately and to give non-assertion undertakings with regard to jointly owned patents, whether within or outside the standard specifications of the CD Systems, so that interested manufacturers may opt to take out separate licenses under the relevant patents of each of Philips and Sony, instead of a combined license;

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\s&l\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304          July 2003

P 001318

2

WHEREAS, Licensee has requested from Philips a license under the relevant patents of Philips and Sony relating to CD-Discs (as hereinafter defined) and wishes such CD-Discs to be compatible with devices capable of playing discs, conforming to the Standard Specifications for any of the relevant CD Systems;

WHEREAS, Philips is willing to grant Licensee a license under the relevant patents and to make available certain basic information relating to the CD Systems, on the conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual obligations and covenants hereinafter set forth, the parties hereto have agreed as follows:

1.    **Definitions**

The following terms used in this Agreement shall have the meanings set out below:

1.1    "Disc" shall mean a non-recordable reflective disc-shaped information carrier comprising any kind of information including, but not limited to, audio, video, text and/or data-related information, which is irreversibly stored in a layer during and as an integral part of the manufacturing process of the disc in a form which is optically readable by playback devices using a laser-beam.

1.2    "CD-Audio Disc" shall mean a Disc comprising audio information encoded in digital form, which is optically readable by a CD-Audio Player (as hereinafter defined) and which conforms to the CD-Audio Standard Specifications (as hereinafter defined). A CD-Audio Disc may, in addition to audio information, comprise CD Text information.

1.3    "CD-Audio Maxi-Single" shall mean a CD-Audio Disc which, in addition to conforming to the CD-Audio Standard Specifications, conforms to the CD-Audio Maxi-Single Standard Specifications.

1.4    "CD-ROM Disc" shall mean a Disc containing data, arranged in sectors as defined in the CD-ROM Standard Specifications (as hereinafter defined) in the chapter Digital Data Structure, Parts I to V, under the names: General data specification, Sync., Header, User data and Auxiliary data respectively, and protected against errors in accordance with the error correction system as defined in the CD-ROM Standard Specifications in the chapter Error Correction System under the name Cross Interleaved Reed-Solomon Code - "CIRC".

1.5    "CD-ROM Disc mode 1" shall mean a CD-ROM Disc with an additional error correction system for computer or other data as defined in the CD-ROM Standard Specifications in the chapter Digital Data Structure, Part VII, under the name Error Detection and Error Correction specification (a third layer error correction).

1.6    "CD-ROM Disc mode 2" shall mean a CD-ROM Disc containing data protected against errors solely by the error correction system as defined in the CD-ROM Standard

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\s&d\company documents\Cinram international inc.\cd audio text-rom-extra disc-use-121304                 July 2003

P 001319



3

Specifications in the chapter Error Correction System under the name Cross Interleaved Reed-Solomon Code - "CIRC".

1.7  "CD-ROM XA Disc sub-mode 1" shall mean a CD-ROM Disc, which is in compliance with the CD-ROM-XA Specifications (as hereinafter defined) and comprises at least one sector containing data protected by an additional error correction system for data as defined in the CD-ROM Standard Specifications in the chapter Digital Data Structure, Part VII, under the name Error Detection and Error Correction specification (a third layer error correction).

1.8  "CD-ROM XA Disc sub-mode 2" shall mean a CD-ROM Disc, which is in compliance with the CD-ROM-XA Specifications and comprises solely sectors containing data protected against errors solely by the error correction system as defined in the CD-ROM Standard Specifications in the chapter Error Correction System under the name Cross Interleaved Reed-Solomon Code – "CIRC".

1.9  "CD Extra Disc" shall mean a Disc conforming to the Enhanced Music CD Standard Specifications (as hereinafter defined) and which comprises first information encoded in digital form, which is optically readable by a CD-Audio Player and which conforms to the CD-Audio Standard Specifications, and second information conforming to the CD-ROM XA Specifications and which is optically readable by a CD-ROM Player or by an Enhanced Music CD Player (as hereinafter defined).

1.10  "CD Extra Disc sub-mode 1" shall mean a CD Extra Disc wherein the second information is in accordance with the data format on a CD-ROM XA Disc sub-mode 1.

1.11  "CD Extra Disc sub-mode 2" shall mean a CD Extra Disc wherein the second information is solely in accordance with the data format on a CD-ROM XA Disc sub-mode 2.

The CD-Audio Disc, the CD-Audio Maxi-Single, the CD-ROM Disc mode 1 and mode 2, the CD-ROM XA Disc sub-mode 1 and sub-mode 2 and the CD Extra Disc sub-mode 1 and sub-mode 2 are collectively referred to as "CD-Disc(s)".

1.12  "CD-Audio Standard Specifications" shall mean the specifications for the CD-Audio System, including, if applicable, the Subcode/Control and Display System, Channels R ..W, chapter 5.8, the CD-TEXT mode, as made available; modified or extended from time to time.

1.13  "CD-Audio Maxi-Single Standard Specifications" shall mean the specifications for the CD-Audio Maxi-Single system, specifying among other things a maximum playing time of 30 minutes, as made available, modified or extended from time to time. For the purpose of this Agreement, the CD-Audio Maxi-Single Standard Specifications shall be considered to form part of the CD-Audio Standard Specifications.

1.14  "CD-ROM Standard Specifications" shall mean the specifications for the CD-ROM System as made available, modified or extended from time to time.

1.15  "CD-ROM-XA Specifications" shall mean the specifications of the System Description CD-ROM XA as made available, modified or extended from time to time.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\s&l\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304          July 2003

P 001320

4

1.16    "Enhanced Music CD Standard Specifications" shall mean the specifications for the
        Enhanced Music CD System as made available, modified or extended from time to time.
        The CD-Audio Standard Specifications, the CD-Audio Maxi-Single Standard Specifications,
        the CD-ROM Standard Specifications, the Enhanced Music CD Standard Specifications and
        the CD-ROM-XA Specifications are collectively referred to as the "CD Standard
        Specifications".

1.17    "Player" shall mean a single spindle playback device for optically reading information stored
        on a Disc and converting such information into electrical signals for reproduction purposes.

1.18    "CD-Audio Player" shall mean a Player solely capable of reproducing information stored on a
        CD-Audio Disc or CD-Audio Maxi-Single and converting such information into electrical
        signals, in accordance with the CD-Audio Standard Specifications, which electrical signals are
        directly capable of and intended to be used for sound reproduction through amplifiers and
        loudspeakers.

1.19    "CD-ROM Player" shall mean a Player solely capable of reproducing information stored on
        any kind of CD-ROM Disc and converting such information into electrical signals, in
        accordance with the CD-ROM Standard Specifications, which electrical signals are directly
        capable of and intended to be used for the reproduction of computer related data through
        data handling and/or data processing equipment.

1.20    "Enhanced Music CD Player" shall mean a Player solely capable of reproducing information
        stored on any kind of CD Extra Disc and converting such information into electrical signals,
        in accordance with the Enhanced Music CD Standard Specifications, which electrical signals
        are directly capable of and intended to be used for the reproduction of video, text and/or
        computer related data through data handling and/or data processing equipment.

1.21    "Combi-Player" shall mean a Player which is any combination of a CD-Audio Player, a CD-
        ROM Player and/or an Enhanced Music CD Player.

        The CD-Audio Player, the CD-ROM Player, the Enhanced Music CD Player and the Combi-
        Player are collectively referred to as the "CD-Players".

1.22    "Licensed Product(s)" shall mean

        Option A:    CD-Audio Discs and/or CD-Audio Maxi Singles

        Option B:    CD-Audio Discs and/or CD-Audio Maxi Singles containing CD Text
                     information

        Option C:    CD-ROM Discs mode 1

        Option D:    CD-ROM Discs mode 2

        Option E:    CD-ROM XA Discs sub-mode 1

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\adcl\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001321



5

Option F:    CD-ROM XA Discs sub-mode 2

Option G:    CD-Extra Discs sub-mode 1

Option H:    CD-Extra Discs sub-mode 2

Option I:    CD-Extra Discs sub-mode 1 containing CD Text information

Option J:    CD-Extra Discs sub-mode 2 containing CD Text information

Option K:    CD-Extra Discs containing video-related data in accordance with the MPEG Video System ISO DIS 11172 Standard

as selected by Licensee, manufactured and/or sold in accordance with the provisions hereof, which are duly reported and on which the royalties due hereunder are paid in accordance with the provisions of this Agreement.

Option(s):    ☑ A      ☑ B      ☑ C      ☑ D      ☑ E      ☑ F
              ☑ G      ☑ H      ☑ I      ☑ J      ☑ K

(please tick any combination as appropriate)

Initial: _____

1.23    "Licensed Patents" shall mean any one or more of the essential patents for the manufacture and/or sale of the various types of CD-Discs, as follows:

Category I

(a)    CD-Audio Discs and/or CD-Audio Maxi Singles, as listed in Annex A1;

(b)    CD-Audio Discs and/or CD-Audio Maxi Singles containing CD Text information, as listed in Annex A1 and Annex A7;

Category II

(c)    CD-ROM Discs mode 1, as listed in Annex A1 and Annex A2;

(d)    CD-ROM Discs mode 2, as listed in Annex A1 and Annex A3;

(e)    CD-ROM XA Discs sub-mode 1, as listed in Annex A1 and Annex A4;

(f)    CD-ROM XA Discs sub-mode 2, as listed in Annex A1 and Annex A5;

Category III

USA-CD-Audio-Text-ROM-Extra-Disc/04-2003
rc\s&l\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304

July 2003

P 001322

6

(g)    CD Extra Discs sub-mode 1, as listed in Annex A1, Annex A6 and Annex A4;

(h)    CD Extra Discs sub-mode 2, as listed in Annex A1, Annex A6 and Annex A5;

(i)    CD Extra Discs sub-mode 1 containing CD Text information, as listed in Annex A1, Annex A6, Annex A4 and Annex A7;

(j)    CD-Extra Discs sub-mode 2 containing CD Text information, as listed in Annex A1, Annex A6, Annex A5 and Annex A7;

(k)    CD-Extra Discs containing video-related data in accordance with the MPEG Video System ISO DIS 11172 Standard, as listed in Annex A1, Annex A6, Annex A4 or Annex A5 as well as Annex A8.

The term "essential" as used in relation to patents in this Agreement shall refer to patents, the use of which is necessary (either directly or as a practical matter) for compliance with the Standard Specifications defining the relevant CD System(s).

Philips has commissioned an independent patent expert to review the European, Japanese and US patents listed as essential in Annexes A1, A2, A3, A4, A5, A6, A7 and A8 in order to confirm the essentiality of such patents. In the event that such independent patent expert would find that any of the patents does not qualify as essential as defined in this Agreement, Philips will delete such patent (as well as the equivalent corresponding patents) from the relevant Annex and such patent will be put on a list of non-essential patents. Notwithstanding such deletion, Licensee shall retain the right to continue the use of such deleted patent(s) in accordance with the provisions of this Agreement, without any additional payment, unless Licensee explicitly notifies Philips in writing of its decision to waive such right.

In the event that Philips or Sony (or any of their respective Associated Companies) would have additional patents relevant to CD-Audio Discs (except for CD Text information and other than patents acquired from third parties after the date of January 1, 1983), CD-ROM Discs (other than patents acquired from third parties after the date of July 1, 1986), CD Extra Discs (other than patents acquired from third parties after the date of January 1, 1996) or the CD Text mode of CD-Discs, excluding CD-ROM Discs, (other than patents acquired from third parties after the date of October 1, 1996) in their respective patent portfolios which are essential to the manufacture, sale or other disposal of CD-Discs and which have a filing date or are entitled to a priority date prior to either January 1, 1983 for CD-Audio Discs, July 1, 1986 for CD-ROM Discs, January 1, 1996 for CD Extra Discs or October 1, 1996 for the CD Text mode of CD-Discs, excluding CD-ROM Discs, but which have not been listed as essential patents in the respective Annexes hereto, Philips will notify Licensee accordingly and such additional patents will be added to the Licensed Patents and such addition shall not affect the provisions of this Agreement, including without limitation, the duration of this Agreement as specified in Clause 12.1 and the duration of the grant-back undertakings on the part of Licensee pursuant to Clause 2. Any patents as may be added as essential patents to any of the respective Annexes hereto, will similarly be subject to the review by the independent patent expert in accordance with the preceding paragraph.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\skf\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003


P 001323

7

The patent lists provided to Licensee upon execution of this Agreement are subject to change in accordance with the provisions of this Agreement. With regard to the rights granted to Licensee hereunder, the patent lists published by Philips on its website (www.licensing.philips.com) or otherwise communicated by Philips to Licensee after the date of execution hereof shall prevail over the lists provided to Licensee upon the execution of this Agreement.

1.24   "Associated Company" shall mean any one or more business entities (1) owned or controlled by Philips, Sony or Licensee, (2) owning or controlling Philips, Sony or Licensee, or (3) owned or controlled by the business entity owning or controlling Philips, Sony or Licensee at the material time. For the purposes of this definition a business entity shall be deemed to own and/or to control another business entity if more than 50% (fifty per cent) of the voting stock of the latter business entity, ordinarily entitled to vote in the election of directors, (or, if there is no such stock, more than 50% (fifty per cent) of the ownership of or control in the latter business entity) is held by the owning and/or controlling business entity.

1.25   "Territory" shall mean the geographic area known as Canada.

2.     **Grant of Rights**

2.1    For the term of this Agreement and subject to the provisions hereof, Philips hereby grants to Licensee a non-exclusive, non-transferable license under the Licensed Patents (listed in the relevant Annex(es)) to manufacture Licensed Products as selected by Licensee pursuant to the Options of Clause 1.22 within the Territory in accordance with the relevant CD Standard Specifications and to sell or otherwise dispose of such Licensed Products so manufactured in all countries of the world.

2.2    Philips, also on behalf of Sony, further agrees, for as long as this Agreement is in force and effect and Licensee is in full compliance with its obligations under this Agreement, to grant Licensee upon Licensee's request, a non-exclusive, non-transferable license, either by means of a sub-license arrangement or by means of individual licenses from Philips and/or Sony respectively, on reasonable, non-discriminatory conditions, to manufacture Licensed Products in the Territory and to sell or otherwise dispose of Licensed Products so manufactured in all countries of the world, under any patents not yet licensed hereunder and which are essential to the manufacture, sale or other disposal of Licensed Products, for which Philips, Sony and/or their respective Associated Companies may hereafter acquire from third parties the right to grant licenses. It is acknowledged and agreed that in respect of the patents as may be licensed pursuant to this Clause 2.2, additional royalties may have to be paid over and above the royalties specified in Clause 5.2.

2.3    Philips, also on behalf of Sony, further agrees, for as long as this Agreement is in force and effect and Licensee is in full compliance with its obligations under this Agreement, to grant Licensee upon Licensee's request as well as to those of Licensee's Associated Companies who so request, a non-exclusive, non-transferable license, on reasonable, non-discriminatory conditions, either by means of a sub-license arrangement or by means of individual licenses from Philips and/or Sony respectively, to manufacture CD-Players and to sell or otherwise dispose of such CD-Players so manufactured in all countries of the world under any and all

USA-CD-Audio-Text-ROM-Extra-Disc/04-2003
n:\s&d\company documents\Gincam international inc.\cd audio text-rom-extra disc-usa-121504

July 2003

P 001324

8

dispose of such CD-Players so manufactured in all countries of the world under any and all present and future patents essential to the manufacture, sale or other disposal of CD-Players for which Philips, Sony and/or their respective Associated Companies have or may hereafter acquire the right to grant licenses.

2.4    In consideration of the undertakings set forth in Clauses 2.1, 2.2 and 2.3 and similar undertakings by third party licensees of Philips or any of its Associated Companies and without prejudice to the provisions of Clause 12, Licensee agrees to grant to Philips, Sony and their respective Associated Companies and to other third parties who have entered or will enter into a license agreement with Philips concerning CD-Discs, non-exclusive, non-transferable licenses, on reasonable, non-discriminatory conditions comparable to those set forth herein, to manufacture, sell or otherwise dispose of CD-Discs, as correspond with the Category of CD-Discs from which Licensee has made a selection pursuant to the Options of Clause 1.22, under any and all present and future patents, for which Licensee or its Associated Companies have or may hereafter acquire the right to grant licenses and which are essential to the manufacture, sale or other disposal of such CD-Discs and which patents were first filed or are entitled to a priority date in any country of the world prior to the date of termination of this Agreement. The duration of such licenses shall be a period ending at the expiration date of the last to expire patent of Licensee or the relevant Associated Company of Licensee, essential to the Category of CD-Discs from which Licensee has made a selection pursuant to the Options of Clause 1.22. For the avoidance of doubt, the undertaking set out in this Clause 2.4 shall only apply to those companies which accept or have accepted a similar undertaking as given by Licensee in this Clause 2.4 and only in respect of those Categories of CD-Discs from which both Licensee and such companies have made a selection.

2.5    In addition, in consideration of the undertakings set forth in Clauses 2.1, 2.2, 2.3 and 2.4 and similar undertakings by third party licensees of Philips or any of its Associated Companies and without prejudice to the provisions of Clause 12, Licensee agrees to grant to Philips, Sony and their respective Associated Companies and to other third parties who have entered or will enter into a license agreement with Philips concerning CD-Players, non-exclusive, non-transferable licenses, on reasonable, non-discriminatory conditions, to manufacture, sell or otherwise dispose of CD-Players capable of playing CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22 under any and all present and future patents, for which Licensee or its Associated Companies have or may hereafter acquire the right to grant licenses and which are essential to the manufacture, sale or other disposal of such CD-Players and which patents were first filed or are entitled to a priority date in any country of the world prior to the date of termination of this Agreement. The duration of such licenses shall be a period ending at the expiration date of the last to expire patent of Licensee or the relevant Associated Company of Licensee, essential to CD-Players capable of playing CD-Discs, as correspond with the selection made by Licensee pursuant to the Options of Clause 1.22. For the avoidance of doubt, the undertaking set out in this Clause 2.5 shall only apply to those companies which accept or have accepted a similar undertaking as given by Licensee in this Clause 2.5.

2.6    Philips undertakes that it will offer, at the request of any of Licensee's Associated Companies to any such Associated Company, a non-exclusive and non-transferable license under the Licensed Patents on reasonable and non-discriminatory conditions comparable to those set forth herein, to manufacture, sell or otherwise dispose of CD-Discs.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\skd\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                July 2003

P 001325

9

2.7    IT IS EXPRESSLY ACKNOWLEDGED AND AGREED THAT:

    (I)   THE LICENSES AND LICENSE UNDERTAKINGS HEREIN CONTAINED WITH RESPECT TO THE MANUFACTURE OF LICENSED PRODUCTS DO NOT EXTEND TO MASTER RECORDING MACHINES, EQUIPMENT OR METHODS FOR THE REPLICATION OF DISCS, NOR TO THE MANUFACTURE OF MATERIALS OR REPRODUCTION RIGHTS FOR INFORMATION (SUCH AS AUDIO, VIDEO, TEXT AND/OR DATA-RELATED INFORMATION), CONTAINED ON DISCS TO BE PLAYED BACK ON A PLAYER. FURTHER, THE LICENSE UNDERTAKINGS WITH RESPECT TO THE MANUFACTURE OF PLAYERS DO NOT EXTEND TO THE MANUFACTURE OF COMPONENTS FOR PLAYERS (INCLUDING BUT NOT LIMITED TO SEMICONDUCTOR DEVICES, INTEGRATED CIRCUITS, LASERS, MOTORS AND LENSES), EXCEPT FOR CIRCUITRY AND/OR SYSTEM ASPECTS SPECIFIC TO THE CD SYSTEMS (AND SIMILAR OPTICAL READ-OUT SYSTEMS);

    (II)   THE RIGHTS AND LICENSES GRANTED UNDER THIS AGREEMENT DO NOT EXTEND TO ANY COMBINATION OF ONE OR MORE LICENSED PRODUCTS OR PLAYERS WITH ANY OTHER ELEMENTS, PRODUCTS, SYSTEMS, EQUIPMENT OR SOFTWARE OTHER THAN THE COMBINATION OF A LICENSED PRODUCT AND A CD PLAYER.

3.    Standard Specifications, Technical Information and Support

3.1 .    Upon receipt of the payment provided for in Clause 5.1 and the payment provided for in Clause 5.12, Philips shall make available to Licensee for use by Licensee in accordance with the provisions hereof, a copy of the then current version of the respective CD Standard Specifications, as correspond with the Licensed Products as selected by Licensee pursuant to the Options of Clause 1.22, together with such other information and support as Philips considers necessary for the interpretation and/or the correct application of the relevant CD Standard Specifications.

3.2    Licensee shall be notified in writing of any addition or modification to any of the relevant CD Standard Specifications and shall be provided with relevant information in connection therewith.

3.3.    Philips and Licensee undertake to keep each other generally informed of developments or initiatives which may have an impact on the relevant CD Standard Specifications.

4.    Procurement from other Licensed Manufacturers

4.1    The rights granted to Licensee pursuant to Clause 2 and the right to use the information pursuant to Clause 3, include the right for Licensee to have Licensed Products made for it by third party manufacturers, duly licensed by Philips under an agreement similar to this

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\skl\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                                    July 2003

P 001326



10

Agreement, provided that Licensee will properly identify such third party manufacturer in the royalty reporting forms to be submitted to Philips hereunder, together with the quantities of Licensed Products so purchased.

Conversely, Licensee shall refrain from purchasing or selling CD-Discs manufactured by any third party not licensed by Philips, where such purchase or sale would constitute an act of infringement of any of the Licensed Patents.

5.    **Royalties, Reports and Payments**

5.1    In consideration of the rights granted by Philips and the information to be provided by Philips hereunder, Licensee shall, upon execution of this Agreement, make a non-refundable, non-recoupable payment of US$ 25,000 (twenty-five thousand US Dollars) to Philips.

5.2    In further consideration of the rights granted hereunder by Philips to Licensee, Licensee shall pay to Philips a royalty for each CD-Disc sold or otherwise disposed of by Licensee, any of Licensee's Associated Companies or an agent of Licensee, in any country where at least one of the Licensed Patents essential to the type(s) of CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22 exists.

These royalties shall amount to:

(a)    US$ 0.03 (three US Dollar cents) for each CD-Audio Disc with an outer diameter greater than 90 mm, if applicable, containing CD Text information;

(b)    US$ 0.02 (two US Dollar cents) for each CD-Audio Disc with an outer diameter smaller than 90 mm, if applicable, containing CD Text information;

(c)    US$ 0.027 (two point seven US Dollar cents) for each CD-Audio Maxi-Single, if applicable, containing CD Text information;

(d)    US$ 0.03 (three US Dollar cents) for each CD-ROM Disc (irrespective of the type) with an outer diameter greater than 90 mm;

(e)    US$ 0.02 (two US Dollar cents) for each CD-ROM Disc (irrespective of the type) with an outer diameter smaller than 90 mm;

(f)    US$ 0.045 (four and a half US Dollar cents) for each CD Extra Disc (irrespective of the type) with an outer diameter greater than 90 mm, if applicable, containing CD Text information; and

(g)    US$ 0.03 (three US Dollar cents) for each CD Extra Disc (irrespective of the type) with an outer diameter smaller than 90 mm, if applicable, containing CD Text information,

said rates hereinafter referred to as "Standard Rates".

With respect to CD-Discs sold on or after July 1, 2002, provided that:

a)    Licensee is in full compliance with its obligations under this Agreement; and

b)    Licensee has submitted an audit statement by its external auditors, who shall be certified public auditors as specified in the Audit Guidelines attached hereto as Annex B2, confirming that the quarterly royalty statements as submitted by Licensee to

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\skd\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001327



11

Philips for the last twelve quarterly periods, are true, complete and accurate in every respect; and such statement must meet the requirements as specified in the Audit Guidelines;

and subject to the provisions of Clause 6, Licensee may apply the following royalty rates:

(a)    US$ 0.0175 (one and three quarters of a US Dollar cent) for each CD-Audio Disc with an outer diameter greater than 90 mm, if applicable, containing CD Text information;

(b)    US$ 0.0115 (one and fifteen hundredths of a US Dollar cent) for each CD-Audio Disc with an outer diameter smaller than 90 mm, if applicable containing CD Text information;

(c)    US$ 0.0155 (one and fifty-five hundredths of a US Dollar cent) for each CD-Audio Maxi-Single, if applicable, containing CD Text information;

(d)    US$.0.0175 (one and three quarters of a US Dollar cent) for each CD-ROM Disc (irrespective of the type) with an outer diameter greater than 90 mm;

(e)    US$ 0.0115 (one and fifteen hundredths of a US Dollar cent) for each CD-ROM Disc (irrespective of the type) with an outer diameter smaller than 90 mm;

(f)    US$ 0.0175 (one and three quarters of a US Dollar cent) for each CD Extra Disc (irrespective of the type) with an outer diameter greater than 90 mm, if applicable, containing CD Text information; and

(g)    US$ 0.0115 (one and fifteen hundredths of a US Dollar cent) for each CD Extra Disc (irrespective of the type) with an outer diameter smaller than 90 mm, if applicable, containing CD Text information,

said rates hereinafter referred to as "Compliance Rates".

In the event that Licensee fails to comply at any time with any of its obligations under this Agreement, the Standard Rates, as applicable, shall apply to Licensee's manufacture and sale of CD-Discs instead of the Compliance Rates, as applicable, with immediate effect from the first day of the reporting period to which the occurrence of non-compliance relates until such moment that Philips confirms in writing to Licensee that Licensee's non-compliance has been remedied in full.

A CD-Disc shall be considered sold when invoiced or, if not invoiced, when delivered to a party other than Licensee.

For the avoidance of doubt, Philips confirms that it shall not assert any of the Licensed Patents against Licensee, nor against any of Licensee's customers or subsequent buyers of CD-Discs manufactured and sold by Licensee, prior to the day on which such CD-Discs are to be reported pursuant to the provisions of this Agreement, nor, provided that such CD-Discs have been duly reported in accordance with the provisions of this Agreement, prior to the day when payment of royalties in respect of CD-Discs manufactured and sold by Licensee is due in accordance with the provisions of this Agreement.

No royalties shall be payable for CD-Discs purchased by Licensee on a "have made" basis in accordance with Clause 4 from third party manufacturers, duly licensed by Philips, provided

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
'rc'\s&d\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001328



12

that Licensee can demonstrate to Philips' satisfaction, that such third party manufacturer has paid to Philips the royalties due in respect of such CD-Discs.

For the avoidance of doubt, in the event that the manufacture by Licensee of CD-Discs within the Territory would not infringe any of the Licensed Patents, Licensee shall have no obligation to report and pay royalties in respect of CD-Discs manufactured within the Territory and which are sold for final use within the Territory or imported (either by Licensee or by a third party) into a country where no Licensed Patents exist, for final use in such country.

5.3    Within 30 days following 31 March, 30 June, 30 September and 31 December of each year during the term of this Agreement, Licensee shall submit to Philips (even in the event that no sales have been made) a written statement in the form as attached hereto as Annex B1 ("Royalty Reporting Form") (or in such other form as may be subsequently communicated by Philips to Licensee), signed by a duly authorized officer on behalf of Licensee, setting forth with respect to the preceding quarterly period:

(1)    the quantities of CD-Discs manufactured by Licensee on which royalties are due in accordance with the provisions of this Agreement, specified per individual type of CD-Disc;

(2)    the quantities of CD-Discs corresponding with the CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22, purchased from other licensed manufacturers in accordance with the provisions of Clause 4, on which royalties are due in accordance with the provisions of the CD Disc patent license agreement of said other manufacturers, specified per individual type of CD-Disc and per such third party manufacturer who shall be named in the Royalty Reporting Form;

(3)    on a per-country basis, specifying per individual type of CD-Disc:

(a)    the quantities of CD-Discs on which royalties are due in accordance with the provisions of this Agreement, sold or otherwise disposed of, specifying the identity of the buyers and the trademarks used on or in connection with the CD-Discs;

(b)    the quantities of CD-Discs on which royalties are due in accordance with the provisions of this Agreement, sold to other manufacturers, duly licensed by Philips, specifying the identity of such other manufacturers and the trademarks used on or in connection with the CD-Discs;

(4)    a computation of the royalties due under this Agreement.

Licensee shall pay the royalties due to Philips within 30 days after the end of each quarterly period in US Dollars to a bank account, as specified by Philips.

5.4    In the event that Licensee fails to submit to Philips a Royalty Reporting Form for any royalty reporting period within 30 days from the end of the relevant reporting period in accordance with the provisions of Clause 5.3, Licensee shall be obliged to pay to Philips within 30 days

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
rc\skf\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001329

13

after the end of the relevant quarterly period for which the Royalty Reporting Form was not submitted, an estimated royalty (hereinafter referred to as an "Advance"), being an amount equal to the highest amount of royalties due for any royalty reporting period over the preceding eight royalty reporting periods (or over all preceding royalty reporting periods if fewer than eight). Such payment shall be treated as a non-refundable advance, primarily against the royalties and interest for the relevant royalty reporting period and then, if any sum remains, against any future royalties or other payments payable by Licensee hereunder. Licensee acknowledges and agrees that any Advance shall not be due by way of penalty, but that such payment shall constitute a non-refundable advance as aforesaid. For the avoidance of doubt, such payment shall be payable without any further notice or action by Philips, legal or otherwise, and shall take effect by virtue of the failure to submit a Royalty Reporting Form on time. The payment by Licensee of an Advance shall not affect Licensee's obligation to submit a Royalty Reporting Form and shall be without prejudice to any other rights or remedies of Philips, including, without limitation, Philips' right to charge 2% (two per cent) interest per month on overdue payments (including overdue payments of the Advance), and Philips' right to terminate this Agreement in accordance with its provisions. The Advance will not be set off against other sums due to Philips until a Royalty Reporting Form has been submitted in respect of the relevant royalty reporting period. In respect of any royalty reporting period for which an Advance has been paid and the Royalty Reporting Form subsequently submitted, Philips will first set off against the Advance all royalties and interest due for that period. Any remaining sum from the Advance will be set off against further royalty, interest or Advance payments due to Philips hereunder (if any).

5.5    Licensee shall submit to Philips, once per calendar year, an audit statement by its external auditors, who shall be certified public auditors as specified in the Audit Guidelines attached hereto as Annex B2, confirming that the quarterly royalty statements as submitted by Licensee to Philips for the last four quarterly periods, are true, complete and accurate in every respect. Such statement must meet the requirements as specified in the Audit Guidelines and shall be submitted to Philips within 90 days following the end of Licensee's financial year. The correctness of this audit statement may be verified by Philips by means of a work paper review, conducted by one of the certified public auditors selected by Philips. Licensee shall procure that its auditors provide full cooperation with said work paper review. Notwithstanding this audit statement, Philips reserves the right to inspect the books and records of Licensee from time to time in accordance with Clause 5.10.

The requirement to submit an audit statement by its external auditors as contained in the preceding paragraph only applies to those licensees who are entitled to apply the Compliance Rates in accordance with the provisions of this Agreement. Licensees who are entitled to apply the Compliance rates in accordance with the provisions of this Agreement and who have submitted to Philips a statement signed by a duly authorized officer of Licensee confirming that their annual production of CD-Discs is inferior to 5 million units shall be exempted from the requirement to submit the audit statement referred to in the preceding paragraph.

5.6    Within 30 days following the expiration or termination of this Agreement, Licensee shall submit to Philips a certified report on the number of CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22, on which royalties are due in accordance with the provisions of this Agreement, in stock at the time of expiration or termination of this

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\akl\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001330



14

Agreement. Royalties, calculated in accordance with Clause 5.2 and Clause 5.12, shall be due and payable for all such CD-Discs manufactured prior to, but remaining in stock with Licensee on the date of expiration or termination of this Agreement. For the avoidance of doubt, this Clause 5.6 shall be without prejudice to the provisions of Clause 12.6.

5.7    Any payment under this Agreement which is not made on the date(s) specified herein, shall accrue interest at the rate of 2% (two per cent) per month (or part thereof) or the maximum amount permitted by law, whichever is lower.

5.8    All payments to Philips under this Agreement shall be made by transfer in US Dollar or in such other currency, convertible in the sense of Articles VIII and XIX of the Articles of Agreement of the International Monetary Fund, as designated by Philips. The rate of exchange for converting the currency (if other than US Dollar) of the Territory shall be the telegraphic transfer selling rate of the designated currency as officially quoted in the Territory by the officially authorized foreign exchange bank for payment of currency transactions on the day that the amount is due and payable.

5.9    All costs, stamp duties, taxes and other similar levies arising from or in connection with the conclusion of this Agreement shall be borne by Licensee. In the event that the government of a country imposes any taxes on payments by Licensee to Philips hereunder and requires Licensee to withhold such tax from such payments, Licensee may deduct such tax from such payments. In such event, Licensee shall promptly provide Philips with tax receipts issued by the relevant tax authorities so as to enable Philips to support a claim for credit against income taxes which may be payable by Philips and/or its Associated Companies in The Netherlands and to enable Philips to document, if necessary, its compliance with tax obligations in any jurisdiction outside The Netherlands.

5.10   In order that the royalty statements provided for in this Clause 5 may be verified, Licensee shall keep complete and accurate books and records relating to the manufacture and sale or other disposal of the CD-Discs as correspond with the CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22 for which at least one Licensed Patent remains in force in any country of the world and shall keep such books and records available for inspection for a period of 5 years following the sale or other disposal.

Philips shall have the right to inspect the books and records of Licensee from time to time, in order to verify the correctness of the aforementioned royalty statements. Any such inspection shall take place no more than once per calendar year and shall be conducted by a certified public auditor appointed by Philips. Philips shall give Licensee written notice of such inspection at least 7 days prior to the inspection. Licensee shall willingly co-operate and provide all such assistance in connection with such inspection as Philips and/or the auditor may require. The inspection shall be conducted at Philips' own expense, provided that in the event that Licensee has failed to submit royalty statements and/or yearly written statement(s) by its external auditors, as provided for in Clause 5.3 and Clause 5.5, in respect of the period to which the inspection relates or in the event that any discrepancy or error exceeding 3% (three per cent) of the monies actually due is established, in addition to Licensee's obligation promptly to make up for such underpayment, the cost of the inspection shall be borne by Licensee, without prejudice to any other claim or remedy as Philips may have under this Agreement or under applicable law.

USA-CD-Audio-Text-ROM-Extra-Disc/CD-2003
rc\skd\company documents\Ginsam international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001331

15

Philips' right of inspection as set out in this Clause 5.10 shall survive termination or expiration of this Agreement.

5.11    Without prejudice to the provisions of Clause 5.10, Licensee shall provide all relevant additional information as Philips may reasonably request from time to time, so as to enable Philips to ascertain which products manufactured, sold or otherwise disposed of by Licensee are subject to the payment of royalties to Philips hereunder, the patents which have been used in connection with such products, and the amount of royalties payable.

5.12    As a condition precedent to the entry into force of this Agreement, Licensee shall submit to Philips a royalty statement in respect of those CD-Discs as correspond with the CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22 and in which any one or more of the essential Licensed Patents existing at the time is (are) used, manufactured and sold or otherwise disposed of by Licensee before the Effective Date (as hereinafter defined) of this Agreement in accordance with the provisions of Clause 5.3.

Within 7 days following the execution of this Agreement, Licensee shall pay to Philips the royalties for such CD-Discs, calculated by applying the royalty rates of:

(a)    US$ 0.03 (three US Dollar cents) for each CD-Audio Disc with an outer diameter greater than 90 mm, if applicable, containing CD Text information or each CD-ROM Disc (irrespective of the type) with an outer diameter greater than 90 mm;

(b)    US$ 0.02 (two US Dollar cents) for each CD-Audio Disc with an outer diameter smaller than 90 mm, if applicable, containing CD Text information or each CD-ROM Disc (irrespective of the type) with an outer diameter smaller than 90 mm;

(c)    US$ 0.027 (two point seven US Dollar cents) for each CD-Audio Maxi-Single, if applicable, containing CD Text information;

(d)    US$ 0.048 (four point eight US Dollar cents) for each CD Extra Disc, if so selected by Licensee in Schedule I to the Enhanced Music CD Disc License Agreement, if applicable, containing CD Text information;

(e)    US$ 0.045 (four and a half US Dollar cents) for each CD Extra Disc (irrespective of the type) with an outer diameter greater than 90 mm, if applicable, containing CD Text information; and

(f)    US$ 0.03 (three US Dollar cents) for each CD Extra Disc (irrespective of the type) with an outer diameter smaller than 90 mm, if applicable, containing CD Text information.

The above rates are effective for CD-Discs sold after June 30, 2000.
CD-Audio Discs, if applicable, containing CD Text information and CD-ROM Discs (irrespective of the type) having an outer diameter greater than 90 mm sold prior to July 1, 1998 are subject to a royalty rate of US$ 0.045; if sold after June 30, 1998 and prior to July 1, 1999 such Discs are subject to a royalty rate of US$ 0.04; and if sold after June 30, 1999 and prior to July 1, 2000 such Discs are subject to a royalty rate of US$ 0.035.

The royalty statement shall similarly be subject to Philips' right of audit as set out in Clause 5.10. Within 45 days following the execution of this Agreement, a Licensee who requests to be allowed to apply the Compliance Rates in accordance with Clause 5.2 shall submit to

USA-CD-Audio-Text-ROM-Extra-Disc/06-2003
n:\std\company documents\Careza international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001332

16

Philips an audit statement by its external auditors, who shall be certified public auditors, confirming that this royalty statement is true, complete and accurate in every respect. Such statement must meet the requirements as specified in the Audit Guidelines.

6.    Manufacturing Equipment Identification System

6.1    Upon signing of this Agreement, Licensee shall submit to Philips an overview of its manufacturing equipment currently used, or which is technically capable of being used for the manufacture of CD-Discs. Further, upon any acquisition, transfer or disposal of manufacturing equipment used, or which is technically capable of being used for the manufacture of CD-Discs, Licensee shall submit to Philips details of any such adjustment(s) to its manufacturing equipment. Further, Licensee shall submit to Philips an overview containing all adjustments to its manufacturing equipment during the preceding year, together with and confirmed by the audit statement referred to in Clause 5.5. Such overview shall be in the form as attached hereto as Annex B3 ("Manufacturing Equipment List"), signed by a duly authorized officer on behalf of Licensee.

6.2    The Compliance Rates referred to in Clause 5.2 shall only apply to CD-Discs manufactured by Licensee using manufacturing equipment properly identified in the Manufacturing Equipment List and shall be conditional upon Licensee submitting to Philips the audit statement meeting the requirements as set out in the Audit Guidelines, in accordance with the provisions in Clause 5.5. In the event that Licensee puts into use newly acquired manufacturing equipment which has been used, or which was technically capable of being used for the manufacture of CD-Discs prior to the acquisition by Licensee, the Compliance Rates shall only apply if Licensee confirms to Philips that the newly acquired manufacturing equipment originates from and has been used, or was technically capable of being used by a company which was properly licensed by Philips for the manufacture of CD-Discs at the time of the acquisition of the newly acquired manufacturing equipment by Licensee or that the equipment concerned has not been used by any other entity or person directly or indirectly under the same ultimate control as Licensee. In the event that Licensee is unable to comply with the requirements under this Clause 6, the Standard Rates shall apply to Licensee's manufacture and sale of CD-Discs instead of the Compliance Rates.

7.    Most Favourable Rate

7.1    In the event that licenses under the patents referred to in Clause 2 are granted by Philips for CD-Discs, as correspond with the selection made by Licensee pursuant to the Options of Clause 1.22, to a third party under substantially similar conditions, but at a royalty rate more favourable than the rate payable by Licensee under this Agreement, Licensee shall be entitled to the same royalty rate as applicable to such third party, provided always that this right of Licensee shall not apply in respect of cross-license agreements or other agreements providing for a consideration which is not exclusively based on the payment
of royalties and further provided that this right of Licensee shall not apply in respect of licenses or other arrangements made pursuant to a court decision or the settlement of a dispute between Philips and a third party, irrespective of the nature of such dispute, the terms of the court decision or the settlement terms.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\s&f\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304        July 2003

P 001333

17

8.    No Warranty and Indemnification

8.1    Whereas Philips has made efforts to ensure that the information to be supplied by it hereunder is complete and accurate, Philips makes no representation or warranty as to the completeness or accuracy of such information, nor with respect to the ability of Licensee to achieve interchangeability with respect to CD-Discs through the use of such information.

8.2    It is acknowledged by Licensee that third parties may own industrial and/or intellectual property rights in the field of CD-Discs. Philips and Sony make no warranty whatsoever that the manufacture, sale or other disposal of CD-Discs or the use of information supplied by Philips hereunder, does not infringe or will not cause infringement of any industrial and/or intellectual property rights other than the Licensed Patents. Philips, Sony and their respective Associated Companies shall be fully indemnified and held harmless by Licensee from and against any and all third party claims in connection with CD-Discs manufactured, sold or otherwise disposed of by Licensee.

9.    Confidentiality

9.1    Licensee shall at all times maintain strict confidentiality with regard to the CD Standard Specifications and shall not disclose same to any third party without the prior written consent of Philips.

9.2    Without prejudice to Clause 9.1, Licensee shall, during the term of this Agreement as specified in Clause 12.1 and for a period of 3 years thereafter, not disclose to any third party any information acquired from Philips or any of Philips' Associated Companies in connection with this Agreement, or use such information for any purpose other than the manufacture and disposal of CD-Discs in accordance with the provisions of this Agreement. This obligation shall not apply to the extent information so acquired:

(a)    was known to Licensee prior to the date on which such information was acquired from Philips or any of Philips' Associated Companies, as shown by records of Licensee or otherwise demonstrated to Philips' satisfaction;

(b)    is or has become available to the public through no fault of Licensee;

(c)    was or is received from a third party who was under no confidentiality obligation in respect of such information.

In protecting information acquired from Philips or any of Philips' Associated Companies, Licensee shall take all necessary measures and precautions, including but not limited to measures requiring its present and future employees to give suitable undertakings of secrecy both for the period of their employment and thereafter, and shall protect such information in the same manner and with the same degree of care (but no less than a reasonable degree of care) as Licensee applies to its own information of a confidential nature.

USA-CD-Audio-Text-ROM-Extra-Disc/06-2003
n:\akl\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304

July 2003

P 001334

18

9.3    The obligations concerning confidentiality contained in Clause 9.1 and Clause 9.2 shall survive termination of this Agreement.

9.4    Philips shall, during the term of this Agreement as specified in Clause 12.1 and for a period of 3 years thereafter, not disclose to any third party any confidential information obtained in connection with Clause 5.3, Clause 5.5, Clause 5.6, Clause 5.12 and/or Clause 6, except that Philips may disclose such information to its external auditors, legal representatives and to the competent courts to the extent this is necessary for Philips in connection with the enforcement of its rights hereunder. Further, Philips shall not use such information for other purposes than to verify Licensee's compliance with its royalty reporting and payment obligations as provided in this Agreement and to enforce Philips' rights hereunder. Philips' obligations set out in this paragraph shall not apply to information referred to in sections (a), (b) and/or (c) of Clause 9.2.

10.    Logo

10.1   For the term of this Agreement and subject to the full and timely performance and observance by Licensee of all its undertakings and obligations hereunder, Licensee shall be entitled to use on the Licensed Products as well as in advertisements and sales literature with respect to Licensed Products sold by Licensee, a logo (hereinafter referred to as "the Logo") in accordance with the instructions laid down in the CD Logo Guide which shall be made available to Licensee together with the relevant CD Standard Specifications.

10.2   Licensee acknowledges and agrees that Philips makes no warranty whatsoever that any use of the Logo does not infringe or will not cause infringement of any third party intellectual property rights.

11.    No Assignment

11.1   This Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective assignees. It may not be assigned in whole or in part by Licensee without the prior written consent of Philips.

12.    Term and Termination

12.1   This Agreement shall enter into force on the "Effective Date", being the date first written above. In the event that validation of this Agreement is required by the competent governmental authorities, the Effective Date shall be the date of such validation. Unless terminated earlier in accordance with the provisions of this Clause 12, this Agreement shall remain in force until the expiration date of the last to expire Licensed Patent in the Territory essential to CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22.

       Upon the expiration of all Licensed Patents in the Territory essential to CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22, Philips shall not assert any of the essential Licensed Patents against Licensee or Licensee's customers, provided that Licensee

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\skd\company documents\Cinram international inc\cd audio text-rom-extra disc-usa-121304

July 2003

P 001335

19

has entered into a contractual arrangement with Philips providing for the situation that, although such CD-Discs manufactured by Licensee are no longer covered by any of the essential Licensed Patents in the Territory, such CD-Discs are being imported by Licensee or a third party into one or more other countries in which one or more of said essential Licensed Patents subsist.

12.2 Without prejudice to the provisions of Clause 12.3 through Clause 12.6, each party may terminate this Agreement at any time by means of a written notice to the other party in the event that the other party fails to perform any obligation under this Agreement and such failure is not remedied within 30 days after receipt of a notice specifying the nature of such failure and requiring it to be remedied. Such right of termination shall not be exclusive of any other remedies or means of redress to which the non-defaulting party may be lawfully entitled and all such remedies shall be cumulative. Any such termination shall not affect any royalty or other payment obligations under this Agreement accrued prior to such termination.

12.3 Philips may terminate this Agreement forthwith by means of a written notice to Licensee in the event that a creditor or other claimant takes possession of, or a receiver, administrator or similar officer is appointed over any of the assets of Licensee, or in the event that Licensee makes any voluntary arrangement with its creditors or becomes subject to any court or administration order pursuant to any bankruptcy or insolvency law.

12.4 Additionally, insofar as legally permitted, Philips may terminate this Agreement at any time by means of a written notice to Licensee in case Licensee or an Associated Company of Licensee has been found liable by a competent court or administrative authority to have committed an act of copyright piracy.

12.5 Philips shall have the right to terminate this Agreement forthwith or to revoke the license granted under any of Philips', Sony's or any of their respective Associated Companies' patents in the event that Licensee or any of its Associated Companies brings a claim of infringement of any of Licensee's or any of Licensee's Associated Companies' essential patents relating to CD-Discs or CD-Players against Philips, Sony or any of their respective Associated Companies and Licensee refuses to license such patents on fair and reasonable conditions.

12.6 Upon the termination of this Agreement by Philips for any reason pursuant to Clause 12.2 through Clause 12.5, Licensee shall immediately cease the manufacture, sale or other disposal of CD-Discs in which any one or more of the Licensed Patents are used. Further, upon such termination, any and all amounts outstanding hereunder shall become immediately due and payable.

12.7 All provisions of this Agreement which are intended to survive (whether express or implied) the expiry or termination of this Agreement, shall so survive.

13.    Miscellaneous

13.1 Licensee acknowledges that Philips may make modifications to the wording of the standard version of the CD Disc Patent License Agreement in future. Licensee shall at all times have

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\skd\company documents\Ginran international inc.\cd audio text-rom-extra disc-usa-121304          July 2003

P 001336

20

the option of entering into the latest version of the CD Disc Patent License Agreement as published by Philips on its website or otherwise communicated by Philips to Licensee after the Effective Date of this Agreement.

13.2    Any notice required under this Agreement to be sent by either party shall be given in writing by means of a letter, facsimile or electronic mail directed:

in respect of Licensee, to:

Cinram International, Inc.
2255 Markham Road
Scarborough, Ontario M1B 2W3
Canada
Fax: 1 (416) 298-0612

in respect of Philips, to:

Koninklijke Philips Electronics N.V.
c/o Philips Intellectual Property & Standards - Legal Department
Building WAH-2
P.O. Box 220
5600 AE  Eindhoven
The Netherlands
Fax: +31 40 2743489

with a copy to:

Philips Intellectual Property & Standards,
P.O. Box 3001
345 Scarborough Road
Briarcliff Manor, NY 10510-8001
Fax: (914) 332-0615

or to such other address as may have been previously specified in writing by either party to the other.

13.3    This Agreement sets forth the entire understanding and agreement between the parties as to the subject matter hereof and supersedes and replaces all prior arrangements, discussions and understandings between the parties relating thereto. No variation of this Agreement shall be binding upon either party unless made in writing and signed by an authorized representative of each of the parties hereto.

13.4    Nothing contained in this Agreement shall be construed:

    as imposing on either party any obligation to instigate any suit or action for infringement of any of the patents licensed hereunder or to defend any suit or action brought by a third party which challenges or relates to the validity of any such patents. Licensee shall have no right to instigate any such suit or action for

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\std\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304

July 2003

P 001337

21

infringement of any of the patents licensed by Philips hereunder, nor the right to defend any such suit or action which challenges or relates to the validity of any such patent licensed by Philips hereunder;

(b) as imposing any obligation to file any patent application, to secure any patent or to maintain any patent in force;

(c) as conferring any license or right to copy or imitate the appearance and/or design of any product of Philips, Sony or any of their respective Associated Companies;

(d) as conferring any license to manufacture, sell or otherwise dispose of any product or device other than a Licensed Product.

13.5 Neither the failure nor the delay of either party to enforce any provision of this Agreement shall constitute a waiver of such provision or of the right of either party to enforce each and every provision of this Agreement.

13.6 Should any provision of this Agreement be finally determined void or unenforceable in any judicial proceeding, such determination shall not affect the operation of the remaining provisions hereof, provided that, in such event, Philips shall have the right to terminate this Agreement by means of a written notice to Licensee.

13.7 This Agreement shall be governed by and construed in accordance with the laws of The State of New York.

Any dispute between the parties hereto in connection with this Agreement (including any question regarding its existence, validity or termination) shall be submitted to any state or federal courts in The State of New York, provided always that, in case Philips is the plaintiff, Philips may, at its sole discretion, submit any such dispute either to the state or federal courts in the venue of Licensee's registered office, or to any of the state or federal courts in the Territory having jurisdiction. Licensee hereby irrevocably waives any objection to the jurisdiction, process and venue of any such court and to the effectiveness, execution and enforcement of any order or judgment (including, but not limited to, a default judgment) of any such court in relation to this Agreement, to the maximum extent permitted by the law of any jurisdiction, the laws of which might be claimed to be applicable regarding the effectiveness, enforcement or execution of such order or judgment.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\s&l\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121504                    July 2003

P 001338



22

AS WITNESS, the parties hereto have caused this Agreement to be signed on the date first written above.

KONINKLIJKE PHILIPS ELECTRONICS N.V.

CINRAM INTERNATIONAL INC.

Name: H. SAKKERS

Name: JOHN TINO

Title: BY PROXY

Title: DIRECTOR OF FINANCIAL REPORTING

Date: _____

Date: DEC 21/04

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\ahf\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304

July 2003

P 001339

Annex A1 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD Disc / CD-General part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AR | Q060007 | 285958 | 02-Jul-81 | | 08-Jun-97 | 250849 | 04-Jun-12 | Block N to K compact disc modulation code (EFM) |
| AR | Q060059 | 285400 | 20-May-81 | | 04-Jun-97 | 262648 | 04-Jun-12 | Error correctable data transmission method |
| AT | Q060007 | 81-A3107 | 14-Jul-81 | | 25-Jan-89 | 404852 | 16-May-18 | Block N to K compact disc modulation code (EFM) |
| AT | Q060059 | 81-A2215 | 18-May-81 | 395794 | 25-May-93 | 395794 | 15-Jul-10 | Error correctable data transmission method |
| BW | Q060007 | 18-00033 | 21-Apr-98 | | 02-Oct-02 | BWP/0200035 | 21-Apr-18 | Block N to K compact disc modulation code (EFM) |
| CA | Q060007 | 341342 | 08-Jul-81 | | 16-Sep-86 | 1211578 | 16-Sep-03 | Block N to K compact disc modulation code (EFM) |
| US | H006493  D | 06/935550 | 23-Apr-86 | | 24-Nov-91 | 5068848 | 24-Nov-08 | Video disc with disc body acting as protection |
| US | P15.688 | 890316 | 30-Mar-82 | | 19-Apr-94 | 5305301 | 19-Apr-11 | Optical readable carriers |

All corresponding patent applications, patents, divisions, continuations and related based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 21 July 2003

P 001340

## Annex A2 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM Mode 1 part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|---|
| AT | Q083025 | 84-A3769 | 29-Aug-84 | | | 26-Dec-87 | 409223 | 15-Apr-18 | Framing of data-blocks on CD-ROM |
| AT | Q084008 | 85200431.6 | 20-Mar-85 | 0166440-A2 | | 24-Jun-90 | E48835 | 20-Mar-05 | CD-ROM Error Correction System A |
| AU | Q083025 | 84-32584 | 31-Aug-84 | | | 28-Mar-91 | 603761 | 31-Aug-04 | Framing of data-blocks on CD-ROM |
| AU | Q084008 | 85-0240 | 22-Mar-85 | | | 28-Sep-89 | 584853 | 22-Mar-05 | CD-ROM Error Correction System A |
| BE | Q083025 | 85200431.6 | 20-Mar-85 | 0166440-A2 | | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| BR | Q083025 | PI8406319.9 | 28-Aug-84 | | | 17-Apr-02 | PI8406319.9 | 21-Aug-04 | Framing of data-blocks on CD-ROM |
| BR | Q084008 | PI9501277.7 | 21-Mar-85 | | | 26-Oct-93 | PI9501277 | 21-Mar-05 | Framing of data-blocks on CD-ROM |
| CA | Q084008 | 477183 | 21-Mar-85 | | | 13-Jun-89 | 1251771 | 13-Jun-06 | CD-ROM Error Correction System A |
| CA | S4AP0216 | 459869 | 27-Apr-84 | | | 26-Apr-88 | 1235812 | 26-Apr-05 | Disc recording medium |
| CH | Q084008 | 85200431.6 | 20-Mar-85 | 0166449-A2 | | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| CZ | Q084008 | 85-PV2069 | 21-Mar-85 | | | 22-Sep-98 | 281801 | 21-Mar-05 | CD-ROM Error Correction System A |
| DE | Q083025 | P3431810.0 | 30-Aug-84 | 3431810 | | 11-Jun-95 | 3431810 | 30-Aug-04 | Framing of data-blocks on CD-ROM |
| DE | Q084008 | 85200431.6 | 20-Mar-85 | 0166440-A2 | | 24-Jan-90 | 357846 | 20-Mar-05 | CD-ROM Error Correction System A |
| DE | S4AP0216 | 84305176.4 | 30-Jul-84 | | | 18-Jan-90 | P3476398.2 | 30-Jul-04 | Disc recording medium |
| FR | Q084008 | 854297 | 22-Mar-85 | | | 02-Nov-87 | 2561830 | 22-Mar-05 | CD-ROM Error Correction System A |
| FR | S4AP0216 | 84305176.4 | 30-Jul-84 | | | 15-Jan-88 | 133790 | 30-Jul-04 | Disc recording medium |
| GB | Q083025 | 8421705 | 28-Aug-84 | | | 01-Feb-89 | 2148855 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| GB | Q084008 | 8507246 | 20-Mar-85 | | | 03-Mar-88 | 2158855 | 20-Mar-05 | CD-ROM Error Correction System A |
| GB | S4AP0216 | 84305176.4 | 30-Jul-84 | | | 18-Jan-89 | 133790 | 30-Jul-04 | Disc recording medium |
| HK | Q083025 | NOT GIVEN | 28-Aug-84 | | | 18-Feb-93 | 0030121 | 21-Aug-04 | Framing of data-blocks on CD-ROM |
| HK | Q084008 | NOT GIVEN | 20-Mar-85 | | | 06-May-93 | 0730433 | 20-Mar-05 | CD-ROM Error Correction System A |
| IT | Q084008 | 85200431.6 | 20-Mar-85 | 0166440-A2 | | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| JP | Q083025 A | 93-269402 | 01-Sep-83 | 94-185947 | | 23-Jan-87 | 2605565 | 01-Sep-03 | Framing of data-blocks on CD-ROM |
| JP | Q084008 | 84-57885 | 24-Mar-84 | 85-201675 | 95-101543 | 23-Aug-96 | 2088942 | 24-Mar-04 | Framing of data-blocks on CD-ROM |
| KR | Q084008 | 83-1914 | 23-Mar-85 | 04-8742 | | 09-Nov-85 | 81142 | 23-Mar-05 | CD-ROM Error Correction System A |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the issued applications or patents of this list are considered as to be concluded as an integral part of this list

Version date : 21 July 2003

P 001341

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM Mode 1 part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| NL | Q 084008 - | 85200431.6 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | 0156440 | 24-Mar-05 | CD-ROM Error Correction System A |
| NL | B84P0216 - | 8430S176.4 | 30-Jul-84 | | 18-Jan-88 | 133790 | 30-Jul-04 | Disc recording medium |
| SE | Q 084008 - | 85200431.6 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| SG | Q 084008 - | 9290553.8 | 20-Mar-85 | | 28-Oct-92 | 33772 | 20-Mar-05 | CD-ROM Error Correction System A |
| SK | Q 083025 - | 84-PV6807 | 03-Sep-84 | | 09-Jun-92 | 278393 | 03-Sep-04 | Framing of data-blocks on CD-ROM |
| SK | Q 084008 - | 85-PV2009 | 21-Mar-85 | | 26-May-97 | 278844 | 21-Mar-05 | CD-ROM Error Correction System A |
| UA | Q 084008 - | 3874714 | 22-Mar-85 | | 27-Dec-94 | 3503 | 22-Mar-05 | CD-ROM Error Correction System A |
| US | Q 084008 R | 07/379527 | 13-Jul-89 | | 27-Nov-90 | RE33462 | 22-Mar-05 | CD-ROM Error Correction System A |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Page 2 of 3                                                                                           Version dated : 21 July 2003

P 001342

Annex A3 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM Mode 2 part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | Q 083025 - | 84-A2780 | 28-Aug-84 | | 28-Dec-87 | 403223 | 18-Apr-18 | Framing of data-blocks on CD-ROM |
| AU | Q 083025 - | 84-32584 | 31-Aug-84 | | 28-Mar-91 | 603781 | 31-Aug-04 | Framing of data-blocks on CD-ROM |
| BR | Q 083025 - | PI8404318.9 | 29-Aug-84 | | 17-Apr-02 | PI8404318.9 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| CA | S8AP0216 - | 459489 | 27-Apr-84 | | 28-Apr-18 | 1235912 | 28-Apr-05 | Disc recording medium |
| DE | Q 083025 - | P3431810.0 | 30-Aug-84 | 3431810 | 14-Jun-95 | 3431810 | 30-Aug-04 | Framing of data-blocks on CD-ROM |
| DE | S8AP0216 - | 84305178.4 | 30-Jul-84 | | 18-Jan-94 | P3478238.2 | 30-Jul-04 | Disc recording medium |
| FR | S8AP0216 - | 84305178.4 | 30-Jul-84 | | 18-Jan-94 | 133798 | 30-Jul-04 | Disc recording medium |
| GB | Q 083025 - | 8421705 | 28-Aug-84 | | 03-Feb-88 | 2145855 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| GB | S8AP0216 - | 84305178.4 | 30-Jul-84 | | 18-Jan-94 | 133796 | 30-Jul-04 | Disc recording medium |
| HK | Q 083025 - | NOT GIVEN | 28-Aug-84 | | 18-Feb-93 | 0930121 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| JP | Q 083025 A | 83-289402 | 01-Sep-83 | 84-193547 | 29-Jan-87 | 2800585 | 01-Sep-03 | Framing of data-blocks on CD-ROM |
| NL | S8AP0216 - | 84305178.4 | 30-Jul-84 | | 18-Jan-94 | 133790 | 30-Jul-04 | Disc recording medium |
| SK | Q 083025 - | 84-PV9807 | 03-Sep-84 | | 09-Jun-92 | 278585 | 03-Sep-04 | Framing of data-blocks on CD-ROM |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list.

Version date : 21 July 2003

P 001343

Annex A4 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM XA Sub-mode 1 (Mode 2 Form 1) part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | Q 083025 | 84-A3780 | 29-Aug-84 | | 28-Dec-87 | 403223 | 15-Apr-18 | Framing of data-blocks on CD-ROM |
| AT | Q 084008 | 85200431.6 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | E48835 | 20-Mar-05 | CD-ROM Error Correction System A |
| AT | 384P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | 52886 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| AU | Q 083025 | 84-32354 | 31-Aug-84 | | 26-Mar-91 | 603761 | 31-Aug-04 | Framing of data-blocks on CD-ROM |
| AU | Q 084008 | 85-40340 | 22-Mar-85 | | 28-Sep-88 | 584883 | 22-Mar-05 | CD-ROM Error Correction System A |
| BE | Q 084008 | 85200431.6 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| BR | Q 083025 | PI8404319.3 | 29-Aug-84 | | 17-Apr-02 | PI8404319.3 | 29-Aug-04 | CD-ROM Error Correction System A |
| BR | Q 084008 | PI8501277.7 | 21-Mar-85 | | 28-Oct-03 | PI8501277 | 21-Mar-05 | CD-ROM Error Correction System A |
| BR | Q 048003 | PI8700846.7 | 23-Feb-87 | | 30-May-95 | PI8700846 | 23-Feb-07 | Real-time format switching |
| CA | Q 084008 | 477183 | 21-Mar-85 | | 13-Jun-89 | 1255771 | 13-Jun-06 | CD-ROM Error Correction System A |
| CA | Q 048003 | 530120 | 18-Feb-87 | | 12-Feb-91 | 1282358 | 12-Feb-08 | Real-time format switching |
| CA | 384P0216 | 458469 | 27-Apr-84 | | 28-Apr-18 | 1238912 | 28-Apr-05 | Disc recording medium |
| CH | Q 084008 | 85200431.6 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| CN | Q 048003 | 87100928.3 | 21-Feb-87 | 87100928-A | 13-Mar-91 | 1010817 | 21-Feb-07 | Real-time format switching |
| CZ | Q 084008 | 85-PV2609 | 21-Mar-85 | | 23-Sep-98 | 281001 | 21-Mar-05 | CD-ROM Error Correction System A |
| DE | Q 083025 | P3431810.0 | 30-Aug-84 | 3431810 | 14-Jun-85 | 3431810 | 30-Aug-04 | Framing of data-blocks on CD-ROM |
| DE | Q 084008 | 85200431.6 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | 3576642 | 20-Mar-05 | CD-ROM Error Correction System A |
| DE | Q 089003 | P3701783.2 | 22-Jan-87 | 3701783 | 22-May-97 | 3701783 | 22-Jan-07 | CD-ROM Error Correction System A |
| DE | 384P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | P3481231.7 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| DE | 384P0216 | 84305178.4 | 30-Jul-84 | | 18-Jan-84 | P3476298.2 | 30-Jul-04 | Disc recording medium |
| FR | Q 084008 | 8504397 | 22-Mar-85 | | 02-Mar-87 | 2581839 | 22-Mar-05 | CD-ROM Error Correction System A |
| FR | Q 048003 | 8702234 | 20-Feb-87 | | 22-Aug-88 | 2894998 | 20-Feb-07 | Real-time format switching |
| FR | 384P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | 137835 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| FR | 384P0216 | 84305178.4 | 30-Jul-84 | | 18-Jan-84 | 133780 | 30-Jul-04 | Disc recording medium |
| GB | Q 083025 | 8421705 | 28-Aug-84 | | 03-Feb-88 | 2145855 | 28-Aug-04 | Framing of data-blocks on CD-ROM |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 21 July 2003

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM XA Sub-mode 1 (Mode 2 Form 1) part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|---|
| GB | Q.044008 | 8507248 | 20-Mar-85 | | | 09-Mar-88 | 2154955 | 20-Mar-05 | CD-ROM Error Correction System A |
| GB | Q.046003 | 8704011 | 20-Feb-87 | | | 04-Dec-89 | 2187008 | 20-Feb-07 | Real-time format switching |
| GB | S84P0116 | 8490101011.1 | 02-Mar-84 | | | 16-May-90 | 137855 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| GB | S84P0216 | 84303176.4 | 30-Jul-84 | | | 13-Jun-84 | 133790 | 30-Jul-04 | Disc recording medium |
| HK | Q.043025 | NOT GIVEN | 28-Aug-84 | | | 18-Feb-93 | 0930121 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| HK | Q.044008 | NOT GIVEN | 20-Mar-85 | | | 06-May-93 | 0930433 | 20-Mar-05 | CD-ROM Error Correction System A |
| IT | Q.043025 | 83200431.6 | 20-Mar-85 | 0154440-A2 | | 24-Jun-90 | 018544G | 20-Mar-05 | CD-ROM Error Correction System A |
| IT | Q.046003 | 87-A14447 | 20-Feb-87 | | | 08-Feb-90 | 1218362 | 20-Feb-07 | Real-time format switching |
| JP | Q.043025 A | 93-249402 | 01-Sep-93 | 94-195947 | | 29-Jan-97 | 2605585 | 01-Sep-03 | Framing of data-blocks on CD-ROM |
| JP | Q.044008 | 84-57595 | 24-Mar-84 | 85-201573  85-101543 | | 23-Aug-94 | 2048842 | 24-Mar-04 | CD-ROM Error Correction System A |
| JP | Q.046003 | 87-31957 | 23-Feb-87 | 87-217468 | | 16-Dec-87 | 2730024 | 23-Feb-07 | Real-time format switching |
| KR | Q.044004 | 85-1914 | 23-Mar-85 | | 84-8742 | 09-Jan-95 | 81142 | 23-Mar-05 | CD-ROM Error Correction System A |
| KR | Q.046003 | 87-1501 | 23-Feb-87 | | 85-7946 | 30-Oct-85 | 91017 | 23-Feb-07 | Real-time format switching |
| NL | Q.043008 | 83200431.6 | 20-Mar-85 | 0154440-A2 | | 24-Jun-90 | 0154440 | 20-Mar-05 | CD-ROM Error Correction System A |
| NL | Q.046003 | 8800450 | 24-Feb-98 | 8800150 | | 04-Feb-97 | 192151 | 24-Feb-06 | Real-time format switching |
| NL | S84P0216 | 84303176.4 | 30-Jul-84 | | | 15-Jun-84 | 133790 | 30-Jul-04 | Disc recording medium |
| SE | Q.044008 | 83200431.6 | 20-Mar-85 | 0154440-A2 | | 24-Jun-90 | 0154440 | 20-Mar-05 | CD-ROM Error Correction System A |
| SE | Q.046003 | 8700711-5 | 20-Feb-87 | | | 05-Jun-92 | 463442 | 20-Feb-07 | Real-time format switching |
| SG | Q.044008 | 9205563.8 | 20-Mar-85 | | | 28-Oct-92 | 32772 | 20-Mar-05 | CD-ROM Error Correction System A |
| SK | Q.043025 | 84-PV9907 | 03-Sep-84 | | | 09-Jun-92 | 278665 | 03-Sep-04 | Framing of data-blocks on CD-ROM |
| SK | Q.044008 | 85-PV2709 | 21-Mar-85 | | | 28-May-97 | 278368 | 21-Mar-05 | CD-ROM Error Correction System A |
| TW | Q.046003 | 76100969 | 25-Feb-87 | | | 26-Mar-88 | 27918 | 25-Feb-07 | Real-time format switching |
| UA | Q.044008 | 3874714 | 22-Mar-85 | | | 27-Dec-94 | 3593 | 22-Mar-05 | CD-ROM Error Correction System A |
| US | Q.044008 R | 07/379827 | 13-Jul-89 | | | 27-Nov-90 | RE33442 | 22-Mar-05 | CD-ROM Error Correction System A |
| US | Q.046003 | 07/018153 | 24-Feb-87 | | | 31-Jan-89 | 4802169 | 24-Feb-07 | Real-time format switching |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Page 2 of 3

Version date : 21 July 2003

P 001345

Annex A5 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM XA Sub-mode 2 (Mode 2 Form 2) part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | Q083025 | 84-A3789 | 28-Aug-84 | | 28-Oct-87 | 403223 | 15-Apr-16 | Framing of data-blocks on CD-ROM |
| AT | S84P0115 | 84901011.1 | 02-Mar-84 | | 19-May-90 | 52868 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| AU | Q083025 | 84-42384 | 31-Aug-84 | | 25-Jan-91 | 603781 | 31-Aug-04 | Framing of data-blocks on CD-ROM |
| BR | Q083025 | PI8404319.9 | 28-Aug-84 | | 17-Apr-02 | PI8404319.9 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| BR | Q066003 | PI8700846.7 | 23-Feb-87 | | 30-Mar-95 | PI8700846 | 23-Feb-07 | Real-time format switching |
| CA | Q066003 | 530120 | 19-Feb-87 | | 12-Feb-91 | 1280206 | 23-Feb-07 | Real-time format switching |
| CA | S84P0216 | 459669 | 27-Apr-84 | | 26-Apr-88 | 1233812 | 12-Feb-08 | Disc recording medium |
| CN | Q066003 | 87100929.3 | 21-Feb-87 | 87100929-A | 13-Jan-91 | 1010517 | 26-Apr-05 | Real-time format switching |
| DE | Q083025 | P5431810.0 | 30-Aug-84 | 3431810 | 14-Jul-91 | 3431810 | 30-Aug-04 | Framing of data-blocks on CD-ROM |
| DE | Q066003 | P3701783.2 | 22-Jan-87 | 3701783 | 22-Mar-97 | 3701783 | 22-Jan-07 | Real-time format switching |
| DE | S84P0115 | 84901011.1 | 02-Mar-84 | | 18-May-89 | P3448231.7 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| DE | S84P0216 | 84201578.4 | 30-Jul-84 | | 01-Jun-94 | P3471269.2 | 30-Jul-04 | Disc recording medium |
| FR | Q066003 | 8702234 | 20-Feb-87 | | 22-Aug-88 | 2594996 | 20-Feb-07 | Real-time format switching |
| FR | S84P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | 137855 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| FR | S84P0216 | 84305917.4 | 30-Jul-84 | | 18-Jan-84 | 133790 | 30-Jul-04 | Disc recording medium |
| GB | Q083025 | 8421705 | 28-Aug-84 | | 03-Feb-88 | 2145835 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| GB | Q066003 | 8704011 | 20-Feb-87 | | 04-Dec-88 | 2187008 | 20-Feb-07 | Real-time format switching |
| GB | S84P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | 137855 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| GB | S84P0216 | 84305917.4 | 30-Jul-84 | | 18-Jan-84 | 133790 | 30-Jul-04 | Disc recording medium |
| HK | Q083025 | NOT GIVEN | 28-Aug-84 | | 18-Feb-93 | 0930121 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| IT | Q066003 | 87-A19447 | 20-Feb-87 | | 04-Feb-90 | 1215942 | 20-Feb-07 | Real-time format switching |
| JP | Q083025 A | 83-208402 | 01-Sep-83 | 84-19847 | 29-Jan-97 | 2600585 | 01-Sep-03 | Framing of data-blocks on CD-ROM |
| JP | Q066003 | 87-39597 | 23-Feb-87 | 87-217483 | 18-Dec-97 | 2730624 | 23-Feb-07 | Real-time format switching |
| KR | Q066003 | 87-1601 | 23-Feb-87 | 85-7848 | 30-Oct-95 | 81817 | 23-Feb-07 | Real-time format switching |
| NL | Q066003 | 8600450 | 24-Feb-86 | 8600450 | 04-Feb-87 | 192151 | 24-Feb-06 | Real-time format switching |

*All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list*

Page 1 of 3

Version date : 21 July 2003

P 001346

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM XA Sub-mode 2 (Mode 2 Form 2) part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---------|-----------|-----------|-------------|----------------|-----------|----------|-------------|-------|
| NL | 884PV216 | 843061784 | 30-Jul-84 | | 16-Jan-84 | 133790 | 30-Jul-04 | Disc recording medium |
| SE | Q 096003 | 8700711-8 | 20-Feb-87 | | 09-Jan-92 | 466442 | 20-Feb-07 | Real-time format switching |
| SK | Q 085025 | 84-PV6807 | 03-Sep-84 | | 08-Jun-92 | 278383 | 03-Sep-04 | Frames of data-blocks on CD-ROM |
| TW | Q 096003 | 76100989 | 25-Feb-87 | | 24-Mar-88 | 27918 | 25-Feb-07 | Real-time format switching |
| US | Q 096003 | 07/018163 | 24-Feb-87 | | 31-Jan-89 | 4802180 | 24-Feb-07 | Real-time format switching |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Page 2 of 2                                                                                                         Version date : 21 July 2003

P 001347

Annex A6 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | S8SP0059 | 85900170.3 | 30-Nov-84 | 166320 | 03-Jun-92 | E76098 | 30-Nov-84 | Disc recording medium |
| AU | N013561 | 92-13942 | 31-Mar-92 | 92-13942    661991 | 11-Feb-96 | 641991 | 31-Mar-12 | Recording of content information in Lead-Out |
| AU | S8SP0059 | 37412/85 | 30-Nov-84 | 37412/85 | 07-Sep-89 | 587983 | 30-Nov-04 | Disc recording medium |
| AU | S8MP0005 | 22358490 | 24-Mar-00 | . | 01-Jun-00 | 732279 | 23-Jun-16 | Multi-session disc having disc type code area loca |
| CA | N013561 | 2064511 | 31-Mar-92 | . | 01-Jun-02 | 2064511 | 31-Mar-12 | Recording of content information in Lead-Out |
| CH | S8SP0059 | 85900170.3 | 30-Nov-84 | 166320 | 03-Jun-92 | 166320 | 30-Nov-04 | Disc recording medium |
| CN | S8SP0005 | 8110A382 | 30-Jan-96 | CN113767SA | | | | Multi-session disc having disc type code area loca |
| CZ | N013585 | 32-PV970 | 01-Apr-92 | | 28-Jul-00 | 287132 | 01-Apr-12 | CD-ROM XA Multi-session WO |
| DE | N013561 | 92200693.3 | 30-Mar-92 | 0507397-A3 | 01-Jul-98 | 69228501.5 | 30-Mar-12 | Recording of content information in Lead-Out |
| DE | N013585 | 92200909.7 | 30-Mar-92 | 0507403-A3 | 08-Jul-04 | 69228116.8 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| DE | S8SP0059 | 85900170.3 | 30-Nov-84 | 166320 | 03-Jun-92 | P3485781.3 | 30-Nov-04 | Disc recording medium |
| DE | S8MP0005 | 98101096.7 | 25-Jan-98 | 724283 | | | | Multi-session disc having disc type code area loca |
| ES | N013561 | 92200693.3 | 30-Mar-92 | 0507397-A3 | 01-Jul-98 | 2118784 | 30-Mar-12 | Recording of content information in Lead-Out |
| ES | N013585 | 92200909.7 | 30-Mar-92 | 0507403-A3 | 08-Jul-98 | 0507403 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| FR | N013561 | 92200693.3 | 30-Mar-92 | 0507397-A3 | 01-Jul-98 | 0697397 | 30-Mar-12 | Recording of content information in Lead-Out |
| FR | N013585 | 92200909.7 | 30-Mar-92 | 0507403-A3 | 08-Jul-98 | 0507403 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| FR | S8SP0059 | 85900170.3 | 30-Nov-84 | 166320 | 03-Jun-92 | 166320 | 30-Nov-04 | Disc recording medium |
| GB | N013561 | 92200693.3 | 30-Mar-92 | 0507397-A3 | 01-Jul-98 | 0507397 | 30-Mar-12 | Multi-session disc having disc type code area loca |
| GB | N013585 | 92200909.7 | 30-Mar-92 | 0507403-A3 | 08-Jul-98 | 0507403 | 30-Mar-12 | Recording of content information in Lead-Out |
| GB | S8MP0059 | 85900170.3 | 30-Nov-84 | 166320 | 03-Jun-92 | 166320 | 30-Nov-04 | CD-ROM XA Multi-session WO |
| GB | S8MP0005 | 98101096.7 | 25-Jan-98 | 724283 | | | | Disc recording medium |
| HK | S8MP0059 | 98101096.7 | 25-May-95 | | 23-May-95 | 08151095 | | Multi-session disc having disc type code area loca |
| HU | N013585 | P9201053 | 30-Mar-92 | | 30-Aug-99 | 218690 | 20-Mar-12 | Disc recording medium |
| ID | S8MP0005 | P-960210 | 30-Jan-96 | 012.665A | 28-Dec-98 | ID0004712 | 30-Jan-16 | Multi-session disc having disc type code area loca |

All corresponding patent applications, patents, divisions, continuations and related types any of this patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 24 November 2003

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| IN | S96P0005 | 01845DEL/96 | 25-Jan-96 | | | | | Multi-session disc having disc type code area loca |
| IT | N013681 | 92200393.3 | 30-Mar-92 | 0507397-A3 | 01-Jul-98 | 0507397 | 30-Mar-12 | Recording of content information in Lead-Out |
| IT | N013585 | 92200509.7 | 30-Mar-92 | 0507403-A3 | 06-Jul-98 | 0507403 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| IT | S96P0005 | 96101064.7 | 25-Jun-96 | 724253 | | | | Multi-session disc having disc type code area loca |
| JP | 84000899 | 59228364 | 30-Nov-83 | 60-119670 | 20-Dec-96 | 2123759 | 30-Nov-03 | Disc recording medium |
| JP | 84011554 | 59-057395 | 24-Mar-84 | 60-201575 | 23-Aug-96 | 2086642 | 24-Mar-04 | Method and apparatus for transmitting digital data |
| JP | 85080963 | 07311437 | 29-Nov-95 | 08-227577 | | | | Recording medium having a first management area |
| JP | N013681 | 92-81010 | 02-Apr-92 | 93-49398 | 05-Apr-02 | 3292851 | 02-Apr-12 | Recording of content information in Lead-Out |
| JP | N013585 | 92-79001 | 01-Apr-92 | 83-94875 | 15-Mar-02 | 3358211 | 01-Apr-12 | CD-ROM XA Multi-session WO |
| JP | N013585 A | 02-201276 | 01-Apr-92 | | | | 01-Apr-12 | CD-ROM XA Multi-session WO |
| JP | N013585 B | 03-316344 | 01-Apr-92 | | | | 01-Apr-12 | CD-ROM XA Multi-session WO |
| JP | S96P0005 | 07013211 | 30-Jun-95 | 08-203210 | | | | Multi-session disc having disc type code area loca |
| KR | N013681 | 92-5313 | 31-Mar-92 | 92-20420 | 22-Feb-00 | 256335 | 31-Mar-12 | Recording of content information in Lead-Out |
| KR | N013585 | 92-5314 | 31-Mar-92 | 92-20410 | 09-Nov-99 | 242218 | 31-Mar-12 | CD-ROM XA Multi-session WO |
| KR | S85P0059 | 85-700146 | 28-Jul-85 | 85-00175 | 30-Apr-93 | 85120 | 30-Nov-04 | Disc recording medium |
| KR | S85P0059 | 92-702898 | 30-Oct-92 | | 22-May-95 | 81735 | 30-Nov-04 | Disc recording medium |
| MY | S96P0005 | 95-42552 | 30-Jan-96 | 96-30119 | | | | Multi-session disc having disc type code area loca |
| NL | S96P0005 | PI9605317 | 23-Jan-96 | | | | | Multi-session disc having disc type code area loca |
| NL | S85P0059 | 85900317.3 | 20-Nov-84 | 183320 | 03-Jun-92 | 183320 | 30-Nov-04 | Disc recording medium |
| NL | S96P0005 | 96101064.7 | 25-Jun-96 | 724253 | | | | Multi-session disc having disc type code area loca |
| RU | N013681 | 5011396 | 01-Apr-92 | | 27-Jan-97 | 2072566 | 01-Apr-12 | Recording of content information in Lead-Out |
| SE | S85P0059 | 85903170.3 | 30-Nov-84 | | 03-Jun-92 | 185320 | 30-Nov-04 | Disc recording medium |
| SG | S96P0005 | 9600515 | 27-Jun-96 | | 23-May-00 | 33669 | 27-Jun-16 | Multi-session disc having disc type code area loca |
| SK | N013585 | 92-PV0970 | 01-Apr-92 | | 03-Oct-01 | 283293 | 01-Apr-12 | CD-ROM XA Multi-session WO |
| TW | N013681 | 80109949 | 18-Dec-91 | UNKNOWN 57337 | 04-Nov-92 | 57337 | 19-Dec-11 | Recording of content information in Lead-Out |
| TW | N013585 | 80109983 | 19-Dec-91 | 60387 | 02-Mar-93 | 60387 | 18-Dec-11 | CD-ROM XA Multi-session WO |
| UA | N013681 | 93002373 | 13-Nov-93 | | | | 15-Nov-13 | Recording of content information in Lead-Out |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 24 November 2003

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| US | N 013981 V | 07/800874 | 18-Jun-92 | | 23-Aug-94 | 5341356 | 07-Jan-12 | Recording of content information in Lead-Out |
| US | N 013985 A | 08/180002 | 11-Jan-94 | | 14-Feb-95 | 5390159 | 14-Feb-12 | CD-ROM XA Multi-session WO |
| US | N 013985 B | 08/328307 | 24-Oct-94 | | 02-Mar-99 | 5878019 | 02-Mar-18 | CD-ROM XA Multi-session WO |
| US | N 013985 V | 08/371644 | 12-Jan-95 | | 04-Nov-97 | 5684798 | 04-Nov-14 | CD-ROM XA Multi-session WO |
| US | N 013709 D | 08/707845 | 09-Sep-96 | | 01-Dec-98 | 5844887 | 01-Dec-16 | Decoder delay in coded video frames |
| US | S96P0059 - | 266207 | 27-Oct-86 | | 09-Jan-90 | 4893193 | 09-Jan-07 | Disc recording medium |
| US | S96P0005 - | 592962 | 23-Jan-96 | | 07-Jul-98 | 5778237 | 23-Jan-16 | Multi-session disc having disc type code area loca |

All corresponding patent applications, patents, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be immediated as an integral part of this list

Version date : 24 November 2003

Page 3 of 3

P 001350

Annex A7 to the CD Disc Patent License Agreement
Essential Philips and Sony patents relevant to CD-Disc / CD-Text part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AR | N015474 | P960104337 | 13-Sep-96 | | 30-Aug-00 | AR003572 | 13-Sep-16 | Transferring information via the lead-in of CD |
| AT | 55093128 | 96115085.1 | 19-May-96 | 791925 | 14-Nov-01 | E208540 | 19-Sep-16 | Reproducing medium having text information records |
| AT | D 068029 | 8920008.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | E143391 | 16-Jan-09 | Repeated transfer of subcode data |
| AT | N015474 | 9693783.0 | 09-Sep-96 | 0782504-A1 | 13-Jun-01 | E203234 | 09-Sep-16 | Transferring information via the lead-in of CD |
| AU | 55093128 | 65463596 | 13-Sep-96 | | 28-Apr-00 | 714409 | 13-Sep-16 | Reproducing medium having text information records |
| AU | D 068029 | 83-28537 | 19-Jan-89 | 63411 | 08-Dec-83 | 839411 | 19-Jan-06 | Repeated transfer of subcode data |
| BE | N015474 | 8992783.0 | 09-Sep-96 | 0782504-A1 | 13-Jun-01 | 0782504 | 19-Jun-06 | Reproducing medium having text information records |
| BR | 55093128 | 9603829 | 20-Sep-96 | | | | 22-Sep-16 | Reproducing medium having text information records |
| CA | D 068029 | 538304 | 19-Jan-89 | | 28-Sep-93 | 1322593 | 28-Sep-10 | Repeated transfer of subcode data |
| CN | D 068029 | 89200081.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | 0325325 | 16-Jan-09 | Repeated transfer of subcode data |
| CN | 55093128 | 96121105 | 22-Sep-96 | 1153081 | | | 22-Sep-16 | Repeated transfer of subcode data |
| CN | 55084448 | P0121626 | 02-Nov-96 | 1153481 | | | 02-Nov-16 | Reproducing medium having text information records |
| CN | D 068009 | 91101069.6 | 19-Jan-89 | 1033077-A | 18-Oct-95 | 1023265 | 19-Jan-09 | Reproducing medium and its reproducing apparatus |
| CN | D 068009 A | 92102717.6 | 19-Jan-89 | 1088873-A | 01-Jun-94 | 1023701 | 19-Jan-09 | Repeated transfer of subcode data |
| CZ | 0 69999 | 89-PV297 | 19-Jan-89 | | 21-Dec-96 | 284798 | 16-Jun-09 | Repeated transfer of subcode data |
| DE | 55072039 | 96119371.1 | 03-Dec-96 | 783167 | 11-Apr-01 | P696124723.8 | 03-Dec-16 | Disc Reproducing apparatus |
| DE | 55093128 | 96115065.1 | 19-May-96 | 791925 | 14-Nov-01 | P696169877.8 | 19-Sep-16 | Reproducing medium having text information records |
| DE | 55025444 | 96117539.5 | 31-Oct-96 | 77188 | | | 31-Oct-16 | Recording medium and its reproducing apparatus |
| DE | D 068009 | 89200081.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | 689270831 | 16-Jan-09 | Repeated transfer of subcode data |
| ES | N015474 | 9693783.0 | 09-Sep-96 | 0782504-A1 | 13-Jun-01 | 696153353.3 | 09-Sep-16 | Transferring information via the lead-in of CD |
| FR | 55053039 | 96119371.1 | 03-Dec-96 | 783167 | 13-Jun-01 | 0782504 | 09-Sep-16 | Transferring information via the lead-in of CD |
| FR | 55053039 | 96119371.1 | 03-Dec-96 | 783167 | 11-Apr-01 | 783167 | 03-Dec-16 | Disc Reproducing apparatus |
| FR | 55093128 | 96116085.1 | 19-May-96 | 791925 | 14-Nov-01 | 791925 | 19-Sep-16 | Reproducing medium having text information records |
| FR | 55025443 | 96117539.5 | 31-Oct-96 | 77188 | | | 31-Oct-16 | Recording medium and its reproducing apparatus |
| FR | D 069009 | 89200081.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | 0325325 | 16-Jan-09 | Repeated transfer of subcode data |

All corresponding patent applications, patents, divisions, continuations and related patents based upon any of this patent applications or patents of this list are considered to be considered as integral part of this list

Version date : 17 July 2003

P 001351

Essential Philips and Sony patents relevant to CD-Disc / CD-Text part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| FR | N 015474 | 96927834.0 | 09-Sep-96 | 0782504-A1 | 13-Jun-01 | 0782504 | 09-Sep-16 | Transferring information via the lead-in of CD |
| GB | 95053039 | 95116371.1 | 03-Dec-96 | 783167 | 11-Apr-01 | 783167 | 03-Dec-16 | Disc Reproducing apparatus |
| GB | 95085123 | 96115085.1 | 19-May-96 | 781925 | 14-Nov-01 | 781925 | 19-Sep-16 | Reproducing medium having text information records |
| GB | 95085448 | 95117538.5 | 31-Oct-09 | 772188 |  |  | 31-Oct-16 | Recording medium and its reproducing apparatus |
| GB | D 086008 | 88200081.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | 0325325 | 11-Jan-09 | Repeated transfer of subcode data |
| GB | N 015474 | 96927834.0 | 09-Sep-96 | 0782504-A1 | 13-Jun-01 | 0782504 | 09-Sep-16 | Transferring information via the lead-in of CD |
| HK | D 086008 | 98106421.9 | 16-Jan-89 |  | 01-Apr-99 | HK1007226 | 16-Jan-09 | Repeated transfer of subcode data |
| HU | 95085448 | 9603037 | 01-Nov-96 |  |  |  | 01-Nov-16 | Recording medium and its reproducing apparatus |
| ID | 95053039 | P963566 | 02-Dec-96 |  | 03-Nov-00 | 655 | 02-Dec-16 | Disc Reproducing apparatus |
| ID | 95085123 | P962547 | 19-Sep-96 |  |  | 7229 | 19-Nov-16 | Reproducing medium having text information records |
| ID | 95085448 | P963183 | 04-Nov-96 |  | 07-Jun-00 | 5157 | 04-Nov-16 | Recording medium and its reproducing apparatus |
| ID | N 015474 | P-962554 | 12-Sep-96 | 014739-A | 12-Jul-02 | ID0006395 | 12-Sep-16 | Transferring information via the lead-in of CD |
| IN | 95089123 | 2023/DEL/96 | 16-Sep-96 |  |  |  | 16-Sep-11 | Reproducing medium having text information records |
| IN | N 015474 | 04-1617 | 11-Sep-96 |  |  |  | 11-Sep-10 | Transferring information via the lead-in of CD |
| IN | N 015474 A | 03-265 | 11-Sep-96 |  |  |  | 11-Sep-10 | Transferring information via the lead-in of CD |
| IN | N 015474 B | 05-208 | 11-Sep-96 |  |  |  | 11-Sep-10 | Transferring information via the lead-in of CD |
| IN | N 015474 C | 03-267 | 11-Sep-96 |  |  |  | 11-Sep-10 | Transferring information via the lead-in of CD |
| IT | D 086008 | 88200081.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | 0325325 | 16-Jan-09 | Repeated transfer of subcode data |
| IT | N 015474 | 96827834.0 | 09-Sep-96 | 0782504-A1 | 13-Jun-01 | 0782504 | 09-Sep-16 | Transferring information via the lead-in of CD |
| JP | 85043039 | 07-518856 | 07-Dec-95 | 06-161371 |  |  | 07-Dec-15 | Disc Reproducing apparatus |
| JP | 85085123 | 07-244959 | 22-Sep-95 | 09-701180 |  |  | 22-Sep-15 | Disc Reproducing apparatus |
| JP | 85085448 | 07-319960 | 02-Nov-95 | 09-125986 |  |  | 02-Nov-15 | Reproducing medium having text information records |
| JP | 95100944 | 09-242039 | 26-Aug-89 | 10-44345 |  |  | 26-Aug-16 | Recording medium and its reproducing apparatus |
| JP | D 086008 | 63-8726 | 18-Jan-89 | 80-7178 | 28-Jul-00 | 3062324 | 18-Jan-09 | Repeated transfer of subcode data |
| JP | N 015474 | 97-511782 | 09-Sep-96 | 08-509270 |  |  | 09-Sep-16 | Transferring information via the lead-in of CD |
| KR | 96043039 | 94-52692 | 07-Dec-96 | 97-42695 |  |  | 09-Sep-16 | Disc Reproducing apparatus |
| KR | 95089123 | 95-43390 | 23-Sep-96 | 97-17230 |  |  | 23-Sep-16 | Reproducing medium having text information records |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded or an integral part of this list

Version date : 17 July 2003

P 001352

Essential Philips and Sony patents relevant to CD-Disc / CD-Text part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| KR | 95085448 | 95-51844 | 02-Nov-94 | 94-29706 | | | 02-Nov-16 | Recording medium and its reproducing apparatus |
| KR | D 088009 | 83-517 | 18-Jun-83 | | 16-Feb-94 | 136112 | 18-Feb-13 | Repeated transfer of subcode data |
| KR | N 015474 | 95-703243 | 03-Sep-95 | | | | 03-Sep-15 | Transferring information via the lead-in of CD |
| MX | 95048123 | 954179 | 19-Sep-95 | | 19-Apr-00 | 196099 | 19-Sep-15 | Recording medium and its reproducing apparatus |
| MX | N 015474 | 973530 | 08-Sep-95 | | | | 08-Sep-15 | Transferring information via the lead-in of CD |
| MY | 95043039 | 9603142 | 07-Dec-95 | | | | | Disc Reproducing apparatus |
| MY | 95048123 | 9603488 | 20-Sep-96 | | | | | Reproducing medium having text information records |
| MY | N 015474 | PI9603785 | 13-Sep-96 | | | | | Transferring information via the lead-in of CD |
| NL | 95048123 | 95115085.1 | 18-May-94 | 781925 | 14-Nov-01 | 0781925 | 19-Sep-16 | Reproducing medium having text information records |
| PH | 95048123 | 54335 | 19-Sep-95 | 54435 | | | | Reproducing medium having text information records |
| PT | N 015474 | 95827834.0 | 05-Sep-95 | 0782354-A1 | 13-Jun-51 | 0782604 | 05-Sep-15 | Transferring information via the lead-in of CD |
| RU | D 088009 | 4813351 | 17-Jun-83 | | 10-Nov-97 | 2095457 | 17-Jun-03 | Repeated transfer of subcode data |
| SE | D 088009 | 83200061.1 | 18-Jun-83 | 0325325-A3 | 04-Sep-96 | 0325325 | 18-Jun-03 | Repeated transfer of subcode data |
| SG | N 015474 | 9704596.5 | 09-Sep-95 | | 16-Nov-98 | 43980 | 08-Sep-15 | Transferring information via the lead-in of CD |
| SK | D 088009 | 83-PV0387 | 16-Jun-83 | | 14-Mar-00 | 280665 | 16-Jun-03 | Repeated transfer of subcode data |
| TW | 95085448 | 8611877 | 21-Sep-94 | | 10-Sep-98 | 84612 | 20-Sep-16 | Reproducing medium having text information records |
| TW | D 088009 | 78100300 | 17-Jan-89 | | 03-Sep-91 | 47133 | 17-Jan-09 | Repeated transfer of subcode data |
| TW | N 015474 | 85114292 | 18-Nov-96 | 410326 | 13-Mar-01 | 122112 | 18-Nov-16 | Transferring information via the lead-in of CD |
| UA | D 088009 | 93003372 | 17-Jun-83 | | 23-Feb-00 | 25980 | 17-Jun-09 | Repeated transfer of subcode data |
| US | 95043039 | 753975 | 27-Nov-96 | | 30-Jul-01 | RE37809 | 27-Nov-16 | Disc Reproducing apparatus |
| US | 95048123 | 716953 | 20-Sep-96 | | 23-Apr-96 | 5744454 | 20-Sep-16 | Reproducing medium having text information records |
| US | 95085448 | 729821 | 30-Oct-96 | | 12-Jan-99 | 5858421 | 30-Oct-16 | Recording medium and its reproducing apparatus |
| US | D 088009 | 08/558002 | 06-Apr-93 | | 24-Dec-96 | 5887979 | 17-Jan-09 | Repeated transfer of subcode data |
| US | N 015474 | 08/711084 | 16-May-94 | | 25-Aug-98 | 5798990 | 16-Sep-15 | Transferring information via the lead-in of CD |
| VN | 95048123 | 5C02100VN | 21-Sep-96 | | 21-Aug-00 | 1483 | 21-Sep-16 | Recording medium and its reproducing apparatus |
| VN | 95085448 | 5C0326VN | 02-Nov-96 | | 12-Oct-01 | 2360 | 02-Nov-16 | Reproducing medium having text information records |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 17 July 2003

P 001353

Annex A8 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra Video part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | D066327 | 87201717.3 | 10-Sep-87 | 0260748-A3 | 13-Jul-94 | E106567 | 10-Sep-07 | Coefficient encoder in transform encoding |
| AT | N013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | E157301 | 03-Jun-11 | Sector and word offset in video block header or |
| AT | N013709 | 91201337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | E157830 | 03-Jun-11 | Decoder delay in coded video frames |
| AU | N013257 | 81-71218 | 20-Feb-91 | 81-71219  641726 | 25-Jun-94 | 641726 | 25-Feb-11 | Image data block with hierarchical encoding level |
| AU | S80P0340 | 83382/84 | 28-May-84 | 8338284 | | 89983 | 12-Oct-10 | Video signal transmitting system |
| BE | N013409 | 81201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| BE | N013709 | 91201337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460751 | 03-Jun-11 | Decoder delay in coded video frames |
| CA | N013257 | 2035585 | 19-Feb-91 | | 16-Jan-01 | 2035585 | 19-Feb-11 | Image data block with hierarchical encoding level |
| CA | N013409 A | 2333403 | | | 19-Mar-02 | 2335403 | 31-May-11 | Sector and word offset in video block header |
| CH | S80P0340 | 2027659 | 15-Oct-90 | | | 2027659 | 16-Oct-10 | Video signal transmitting system |
| CN | D066327 | 87106940.0 | 12-Sep-87 | 87106940-A | 23-May-91 | 1011450 | 12-Sep-07 | Coefficient encoder in transform encoding |
| DE | D066327 | 87201717.3 | 10-Sep-87 | 0260748-A3 | 13-Jul-94 | 3760206.9 | 10-Sep-07 | Coefficient encoder in transform encoding |
| DE | N013257 | 81200328.0 | 18-Feb-91 | 0443678-A1 | 03-May-95 | 69109346.8 | 18-Feb-11 | Image data block with hierarchical encoding level |
| DE | N013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 69127808.8 | 03-Jun-11 | Sector and word offset in video block header |
| DE | N013709 | 91201337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 69127804.1 | 03-Jun-11 | Decoder delay in coded video frames |
| DE | S80P0340 | 90311145.8 | 11-Oct-90 | 424025-A3 | | P69031107.3 | 11-Oct-10 | Video signal transmitting system |
| DE | S80P0340 | 90101178P | 29-Jun-90 | 713340-A3 | | P69031782.5 | 11-Oct-10 | Video signal transmitting system |
| DE | S91P0276 | 91304652.3 | 07-May-96 | 454425-A3 | | P69177224.7 | 03-May-11 | Methods of recording coded motion picture data |
| DE | S91P0276 | 96107158 | 07-May-96 | 790376-A3 | | P69172763 | 03-May-11 | Image data block with hierarchical encoding level |
| DK | N013257 | 81200328.0 | 18-Feb-91 | 0443678-A1 | 03-May-95 | 0443678 | 18-Feb-11 | Image data block with hierarchical encoding level |
| DK | N013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| DK | N013709 | 91201337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460751 | 03-Jun-11 | Decoder delay in coded video frames |
| ES | N013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| FI | N013257 | 910791 | 19-Feb-91 | | 15-Jun-98 | 101442 | 19-Feb-11 | Image data block with hierarchical encoding level |
| FR | D066327 | 87201717.3 | 10-Sep-87 | 0260748-A3 | 13-Jul-94 | 0260748 | 10-Sep-07 | Coefficient encoder in transform encoding |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of data that are considered to be considered as an integral part of this list

Page 1 of 4

Version date : 17 July 2003

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra Video part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| FR | D 087091 | 88200418.6 | 27-Apr-88 | 0290045-A2 | 20-Mar-96 | 0290065 | 27-Apr-08 | Motion estimation on superblocks |
| FR | N 013257 | 94200329.0 | 18-Feb-91 | 0443678-A1 | 03-May-95 | 0443678 | 18-Feb-11 | Image data block with hierarchical encoding level |
| FR | N 013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| FR | N 013709 | 91201337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460751 | 03-Jun-11 | Decoder delay in coded video frames |
| FR | S90P0340 | 90311146.6 | 11-Oct-90 | 424026-A3 | | 424026 | 11-Oct-10 | Video signal transmitting system |
| FR | S80P0340 | 96101176 | 28-Jun-96 | 713340-A3 | | 713340 | 11-Oct-10 | Video signal transmitting system |
| FR | S81P0276 | 91304052.3 | 03-May-91 | 456433-A3 | | 456433 | 03-May-11 | Methods of recording coded motion picture data |
| FR | S81P0276 | 96107156 | 07-May-96 | 730378-A3 | | 730378 | 03-May-11 | Methods of recording coded motion picture data |
| GB | D 084327 | 87201717.3 | 10-Sep-87 | 0260748-A2 | 13-Jul-94 | 0260748 | 10-Sep-07 | Coefficient encoder in transform encoding |
| GB | D 087091 | 88200418.6 | 27-Apr-88 | 0290045-A2 | 20-Mar-96 | 0290065 | 27-Apr-08 | Motion estimation on superblocks |
| GB | N 013257 | 91200329.0 | 18-Feb-91 | 0443678-A1 | 03-May-95 | 0443678 | 18-Feb-11 | Image data block with hierarchical encoding level |
| GB | N 013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| GB | N 013709 | 91201337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460751 | 03-Jun-11 | Decoder delay in coded video frames |
| GB | S90P0340 | 90311146.6 | 11-Oct-90 | 424026-A3 | | 424026 | 11-Oct-10 | Video signal transmitting system |
| GB | S90P0340 | 96101176 | 28-Jun-96 | 713340-A3 | | 713340 | 11-Oct-10 | Video signal transmitting system |
| GB | S81P0276 | 91304052.3 | 03-May-91 | 456433-A3 | | 456433 | 03-May-11 | Methods of recording coded motion picture data |
| GB | S81P0276 | 96107156 | 07-May-96 | 730378-A3 | | 730378 | 03-May-11 | Methods of recording coded motion picture data |
| GB | S82P0378 | 96012350.9 | 24-Apr-95 | 228194 | | 228194 | 05-Mar-08 | Coefficient encoder in transform encoding |
| GB | S82P0378 | 9508350.7 | 24-Apr-95 | 228195 | | 228195 | 05-Mar-08 | Multiple data separating |
| MK | N 013257 | NOT GIVEN | 18-Feb-91 | | | | | Multiple data separating |
| HK | S81P0278 | 94116478 | 08-Feb-00 | 1014415 | 11-Apr-94 | 0900815 | 18-Feb-11 | Image data block with hierarchical encoding level |
| HK | S81P0276 | 100711.8 | 08-Feb-00 | 1022032 | | HK1014415 | 03-May-11 | Methods of recording coded motion picture data |
| IT | D 084327 | 87201717.3 | 10-Sep-87 | 0260748-A3 | 13-Jul-94 | HK1022032 | 10-Sep-07 | Methods of recording coded motion picture data |
| IT | N 013257 | 91200329.0 | 18-Feb-91 | 0443678-A1 | 03-May-95 | 0290744 | 18-Feb-11 | Coefficient encoder in transform encoding |
| IT | N 013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0443678 | 18-Feb-11 | Image data block with hierarchical encoding level |
| IT | N 013709 | 91201337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460751 | 03-Jun-11 | Sector and word offset in video block header |
| JP | D 085327 | 87-239894 | 14-Sep-87 | 88-132630 | 31-Oct-97 | 2711985 | 14-Sep-07 | Coefficient encoder in transform encoding |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be integral part of this list

Page 2 of 4

Version date : 17 July 2003

P 001355

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra Video part

| COUNTRY | REFERENCE | | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|---|
| JP | D067091 | - | 86-106222 | 04-May-83 | 58-287196 | 23-Jun-87 | 2130639 | 04-May-06 | Motion estimation on superblocks |
| JP | N013257 | - | 91-47659 | 20-Feb-91 | 81-231238 | 30-Mar-01 | 3174586 | 20-Feb-11 | Image data block with hierarchical encoding level |
| JP | N013257 | A | 00-344854 | 13-Nov-00 | 01-186477 | | | 26-Feb-11 | Image data block with hierarchical encoding level |
| JP | N013409 | A | 01-151175 | 21-May-01 | 02-077794 | 24-Jan-03 | 3382134 | 04-Jun-11 | Sector and word offset in video block header |
| JP | N013409 | B | 01-347556 | 20-Dec-01 | 02-282242 | 24-Jan-03 | 3392842 | 04-Jun-11 | Sector and word offset in video block header |
| JP | N013709 | A | 00-333362 | 26-Dec-00 | 01-223948 | | | 04-Jun-11 | Decoder delay in coded video frames |
| JP | S3OPO340 | - | 01-267044 | 14-Oct-89 | 03-129985 | | 3193310 | 14-Oct-09 | Encoding method and apparatus for video signals |
| JP | S91P0276 | - | 02-516904 | 09-May-90 | 04-414874 | | 2969782 | 09-May-10 | Editing method and sep. for coded video signals |
| JP | S91P0276 | - | 07-352516 | 09-May-90 | 08-265083 | | 2877225 | 09-May-10 | Coding method for video signals |
| JP | S91P0276 | - | 07-352516 | 09-May-90 | 08-265084 | | 2874745 | 09-May-10 | Decoding method and decoder for coded video signal |
| KR | D067091 | - | 87-10122 | 13-Sep-87 | 87-4575 | 23-Jul-87 | 118694 | 17-Apr-12 | Coefficient encoder in transform encoding |
| KR | N013409 | - | 91-9153 | 03-Jun-91 | | 02-Dec-98 | 6246962 | 03-Jun-11 | Sector and word offset in video block header |
| KR | N013709 | - | 91-9187 | 04-Jun-91 | 92-1479 | 22-Oct-98 | 239837 | 04-Jun-11 | Decoder delay in coded video frames |
| KR | S91P0276 | - | 91-07490 | 09-May-91 | | | 221889 | 09-May-11 | Methods of recovering coded motion picture data |
| NL | D067091 | - | 87201717.3 | 10-Sep-87 | 0260748-A1 | 13-Jul-94 | 0260748 | 10-Sep-07 | Coefficient encoder in transform encoding |
| NL | N013257 | - | 91200529.0 | 19-Feb-91 | 0443876-A1 | 03-May-95 | 0443876 | 18-Feb-11 | Image data block with hierarchical encoding level |
| NL | N013709 | - | 91201337.2 | 03-Jun-91 | 0460781-A3 | 03-Sep-97 | 0460781 | 03-Jun-11 | Coefficient encoder in transform encoding |
| SE | D067091 | - | 87201717.3 | 10-Sep-87 | 0260748-A3 | 13-Jul-94 | 0260748 | 10-Sep-07 | Coefficient encoder in transform encoding |
| SE | N013257 | - | 91200529.0 | 19-Feb-91 | 0443876-A1 | 03-May-95 | 0443876 | 18-Feb-11 | Image data block with hierarchical encoding level |
| SE | N013408 | - | 91201373.7 | 03-Jun-91 | 0460784-A1 | 03-Sep-97 | 0460784 | 03-Jun-11 | Sector and word offset in video block header |
| SE | N013709 | - | 91201337.2 | 03-Jun-91 | 0460781-A3 | 03-Sep-97 | 0460781 | 03-Jun-11 | Decoder delay in coded video frames |
| SG | N013257 | - | 9690487.7 | 18-Feb-91 | | 28-May-96 | 30173 | 18-Feb-11 | Image data block with hierarchical encoding level |
| TW | D067091 | - | 76106681 | 23-Sep-87 | | 28-Mar-89 | 33580 | 23-Sep-07 | Coefficient encoder in transform encoding |
| US | D067091 | - | 07/096177 | 11-Sep-87 | | 13-Feb-90 | 4901975 | 11-Sep-07 | Coefficient encoder in transform encoding |
| US | N013257 | C | 06/647149 | 08-May-86 | | 18-Dec-87 | 4698675 | 18-Dec-04 | Image data block with hierarchical encoding level |
| US | N013409 | B | 08/363780 | 28-Nov-85 | | 28-Apr-98 | 5745841 | 28-Apr-15 | Sector and word offset in video block header |
| US | N013709 | C | 06/618051 | 18-Mar-86 | | 04-Mar-97 | 5608687 | 04-Mar-14 | Decoder delay in coded video frames |

All corresponding patent applications, patents, divisions, continuations and related based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 17 July 2003

P 001356

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra Video part

| COUNTRY | REFERENCE | FILING NR. | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---------|-----------|------------|-------------|----------------|-----------|----------|-------------|-------|
| US | N 01370e  D | 08/707/445 | 09-Sep-96 | | 01-Dec-98 | 5344067 | 01-Dec-15 | Decoder delay in coded video frames |
| US | S30P0340 | 277143 | 19-Jul-94 | | | RE37222 | 12-Oct-16 | Video signal transmitting system |
| US | S31P0376 | 693707 | 30-Apr-91 | | | 5181436 | 30-Apr-11 | Methods of recording coded motion picture data |
| US | S31P0376 | 10/093005 (Rel.) | 07-Mar-02 | | | | | Methods of recording coded motion picture data |
| US | S92P0379 | 925735 | 07-Aug-92 | | | 5291486 | 01-Mar-94 | Data multiplexing and multiplexing and demultiplexing |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Page 4 of 4                                                                 Version date : 17 July 2003

P 001357

 

## Koninklijke Philips Electronics N.V.

P.O. Box 218 - 5600 MD Eindhoven - The Netherlands

Re. CD Disc Patent License Agreement

Ref: 1203-1005
Date: December 1, 2004

Dear Sirs,

Reference is made to the CD Disc Patent License Agreement ("Agreement") between Cinram International Inc. and Koninklijke Philips Electronics N.V. ("Philips") covering the Territory of Canada and having an effective date of December 1, 2004 as well as the definitions used therein.

It is hereby agreed as follows:

1.  This side letter ("Side Letter") shall constitute a legally binding and integral part of the Agreement and shall be effective as of December 1, 2004.

2.  Philips, Cinram International Inc., Cinram Inc. (having an office at 1600 Rich Road, Richmond IN, USA 47574), Cinram Manufacturing Inc. (having an office at 1400 East Lackawanna Ave, Olyphant, PA 18448), and Cinram Latinoamericana, S.A. de C.V. (having an office at Avenida Tlahuac 6710, Col. San Francisco Tlaltenco, Delgacion Tlahuac, 13400 Mexico, D.F., Mexico) hereby acknowledge that the terms and conditions of the Agreement and this Side Letter extend to Cinram International Inc.'s entities Cinram Inc., Cinram Manufacturing Inc., and Cinram Latinoamericana, S.A. de C.V. (each of Cinram Inc., Cinram Manufacturing Inc, and Cinram Latinoamericana, S.A. de C.V. being a "Licensee" under this Agreement). Further, the Territory as defined in Clause 1.25 shall be amended as follows:

    (a) For Cinram Inc. and Cinram Manufacturing Inc., the Territory shall be the United States of America, its territories and possessions;
    (b) For Cinram Latinoamericana, S.A. de C.V., the Territory shall be Mexico; and
    (c) For Cinram International Inc., the Territory shall remain Canada.

    Philips and Cinram International Inc., Cinram Inc., Cinram Manufacturing Inc. and Cinram Latinoamericana, S.A. de C.V. acknowledge that for the convenience of the parties only one Agreement and one Side Letter has been executed, but in legal effect the Agreement and Side Letter shall be treated as separate contracts between Philips and each respective one of Cinram International Inc., Cinram Inc., Cinram Manufacturing Inc. and Cinram Latinoamericana, S.A. de C.V. Unless otherwise agreed by Philips in writing, any obligation to be performed by Cinram International Inc. or its aforementioned entities shall be provided per Territory (e.g. royalty reports and payments for Canada, Mexico and the United States to be separately reported) and submitted to the respective local Philips licensing office in each Territory as designated by Philips.

3.  The Agreement and this Side Letter supersedes and replaces the Comprehensive CD Disc License Agreement between U.S. Philips Corporation and Cinram Inc. having an effective date of August 15, 1998, the Comprehensive CD Disc License Agreement between

Koninklijke Philips Electronics N.V
Eindhoven The Netherlands
Commercial Register Eindhoven no. 17001910

P 001310



Ref: 1203-1005
Page: 2

Koninklijke Philips Electronics N.V. and Cinram International Inc. having an effective date of December 15, 1998, and the Comprehensive CD Disc License Agreement between Koninklijke Philips Electronics NV and Cinram Latinoamericana, S.A. de C.V. having an effective date of February 27, 1997. The aforementioned agreements in this paragraph 3 are each terminated effective November 30, 2004.

4. The term "patent lists" as referred to in the final paragraph of Clause 1.23 of the Agreement shall read "patent Exhibits".

5. With reference to Clause 2.7 of the Agreement, for as long as Licensee is in full compliance with all material terms and conditions of the Agreement, Philips agrees not to assert against Licensee claims that are part of the Licensed Patents and which absent the License granted by this Agreement would be infringed by the manufacture of Licensed Products by Licensee, but only to the extent that Licensee can demonstrate by documentary and/or physical evidence that the processes covered by such claims were in use by Licensee as of the Effective Date of the Agreement.

6. Licensee shall not be required to pay the initial fee set forth in Clause 5.1, as this fee was previously paid by Cinram International Inc.

7. Provided that Licensee has already reported and paid the royalties accrued through September 30, 2004, Licensee shall not be required to make a report and payment pursuant to Clause 5.12.

8. Notwithstanding the provisions of Clause 5.2, Licensee is not required to pay royalties on CD-Discs which are sold or otherwise disposed of to a third party and which are later returned as defective and destroyed by Licensee. If Licensee takes a credit for such Licensed Product, Licensee shall keep complete and accurate records of such defective and destroyed returns. No credit or other deduction is allowed for unpaid orders or other bad debt of Licensee's customers. Clause 5.2, penultimate paragraph, provides that no royalties are payable for Licensed Products purchased by Licensee on a "have made" basis in accordance with Clause 4 of the Agreement provided that Licensee demonstrates to Philips' satisfaction that royalties have been paid by the third party manufacturer. Philips further agrees to give Licensee reasonable and prompt cooperation in providing confirmation of payment by Licensee's "have made" suppliers upon request by Licensee.

9. Notwithstanding the provisions of Clause 5.3 with respect to the time period for reporting and payment of royalties, Licensee shall report and pay the royalties due Philips within 45 days after the end of each calendar quarter. Accordingly, in Clause 5.4, the term "30 days" in the first and second lines is amended to read "45 days".

10. In view of Licensee's representation that it is not in the position to submit to Philips all trademarks used on or in connection with the CD-Discs as required under Clause 5.3 (3) (a) and (b) of the Agreement, Philips agrees that in lieu of reporting trademarks in the quarterly reports Licensee shall promptly submit to Philips title and trademark information of CD-Discs manufactured and sold by it upon Philips' request to receive such information. Should



 

Ref: 1203-1005
Page: 3

Philips revoke the waiver of the trademark reporting requirement in the quarterly reports,
Philips shall give Licensee 60 days written notice prior to the first day of the calendar quarter
in which such reporting requirements will be re-instituted.

In view of the requirements to report sales by customers in Clause 5.3(3), in situations where
Licensee has an existing supply arrangement requiring it to keep sales volumes for such
customers confidential, Philips will assist Licensee in overcoming such restrictions by (i)
providing a copy of our standard license agreement to such customer indicating that Licensee
must disclose such sales in its royalty reporting forms in order for such sales to be licensed and
(ii) where necessary, executing an appropriate non-disclosure agreement agreeing to keep such
supply volumes of Licensee's customer confidential.

11. In relation to Licensee's obligations under Clause 5.4 of the Agreement (as amended by
Paragraph 15 below), Philips agrees to notify Licensee for any late royalty reporting forms or
royalty payments due by Licensee. Upon receipt of such notification by Licensee, Licensee
shall have 10 business days to remedy each such default respectively. If Licensee does not
remedy its default under the Agreement within 10 business days of receipt of Philips'
notification, such failure brings back into effect Licensee's obligations under Clause 5.4 of the
Agreement, with all penalties and interest determined from the original due date of the
overdue royalty payment and/or Advance.

12. Philips intends to audit each Licensee during calendar year 2005 under the provisions of
clause 5.10. Provided that Licensee cooperates with such audit, Philips shall not require an
audit statement pursuant to Clause 5.5 or Clause 5.12 (which would otherwise be duplicative).

13. In the first sentence of Clause 5.5, the phrase "complete and accurate in every respect" is
amended to "complete and accurate in all material respects". In view of Licensee's past
performance under other license agreements with Philips, notwithstanding the provisions of
Clause 5.5 requiring the yearly submission of an audit statement in accordance with the Audit
guidelines of Exhibit C1, Philips agrees to review this requirement on a yearly basis and may
decide to waive the submission of the yearly audit statement provided that Licensee is fully
compliant with all material obligations under the Agreement. In deciding whether to waive
the requirement for a particular financial year, Philips will consider, inter alia, Licensee's
compliance with its reporting and payment obligations under Clause 5.3, its reporting
obligations under Clause 6.1, and consistency of such reports with market information
available to Philips. Notwithstanding the foregoing, the decision to waive or not to waive the
submission of the aforementioned audit statement is within Philips' sole discretion. If Philips
decides not to waive the requirement, Philips will provide written notice to Licensee no later
than January 15 of each year that it will require such statement within 90 days after the end of
Licensee's financial year ending on December 30, in accordance with Clause 5.5; provided,
however, that if Philips does not provide such notice by December 30 of each year, Licensee
shall have 90 days from the date of such notice to provide such auditor's statement.

14. Notwithstanding the provisions of Clause 5.6 of the Agreement, within 6 months after
expiration or termination of the Agreement Licensee shall submit to Philips a report certified
by Licensee's external certified public auditor and indicating the following:

 

Ref: 1203-1005
Page: 4

(a) the number of CD- Discs sold that have not been previously reported to Philips;

(b) the number of CD-Discs that remained in stock upon expiration of this Agreement and which have been destroyed in the intervening 6 month period: and

(c) the number of CD-Discs remaining in stock with Licensee.

The above information shall be in accordance with the reporting requirements of Clause B.3. Concurrent with the submission of this report, royalties shall be paid in accordance with Clause 5.2 on the quantities of CD-Discs identified in subpart (a) and (c) of this Paragraph 14.

15. If any payments by Licensee under the Agreement are late by reason of Force Majeure and Licensee can demonstrate to Philips' satisfaction that the payments were late through no fault of Licensee, Philips agrees to grant Licensee a grace period of ten (10) business days from the cessation of the Force Majeure within which Licensee will be required to make the payment(s) due. The term "Force Majeure" shall be interpreted in accordance with generally accepted legal principles and thus include unforeseen circumstances or events beyond Licensee's or Philips' reasonable control which prevent the party concerned from performing its obligations under the Agreement. Force Majeure shall not include Licensee's inability to pay royalties as a consequence of cash flow problems or the situation where a creditor or other claimant takes possession of, or a receiver, administrator or similar officer is appointed over any of the assets of Licensee, nor the situation where Licensee makes any voluntary arrangement with its creditors or becomes subject to any court or administration order pursuant to any bankruptcy or insolvency law.

A party affected by an event of Force Majeure shall immediately notify the other Party of such event and report the relevant circumstances in detail in writing within 10 calendar days after the occurrence of the event.

In the event that either party is prevented from performing its obligations under this Agreement due to an event of Force Majeure, the other party shall be entitled to suspend the performance of its obligations under the Agreement, for the duration of the prevention or delay caused by such event of Force Majeure and the deadlines for compliance by either party with their respective obligations under this Agreement shall be extended accordingly.

In the event that either party is unable to perform any of its obligations due to an event of Force Majeure for more than 3 months, the other party shall be entitled to terminate this Agreement by written notice to the party affected by the event of Force Majeure and the party so terminating this Agreement shall not be liable for any damages to the other party in connection with such termination. The termination of this Agreement in accordance with the provisions of this paragraph shall not affect obligations or undertakings of either party surviving termination of this Agreement.

The provisions concerning Force Majeure as contained in this Clause shall not affect the obligations of either party, the performance of which is not affected by the situation of Force Majeure, nor the right of either party to terminate this Agreement in accordance with its provisions in situations other than Force Majeure.

P 001313

**PHILIPS**

Ref: 1203-1005
Page: 5

16. Notwithstanding the provisions of Clauses 5.3 and 5.8, all payments to be made by Licensee under the Agreement shall be made in US Dollars.

17. Clause 5.9 of the Agreement is amended to read as follows:

"All costs, stamp duties, taxes and other similar levies arising from or in connection with the execution of this Agreement shall be borne by Licensee. However, in the event that the government of a country imposes any income taxes on payments made by Licensee to Philips hereunder and requires Licensee to withhold such tax from such payments, Licensee may deduct such tax from such payments. In such event, Licensee shall promptly provide Philips with tax receipts issued by the relevant tax authorities."

18. Clause 5.10 of the Agreement is amended to read as follows:

The phrase "at least seven (7) days prior to the inspection" is amended to read "at least 15 days prior to the inspection".

The last sentence is amended as follows:

"Philips' right of inspection as set out in this Clause 5.10 shall survive termination or expiration of this Agreement; provided, however, that such inspection must be initiated within five (5) years after termination of this Agreement."

19. Licensee's obligations under Clause 5.11 shall be limited only to the extent that Licensee shall have no obligation to provide to Philips all relevant additional information to enable Philips to ascertain which patents have been used in connection with such products. Instead, Licensee agrees that it will provide Philips with sample CD Discs manufactured by Licensee upon Philips' reasonable request.

20. Notwithstanding the provisions of Clause 6 pertaining to reporting of changes in Licensees' manufacturing equipment for Licensed Product upon each acquisition, transfer or disposal, Licensee shall be required only to submit a yearly report, which yearly report shall state the total number of CD-Disc replication lines in use by Licensee at the end of the calendar year, the number of CD-Disc replication lines acquired, transferred or disposed of, and the calendar quarter of each such acquisition, transfer or disposal. Such report shall be provided on a per plant basis, and certified by an officer of Licensee; provided, however, that if Philips requires a yearly audit statement pursuant to Clause 5.5, such report shall be further certified by Licensee's auditor.

21. An additional section (d) shall be inserted in Clause 9.2 as follows:

"           and/or
(d) is disclosed pursuant to the order or requirements of a court, a governmental administrative agency or other governmental body provided that such disclosure is subject to a protective order and Philips has been notified of such request in advance; provided,

P 001314



Ref: 1203-1005
Page: 6

however, that Licensee shall not be considered to be in breach of this subsection 9.2(d) in the event a governmental body or agency does not permit a protective order or advance notice to Philips."

22. The terms regarding confidentiality as referred to in Clause 9.2 and 9.4 shall be extended to 5 years, respectively.

23. The term "third party" in Clause 9.4 of the Agreement includes Sony.

24. Clause 9.4 is amended as follows:

Delete the sentence – "Philips' obligations set out in this paragraph shall not apply to information referred to in sections a, b and/or c of Clause 9.2." and insert the following:

"Philips' obligations set out in this paragraph shall not apply to the extent information so acquired:

   (a) was known to Philips prior to the date on which such information was acquired from Licensee or any of Licensees' Associated Companies, as shown by records of Philips or otherwise demonstrated to Licensees' satisfaction;

   (b) is or has become available to the public through no fault of Philips;

   (c) was or is received from a third party who was under no confidentiality obligation in respect of such information; and/or

   (d) is disclosed pursuant to the order or requirements of a court, a governmental administrative agency or other governmental body provided that such disclosure is subject to a protective order and Licensee has been notified of such request in advance; provided, however, that Philips shall not be considered to be in breach of this subsection 9.4(d) in the event a governmental body or agency does not permit a protective order or advance notice to Philips."

25. Clause 11.1 shall be amended to read as follows:

"This Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective assignees. It may not be assigned in whole or in part by Licensee without the prior written consent of Philips; provided, however, that in the event of sale of Licensee's entire CD business and CD production assets, such consent shall not be unreasonably withheld by Philips."

26. Clause 12.2 is amended as follows:

   (a) "Without prejudice to the provisions of Clause 12.3 through 12.6, each party may terminate this Agreement at any time by means of written notice to the other party in the event that the other party fails to perform any material obligation under this

 

Ref: 1203-1005
Page: 7

Agreement and such failure is not remedied within 30 days after receipt of a notice specifying the nature of such failure and requiring it to be remedied. Such right of termination shall not be exclusive of any other remedies or means of redress to which the non-defaulting party may be lawfully entitled and all such remedies shall be cumulative. Any such termination shall not affect any royalties or other payment obligations under this Agreement accrued prior to such termination.

Licensee may terminate this Agreement under this Clause 12.2 on thirty days written notice to the other party."

27. In Clause 12.3, the term "over any of the assets" is amended to "over any major part of the assets".

28. Notwithstanding the provisions of Clause 12.3, if Licensee becomes subject to any court or administration order pursuant to any bankruptcy or insolvency law in the United States or Canada, Philips' right of termination under Clause 12.3 if in conflict with the bankruptcy laws of the United States or Canada, shall be governed, respectively, by the bankruptcy laws of the United States or Canada.

29. Notwithstanding Clause 13.6 of the Agreement, Licensee and Philips agree that any dispute between Licensee and Philips in connection with this Agreement shall be submitted to the State or Federal courts in The State of New York.

30. Philips and Licensee agree to keep the terms of this Side Letter confidential and shall not disclose it to third parties, except as may be necessary by either Philips or Licensee to enforce its rights hereunder or to comply with a requirement of a competent court or governmental body.

31. In Clause 12.4, the term "serious acts" is amended to "deliberate serious acts". Furthermore, before exercising its termination rights under Clause 12.4, Philips agrees to meet with Licensee to discuss the copyright violations of which Licensee has been convicted by a court of competent jurisdiction, so as to be fully informed of all the facts regarding such violation in determining whether such acts constitute "deliberate serious acts" giving rise to such right of termination, and whether despite such right, other considerations warrant that Philips not exercise such right.

If the above properly reflects our mutual understanding and agreement, please indicate so by signing both copies of this Side Letter and returning these to us. Upon receipt thereof we will arrange for countersignature on our part.

Yours sincerely,

Koninklijke Philips Electronics N.V.

Koninklijke Philips Electronics N.V.
Eindhoven The Netherlands
Commercial Register Eindhoven no. 17001910.

P 001316



 **PHILIPS**

Ref: 1203-1005
Page: 8

Yours sincerely,

Koninklijke Philips Electronics N.V.

Name:  R. PETERS
Title:  BY PROXY
Date:

**Read and Agreed:**
Cinram Inc.

Name:  Lewis Ritchie
Title:  Vice President
Date:  Dec. 22- 2004

**Read and Agreed:**
Cinram Manufacturing Inc.

Name:  Lewis Ritchie
Title:  Treasurer
Date:  Dec - 22 - 2004

**Read and Agreed:**
Cinram LatinoAmericana S.A. de C.V.

Name:  Lewis Ritchie
Title:  Authorized Officer
Date:  Dec. 22 - 2004

**Read and Agreed:**
Cinram International Inc.

Name:  John Find
Title:  Director of German Acquisitio...
Date:  Dec 22/04

# Exhibit B

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### Southern District of New York

Koninklijke Philips Electronics N.V., et al.

V.

Cinram International Inc., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  08 CV 00515 (CLB) (MDF)

TO:   Cooper & Dunham LLP
1185 Avenue of the Americas
New York, N.Y. 10036

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE     Mayer Brown LLP<br>1675 Broadway, New York, N.Y. 10019 | DATE AND TIME<br>6/6/2008 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* attorney for plaintiff | 5/23/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Christopher J. Houpt / (212) 506-2380
MAYER BROWN LLP, 1675 Broadway, New York, NY  10019-5820

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

# ATTACHMENT A
## DEFINITIONS

Notwithstanding any definition stated below, each word, term, or phrase used in the Documents To Be Produced ("Requests") below is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.    YOU, YOUR, and COOPER DUNHAM mean Cooper & Dunham, LLP, attorneys for Defendants in the above-captioned matter, their employees, agents, representatives, all persons acting on their behalf, and any and all persons associated or affiliated with, or controlled by Cooper & Dunham, LLP with respect to the subject matter of this litigation.

2.    PHILIPS means U.S. Philips Corporation and Koninklijke Philips Electronics N.V., Plaintiffs in the above-captioned matter, their employees, agents, representatives, all persons acting on their behalf, and any and all persons associated or affiliated with, or controlled by them with respect to the subject matter of this litigation.

3.    AGREEMENT means the "CD Disc Patent License Agreement" and "Side Letter" attached collectively hereto as Exhibit 1.

4.    STANDARD SPECIFICATIONS means the CD-Disc Standard Specifications defined in the AGREEMENT.

5.    CD and CDs mean any CD-Audio Discs, CD-Audio Maxi-Singles, CD-ROM Discs, CD-ROM Disc mode 1, CD-ROM Disc mode 2, CD-ROM XA Disc sub-mode 1, CD-ROM XA Disc sub-mode 2, CD Extra Discs, CD Extra Discs sub-mode 1, and CD Extra Discs sub-mode 2, as defined in the STANDARD SPECIFICATIONS.

6.    ANALYSIS includes but is not limited to any claim construction and/or any assessment of infringement, invalidity, and/or essentiality to the STANDARD SPECIFICATIONS or to any other CD or optical disc standard.

7.    CLIENT means any person represented or retained by YOU for the provision of legal services.

8.      RELATE TO, RELATING TO, and REGARDING mean analyzing, containing, concerning, dealing with, constituting, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, referring to, setting forth, showing, stating, summarizing, supporting, or in any way pertaining to the subject matter of the relevant Request.

9.      DOCUMENT and DOCUMENTS are defined to be synonymous in meaning equal in scope to the usage of these terms in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

10.     COMMUNICATION, COMMUNICATE, and COMMUNICATED mean any transmittal of information (in the form of facts, ideas, inquiries or otherwise).

11.     PERSON means any natural person or any business, legal or governmental entity or association.

12.     The terms "and" as well as "or" shall be read in the disjunctive, conjunctive, or both, as the case may be, consistent with an interpretation that results in the broader reading of the relevant Request.

13.     For the purposes of these Requests, whenever necessary to ensure completeness or accuracy, words importing the masculine gender include the feminine and neuter, words importing the neuter gender include the masculine and feminine, and words importing the singular include the plural.

## INSTRUCTIONS

1.      If, in responding to these Requests, you claim that any Request, or a definition or instruction applicable thereto, is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as part of the response the language you claim is ambiguous and the interpretation you have used to respond to the individual Request.

2.      If, in answering these Requests, you object to any part of a Request, each part of said Request shall be treated separately. If an objection is made to one subpart, the remaining subpart(s) shall be answered. If an objection is made on the basis that the Request or subpart

2

thereof calls for information that is beyond the scope of discovery, the Request or subpart thereof shall be answered to the extent that it is not objectionable.

3.    If any Request is not answered due to a claim of privilege, in order that the Court and the parties may determine the validity of the claim of privilege, provide sufficient information, including the nature of the claim of privilege, all facts relied upon in support of the claim of privilege or related thereto, the general subject matter of the information being withheld, all documents related to the claim of privilege, all persons having knowledge of any facts related to the claim of privilege, and all events, transactions, or occurrences related to the claim of privilege.

4.    If any document identified, referred to, or relied upon, in any answer to any Request, was, but is no longer in your possession, custody, or control, or in existence, state whether it: (1) is missing or lost; (2) has been destroyed; (3) has been transferred, voluntarily or involuntarily, to others; and/or (4) otherwise disposed of, and in each instance state:

    a) the type of document;

    b) the date and author of the document;

    c) a brief summary of the contents of the document;

    d) the date or approximate date that it was lost, destroyed, transferred, and/or otherwise disposed of;

    e) the reasons for discarding, destroying, transferring, and/or otherwise disposing of the document;

    f) the circumstances and manner in which the document was lost, destroyed, transferred, and/or otherwise disposed of;

    g) the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document; and

    h) the identity of all persons having knowledge of the contents thereof.

3

5.    Each of these Requests shall be construed independently and shall not be limited by any other Request, except that documents responsive to more than one Request need be produced only once.

6.    The documents identified and produced in response to these Requests shall be organized either to correspond to the relevant Requests, or as they are kept in the ordinary course of business. All documents produced shall:

      a)  be produced with all associated file labels, file headings, and file folders together with the responsive documents from each file, and each file shall be identified by its owner or custodian; for any document originally stored in electronic media, the file name, path, and directory information for each such document shall also be provided and Philips shall have the option of receiving electronic documents in native electronic format;

      b)  if produced in hard copy, all pages now stapled or fastened together shall be produced stapled or fastened together, and shall include all attachments currently or previously appended to each document, regardless of whether such attachments themselves would be independently responsive to these Requests;

      c)  all documents that cannot be legibly copied shall be produced in original form; and

      d)  each page of each document produced shall bear a unique number that includes a symbol or abbreviation that identifies the producing party.

7.    In the event that more than one copy of a document exists, produce every copy on which there appears any notation or marking of any sort not appearing on any other copy (including routing or filing instructions) or any copy containing different attachments from any other copy.

8.    If you refuse to identify or produce any document requested and/or responsive to a Request or any portion thereof on the grounds of privilege, identify in a privilege each such

4

document or portion thereof as to which objection is made, and with respect to each document so identified, state:

      a)  the type of document, *e.g.*, letter or memorandum;

      b)  the general subject matter of the document;

      c)  the author(s) and addressee(s);

      d)  the date of the document;

      e)  the author of the document;

      f)  the addressees of the document;

      g)  any other recipients of the document;

      h)  the relationship of the author, addressees, and recipients to each other;

      g)  the document request herein to which the document responds; and

      h)  the exact basis, legal or otherwise, for your claim that such document (or any portion thereof) need not be disclosed.

If an attachment to a document is also being withheld on the ground of privilege, in addition to being identified as required by subpart (b) above, such attachment shall be identified in the privilege log as a separate document.

## DOCUMENTS TO BE PRODUCED

Unless otherwise specified, the relevant time period governing the following Requests is the period between April 28, 1998 and the present.

1.      All DOCUMENTS and/or things RELATING TO U.S. Patent No. 5,068,846 ("the '846 Patent").

2.      Each COMMUNICATION between YOU and any other PERSON REGARDING the '846 Patent.

3.      Each COMMUNICATION between YOU and any PERSON who is not a CLIENT REGARDING the '846 Patent

4.      All DOCUMENTS and/or things RELATING TO the licensing of patented technology for the manufacture of CDs, including, but not limited to, any DOCUMENTS

RELATING TO the licensing of patented CD technology by PHILIPS or the validity and/or enforceability of the '846 Patent.

     5.     Each COMMUNICATION between YOU and any other PERSON RELATING TO the licensing of patented technology for the manufacture of CDs, including, but not limited to, COMMUNICATIONS RELATING TO the licensing of patented CD technology by PHILIPS or the validity and/or enforceability of the '846 Patent.

     6.     Each COMMUNICATION between YOU and any PERSON that is not a CLIENT RELATING TO the licensing of patented technology for the manufacture of CDs, including, but not limited to, COMMUNICATIONS RELATING TO the validity and/or enforceability of the '846 Patent.

     7.     Each COMMUNICATION between YOU and any other PERSON REGARDING the licensing of patented technology for the manufacture of CDs, including, but not limited to, PHILIPS's CD licensing program.

     8.     To the extent not otherwise requested here, each ANALYSIS of the '846 Patent by YOU or by any other PERSON, including, but not limited to, opinions of counsel, prior art references, and drafts of, and revisions to, opinions of counsel.

     9.     To the extent not otherwise requested here, each ANALYSIS of patented technology for the manufacture of CDs by YOU or by any other PERSON, including, but not limited to, opinions of counsel, prior art references, and drafts of, and revisions to, opinions of counsel.

# Exhibit 1

1

## CD DISC PATENT LICENSE AGREEMENT

This Agreement is entered into this <u>1st</u> day of <u>December</u>, 2004 by and between

KONINKLIJKE PHILIPS ELECTRONICS N.V., having its registered office in Eindhoven, The Netherlands, (hereinafter referred to as "Philips")

and

CINRAM INTERNATIONAL INC., having its registered office in 2255 Markham Road, Scarborough, Ontario M1B 2W 3 Canada (hereinafter referred to as "Licensee").

WHEREAS, the Philips' group of companies has for many years been engaged in research and development of systems, in which signals encoded in digital form and stored on a disc are read and reproduced by means of devices using an optical read-out beam, and has acquired valuable know-how and expertise therein;

WHEREAS, one of the achievements of such research and development efforts has been a revolutionary high-fidelity sound storage and reproduction system, of which the specifications have been further defined in a joint-research and development co-operation with Sony Corporation ("Sony") and which has been presented under the name "Compact Disc Digital Audio System" (CD-Audio System);

WHEREAS, on the basis of the CD-Audio System Philips and Sony have developed a further system, which has been presented under the name "Compact Disc Data System" (CD-ROM System);

WHEREAS, Philips and Sony have developed an additional multi-session CD system, which has been presented under the name "Enhanced Music Compact Disc System" ("Enhanced Music CD System" or "CD Extra System" (the CD-Audio System, the CD-ROM System and the CD Extra System are collectively referred to as "the CD Systems");

WHEREAS, Philips and Sony each own certain patents relating to the CD Systems;

WHEREAS, Philips has been authorized by Sony to grant licenses under certain patents relating to the CD Systems, which are owned or controlled by Sony and its Associated Companies (as hereinafter defined), as well as under such patents relating to the CD Systems as are jointly owned by Philips and Sony;

WHEREAS, Philips and Sony have each retained their rights to license their respective patents separately and to give non-assertion undertakings with regard to jointly owned patents, whether within or outside the standard specifications of the CD Systems, so that interested manufacturers may opt to take out separate licenses under the relevant patents of each of Philips and Sony, instead of a combined license;

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\sdl\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304

July 2003

P 001318



2

WHEREAS, Licensee has requested from Philips a license under the relevant patents of Philips and Sony relating to CD-Discs (as hereinafter defined) and wishes such CD-Discs to be compatible with devices capable of playing discs, conforming to the Standard Specifications for any of the relevant CD Systems;

WHEREAS, Philips is willing to grant Licensee a license under the relevant patents and to make available certain basic information relating to the CD Systems, on the conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual obligations and covenants hereinafter set forth, the parties hereto have agreed as follows:

**1.     Definitions**

The following terms used in this Agreement shall have the meanings set out below:

1.1     "Disc" shall mean a non-recordable reflective disc-shaped information carrier comprising any kind of information including, but not limited to, audio, video, text and/or data-related information, which is irreversibly stored in a layer during and as an integral part of the manufacturing process of the disc in a form which is optically readable by playback devices using a laser-beam.

1.2     "CD-Audio Disc" shall mean a Disc comprising audio information encoded in digital form, which is optically readable by a CD-Audio Player (as hereinafter defined) and which conforms to the CD-Audio Standard Specifications (as hereinafter defined). A CD-Audio Disc may, in addition to audio information, comprise CD Text information.

1.3     "CD-Audio Maxi-Single" shall mean a CD-Audio Disc which, in addition to conforming to the CD-Audio Standard Specifications, conforms to the CD-Audio Maxi-Single Standard Specifications.

1.4     "CD-ROM Disc" shall mean a Disc containing data, arranged in sectors as defined in the CD-ROM Standard Specifications (as hereinafter defined) in the chapter Digital Data Structure, Parts I to V, under the names: General data specification, Sync., Header, User data and Auxiliary data respectively, and protected against errors in accordance with the error correction system as defined in the CD-ROM Standard Specifications in the chapter Error Correction System under the name Cross Interleaved Reed-Solomon Code - "CIRC".

1.5     "CD-ROM Disc mode 1" shall mean a CD-ROM Disc with an additional error correction system for computer or other data as defined in the CD-ROM Standard Specifications in the chapter Digital Data Structure, Part VII, under the name Error Detection and Error Correction specification (a third layer error correction).

1.6     "CD-ROM Disc mode 2" shall mean a CD-ROM Disc containing data protected against errors solely by the error correction system as defined in the CD-ROM Standard

P 001319



3

Specifications in the chapter Error Correction System under the name Cross Interleaved Reed-Solomon Code - "CIRC".

1.7    "CD-ROM XA Disc sub-mode 1" shall mean a CD-ROM Disc, which is in compliance with the CD-ROM-XA Specifications (as hereinafter defined) and comprises at least one sector containing data protected by an additional error correction system for data as defined in the CD-ROM Standard Specifications in the chapter Digital Data Structure, Part VII, under the name Error Detection and Error Correction specification (a third layer error correction).

1.8    "CD-ROM XA Disc sub-mode 2" shall mean a CD-ROM Disc, which is in compliance with the CD-ROM-XA Specifications and comprises solely sectors containing data protected against errors solely by the error correction system as defined in the CD-ROM Standard Specifications in the chapter Error Correction System under the name Cross Interleaved Reed-Solomon Code – "CIRC".

1.9    "CD Extra Disc" shall mean a Disc conforming to the Enhanced Music CD Standard Specifications (as hereinafter defined) and which comprises first information encoded in digital form, which is optically readable by a CD-Audio Player and which conforms to the CD-Audio Standard Specifications, and second information conforming to the CD-ROM XA Specifications and which is optically readable by a CD-ROM Player or by an Enhanced Music CD Player (as hereinafter defined).

1.10    "CD Extra Disc sub-mode 1" shall mean a CD Extra Disc wherein the second information is in accordance with the data format on a CD-ROM XA Disc sub-mode 1.

1.11    "CD Extra Disc sub-mode 2" shall mean a CD Extra Disc wherein the second information is solely in accordance with the data format on a CD-ROM XA Disc sub-mode 2.

The CD-Audio Disc, the CD-Audio Maxi-Single, the CD-ROM Disc mode 1 and mode 2, the CD-ROM XA Disc sub-mode 1 and sub-mode 2 and the CD Extra Disc sub-mode 1 and sub-mode 2 are collectively referred to as "CD-Disc(s)".

1.12    "CD-Audio Standard Specifications" shall mean the specifications for the CD-Audio System, including, if applicable, the Subcode/Control and Display System, Channels R ..W, chapter 5.8, the CD-TEXT mode, as made available, modified or extended from time to time.

1.13    "CD-Audio Maxi-Single Standard Specifications" shall mean the specifications for the CD-Audio Maxi-Single system, specifying among other things a maximum playing time of 30 minutes, as made available, modified or extended from time to time. For the purpose of this Agreement, the CD-Audio Maxi-Single Standard Specifications shall be considered to form part of the CD-Audio Standard Specifications.

1.14    "CD-ROM Standard Specifications" shall mean the specifications for the CD-ROM System as made available, modified or extended from time to time.

1.15    "CD-ROM-XA Specifications" shall mean the specifications of the System Description CD-ROM XA as made available, modified or extended from time to time.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\s&d\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304          July 2003

P 001320



4

1.16    "Enhanced Music CD Standard Specifications" shall mean the specifications for the
Enhanced Music CD System as made available, modified or extended from time to time.
The CD-Audio Standard Specifications, the CD-Audio Maxi-Single Standard Specifications,
the CD-ROM Standard Specifications, the Enhanced Music CD Standard Specifications and
the CD-ROM-XA Specifications are collectively referred to as the "CD Standard
Specifications".

1.17    "Player" shall mean a single spindle playback device for optically reading information stored
on a Disc and converting such information into electrical signals for reproduction purposes.

1.18    "CD-Audio Player" shall mean a Player solely capable of reproducing information stored on a
CD-Audio Disc or CD-Audio Maxi-Single and converting such information into electrical
signals, in accordance with the CD-Audio Standard Specifications, which electrical signals are
directly capable of and intended to be used for sound reproduction through amplifiers and
loudspeakers.

1.19    "CD-ROM Player" shall mean a Player solely capable of reproducing information stored on
any kind of CD-ROM Disc and converting such information into electrical signals, in
accordance with the CD-ROM Standard Specifications, which electrical signals are directly
capable of and intended to be used for the reproduction of computer related data through
data handling and/or data processing equipment.

1.20    "Enhanced Music CD Player" shall mean a Player solely capable of reproducing information
stored on any kind of CD Extra Disc and converting such information into electrical signals,
in accordance with the Enhanced Music CD Standard Specifications, which electrical signals
are directly capable of and intended to be used for the reproduction of video, text and/or
computer related data through data handling and/or data processing equipment.

1.21    "Combi-Player" shall mean a Player which is any combination of a CD-Audio Player, a CD-
ROM Player and/or an Enhanced Music CD Player.

The CD-Audio Player, the CD-ROM Player, the Enhanced Music CD Player and the Combi-
Player are collectively referred to as the "CD-Players".

1.22    "Licensed Product(s)" shall mean

    Option A:    CD-Audio Discs and/or CD-Audio Maxi Singles

    Option B:    CD-Audio Discs and/or CD-Audio Maxi Singles containing CD Text
                information

    Option C:    CD-ROM Discs mode 1

    Option D:    CD-ROM Discs mode 2

    Option E:    CD-ROM XA Discs sub-mode 1

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\ehd\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304

July 2003

P 001321

5

| | |
|---|---|
| Option F: | CD-ROM XA Discs sub-mode 2 |
| Option G: | CD-Extra Discs sub-mode 1 |
| Option H: | CD-Extra Discs sub-mode 2 |
| Option I: | CD-Extra Discs sub-mode 1 containing CD Text information |
| Option J: | CD-Extra Discs sub-mode 2 containing CD Text information |
| Option K: | CD-Extra Discs containing video-related data in accordance with the MPEG Video System ISO DIS 11172 Standard |

as selected by Licensee, manufactured and/or sold in accordance with the provisions hereof, which are duly reported and on which the royalties due hereunder are paid in accordance with the provisions of this Agreement.

| Option(s): | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| | G | H | I | J | K | |

(please tick any combination as appropriate)

Initial: _____

1.23   "Licensed Patents" shall mean any one or more of the essential patents for the manufacture and/or sale of the various types of CD-Discs, as follows:

Category I

(a)   CD-Audio Discs and/or CD-Audio Maxi Singles, as listed in Annex A1;

(b)   CD-Audio Discs and/or CD-Audio Maxi Singles containing CD Text information, as listed in Annex A1 and Annex A7;

Category II

(c)   CD-ROM Discs mode 1, as listed in Annex A1 and Annex A2;

(d)   CD-ROM Discs mode 2, as listed in Annex A1 and Annex A3;

(e)   CD-ROM XA Discs sub-mode 1, as listed in Annex A1 and Annex A4;

(f)   CD-ROM XA Discs sub-mode 2, as listed in Annex A1 and Annex A5;

Category III

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
rc\s&l\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304

July 2003

P 001322

6

(g)    CD Extra Discs sub-mode 1, as listed in Annex A1, Annex A6 and Annex A4;

(h)    CD Extra Discs sub-mode 2, as listed in Annex A1, Annex A6 and Annex A5;

(i)    CD Extra Discs sub-mode 1 containing CD Text information, as listed in Annex A1, Annex A6, Annex A4 and Annex A7;

(j)    CD-Extra Discs sub-mode 2 containing CD Text information, as listed in Annex A1, Annex A6, Annex A5 and Annex A7;

(k)    CD-Extra Discs containing video-related data in accordance with the MPEG Video System ISO DIS 11172 Standard, as listed in Annex A1, Annex A6, Annex A4 or Annex A5 as well as Annex A8.

The term "essential" as used in relation to patents in this Agreement shall refer to patents, the use of which is necessary (either directly or as a practical matter) for compliance with the Standard Specifications defining the relevant CD System(s).

Philips has commissioned an independent patent expert to review the European, Japanese and US patents listed as essential in Annexes A1, A2, A3, A4, A5, A6, A7 and A8 in order to confirm the essentiality of such patents. In the event that such independent patent expert would find that any of the patents does not qualify as essential as defined in this Agreement, Philips will delete such patent (as well as the equivalent corresponding patents) from the relevant Annex and such patent will be put on a list of non-essential patents. Notwithstanding such deletion, Licensee shall retain the right to continue the use of such deleted patent(s) in accordance with the provisions of this Agreement, without any additional payment, unless Licensee explicitly notifies Philips in writing of its decision to waive such right.

In the event that Philips or Sony (or any of their respective Associated Companies) would have additional patents relevant to CD-Audio Discs (except for CD Text information and other than patents acquired from third parties after the date of January 1, 1983), CD-ROM Discs (other than patents acquired from third parties after the date of July 1, 1986), CD Extra Discs (other than patents acquired from third parties after the date of January 1, 1996) or the CD Text mode of CD-Discs, excluding CD-ROM Discs, (other than patents acquired from third parties after the date of October 1, 1996) in their respective patent portfolios which are essential to the manufacture, sale or other disposal of CD-Discs and which have a filing date or are entitled to a priority date prior to either January 1, 1983 for CD-Audio Discs, July 1, 1986 for CD-ROM Discs, January 1, 1996 for CD Extra Discs or October 1, 1996 for the CD Text mode of CD-Discs, excluding CD-ROM Discs, but which have not been listed as essential patents in the respective Annexes hereto, Philips will notify Licensee accordingly and such additional patents will be added to the Licensed Patents and such addition shall not affect the provisions of this Agreement, including without limitation, the duration of this Agreement as specified in Clause 12.1 and the duration of the grant-back undertakings on the part of Licensee pursuant to Clause 2. Any patents as may be added as essential patents to any of the respective Annexes hereto, will similarly be subject to the review by the independent patent expert in accordance with the preceding paragraph.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
rr:\skf\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001323



7

The patent lists provided to Licensee upon execution of this Agreement are subject to change in accordance with the provisions of this Agreement. With regard to the rights granted to Licensee hereunder, the patent lists published by Philips on its website (www.licensing.philips.com) or otherwise communicated by Philips to Licensee after the date of execution hereof shall prevail over the lists provided to Licensee upon the execution of this Agreement.

1.24    "Associated Company" shall mean any one or more business entities (1) owned or controlled by Philips, Sony or Licensee, (2) owning or controlling Philips, Sony or Licensee, or (3) owned or controlled by the business entity owning or controlling Philips, Sony or Licensee at the material time. For the purposes of this definition a business entity shall be deemed to own and/or to control another business entity if more than 50% (fifty per cent) of the voting stock of the latter business entity, ordinarily entitled to vote in the election of directors, (or, if there is no such stock, more than 50% (fifty per cent) of the ownership of or control in the latter business entity) is held by the owning and/or controlling business entity.

1.25    "Territory" shall mean the geographic area known as Canada.

## 2.    Grant of Rights

2.1    For the term of this Agreement and subject to the provisions hereof, Philips hereby grants to Licensee a non-exclusive, non-transferable license under the Licensed Patents (listed in the relevant Annex(es)) to manufacture Licensed Products as selected by Licensee pursuant to the Options of Clause 1.22 within the Territory in accordance with the relevant CD Standard Specifications and to sell or otherwise dispose of such Licensed Products so manufactured in all countries of the world.

2.2    Philips, also on behalf of Sony, further agrees, for as long as this Agreement is in force and effect and Licensee is in full compliance with its obligations under this Agreement, to grant Licensee upon Licensee's request, a non-exclusive, non-transferable license, either by means of a sub-license arrangement or by means of individual licenses from Philips and/or Sony respectively, on reasonable, non-discriminatory conditions, to manufacture Licensed Products in the Territory and to sell or otherwise dispose of Licensed Products so manufactured in all countries of the world, under any patents not yet licensed hereunder and which are essential to the manufacture, sale or other disposal of Licensed Products, for which Philips, Sony and/or their respective Associated Companies may hereafter acquire from third parties the right to grant licenses. It is acknowledged and agreed that in respect of the patents as may be licensed pursuant to this Clause 2.2, additional royalties may have to be paid over and above the royalties specified in Clause 5.2.

2.3    Philips, also on behalf of Sony, further agrees, for as long as this Agreement is in force and effect and Licensee is in full compliance with its obligations under this Agreement, to grant Licensee upon Licensee's request as well as to those of Licensee's Associated Companies who so request, a non-exclusive, non-transferable license, on reasonable, non-discriminatory conditions, either by means of a sub-license arrangement or by means of individual licenses from Philips and/or Sony respectively, to manufacture CD-Players and to sell or otherwise dispose of such CD-Players so manufactured in all countries of the world under any and all

P 001324



B

dispose of such CD-Players so manufactured in all countries of the world under any and all present and future patents essential to the manufacture, sale or other disposal of CD-Players for which Philips, Sony and/or their respective Associated Companies have or may hereafter acquire the right to grant licenses.

2.4     In consideration of the undertakings set forth in Clauses 2.1, 2.2 and 2.3 and similar undertakings by third party licensees of Philips or any of its Associated Companies and without prejudice to the provisions of Clause 12, Licensee agrees to grant to Philips, Sony and their respective Associated Companies and to other third parties who have entered or will enter into a license agreement with Philips concerning CD-Discs, non-exclusive, non-transferable licenses, on reasonable, non-discriminatory conditions comparable to those set forth herein, to manufacture, sell or otherwise dispose of CD-Discs, as correspond with the Category of CD-Discs from which Licensee has made a selection pursuant to the Options of Clause 1.22, under any and all present and future patents, for which Licensee or its Associated Companies have or may hereafter acquire the right to grant licenses and which are essential to the manufacture, sale or other disposal of such CD-Discs and which patents were first filed or are entitled to a priority date in any country of the world prior to the date of termination of this Agreement. The duration of such licenses shall be a period ending at the expiration date of the last to expire patent of Licensee or the relevant Associated Company of Licensee, essential to the Category of CD-Discs from which Licensee has made a selection pursuant to the Options of Clause 1.22. For the avoidance of doubt, the undertaking set out in this Clause 2.4 shall only apply to those companies which accept or have accepted a similar undertaking as given by Licensee in this Clause 2.4 and only in respect of those Categories of CD-Discs from which both Licensee and such companies have made a selection.

2.5     In addition, in consideration of the undertakings set forth in Clauses 2.1, 2.2, 2.3 and 2.4 and similar undertakings by third party licensees of Philips or any of its Associated Companies and without prejudice to the provisions of Clause 12, Licensee agrees to grant to Philips, Sony and their respective Associated Companies and to other third parties who have entered or will enter into a license agreement with Philips concerning CD-Players, non-exclusive, non-transferable licenses, on reasonable, non-discriminatory conditions, to manufacture, sell or otherwise dispose of CD-Players capable of playing CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22 under any and all present and future patents, for which Licensee or its Associated Companies have or may hereafter acquire the right to grant licenses and which are essential to the manufacture, sale or other disposal of such CD-Players and which patents were first filed or are entitled to a priority date in any country of the world prior to the date of termination of this Agreement. The duration of such licenses shall be a period ending at the expiration date of the last to expire patent of Licensee or the relevant Associated Company of Licensee, essential to CD-Players capable of playing CD-Discs, as correspond with the selection made by Licensee pursuant to the Options of Clause 1.22. For the avoidance of doubt, the undertaking set out in this Clause 2.5 shall only apply to those companies which accept or have accepted a similar undertaking as given by Licensee in this Clause 2.5.

2.6     Philips undertakes that it will offer, at the request of any of Licensee's Associated Companies to any such Associated Company, a non-exclusive and non-transferable license under the Licensed Patents on reasonable and non-discriminatory conditions comparable to those set forth herein, to manufacture, sell or otherwise dispose of CD-Discs.

P 001325

9

2.7    IT IS EXPRESSLY ACKNOWLEDGED AND AGREED THAT:

    (I)    THE LICENSES AND LICENSE UNDERTAKINGS HEREIN CONTAINED WITH RESPECT TO THE MANUFACTURE OF LICENSED PRODUCTS DO NOT EXTEND TO MASTER RECORDING MACHINES, EQUIPMENT OR METHODS FOR THE REPLICATION OF DISCS, NOR TO THE MANUFACTURE OF MATERIALS OR REPRODUCTION RIGHTS FOR INFORMATION (SUCH AS AUDIO, VIDEO, TEXT AND/OR DATA-RELATED INFORMATION), CONTAINED ON DISCS TO BE PLAYED BACK ON A PLAYER. FURTHER, THE LICENSE UNDERTAKINGS WITH RESPECT TO THE MANUFACTURE OF PLAYERS DO NOT EXTEND TO THE MANUFACTURE OF COMPONENTS FOR PLAYERS (INCLUDING BUT NOT LIMITED TO SEMICONDUCTOR DEVICES, INTEGRATED CIRCUITS, LASERS, MOTORS AND LENSES), EXCEPT FOR CIRCUITRY AND/OR SYSTEM ASPECTS SPECIFIC TO THE CD SYSTEMS (AND SIMILAR OPTICAL READ-OUT SYSTEMS);

    (II)    THE RIGHTS AND LICENSES GRANTED UNDER THIS AGREEMENT DO NOT EXTEND TO ANY COMBINATION OF ONE OR MORE LICENSED PRODUCTS OR PLAYERS WITH ANY OTHER ELEMENTS, PRODUCTS, SYSTEMS, EQUIPMENT OR SOFTWARE OTHER THAN THE COMBINATION OF A LICENSED PRODUCT AND A CD PLAYER.

3.    Standard Specifications, Technical Information and Support

3.1    Upon receipt of the payment provided for in Clause 5.1 and the payment provided for in Clause 5.12, Philips shall make available to Licensee for use by Licensee in accordance with the provisions hereof, a copy of the then current version of the respective CD Standard Specifications, as correspond with the Licensed Products as selected by Licensee pursuant to the Options of Clause 1.22, together with such other information and support as Philips considers necessary for the interpretation and/or the correct application of the relevant CD Standard Specifications.

3.2    Licensee shall be notified in writing of any addition or modification to any of the relevant CD Standard Specifications and shall be provided with relevant information in connection therewith.

3.3.    Philips and Licensee undertake to keep each other generally informed of developments or initiatives which may have an impact on the relevant CD Standard Specifications.

4.    Procurement from other Licensed Manufacturers

4.1    The rights granted to Licensee pursuant to Clause 2 and the right to use the information pursuant to Clause 3, include the right for Licensee to have Licensed Products made for it by third party manufacturers, duly licensed by Philips under an agreement similar to this

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
k:\akd\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304    July 2003

P 001326

10

Agreement, provided that Licensee will properly identify such third party manufacturer in the royalty reporting forms to be submitted to Philips hereunder, together with the quantities of Licensed Products so purchased.

Conversely, Licensee shall refrain from purchasing or selling CD-Discs manufactured by any third party not licensed by Philips, where such purchase or sale would constitute an act of infringement of any of the Licensed Patents.

5.    **Royalties, Reports and Payments**

5.1    In consideration of the rights granted by Philips and the information to be provided by Philips hereunder, Licensee shall, upon execution of this Agreement, make a non-refundable, non-recoupable payment of US$ 25,000 (twenty-five thousand US Dollars) to Philips.

5.2    In further consideration of the rights granted hereunder by Philips to Licensee, Licensee shall pay to Philips a royalty for each CD-Disc sold or otherwise disposed of by Licensee, any of Licensee's Associated Companies or an agent of Licensee, in any country where at least one of the Licensed Patents essential to the type(s) of CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22 exists.

These royalties shall amount to:

(a)    US$ 0.03 (three US Dollar cents) for each CD-Audio Disc with an outer diameter greater than 90 mm, if applicable, containing CD Text information;

(b)    US$ 0.02 (two US Dollar cents) for each CD-Audio Disc with an outer diameter smaller than 90 mm, if applicable, containing CD Text information;

(c)    US$ 0.027 (two point seven US Dollar cents) for each CD-Audio Maxi-Single, if applicable, containing CD Text information;

(d)    US$ 0.03 (three US Dollar cents) for each CD-ROM Disc (irrespective of the type) with an outer diameter greater than 90 mm; .

(e)    US$ 0.02 (two US Dollar cents) for each CD-ROM Disc (irrespective of the type) with an outer diameter smaller than 90 mm;

(f)    US$ 0.045 (four and a half US Dollar cents) for each CD Extra Disc (irrespective of the type) with an outer diameter greater than 90 mm, if applicable, containing CD Text information; and

(g)    US$ 0.03 (three US Dollar cents) for each CD Extra Disc (irrespective of the type) with an outer diameter smaller than 90 mm, if applicable, containing CD Text information,

said rates hereinafter referred to as "Standard Rates".

With respect to CD-Discs sold on or after July 1, 2002, provided that:

a)    Licensee is in full compliance with its obligations under this Agreement; and

b)    Licensee has submitted an audit statement by its external auditors, who shall be certified public auditors as specified in the Audit Guidelines attached hereto as Annex B2, confirming that the quarterly royalty statements as submitted by Licensee to

P 001327



11

Philips for the last twelve quarterly periods, are true, complete and accurate in every respect; and such statement must meet the requirements as specified in the Audit Guidelines;

and subject to the provisions of Clause 6, Licensee may apply the following royalty rates:

(a)    US$ 0.0175 (one and three quarters of a US Dollar cent) for each CD-Audio Disc with an outer diameter greater than 90 mm, if applicable, containing CD Text information;

(b)    US$ 0.0115 (one and fifteen hundredths of a US Dollar cent) for each CD-Audio Disc with an outer diameter smaller than 90 mm, if applicable containing CD Text information;

(c)    US$ 0.0155 (one and fifty-five hundredths of a US Dollar cent) for each CD-Audio Maxi-Single, if applicable, containing CD Text information;

(d)    US$ 0.0175 (one and three quarters of a US Dollar cent) for each CD-ROM Disc (irrespective of the type) with an outer diameter greater than 90 mm;

(e)    US$ 0.0115 (one and fifteen hundredths of a US Dollar cent) for each CD-ROM Disc (irrespective of the type) with an outer diameter smaller than 90 mm;

(f)    US$ 0.0175 (one and three quarters of a US Dollar cent) for each CD Extra Disc (irrespective of the type) with an outer diameter greater than 90 mm, if applicable, containing CD Text information; and

(g)    US$ 0.0115 (one and fifteen hundredths of a US Dollar cent) for each CD Extra Disc (irrespective of the type) with an outer diameter smaller than 90 mm, if applicable, containing CD Text information,

said rates hereinafter referred to as "Compliance Rates".

In the event that Licensee fails to comply at any time with any of its obligations under this Agreement, the Standard Rates, as applicable, shall apply to Licensee's manufacture and sale of CD-Discs instead of the Compliance Rates, as applicable, with immediate effect from the first day of the reporting period to which the occurrence of non-compliance relates until such moment that Philips confirms in writing to Licensee that Licensee's non-compliance has been remedied in full.

A CD-Disc shall be considered sold when invoiced or, if not invoiced, when delivered to a party other than Licensee.

For the avoidance of doubt, Philips confirms that it shall not assert any of the Licensed Patents against Licensee, nor against any of Licensee's customers or subsequent buyers of CD-Discs manufactured and sold by Licensee, prior to the day on which such CD-Discs are to be reported pursuant to the provisions of this Agreement, nor, provided that such CD-Discs have been duly reported in accordance with the provisions of this Agreement, prior to the day when payment of royalties in respect of CD-Discs manufactured and sold by Licensee is due in accordance with the provisions of this Agreement.

No royalties shall be payable for CD-Discs purchased by Licensee on a "have made" basis in accordance with Clause 4 from third party manufacturers, duly licensed by Philips, provided

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
rc:\s&d\company documents\Comm international inc.\cd audio text-rom-extra disc-usa-121304

July 2003

P 001328



12

that Licensee can demonstrate to Philips' satisfaction, that such third party manufacturer has paid to Philips the royalties due in respect of such CD-Discs.

For the avoidance of doubt, in the event that the manufacture by Licensee of CD-Discs within the Territory would not infringe any of the Licensed Patents, Licensee shall have no obligation to report and pay royalties in respect of CD-Discs manufactured within the Territory and which are sold for final use within the Territory or imported (either by Licensee or by a third party) into a country where no Licensed Patents exist, for final use in such country.

5.3     Within 30 days following 31 March, 30 June, 30 September and 31 December of each year during the term of this Agreement, Licensee shall submit to Philips (even in the event that no sales have been made) a written statement in the form as attached hereto as Annex B1 ("Royalty Reporting Form") (or in such other form as may be subsequently communicated by Philips to Licensee), signed by a duly authorized officer on behalf of Licensee, setting forth with respect to the preceding quarterly period:

(1)     the quantities of CD-Discs manufactured by Licensee on which royalties are due in accordance with the provisions of this Agreement, specified per individual type of CD-Disc;

(2)     the quantities of CD-Discs corresponding with the CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22, purchased from other licensed manufacturers in accordance with the provisions of Clause 4, on which royalties are due in accordance with the provisions of the CD Disc patent license agreement of said other manufacturers, specified per individual type of CD-Disc and per such third party manufacturer who shall be named in the Royalty Reporting Form;

(3)     on a per-country basis, specifying per individual type of CD-Disc:

(a)     the quantities of CD-Discs on which royalties are due in accordance with the provisions of this Agreement, sold or otherwise disposed of, specifying the identity of the buyers and the trademarks used on or in connection with the CD-Discs;

(b)     the quantities of CD-Discs on which royalties are due in accordance with the provisions of this Agreement, sold to other manufacturers, duly licensed by Philips, specifying the identity of such other manufacturers and the trademarks used on or in connection with the CD-Discs;

(4)     a computation of the royalties due under this Agreement.

Licensee shall pay the royalties due to Philips within 30 days after the end of each quarterly period in US Dollars to a bank account, as specified by Philips.

5.4     In the event that Licensee fails to submit to Philips a Royalty Reporting Form for any royalty reporting period within 30 days from the end of the relevant reporting period in accordance with the provisions of Clause 5.3, Licensee shall be obliged to pay to Philips within 30 days

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
rc\adcl\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001329

13

after the end of the relevant quarterly period for which the Royalty Reporting Form was not submitted, an estimated royalty (hereinafter referred to as an "Advance"), being an amount equal to the highest amount of royalties due for any royalty reporting period over the preceding eight royalty reporting periods (or over all preceding royalty reporting periods if fewer than eight). Such payment shall be treated as a non-refundable advance, primarily against the royalties and interest for the relevant royalty reporting period and then, if any sum remains, against any future royalties or other payments payable by Licensee hereunder. Licensee acknowledges and agrees that any Advance shall not be due by way of penalty, but that such payment shall constitute a non-refundable advance as aforesaid. For the avoidance of doubt, such payment shall be payable without any further notice or action by Philips, legal or otherwise, and shall take effect by virtue of the failure to submit a Royalty Reporting Form on time. The payment by Licensee of an Advance shall not affect Licensee's obligation to submit a Royalty Reporting Form and shall be without prejudice to any other rights or remedies of Philips, including, without limitation, Philips' right to charge 2% (two per cent) interest per month on overdue payments (including overdue payments of the Advance), and Philips' right to terminate this Agreement in accordance with its provisions. The Advance will not be set off against other sums due to Philips until a Royalty Reporting Form has been submitted in respect of the relevant royalty reporting period. In respect of any royalty reporting period for which an Advance has been paid and the Royalty Reporting Form subsequently submitted, Philips will first set off against the Advance all royalties and interest due for that period. Any remaining sum from the Advance will be set off against further royalty, interest or Advance payments due to Philips hereunder (if any).

5.5     Licensee shall submit to Philips, once per calendar year, an audit statement by its external auditors, who shall be certified public auditors as specified in the Audit Guidelines attached hereto as Annex B2, confirming that the quarterly royalty statements as submitted by Licensee to Philips for the last four quarterly periods, are true, complete and accurate in every respect. Such statement must meet the requirements as specified in the Audit Guidelines and shall be submitted to Philips within 90 days following the end of Licensee's financial year. The correctness of this audit statement may be verified by Philips by means of a work paper review, conducted by one of the certified public auditors selected by Philips. Licensee shall procure that its auditors provide full cooperation with said work paper review. Notwithstanding this audit statement, Philips reserves the right to inspect the books and records of Licensee from time to time in accordance with Clause 5.10.

The requirement to submit an audit statement by its external auditors as contained in the preceding paragraph only applies to those licensees who are entitled to apply the Compliance Rates in accordance with the provisions of this Agreement. Licensees who are entitled to apply the Compliance rates in accordance with the provisions of this Agreement and who have submitted to Philips a statement signed by a duly authorized officer of Licensee confirming that their annual production of CD-Discs is inferior to 5 million units shall be exempted from the requirement to submit the audit statement referred to in the preceding paragraph.

5.6     Within 30 days following the expiration or termination of this Agreement, Licensee shall submit to Philips a certified report on the number of CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22, on which royalties are due in accordance with the provisions of this Agreement, in stock at the time of expiration or termination of this

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\sk&\company documents\Cinram international inc.\cd audio text-rom-extra disc-use-121304                          July 2003

P 001330



14

Agreement. Royalties, calculated in accordance with Clause 5.2 and Clause 5.12, shall be due and payable for all such CD-Discs manufactured prior to, but remaining in stock with Licensee on the date of expiration or termination of this Agreement. For the avoidance of doubt, this Clause 5.6 shall be without prejudice to the provisions of Clause 12.6.

5.7    Any payment under this Agreement which is not made on the date(s) specified herein, shall accrue interest at the rate of 2% (two per cent) per month (or part thereof) or the maximum amount permitted by law, whichever is lower.

5.8    All payments to Philips shall under this Agreement shall be made by transfer in US Dollar or in such other currency, convertible in the sense of Articles VIII and XIX of the Articles of Agreement of the International Monetary Fund, as designated by Philips. The rate of exchange for converting the currency (if other than US Dollar) of the Territory shall be the telegraphic transfer selling rate of the designated currency as officially quoted in the Territory by the officially authorized foreign exchange bank for payment of currency transactions on the day that the amount is due and payable.

5.9    All costs, stamp duties, taxes and other similar levies arising from or in connection with the conclusion of this Agreement shall be borne by Licensee. In the event that the government of a country imposes any taxes on payments by Licensee to Philips hereunder and requires Licensee to withhold such tax from such payments, Licensee may deduct such tax from such payments. In such event, Licensee shall promptly provide Philips with tax receipts issued by the relevant tax authorities so as to enable Philips to support a claim for credit against income taxes which may be payable by Philips and/or its Associated Companies in The Netherlands and to enable Philips to document, if necessary, its compliance with tax obligations in any jurisdiction outside The Netherlands.

5.10    In order that the royalty statements provided for in this Clause 5 may be verified, Licensee shall keep complete and accurate books and records relating to the manufacture and sale or other disposal of the CD-Discs as correspond with the CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22 for which at least one Licensed Patent remains in force in any country of the world and shall keep such books and records available for inspection for a period of 5 years following the sale or other disposal.

Philips shall have the right to inspect the books and records of Licensee from time to time, in order to verify the correctness of the aforementioned royalty statements. Any such inspection shall take place no more than once per calendar year and shall be conducted by a certified public auditor appointed by Philips. Philips shall give Licensee written notice of such inspection at least 7 days prior to the inspection. Licensee shall willingly co-operate and provide all such assistance in connection with such inspection as Philips and/or the auditor may require. The inspection shall be conducted at Philips' own expense, provided that in the event that Licensee has failed to submit royalty statements and/or yearly written statement(s) by its external auditors, as provided for in Clause 5.3 and Clause 5.5, in respect of the period to which the inspection relates or in the event that any discrepancy or error exceeding 3% (three per cent) of the monies actually due is established, in addition to Licensee's obligation promptly to make up for such underpayment, the cost of the inspection shall be borne by Licensee, without prejudice to any other claim or remedy as Philips may have under this Agreement or under applicable law.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
rc\skd\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001331



15

Philips' right of inspection as set out in this Clause 5.10 shall survive termination or expiration of this Agreement.

5.11    Without prejudice to the provisions of Clause 5.10, Licensee shall provide all relevant additional information as Philips may reasonably request from time to time, so as to enable Philips to ascertain which products manufactured, sold or otherwise disposed of by Licensee are subject to the payment of royalties to Philips hereunder, the patents which have been used in connection with such products, and the amount of royalties payable.

5.12    As a condition precedent to the entry into force of this Agreement, Licensee shall submit to Philips a royalty statement in respect of those CD-Discs as correspond with the CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22 and in which any one or more of the essential Licensed Patents existing at the time is (are) used, manufactured and sold or otherwise disposed of by Licensee before the Effective Date (as hereinafter defined) of this Agreement in accordance with the provisions of Clause 5.3.

Within 7 days following the execution of this Agreement, Licensee shall pay to Philips the royalties for such CD-Discs, calculated by applying the royalty rates of:

(a)    US$ 0.03 (three US Dollar cents) for each CD-Audio Disc with an outer diameter greater than 90 mm, if applicable, containing CD Text information or each CD-ROM Disc (irrespective of the type) with an outer diameter greater than 90 mm;

(b)    US$ 0.02 (two US Dollar cents) for each CD-Audio Disc with an outer diameter smaller than 90 mm, if applicable, containing CD Text information or each CD-ROM Disc (irrespective of the type) with an outer diameter smaller than 90 mm;

(c)    US$ 0.027 (two point seven US Dollar cents) for each CD-Audio Maxi-Single, if applicable, containing CD Text information;

(d)    US$ 0.048 (four point eight US Dollar cents) for each CD Extra Disc, if so selected by Licensee in Schedule I to the Enhanced Music CD Disc License Agreement, if applicable, containing CD Text information;

(e)    US$ 0.045 (four and a half US Dollar cents) for each CD Extra Disc (irrespective of the type) with an outer diameter greater than 90 mm, if applicable, containing CD Text information; and

(f)    US$ 0.03 (three US Dollar cents) for each CD Extra Disc (irrespective of the type) with an outer diameter smaller than 90 mm, if applicable, containing CD Text information.

The above rates are effective for CD-Discs sold after June 30, 2000.
CD-Audio Discs, if applicable, containing CD Text information and CD-ROM Discs (irrespective of the type) having an outer diameter greater than 90 mm sold prior to July 1, 1998 are subject to a royalty rate of US$ 0.045; if sold after June 30, 1998 and prior to July 1, 1999 such Discs are subject to a royalty rate of US$ 0.04; and if sold after June 30, 1999 and prior to July 1, 2000 such Discs are subject to a royalty rate of US$ 0.035.

The royalty statement shall similarly be subject to Philips' right of audit as set out in Clause 5.10. Within 45 days following the execution of this Agreement, a Licensee who requests to be allowed to apply the Compliance Rates in accordance with Clause 5.2 shall submit to

P 001332

16

Philips an audit statement by its external auditors, who shall be certified public auditors, confirming that this royalty statement is true, complete and accurate in every respect. Such statement must meet the requirements as specified in the Audit Guidelines.

6.   Manufacturing Equipment Identification System

6.1   Upon signing of this Agreement, Licensee shall submit to Philips an overview of its manufacturing equipment currently used, or which is technically capable of being used for the manufacture of CD-Discs. Further, upon any acquisition, transfer or disposal of manufacturing equipment used, or which is technically capable of being used for the manufacture of CD-Discs, Licensee shall submit to Philips details of any such adjustment(s) to its manufacturing equipment. Further, Licensee shall submit to Philips an overview containing all adjustments to its manufacturing equipment during the preceding year, together with and confirmed by the audit statement referred to in Clause 5.5. Such overview shall be in the form as attached hereto as Annex B3 ("Manufacturing Equipment List"), signed by a duly authorized officer on behalf of Licensee.

6.2   The Compliance Rates referred to in Clause 5.2 shall only apply to CD-Discs manufactured by Licensee using manufacturing equipment properly identified in the Manufacturing Equipment List and shall be conditional upon Licensee submitting to Philips the audit statement meeting the requirements as set out in the Audit Guidelines, in accordance with the provisions in Clause 5.5. In the event that Licensee puts into use newly acquired manufacturing equipment which has been used, or which was technically capable of being used for the manufacture of CD-Discs prior to the acquisition by Licensee, the Compliance Rates shall only apply if Licensee confirms to Philips that the newly acquired manufacturing equipment originates from and has been used, or was technically capable of being used by a company which was properly licensed by Philips for the manufacture of CD-Discs at the time of the acquisition of the newly acquired manufacturing equipment by Licensee or that the equipment concerned has not been used by any other entity or person directly or indirectly under the same ultimate control as Licensee. In the event that Licensee is unable to comply with the requirements under this Clause 6, the Standard Rates shall apply to Licensee's manufacture and sale of CD-Discs instead of the Compliance Rates.

7.   Most Favourable Rate

7.1   In the event that licenses under the patents referred to in Clause 2 are granted by Philips for CD-Discs, as correspond with the selection made by Licensee pursuant to the Options of Clause 1.22, to a third party under substantially similar conditions, but at a royalty rate more favourable than the rate payable by Licensee under this Agreement, Licensee shall be entitled to the same royalty rate as applicable to such third party, provided always that this right of Licensee shall not apply in respect of cross-license agreements or other agreements providing for a consideration which is not exclusively based on the payment of royalties and further provided that this right of Licensee shall not apply in respect of licenses or other arrangements made pursuant to a court decision or the settlement of a dispute between Philips and a third party, irrespective of the nature of such dispute, the terms of the court decision or the settlement terms.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\akl\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304                    July 2003

P 001333

17

## 8.   No Warranty and Indemnification

8.1   Whereas Philips has made efforts to ensure that the information to be supplied by it
hereunder is complete and accurate, Philips makes no representation or warranty as to the
completeness or accuracy of such information, nor with respect to the ability of Licensee to
achieve interchangeability with respect to CD-Discs through the use of such information.

8.2   It is acknowledged by Licensee that third parties may own industrial and/or intellectual
property rights in the field of CD-Discs. Philips and Sony make no warranty whatsoever that
the manufacture, sale or other disposal of CD-Discs or the use of information supplied by
Philips hereunder, does not infringe or will not cause infringement of any industrial and/or
intellectual property rights other than the Licensed Patents. Philips, Sony and their respective
Associated Companies shall be fully indemnified and held harmless by Licensee from and
against any and all third party claims in connection with CD-Discs manufactured, sold or
otherwise disposed of by Licensee.

## 9.   Confidentiality

9.1   Licensee shall at all times maintain strict confidentiality with regard to the CD Standard
Specifications and shall not disclose same to any third party without the prior written consent
of Philips.

9.2   Without prejudice to Clause 9.1, Licensee shall, during the term of this Agreement as
specified in Clause 12.1 and for a period of 3 years thereafter, not disclose to any third party
any information acquired from Philips or any of Philips' Associated Companies in connection
with this Agreement, or use such information for any purpose other than the manufacture
and disposal of CD-Discs in accordance with the provisions of this Agreement. This
obligation shall not apply to the extent information so acquired:

   (a)   was known to Licensee prior to the date on which such information was acquired
         from Philips or any of Philips' Associated Companies, as shown by records of
         Licensee or otherwise demonstrated to Philips' satisfaction;

   (b)   is or has become available to the public through no fault of Licensee;

   (c)   was or is received from a third party who was under no confidentiality obligation in
         respect of such information.

   In protecting information acquired from Philips or any of Philips' Associated Companies,
   Licensee shall take all necessary measures and precautions, including but not limited to
   measures requiring its present and future employees to give suitable undertakings of secrecy
   both for the period of their employment and thereafter, and shall protect such information in
   the same manner and with the same degree of care (but no less than a reasonable degree of
   care) as Licensee applies to its own information of a confidential nature.

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\abd\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304

July 2003

P 001334

18

9.3    The obligations concerning confidentiality contained in Clause 9.1 and Clause 9.2 shall survive termination of this Agreement.

9.4    Philips shall, during the term of this Agreement as specified in Clause 12.1 and for a period of 3 years thereafter, not disclose to any third party any confidential information obtained in connection with Clause 5.3, Clause 5.5, Clause 5.6, Clause 5.12 and/or Clause 6, except that Philips may disclose such information to its external auditors, legal representatives and to the competent courts to the extent this is necessary for Philips in connection with the enforcement of its rights hereunder. Further, Philips shall not use such information for other purposes than to verify Licensee's compliance with its royalty reporting and payment obligations as provided in this Agreement and to enforce Philips' rights hereunder. Philips' obligations set out in this paragraph shall not apply to information referred to in sections (a), (b) and/or (c) of Clause 9.2.

10.    Logo

10.1    For the term of this Agreement and subject to the full and timely performance and observance by Licensee of all its undertakings and obligations hereunder, Licensee shall be entitled to use on the Licensed Products as well as in advertisements and sales literature with respect to Licensed Products sold by Licensee, a logo (hereinafter referred to as "the Logo") in accordance with the instructions laid down in the CD Logo Guide which shall be made available to Licensee together with the relevant CD Standard Specifications.

10.2    Licensee acknowledges and agrees that Philips makes no warranty whatsoever that any use of the Logo does not infringe or will not cause infringement of any third party intellectual property rights.

11.    No Assignment

11.1    This Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective assignees. It may not be assigned in whole or in part by Licensee without the prior written consent of Philips.

12.    Term and Termination

12.1    This Agreement shall enter into force on the "Effective Date", being the date first written above. In the event that validation of this Agreement is required by the competent governmental authorities, the Effective Date shall be the date of such validation. Unless terminated earlier in accordance with the provisions of this Clause 12, this Agreement shall remain in force until the expiration date of the last to expire Licensed Patent in the Territory essential to CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22.

Upon the expiration of all Licensed Patents in the Territory essential to CD-Discs as selected by Licensee pursuant to the Options of Clause 1.22, Philips shall not assert any of the essential Licensed Patents against Licensee or Licensee's customers, provided that Licensee



19

has entered into a contractual arrangement with Philips providing for the situation that, although such CD-Discs manufactured by Licensee are no longer covered by any of the essential Licensed Patents in the Territory, such CD-Discs are being imported by Licensee or a third party into one or more other countries in which one or more of said essential Licensed Patents subsist.

12.2 Without prejudice to the provisions of Clause 12.3 through Clause 12.6, each party may terminate this Agreement at any time by means of a written notice to the other party in the event that the other party fails to perform any obligation under this Agreement and such failure is not remedied within 30 days after receipt of a notice specifying the nature of such failure and requiring it to be remedied. Such right of termination shall not be exclusive of any other remedies or means of redress to which the non-defaulting party may be lawfully entitled and all such remedies shall be cumulative. Any such termination shall not affect any royalty or other payment obligations under this Agreement accrued prior to such termination.

12.3 Philips may terminate this Agreement forthwith by means of a written notice to Licensee in the event that a creditor or other claimant takes possession of, or a receiver, administrator or similar officer is appointed over any of the assets of Licensee, or in the event that Licensee makes any voluntary arrangement with its creditors or becomes subject to any court or administration order pursuant to any bankruptcy or insolvency law.

12.4 Additionally, insofar as legally permitted, Philips may terminate this Agreement at any time by means of a written notice to Licensee in case Licensee or an Associated Company of Licensee has been found liable by a competent court or administrative authority to have committed an act of copyright piracy.

12.5 Philips shall have the right to terminate this Agreement forthwith or to revoke the license granted under any of Philips', Sony's or any of their respective Associated Companies' patents in the event that Licensee or any of its Associated Companies brings a claim of infringement of any of Licensee's or any of Licensee's Associated Companies' essential patents relating to CD-Discs or CD-Players against Philips, Sony or any of their respective Associated Companies and Licensee refuses to license such patents on fair and reasonable conditions.

12.6 Upon the termination of this Agreement by Philips for any reason pursuant to Clause 12.2 through Clause 12.5, Licensee shall immediately cease the manufacture, sale or other disposal of CD-Discs in which any one or more of the Licensed Patents are used. Further, upon such termination, any and all amounts outstanding hereunder shall become immediately due and payable.

12.7 All provisions of this Agreement which are intended to survive (whether express or implied) the expiry or termination of this Agreement, shall so survive.

13. Miscellaneous

13.1 Licensee acknowledges that Philips may make modifications to the wording of the standard version of the CD Disc Patent License Agreement in future. Licensee shall at all times have

USA-CD-Audio-Text-ROM-Extra-Disc/04-2003
n:\akd\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304     July 2003

P 001336

20

the option of entering into the latest version of the CD Disc Patent License Agreement as published by Philips on its website or otherwise communicated by Philips to Licensee after the Effective Date of this Agreement.

13.2    Any notice required under this Agreement to be sent by either party shall be given in writing by means of a letter, facsimile or electronic mail directed:

in respect of Licensee, to:

Cinram International, Inc.
2255 Markham Road
Scarborough, Ontario M1B 2W3
Canada
Fax: 1 (416) 298-0612

in respect of Philips, to:

Koninklijke Philips Electronics N.V.
c/o Philips Intellectual Property & Standards - Legal Department
Building WAH-2
P.O. Box 220
5600 AE Eindhoven
The Netherlands
Fax: +31 40 2743489

with a copy to:

Philips Intellectual Property & Standards,
P.O. Box 3001
345 Scarborough Road
Briarcliff Manor, NY 10510-8001
Fax: (914) 332-0615

or to such other address as may have been previously specified in writing by either party to the other.

13.3    This Agreement sets forth the entire understanding and agreement between the parties as to the subject matter hereof and supersedes and replaces all prior arrangements, discussions and understandings between the parties relating thereto. No variation of this Agreement shall be binding upon either party unless made in writing and signed by an authorized representative of each of the parties hereto.

13.4    Nothing contained in this Agreement shall be construed:

    (a)    as imposing on either party any obligation to instigate any suit or action for infringement of any of the patents licensed hereunder or to defend any suit or action brought by a third party which challenges or relates to the validity of any such patents. Licensee shall have no right to instigate any such suit or action for

USA-CD-Audio-Text-ROM-Extra-Disc/08-2003
n:\skl\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304          July 2003

P 001337

21

infringement of any of the patents licensed by Philips hereunder, nor the right to defend any such suit or action which challenges or relates to the validity of any such patent licensed by Philips hereunder;

(b)   as imposing any obligation to file any patent application, to secure any patent or to maintain any patent in force;

(c)   as conferring any license or right to copy or imitate the appearance and/or design of any product of Philips, Sony or any of their respective Associated Companies;

(d)   as conferring any license to manufacture, sell or otherwise dispose of any product or device other than a Licensed Product.

13.5   Neither the failure nor the delay of either party to enforce any provision of this Agreement shall constitute a waiver of such provision or of the right of either party to enforce each and every provision of this Agreement.

13.6   Should any provision of this Agreement be finally determined void or unenforceable in any judicial proceeding, such determination shall not affect the operation of the remaining provisions hereof, provided that, in such event, Philips shall have the right to terminate this Agreement by means of a written notice to Licensee.

13.7   This Agreement shall be governed by and construed in accordance with the laws of The State of New York.

Any dispute between the parties hereto in connection with this Agreement (including any question regarding its existence, validity or termination) shall be submitted to any state or federal courts in The State of New York, provided always that, in case Philips is the plaintiff, Philips may, at its sole discretion, submit any such dispute either to the state or federal courts in the venue of Licensee's registered office, or to any of the state or federal courts in the Territory having jurisdiction. Licensee hereby irrevocably waives any objection to the jurisdiction, process and venue of any such court and to the effectiveness, execution and enforcement of any order or judgment (including, but not limited to, a default judgment) of any such court in relation to this Agreement, to the maximum extent permitted by the law of any jurisdiction, the laws of which might be claimed to be applicable regarding the effectiveness, enforcement or execution of such order or judgment.

USA-CD-Audio-Test-ROM-Extra-Disc/08-2003
n:\s&d\company documents\Cinram international inc.\cd audio test-rom-extra disc-usa-121304

July 2003

P 001338

22

AS WITNESS, the parties hereto have caused this Agreement to be signed on the date first written above.

KONINKLIJKE PHILIPS ELECTRONICS N.V.

CINRAM INTERNATIONAL INC.

Name: H. SAKKERS

Name: ⎰ JOHN TIMO

Title: BY PROXY

Title: DIRECTOR OF FINANCIAL REPORTING

Date:_____

Date: DEC 21/04

USA-CD-Audio-Text-ROM-Extra-Disc/08-2005
n:\abl\company documents\Cinram international inc.\cd audio text-rom-extra disc-usa-121304

july 2003

P 001339



Annex A1 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD Disc / CD-General part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---------|-----------|-----------|-------------|----------------|-----------|----------|-------------|-------|
| AR | Q 090007 | 285958 | 02-Jul-81 | | 08-Jun-87 | 250849 | 04-Jun-12 | Block N to K compact disc modulation code (EFM) |
| AR | Q 090009 | 285400 | 20-May-81 | | 04-Jun-87 | 250848 | 04-Jun-12 | Error correctable data transmission method |
| AT | Q 090007 | 81-A3107 | 14-Jul-81 | | 25-Jan-89 | 404052 | 18-May-16 | Block N to K compact disc modulation code (EFM) |
| AT | Q 090009 | 81-A2215 | 18-May-81 | 395794 | 25-May-83 | 395794 | 15-Jul-10 | Error correctable data transmission method |
| BW | Q 090007 | 93-00033 | 21-Apr-98 | | 02-Oct-02 | BWP/02/00035 | 21-Apr-18 | Block N to K compact disc modulation code (EFM) |
| CA | Q 090007 | 381362 | 08-Jul-81 | | 16-Sep-86 | 1211570 | 16-Sep-03 | Block N to K compact disc modulation code (EFM) |
| US | H 008493 O | 04/658950 | 23-Apr-96 | | 24-Nov-91 | 5048045 | 24-Nov-08 | Video disc with disc body acting as protection |
| US | P15.689 | 890315 | 30-Mar-82 | | 11-Jun-94 | 5305391 | 19-Apr-11 | Optical readable carriers |

All corresponding patent applications, patents, patents, dividends, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Page 1 of 1                                                                 Version date : 31 July 2003

P 001340

Annex A2 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM Mode 1 part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | Q.043025 | 84-A2789 | 29-Aug-84 | | 29-Dec-87 | 403223 | 16-Apr-15 | Framing of data-blocks on CD-ROM |
| AT | Q.044008 | 85200431.8 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | E49835 | 20-Mar-05 | CD-ROM Error Correction System A |
| AU | Q.043025 | 8443256 | 31-Aug-84 | | 28-Mar-91 | 603761 | 31-Aug-04 | Framing of data-blocks on CD-ROM |
| AU | Q.044008 | 85-40240 | 22-Mar-85 | | 29-Sep-89 | 584483 | 22-Mar-05 | CD-ROM Error Correction System A |
| BE | Q.044008 | 85200431.9 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| BR | Q.043025 | PI8404319.9 | 28-Aug-84 | | 17-Apr-02 | PI8404319.9 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| BR | Q.044008 | PI8501277.7 | 21-Mar-85 | | 26-Oct-93 | PI8501277 | 21-Mar-05 | CD-ROM Error Correction System A |
| CA | Q.044008 | 477183 | 21-Mar-85 | | 13-Jun-89 | 1255771 | 13-Jun-06 | CD-ROM Error Correction System A |
| CA | SP.PO216 | 463868 | 27-Apr-84 | | 26-Apr-88 | 1238812 | 28-Apr-05 | Disk recording medium |
| CH | Q.044008 | 85200431.8 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| CZ | Q.044008 | 85-PV2009 | 21-Mar-85 | | 23-Sep-86 | 281601 | 21-Mar-05 | CD-ROM Error Correction System A |
| DE | Q.043025 | P3431810.0 | 30-Aug-84 | 3431810 | 11-Jun-95 | 3431810 | 30-Aug-04 | Framing of data-blocks on CD-ROM |
| DE | Q.044008 | 85200431.8 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | 3575446 | 20-Mar-05 | CD-ROM Error Correction System A |
| DE | SP.PO216 | 84305176.4 | 22-Jul-84 | | 19-Jul-89 | P3475288.2 | 24-Jul-04 | Disk recording medium |
| FR | Q.044008 | 8504287 | 22-Mar-85 | | 02-Nov-87 | 2561829 | 22-Mar-05 | CD-ROM Error Correction System A |
| FR | SP.PO216 | 84305176.4 | 30-Jul-84 | | 19-Jun-89 | 131790 | 30-Jul-04 | Disk recording medium |
| GB | Q.043025 | 8421705 | 28-Aug-84 | | 05-Feb-88 | 2146855 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| GB | Q.044008 | 8507248 | 20-Mar-85 | | 00-May-88 | 2156555 | 20-Mar-05 | CD-ROM Error Correction System A |
| GB | SP.PO216 | 84305176.4 | 30-Jul-84 | | 19-Jun-89 | 131790 | 30-Jul-04 | Disk recording medium |
| HK | Q.043025 | NOT GIVEN | 28-Aug-84 | | 18-Feb-93 | 98/30121 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| HK | Q.044008 | NOT GIVEN | 20-Mar-85 | | 04-May-93 | 0730433 | 20-Mar-05 | CD-ROM Error Correction System A |
| IT | Q.044008 | 85200431.8 | 20-Mar-85 | 0156440-A2 | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| JP | Q.043025 A | 93-269402 | 01-Sep-83 | 94-193947 | 23-Jan-87 | 2600565 | 01-Sep-03 | Framing of data-blocks on CD-ROM |
| JP | Q.044098 | 84-57895 | 24-Mar-84 | 85-201675 | 23-Aug-96 | 2085842 | 24-Mar-04 | Framing of data-blocks on CD-ROM |
| KR | Q.044098 | 85-1814 | 23-Mar-85 | 94-8742 | 09-Jan-85 | 81142 | 23-Mar-05 | CD-ROM Error Correction System A |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of data list

Page 1 of 2

Version date : 21 July 2003

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM Mode 1 part

| COUNTRY | | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|---|
| N. | | Q 084008 | 85200431.8 | 20-Mar-85 | 0155440-A2 | 24-Jan-90 | 0155440 | 20-Mar-05 | CD-ROM Error Correction System A |
| N. | | S84PV218 | 84305176.4 | 30-Jul-84 | | 18-Jan-88 | 133700 | 30-Jul-04 | Disc recording medium |
| SE | | Q 084008 | 8520043.8 | 20-Mar-85 | 0155440-A2 | 24-Jan-90 | 0155440 | 20-Mar-05 | CD-ROM Error Correction System A |
| SG | | Q 084008 | 9290563.8 | 20-Mar-85 | | 28-Oct-92 | 32772 | 20-Mar-05 | CD-ROM Error Correction System A |
| SK | | Q 083025 | 84-PV6807 | 03-Sep-84 | | 09-Jun-82 | 278395 | 03-Sep-04 | Framing of data-blocks on CD-ROM |
| SK | | Q 084008 | 85-PV2009 | 21-Mar-85 | | 26-May-97 | 278568 | 21-Mar-05 | CD-ROM Error Correction System A |
| UA | | Q 084008 | 3874714 | 22-Mar-85 | | 27-Dec-94 | 3503 | 22-Mar-05 | CD-ROM Error Correction System A |
| US | R | Q 084008 | 07/379827 | 13-Jul-89 | | 27-Nov-90 | RE33462 | 22-Mar-05 | CD-ROM Error Correction System A |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list.

Version date : 21 July 2003

Annex A3 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM Mode 2 part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | 0.083025 - | 84-A2789 | 29-Aug-84 | | 29-Dec-87 | 403322 | 15-Apr-15 | Framing of data-blocks on CD-ROM |
| AU | 0.083025 - | 84-32584 | 31-Aug-84 | | 26-Mar-91 | 603781 | 31-Aug-04 | Framing of data-blocks on CD-ROM |
| BR | 0.083025 - | PI8404319.9 | 29-Aug-84 | | 17-Apr-02 | PI8404319.9 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| CA | 584P0216 - | 459469 | 27-Apr-84 | | 26-Apr-88 | 1235412 | 26-Apr-05 | Disc recording medium |
| DE | 0.083025 - | P3431810.0 | 30-Aug-84 | 3431810 | 14-Jun-95 | 3431810 | 30-Aug-04 | Framing of data-blocks on CD-ROM |
| DE | 584P0216 - | 84305178.4 | 30-Jul-84 | | 18-Jan-84 | P3478288.2 | 30-Jul-04 | Disc recording medium |
| FR | 584P0216 - | 84305178.4 | 30-Jul-84 | | 11-Jan-84 | 133790 | 30-Jul-04 | Disc recording medium |
| GB | 0.083025 - | 8421705 | 28-Aug-84 | | 03-Feb-18 | 2145855 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| GB | 584P0216 - | 84305178.4 | 30-Jul-84 | | 18-Jan-84 | 133790 | 30-Jul-04 | Disc recording medium |
| HK | 0.083025 - | NOT GIVEN | 28-Aug-84 | | 18-Feb-93 | 0930121 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| JP | 0.083025 A | 93-269402 | 01-Sep-83 | 94-185947 | 23-Jan-87 | 2600585 | 01-Sep-03 | Framing of data-blocks on CD-ROM |
| NL | 584P0216 - | 84305178.4 | 30-Jul-84 | | 18-Jan-84 | 133790 | 30-Jul-04 | Disc recording medium |
| EK | 0.083025 - | 84-PV8407 | 05-Sep-84 | | 06-Jun-92 | 276585 | 03-Sep-04 | Framing of data-blocks on CD-ROM |

All corresponding patent applications, patents, divisions, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 21 July 2003

P 001343

Annex A4 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM XA Sub-mode 1 (Mode 2 Form 1) part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | Q.083025 | 84-A3789 | 29-Aug-84 | | 28-Dec-87 | 403223 | 15-Apr-15 | Framing of data-blocks on CD-ROM |
| AT | Q.084008 | 85200431.6 | 20-Mar-85 | 018544O-A2 | 24-Jan-90 | E48835 | 20-Mar-05 | CD-ROM Error Correction System A |
| AT | S84P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | 52866 | 03-Mar-04 | Method and apparatus for recording digitized infor |
| AU | Q.083025 | 64-32354 | 04-Aug-84 | | 26-Mar-91 | 603781 | 31-Aug-04 | Framing of data-blocks on CD-ROM |
| AU | Q.084008 | 35-40340 | 22-Mar-85 | | 24-Aug-89 | 584483 | 22-Mar-06 | CD-ROM Error Correction System A |
| BE | Q.084008 | 85200431.6 | 20-Mar-85 | 0158440-A2 | 24-Jan-90 | 0158440 | 20-Mar-05 | CD-ROM Error Correction System A |
| BR | Q.083025 | P8400319.8 | 29-Aug-84 | | 17-Apr-02 | P8400319.8 | 29-Aug-04 | Framing of data-blocks on CD-ROM |
| BR | Q.084008 | P8501377.7 | 21-Mar-85 | | 28-Oct-03 | P8501377 | 21-Mar-05 | CD-ROM Error Correction System A |
| BR | Q.088003 | P8700846.7 | 23-Feb-87 | | 30-May-95 | P8700846 | 23-Feb-07 | Real-time format switching |
| CA | Q.084008 | 477183 | 21-Mar-85 | | 13-Jun-88 | 1255771 | 13-Jun-06 | CD-ROM Error Correction System A |
| CA | Q.088003 | 530120 | 19-Feb-87 | | 12-Feb-91 | 1280209 | 12-Feb-08 | Real-time format switching |
| CA | S84P0216 | 439843 | 27-Apr-84 | | 26-Apr-88 | 1235812 | 26-Apr-05 | Disc recording medium |
| CH | Q.084008 | 85200431.6 | 20-Mar-85 | 018544O-A2 | 24-Jan-90 | 0158440 | 20-Mar-05 | CD-ROM Error Correction System A |
| CN | Q.088003 | 87100628.3 | 21-Feb-87 | 87100628-A | 13-Mar-91 | 1010517 | 21-Feb-07 | Real-time format switching |
| CZ | Q.084008 | 85-PV2609 | 21-Mar-85 | | 23-Sep-99 | 281051 | 21-Mar-05 | CD-ROM Error Correction System A |
| DE | Q.083025 | P3431810.0 | 30-Aug-84 | 3431810 | 14-Jun-85 | 3431810 | 30-Aug-04 | Framing of data-blocks on CD-ROM |
| DE | Q.084008 | 85200431.6 | 20-Mar-85 | 0158440-A2 | 24-Jan-90 | 357844 | 20-Mar-05 | CD-ROM Error Correction System A |
| DE | Q.088003 | P3701763.2 | 23-Jan-87 | 3701763 | 22-May-97 | 3701763 | 22-Jan-07 | Real-time format switching |
| DE | S84P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | P3482291.7 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| DE | S84P0216 | 84906176.4 | 30-Jul-84 | | 18-Jun-94 | P3476289.2 | 30-Jul-04 | Disc recording medium |
| FR | Q.084008 | 850437 | 22-Mar-85 | | 02-Nov-87 | 2561839 | 22-Mar-05 | CD-ROM Error Correction System A |
| FR | Q.088003 | 8702234 | 20-Feb-87 | | 22-Nov-88 | 2594998 | 20-Feb-07 | Real-time format switching |
| FR | S84P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | 157855 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| FR | S84P0216 | 84305176.4 | 30-Jul-84 | | 11-Jun-84 | 133790 | 30-Jul-04 | Disc recording medium |
| GB | Q.083025 | 8421705 | 28-Aug-84 | | 03-Feb-88 | 2145855 | 28-Aug-04 | Framing of data-blocks on CD-ROM |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Page 1 of 2

Version date : 21 July 2003

P 001344

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM XA Sub-mode 1 (Mode 2 Form 1) part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|---|
| GB | Q.044008 | 8501240 | 20-Mar-85 | | | 09-Mar-88 | 2158355 | 20-Mar-05 | CD-ROM Error Correction System A |
| GB | Q.046003 | 8704011 | 20-Feb-87 | | | 06-Dec-89 | 2187008 | 20-Feb-07 | Real-time format switching |
| GB | 584P0115 | 84901011.1 | 02-Mar-84 | | | 16-May-90 | 137655 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| GB | 584P0216 | 84305176.4 | 30-Jul-84 | | | 18-Jun-84 | 133780 | 30-Jul-04 | Disc recording medium |
| HK | Q.043025 | NOT GIVEN | 28-Aug-84 | | | 16-Feb-93 | 0830121 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| HK | Q.044008 | NOT GIVEN | 20-Mar-85 | | | 04-May-93 | 0930433 | 20-Mar-05 | CD-ROM Error Correction System A |
| IT | Q.044008 | 85200431.6 | 20-Mar-85 | 0156440-A2 | | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| IT | Q.048003 | 87-A19447 | 20-Feb-87 | | | 06-Feb-90 | 1218382 | 20-Feb-07 | Real-time format switching |
| JP | Q.043025 A | 93-249402 | 01-Sep-83 | 84-185947 | | 28-Jan-97 | 2606585 | 01-Sep-03 | Framing of data-blocks on CD-ROM |
| JP | Q.044008 | 84-57595 | 24-Mar-84 | 85-201575 | 85-101543 | 23-Aug-94 | 2088542 | 24-Mar-04 | CD-ROM Error Correction System A |
| JP | Q.046003 | 87-39997 | 23-Feb-87 | 87-217468 | | 18-Dec-97 | 2730024 | 23-Feb-07 | Real-time format switching |
| KR | Q.044008 | 85-1914 | 23-Mar-85 | 84-41742 | | 09-Jun-95 | 81142 | 23-Mar-05 | CD-ROM Error Correction System A |
| KR | Q.046003 | 87-1501 | 23-Feb-87 | 85-7945 | | 30-Oct-95 | 81017 | 23-Feb-07 | Real-time format switching |
| NL | Q.044008 | 85200431.6 | 20-Mar-85 | 0156440-A2 | | 24-Jun-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| NL | Q.046003 | 8900430 | 24-Feb-89 | 8800450 | | 04-Feb-97 | 192151 | 24-Feb-06 | Real-time format switching |
| SE | 584P0216 | 84305176.4 | 30-Jul-84 | | | 18-Jun-84 | 133780 | 30-Jul-04 | Disc recording medium |
| SE | Q.044008 | 85200431.6 | 20-Mar-85 | 0156440-A2 | | 24-Jan-90 | 0156440 | 20-Mar-05 | CD-ROM Error Correction System A |
| SG | Q.046003 | 8700711-9 | 20-Feb-87 | | | 09-Jun-92 | 485442 | 25-Feb-07 | Real-time format switching |
| SG | Q.044008 | 9290563.8 | 20-Mar-83 | | | 28-Oct-92 | 32772 | 20-Mar-05 | CD-ROM Error Correction System A |
| SK | Q.043025 | 84-PV9007 | 03-Sep-84 | | | 09-Jun-92 | 231685 | 03-Sep-04 | Framing of data-blocks on CD-ROM |
| SK | Q.044008 | 85-PV2006 | 21-Mar-85 | | | 24-May-97 | 278366 | 21-Mar-06 | CD-ROM Error Correction System A |
| TW | Q.046003 | 76100969 | 25-Feb-87 | | | 26-Mar-88 | 27918 | 25-Feb-07 | Real-time format switching |
| UA | Q.044006 | 3174714 | 23-Mar-85 | | | 27-Dec-94 | 3503 | 22-Mar-05 | CD-ROM Error Correction System A |
| US | Q.044008 R | 07/579627 | 13-Jul-89 | | | 27-Nov-90 | RE33482 | 22-Mar-05 | CD-ROM Error Correction System A |
| US | Q.046003 | 07618103 | 24-Feb-87 | | | 31-Jul-89 | 4882169 | 24-Feb-07 | Real-time format switching |

All corresponding patent applications, patents, divisions, continuations and retrieve based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date: 21 July 2003

P 001345

Annex A5 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM XA Sub-mode 2 (Mode 2 Form 2) part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | Q 083025 | 84-A3769 | 21-Aug-84 | | 28-Dec-87 | 403223 | 15-Apr-15 | Framing of data-blocks on CD-ROM |
| AT | S84P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | 52848 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| AU | Q 083025 | 84-32584 | 31-Aug-84 | | 25-Mar-91 | 603781 | 31-Aug-04 | Framing of data-blocks on CD-ROM |
| BR | Q 083025 | PI8404319.8 | 29-Aug-84 | | 17-Jul-02 | PI8404319.8 | 29-Aug-04 | Framing of data-blocks on CD-ROM |
| BR | Q 086003 | PI8700646.7 | 25-Feb-87 | | 30-May-95 | PI8700646 | 23-Feb-07 | Framing of data-blocks on CD-ROM |
| CA | Q 086003 | 530120 | 19-Feb-87 | | 12-Feb-91 | 1290208 | 12-Feb-08 | Real-time format switching |
| CA | S84P0216 | 459869 | 27-Jun-84 | | 25-Apr-89 | 1235812 | 25-Apr-05 | Real-time format switching |
| CN | Q 086003 | 87100929.3 | 21-Feb-87 | 87100929-A | 13-Jun-91 | 1010817 | 21-Feb-07 | Disc recording medium |
| DE | Q 083025 | P3431610.0 | 30-Aug-84 | 3431610 | 14-Jun-85 | 3431610 | 30-Aug-04 | Framing of data-blocks on CD-ROM |
| DE | Q 086003 | P3701783.2 | 22-Jan-87 | 3701783 | 22-May-97 | 3701783 | 22-Jan-07 | Real-time format switching |
| DE | S84P0115 | 84901011.1 | 02-Mar-84 | | 18-May-90 | P34E2291.7 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| DE | S84P0216 | 14325178.4 | 30-Jul-84 | | 18-Jan-84 | P34782892 | 30-Jul-04 | Disc recording medium |
| FR | Q 086003 | 1702234 | 20-Feb-87 | | 22-Jun-98 | 2594896 | 20-Feb-07 | Real-time format switching |
| FR | S84P0115 | 84901811.1 | 02-Mar-84 | | 16-May-90 | 137835 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| FR | S84P0216 | 84305178.4 | 30-Jul-84 | | 18-Jan-84 | 133790 | 30-Jul-04 | Disc recording medium |
| GB | Q 083025 | 8421705 | 28-Aug-84 | | 03-Feb-88 | 2145835 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| GB | Q 086003 | 8704011 | 20-Feb-87 | | 09-Dec-89 | 2187009 | 20-Feb-07 | Real-time format switching |
| GB | S84P0115 | 84901011.1 | 02-Mar-84 | | 16-May-90 | 137835 | 02-Mar-04 | Method and apparatus for recording digitized infor |
| GB | S84P0216 | 84305178.4 | 30-Jul-84 | | 18-Jan-84 | 133790 | 30-Jul-04 | Disc recording medium |
| HK | Q 083025 | NOT GIVEN | 28-Aug-84 | | 13-Feb-03 | 0950121 | 28-Aug-04 | Framing of data-blocks on CD-ROM |
| IT | Q 086003 | 87-A19847 | 20-Feb-87 | | 04-Feb-90 | 1215362 | 20-Feb-07 | Real-time format switching |
| JP | Q 083025 A | 13-759483 | 01-Sep-83 | 84-109847 | 29-Jun-87 | 2600585 | 01-Sep-03 | Framing of data-blocks on CD-ROM |
| JP | Q 086003 | 07-33987 | 23-Feb-87 | 87-217468 | 19-Dec-97 | 2730624 | 23-Feb-07 | Framing of data-blocks on CD-ROM |
| KR | Q 086003 | 87-1501 | 23-Feb-87 | 95-7846 | 35-Oct-95 | 91817 | 23-Feb-07 | Real-time format switching |
| NL | Q 086003 | 8600450 | 24-Feb-86 | 8500450 | 04-Feb-87 | 182151 | 24-Feb-06 | Real-time format switching |

*All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list*

Page 1 of 2

Version date : 21 July 2003

Essential Philips and Sony patents relevant to CD-Disc / CD-ROM XA Sub-mode 2 (Mode 2 Form 2) part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---------|-----------|-----------|-------------|----------------|------------|----------|-------------|-------|
| NL | 88APO211 | 8403.9178.4 | 30-Jul-84 | | 18-Jan-84 | 133780 | 30-Jul-04 | Disc recordive medium |
| SE | Q.066003 | 8700711-8 | 20-Feb-87 | | 09-Jan-92 | 435442 | 20-Feb-07 | Real-time format switching |
| SK | Q.083025 | 84-PV6407 | 05-Sep-84 | | 09-Jun-92 | 271585 | 03-Sep-04 | Framing of data-blocks on CD-ROM |
| TW | Q.066003 | 78100918 | 25-Feb-87 | | 28-Mar-88 | 27918 | 25-Feb-07 | Real-time format switching |
| US | Q.066003 | 07/018183 | 24-Feb-87 | | 31-Jan-89 | 4802198 | 24-Feb-07 | Real-time format switching |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 21 July 2003

P 001347

Annex A6 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | S4SP0059 | 83900170.3 | 30-Nov-84 | 165320 | | E76996 | 30-Nov-04 | Disc recording medium |
| AU | N013561 | 92-13942 | 31-Mar-92 | 92-13942  651991 | 11-Feb-96 | 661991 | 31-Mar-12 | Recording of content information in Lead-Out |
| AU | S4SP0059 | 37412/85 | 30-Nov-84 | 37412/85 | 07-Sep-89 | 587863 | 30-Nov-04 | Disc recording medium |
| AU | S4SP0005 | 2258/00 | 24-Mar-00 | | 01-Jun-00 | 721279 | 23-Jun-16 | Multi-session disc having disc type code area loca |
| CA | N013561 | 2064511 | 31-Mar-92 | | 01-Jan-02 | 2064511 | 31-Mar-12 | Recording of content information in Lead-Out |
| CH | S4SP0059 | 83900170.3 | 30-Nov-84 | 165320 | 03-Jun-92 | 165320 | 30-Nov-04 | Disc recording medium |
| CN | S9SP0005 | 96104382 | 30-Jan-96 | CN1137875A | | | | Multi-session disc having disc type code area loca |
| CZ | N013685 | 92-PV970 | 01-Apr-92 | | | | | Multi-session disc having disc type code area loca |
| DE | N013561 | 92200693.3 | 30-Mar-92 | 0507397-A3 | 23-Jul-00 | 287132 | 01-Apr-07 | CD-ROM XA Multi-session WO |
| DE | N013561 | 92200693.3 | 30-Mar-92 | 0507397-A3 | 01-Jul-96 | 69226031.5 | 30-Mar-12 | Recording of content information in Lead-Out |
| DE | S4SP0059 | 82200909.7 | 30-Mar-82 | 0507403-A3 | 06-Jul-94 | 69226118.8 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| DE | S4SP0059 | 83900170.3 | 30-Nov-84 | 165320 | 03-Jun-92 | P3485761.3 | 30-Nov-04 | Disc recording medium |
| ES | N013561 | 92101096.7 | 25-Jan-96 | 724133 | | | | Multi-session disc having disc type code area loca |
| ES | N013561 | 92200693.3 | 30-Mar-92 | 0507397-A3 | 01-Jul-93 | 2116764 | 30-Mar-12 | Recording of content information in Lead-Out |
| ES | N013685 | 92200909.7 | 30-Mar-92 | 0307403-A3 | 09-Jul-98 | 0507403 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| FR | N013561 | 39-Mar-98 | 30-Mar-98 | 0597397-A3 | 01-Jul-98 | 0507397 | 30-Mar-12 | Recording of content information in Lead-Out |
| FR | N013685 | 82200909.7 | 30-Mar-82 | 0507403-A3 | 08-Jul-94 | 0507403 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| FR | S4SP0059 | 83900170.3 | 30-Nov-84 | 165320 | 03-Jun-92 | 165320 | 30-Nov-04 | Disc recording medium |
| FR | S9SP0005 | 94101096.7 | 25-Jan-96 | 724133 | | | | Multi-session disc having disc type code area loca |
| GB | N013561 | 92200693.3 | 30-Mar-92 | 0507397-A3 | 01-Jul-98 | 0507397 | 30-Mar-12 | Recording of content information in Lead-Out |
| GB | N013685 | 82200909.7 | 30-Mar-82 | 0507403-A3 | 08-Jul-98 | 0507403 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| GB | S4SP0059 | 83900170.5 | 30-Nov-84 | 165320 | 03-Jun-92 | 165320 | 30-Nov-04 | Disc recording medium |
| HK | S9SP0005 | 94101096.7 | 25-Jan-96 | 724133 | | | | Multi-session disc having disc type code area loca |
| HU | N013685 | P9201055 | 30-Mar-92 | | 25-May-95 | 0515/1995 | | Disc recording medium |
| HU | N013685 | P-960210 | 30-Jan-96 | 012.485A | 30-Apr-98 | 216680 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| ID | S4P0005 | | 30-Jan-96 | | 28-Dec-99 | ID0004712 | 30-Jun-16 | Multi-session disc having disc type code area loca |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Page 1 of 3

*Version date: 24 November 2003*

P 001348

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| IN | S96P0005 | 01180EL/96 | 29-Jan-96 | | | | | Multi-session disc having disc type code area loca |
| IT | N 013661 | 92203813.3 | 30-Mar-92 | 0507397-A3 | 01-Jul-98 | 0507397 | 30-Mar-12 | Recording of content information in Lead-Out |
| IT | N 013685 | 92200909.7 | 30-Mar-92 | 0507403-A3 | 06-Jul-98 | 0507403 | 30-Mar-12 | CD-ROM XA Multi-session WO |
| IT | S96P0005 | 95101066.7 | 25-Jan-96 | 724263 | | | | Multi-session disc having disc type code area loca |
| JP | 84000899 | 58326394 | 30-Nov-83 | 60-119670 | 21-Dec-96 | 2123759 | 30-Nov-03 | Disc recording medium |
| JP | 84011554 | 59-087595 | 24-Mar-84 | 60-201575 | 23-Aug-96 | 2049842 | 24-Mar-84 | Marked and apparatus for transmitting digital data |
| JP | 95060963 | 07311437 | 29-Nov-95 | 08-227577 | | | | Recording medium having a first management area |
| JP | N 013661 | 8241010 | 02-Apr-92 | 83-89896 | 06-Apr-02 | 3293851 | 02-Apr-12 | Recording of content information in Lead-Out |
| JP | N 013685 | 9279901 | 01-Apr-92 | 83-94675 | 18-Mar-02 | 3358211 | 01-Apr-12 | CD-ROM XA Multi-session WO |
| JP | N 013685 A | 02-201276 | 01-Apr-92 | | | | 01-Apr-12 | CD-ROM XA Multi-session WO |
| JP | N 013685 B | 03-318344 | 01-Apr-92 | | | | 01-Apr-12 | CD-ROM XA Multi-session WO |
| JP | S96P0005 | 07013211 | 30-Jan-95 | 08-203210 | | | | Multi-session disc having disc type code area loca |
| KR | N 013661 | 92-5313 | 31-Mar-92 | 93-20420 | 22-Feb-00 | 256385 | 31-Mar-12 | Recording of content information in Lead-Out |
| KR | N 013685 | 92-5314 | 31-Mar-92 | 92-20418 | 09-Nov-99 | 242218 | 31-Mar-12 | CD-ROM XA Multi-session WO |
| KR | S45P0059 | 85-700146 | 29-Jul-85 | 85-00175 | 30-Apr-93 | 85120 | 30-Nov-04 | Disc recording medium |
| KR | S45P0059 | 92-702858 | 30-Oct-92 | | 21-May-95 | 81733 | 30-Nov-04 | Disc recording medium |
| KR | S96P0005 | 16-02852 | 30-Jan-96 | 96-30119 | | | | Multi-session disc having disc type code area loca |
| MY | S96P0005 | PI9800317 | 29-Jan-96 | | | | | Multi-session disc having disc type code area loca |
| NL | S45P0059 | 83900170.3 | 30-Nov-84 | 186320 | 03-Jun-92 | 186320 | 30-Nov-04 | Disc recording medium |
| NL | S96P0005 | 84101066.7 | 25-Jan-96 | 724263 | | | | Multi-session disc having disc type code area loca |
| RU | N 013661 | 5011395 | 01-Apr-92 | | 27-Jun-97 | 2072566 | 01-Apr-12 | Recording of content information in Lead-Out |
| SE | S45P0059 | 843900170.3 | 30-Nov-84 | | 03-Jun-92 | 186320 | 30-Nov-04 | Disc recording medium |
| SG | S96P0005 | 9600515 | 27-Jan-96 | | 23-May-00 | 53669 | 27-Jan-16 | Multi-session disc having disc type code area loca |
| SK | N 013645 | 92-PV0870 | 01-Apr-92 | | 03-Oct-01 | 282233 | 01-Apr-16 | CD-ROM XA Multi-session WO |
| TW | N 013661 | 80105996 | 18-Dec-91 | UNKNOWN 57337 | 04-Nov-92 | 57337 | 18-Dec-11 | Recording of content information in Lead-Out |
| TW | N 013685 | 80108063 | 19-Dec-91 | 58387 | 02-Mar-91 | 58387 | 18-Dec-11 | CD-ROM XA Multi-session WO |
| UA | N 013661 | 93002573 | 18-Nov-93 | | | | 18-Nov-13 | Recording of content information in Lead-Out |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Page 2 of 3    Version dated : 24 November 2003

P 001349

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra part

| COUNTRY | REFERENCE | | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|---|
| US | N 013561 | V | .07/900874 | 18-Jun-92 | | 23-Aug-94 | 5341358 | 07-Jan-12 | Recording of content information in Lead-Out |
| US | N 013445 | A | 08/180002 | 11-Jan-94 | | 14-Feb-95 | 5390158 | 14-Feb-12 | CD-ROM XA Multi-session WO |
| US | N 013535 | B | 08/233507 | 24-Oct-94 | | 02-Mar-99 | 5878019 | 02-Mar-18 | CD-ROM XA Multi-session WO |
| US | N 013535 | V | 08/371644 | 12-Jan-85 | | 04-Nov-97 | 5684784 | 04-Nov-14 | CD-ROM XA Multi-session WO |
| US | N 013709 | D | 08/707845 | 05-Sep-96 | | 01-Dec-98 | 5844887 | 01-Dec-15 | Decoder delay in coded video frames |
| US | S&SP0059 | - | 295207 | 27-Oct-88 | - | 09-Jan-90 | 4893183 | 09-Jan-07 | Disc recording medium |
| US | S&SP0005 | - | 592982 | 29-Jan-96 | - | 07-Jul-98 | 5777257 | 29-Jan-16 | Multi-session disc having disc type code area loca |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 24 November 2003·

**Annex A7 to the CD Disc Patent License Agreement**

Essential Philips and Sony patents relevant to CD-Disc / CD-Text part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AR | N015474 | P980104337 | 13-Sep-96 | | 30-Aug-00 | AR005372 | 13-Sep-16 | Transferring information via the lead-in of CD |
| AT | 95069128 | 95115095.1 | 10-May-95 | 731925 | 14-Nov-01 | E206948 | 10-Sep-15 | Reproducing medium having text information records |
| AT | D 068009 | 89200061.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | E142391 | 16-Jan-09 | Repeated transfer of subcode data |
| AT | N015474 | 96987834.0 | 09-Sep-96 | 0782504-A1 | 13-Jun-01 | E202234 | 09-Sep-16 | Transferring information via the lead-in of CD |
| AU | 95069128 | 45613/96 | 13-Sep-96 | | 28-Apr-00 | 714409 | 13-Sep-16 | Reproducing medium having text information records |
| AU | D 068009 | 83-28557 | 16-Jun-89 | 639411 | 06-Dec-93 | 639411 | 16-Jun-09 | Repeated transfer of subcode data |
| BE | N015474 | 96987834.0 | 09-Sep-96 | 0782504-A1 | 13-Jun-01 | 0782504 | 09-Sep-16 | Reproducing medium having text information records |
| BR | 95069128 | 9603629 | 20-Sep-95 | | | | 22-Sep-16 | Reproducing medium having text information records |
| CA | D 068009 | 588304 | 16-Jan-89 | | 28-Sep-93 | 1322593 | 28-Sep-10 | Repeated transfer of subcode data |
| CN | D 068009 | 89200041.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | 0218325 | 16-Jan-09 | Repeated transfer of subcode data |
| CN | 95069128 | 96121105 | 22-Nov-96 | 1153981 | | | 22-Sep-16 | Reproducing medium having text information records |
| CN | D 068009 | 96121626 | 02-Nov-96 | 1154481 | | | 02-Nov-16 | Recording medium and its reproducing apparatus |
| CN | D 068009 | 89101009.8 | 16-Jan-89 | 1035377-A | 18-Oct-93 | 1022265 | 16-Jan-06 | Repeated transfer of subcode data |
| CN | D 089096 | 82102717.8 | 16-Jun-89 | 1089873-A | 81-Jun-94 | 1025701 | 16-Jun-09 | Repeated transfer of subcode data |
| C2 | D 089096 | E3-PY787 | 16-Jun-89 | | 21-Dec-96 | 284768 | 16-Jun-09 | Repeated transfer of subcode data |
| DE | 95087039 | 94119737.1 | 03-Dec-94 | 783187 | 11-Apr-01 | P68412472.8 | 03-Dec-15 | Disc Reproducing apparatus |
| DE | 95069128 | 95115095.1 | 10-May-95 | 731925 | 14-Nov-01 | P69519877.0 | 10-Sep-15 | Reproducing medium having text information records |
| DE | 9605444 | 96117236.5 | 31-Oct-94 | 772196 | | | 31-Oct-16 | Recording medium and its reproducing apparatus |
| DE | D 068009 | 68200041.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | 68927063.1 | 16-Jan-09 | Repeated transfer of subcode data |
| ES | N015474 | 96987834.0 | 09-Sep-96 | 0782504-A1 | 13-Jun-01 | 69615338.3 | 09-Sep-16 | Transferring information via the lead-in of CD |
| FR | 8363039 | 96119371.1 | 03-Dec-96 | 783187 | 13-Jun-01 | 0782504 | 03-Dec-16 | Transferring information via the lead-in of CD |
| FR | 95069128 | 95115095.1 | 10-May-95 | 731925 | 14-Nov-01 | 783187 | 03-Dec-16 | Disc Reproducing apparatus |
| FR | 8605444 | 96117236.5 | 31-Oct-96 | 772196 | | 731925 | 10-Sep-15 | Reproducing medium having text information records |
| FR | D 068009 | 68200061.1 | 16-Jan-89 | 0325325-A3 | 04-Sep-96 | 0325325 | 16-Jan-09 | Repeated transfer of subcode data |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be contained as an integral part of this list.

Version date : 17 July 2003

Essential Philips and Sony patents relevant to CD-Disc / CD-Text part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| FR | N 015474 - | 95927834.0 | 09-Sep-95 | 07R2504-A1 | 13-Jun-01 | 0782504 | 09-Sep-15 | Transferring information via the lead-in of CD |
| GB | 95063039 - | 9511311.1 | 03-Dec-96 | 783187 | 11-Apr-01 | 783187 | 03-Dec-16 | Disc Reproducing apparatus |
| GB | 95089125 - | 9811565.1 | 19-May-98 | 781925 | 14-Nov-01 | 781925 | 19-Sep-18 | Reproducing medium having text information records |
| GB | 95085448 - | 9411753.5 | 31-Oct-94 | 772118 | - | - | 31-Oct-15 | Recording medium and its reproducing apparatus |
| GB | D 08009 - | 19200081.1 | 16-Jan-49 | 0325325-A3 | 04-Sep-96 | 0325325 | 16-Jan-09 | Repeated transfer of subcode data |
| GB | N 015474 - | 95927834.0 | 09-Sep-95 | 07R2504-A1 | 13-Jun-01 | 0782504 | 09-Sep-15 | Transferring information via the lead-in of CD |
| HK | D 08009 - | 99106421.9 | 16-Jan-88 | - | 01-Apr-99 | HK1001228 | 16-Jun-09 | Repeated transfer of subcode data |
| HU | 95085448 | 9603037 | 01-Nov-94 | - | - | - | 01-Nov-16 | Recording medium and its reproducing apparatus |
| ID | 95063039 | P963566 | 02-Dec-96 | - | 03-Nov-00 | 655 | 02-Dec-16 | Disc Reproducing apparatus |
| ID | 95089128 - | P962547 | 19-Sep-96 | - | - | 7229 | 19-Nov-16 | Reproducing medium having text information records |
| ID | 95085448 | P963188 | 04-Nov-95 | - | 07-Jun-00 | 5137 | 04-Nov-15 | Recording medium and its reproducing apparatus |
| ID | N 015474 - | P-962504 | 12-Sep-95 | 014759-A | 12-Jul-42 | ID0008395 | 12-Sep-15 | Transferring information via the lead-in of CD |
| IN | 95089128 - | 2023/DEL/96 | 16-Sep-98 | - | - | - | 16-Sep-11 | Reproducing medium having text information records |
| IN | N 015474 - | 94-1817 | 11-Sep-95 | - | - | - | 11-Sep-10 | Transferring information via the lead-in of CD |
| IN | N 015474 A | 03-265 | 11-Sep-95 | - | - | - | 11-Sep-10 | Transferring information via the lead-in of CD |
| IN | N 015474 B | 03-296 | 11-Sep-95 | - | - | - | 11-Sep-10 | Transferring information via the lead-in of CD |
| IN | N 015474 C | 03-267 | 11-Sep-95 | - | - | - | 11-Sep-10 | Transferring information via the lead-in of CD |
| IT | D 08009 - | 19200081.1 | 16-Jan-49 | 0325325-A3 | 04-Sep-96 | 0325325 | 16-Jun-09 | Repeated transfer of subcode data |
| IT | N 015474 - | 95927834.0 | 09-Sep-95 | 07R2504-A1 | 13-Jun-01 | 0782504 | 09-Sep-15 | Transferring information via the lead-in of CD |
| JP | 85083039 | 07-518056 | 07-Dec-96 | 09-181375 | - | - | 07-Dec-15 | Disc Reproducing apparatus |
| JP | 85089128 - | 07-244959 | 22-Sep-95 | 09-091180 | - | - | 22-Sep-15 | Disc Reproducing apparatus |
| JP | 88085448 - | 07-310060 | 02-Nov-95 | 09-123966 | - | - | 02-Nov-15 | Reproducing medium having text information records |
| JP | 95100944 - | 08-243059 | 26-Aug-96 | 10-44245 | - | - | 26-Aug-16 | Repeated transfer of subcode data |
| JP | D 08009 - | 18-8738 | 19-Jan-89 | 805178 | - | - | 19-Jan-09 | Repeated transfer of subcode data |
| JP | N 015474 - | 57-511792 | 09-Sep-95 | 08-509270 | 28-Jul-00 | 3062324 | 19-Jun-09 | Transferring information via the lead-in of CD |
| KR | 9503039 | 96-52882 | 07-Dec-96 | 97-60595 | - | - | 09-Sep-18 | Disc Reproducing apparatus |
| KR | 85089128 - | 96-43390 | 23-Sep-96 | 97-17230 | - | - | 23-Sep-18 | Reproducing medium having text information records |

*All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list*

Version date : 17 July 2003

P 001352

Essential Philips and Sony patents relevant to CD-Disc / CD-Text part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| KR | 9585448 | 94-51844 | 02-Nov-96 | 98-29708 | | | 02-Nov-16 | Recording medium and its reproducing apparatus |
| KR | D 068009 | 69-917 | 19-Jun-59 | | 16-Feb-94 | 138112 | 18-Feb-19 | Repeated transfer of subcode data |
| KR | N 015474 | 3/7703243 | 03-Sep-96 | | | | 09-Sep-16 | Transferring information via the lead-in of CD |
| MX | 9506912 | 984179 | 19-Sep-95 | | 19-Apr-00 | 195099 | 19-Sep-16 | Recording medium and its reproducing apparatus |
| MX | N 015474 | 973550 | 05-Sep-96 | | | | 19-Sep-16 | Transferring information via the lead-in of CD |
| MY | 9503039 | 9603149 | 07-Dec-95 | | | | | Disc Reproducing apparatus |
| MY | 8509120 | 9603484 | 20-Sep-96 | | | | | Reproducing medium having text information records |
| MY | N 015474 | P19003785 | 13-Sep-96 | | | | | Transferring information via the lead-in of CD |
| NL | 9509120 | 95135985.1 | 19-May-95 | 781925 | 14-Nov-01 | 0781925 | 19-Sep-16 | Reproducing medium having text information records |
| PH | 9509120 | 54335 | 19-Sep-95 | 54335 | | | | Reproducing medium having text information records |
| PT | N 015474 | 96827834.0 | 05-Sep-96 | 0782504-A1 | 13-Jun-01 | 0782604 | 09-Sep-16 | Transferring information via the lead-in of CD |
| RU | D 068009 | 4613351 | 17-Jun-89 | | 10-Nov-97 | 2065457 | 17-Jun-09 | Repeated transfer of subcode data |
| SE | D 068009 | 89200081.1 | 19-Jun-89 | 0325325-A3 | 04-Sep-96 | 0325325 | 19-Jun-09 | Repeated transfer of subcode data |
| SG | N 015474 | 9704896.5 | 09-Sep-96 | | 16-Nov-99 | 43680 | 09-Sep-16 | Transferring information via the lead-in of CD |
| SK | D 064009 | 89-PV0287 | 16-Jun-89 | | 14-Mar-00 | 280686 | 16-Jun-09 | Repeated transfer of subcode data |
| TW | 8880950 | 8611977 | 21-Sep-96 | | 19-Sep-98 | 94512 | 20-Sep-16 | Reproducing medium having text information records |
| TW | D 068009 | 78100300 | 17-Jan-89 | | 03-Sep-91 | 47183 | 17-Jan-09 | Repeated transfer of subcode data |
| TW | N 015474 | 85114282 | 19-Nov-96 | 410326 | 13-Mar-01 | 122112 | 18-Nov-16 | Transferring information via the lead-in of CD |
| UA | D 068009 | 93003372 | 17-Jan-89 | | 28-Feb-00 | 28880 | 17-Jan-09 | Repeated transfer of subcode data |
| US | 9503039 | 753073 | 27-Nov-96 | | 30-Jul-01 | RE37708 | 27-Nov-16 | Disc Reproducing apparatus |
| US | 8509120 | 718553 | 20-Sep-96 | | 28-Apr-98 | 5744454 | 20-Sep-16 | Reproducing medium having text information records |
| US | 9595444 | 738421 | 30-Oct-96 | | 12-Jan-99 | 5859821 | 30-Oct-16 | Recording medium and its reproducing apparatus |
| US | D 068009 | 08/306002 | 05-Apr-93 | | 24-Dec-96 | 5587979 | 17-Jun-09 | Repeated transfer of subcode data |
| US | N 015474 | 08/718588 | 18-Sep-96 | | 25-Aug-98 | 5798990 | 16-Sep-16 | Transferring information via the lead-in of CD |
| VN | 8509120 | SCC2160/96 | 21-Sep-96 | | 21-Aug-90 | 1443 | 21-Sep-16 | Recording medium and its reproducing apparatus |
| VN | 9595448 | SCO323/96 | 02-Nov-96 | | 12-Oct-01 | 2300 | 02-Nov-16 | Reproducing medium having text information records |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Page 3 of 3

Version date: 17 July 2003

P 001353

Annex A8 to the CD Disc Patent License Agreement

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra Video part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| AT | D.046327 | 87291717.3 | 10-Sep-87 | 0260748-A3 | 13-Jul-94 | E108487 | 10-Sep-07 | Coefficient encoder in transform encoding |
| AT | N.013409 | 91291373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | E157801 | 03-Jun-11 | Sector and word offset in video block header |
| AT | N.013709 | 91291337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | E157830 | 03-Jun-11 | Decoder delay in coded video frames |
| AU | N.013237 | 81-71219 | 20-Feb-81 | 81-71219      641725 | 25-Jun-84 | 641728 | 20-Feb-11 | Image data block with hierarchical encoding level |
| BE | S90PO340 | 6335294 | 28-May-94 | 6356294 | | 685903 | 12-Oct-10 | Video signal transmitting system |
| BE | N.013409 | 91291373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| BE | N.013709 | 91291337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460751 | 03-Jun-11 | Decoder delay in coded video frames |
| CA | N.013237 | 2005585 | 19-Feb-91 | | 16-Jan-01 | 2005585 | 19-Feb-11 | Image data block with hierarchical encoding level |
| CA | N.013409  A | 2333403 | 31-May-91 | | 18-Mar-02 | 2333403 | 31-May-11 | Sector and word offset in video block header |
| CA | S90PO340 | 2027859 | 16-Oct-90 | | | 2027859 | 16-Oct-10 | Video signal transmitting system |
| CN | D.046327 | 87106440.0 | 12-Sep-87 | 87106440-A | 23-May-91 | 1011460 | 12-Sep-07 | Coefficient encoder in transform encoding |
| DE | D.046327 | 87291717.3 | 10-Sep-87 | 0260748-A3 | 13-Jul-94 | 3780226.9 | 10-Sep-07 | Coefficient encoder in transform encoding |
| DE | N.013257 | 91200329.0 | 18-Feb-91 | 0443678-A1 | 03-May-95 | 69109346.8 | 18-Feb-11 | Image data block with hierarchical encoding level |
| DE | N.013409 | 91291373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 69127580.8 | 03-Jun-11 | Sector and word offset in video block header |
| DE | N.013709 | 91291337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 69127304.1 | 03-Jun-11 | Decoder delay in coded video frames |
| DE | S90PO340 | 50311145.8 | 11-Oct-90 | 424678-A3 | | P69031107.3 | 11-Oct-10 | Video signal transmitting system |
| DE | S90PO340 | 94101178/ | 29-Jan-98 | 713340-A3 | | P69031782.5 | 11-Oct-10 | Video signal transmitting system |
| DE | S91P0376 | 91304652.3 | 03-May-91 | 456433-A3 | | P6912724.7 | 03-May-11 | Methods of recording coded motion picture data |
| DE | S31P0376 | 96107156 | 07-May-96 | 730570-A3 | | P69132763 | 03-May-11 | Methods of recording coded motion picture data |
| DK | N.013257 | 91200329.0 | 18-Feb-91 | 0443678-A1 | 03-May-95 | 0443678 | 18-Feb-11 | Image data block with hierarchical encoding level |
| DK | N.013409 | 91291373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| DK | N.013709 | 91291337.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460751 | 03-Jun-11 | Decoder delay in coded video frames |
| ES | N.013409 | 91291373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| FI | N.013257 | 910791 | 18-Feb-91 | | 15-Jun-98 | 101442 | 03-Jun-11 | Image data block with hierarchical encoding level |
| FR | D.046327 | 87291717.3 | 10-Sep-87 | 0260748-A3 | 13-Jul-94 | 0260748 | 10-Sep-07 | Coefficient encoder in transform encoding |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 17 July 2003

P 001354

## Essential Philips and Sony patents relevant to CD-Disc / CD-Extra Video part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| FR | D 067091 | 88200818.8 | 27-Apr-88 | 0290085-A2 | 20-Mar-96 | 0290085 | 27-Apr-08 | Motion estimation on superblocks |
| FR | N 013257 | 91200329.0 | 18-Feb-91 | 0443678-A1 | 03-May-95 | 0443678 | 18-Feb-11 | Image data block with hierarchical encoding level |
| FR | N 013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| FR | N 013709 | 91201317.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460751 | 03-Jun-11 | Decoder delay in coded video frames |
| FR | S90P0340 | 90311145.8 | 11-Oct-90 | 424028-A3 | | 424028 | 11-Oct-10 | Video signal transmitting system |
| FR | S90P0340 | 96101178 | 23-Jan-96 | 713340-A3 | | 713340 | 11-Oct-10 | Video signal transmitting system |
| FR | S91P0276 | 91304052.3 | 03-May-91 | 456433-A3 | | 456433 | 03-May-11 | Methods of recording coded motion picture data |
| FR | S91P0276 | 96107156 | 07-May-96 | 730376-A3 | | 730376 | 03-May-11 | Methods of recording coded motion picture data |
| GB | D 067091 | 88200818.8 | 27-Apr-88 | 0290085-A2 | 13-Jul-94 | 0260748 | 27-Apr-08 | Coefficient encoder in transform encoding |
| GB | N 013257 | 91200329.0 | 18-Feb-91 | 0443678-A1 | 20-Mar-96 | 0290085 | 18-Feb-11 | Motion estimation in superblocks |
| GB | N 013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-May-95 | 0443678 | 03-Jun-11 | Image data block with hierarchical encoding level |
| GB | N 013709 | 91201317.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| GB | S90P0340 | 90311145.8 | 11-Oct-90 | 424028-A3 | 03-Sep-97 | 0460751 | 11-Oct-10 | Decoder delay in coded video frames |
| GB | S90P0340 | 91101178 | 23-Jan-96 | 713340-A3 | | 424028 | 11-Oct-10 | Video signal transmitting system |
| GB | S91P0276 | 91304052.3 | 03-May-91 | 456433-A3 | | 713340 | 11-Oct-10 | Video signal transmitting system |
| GB | S91P0276 | 96107156 | 07-May-96 | 730376-A3 | | 456433 | 03-May-11 | Methods of recording coded motion picture data |
| GB | S82P0378 | 9601250.9 | 24-Apr-96 | 228194 | | 730376 | 03-May-11 | Methods of recording coded motion picture data |
| GB | S82P0378 | 8508350.7 | 24-Apr-96 | 228195 | | 228194 | 06-Mar-06 | Multiple data separating |
| HK | N 013257 | NOT GIVEN | 18-Feb-96 | | | 0960615 | 18-Feb-11 | Image data block with hierarchical encoding level |
| HK | S91P0276 | 94116978 | 08-Feb-00 | 1014415 | 11-Apr-96 | HK1014415 | 03-May-11 | Methods of recording coded motion picture data |
| HK | S91P0276 | 100711.8 | 08-Feb-00 | 1022032 | | HK1022032 | 03-May-11 | Methods of recording coded motion picture data |
| IT | D 066327 | 87201717.3 | 10-Sep-87 | 0260748-A3 | 13-Jul-94 | 0260744 | 16-Sep-07 | Coefficient encoder in transform encoding |
| IT | N 013257 | 91200329.0 | 18-Feb-91 | 0443678-A1 | 03-May-95 | 0443678 | 18-Feb-11 | Image data block with hierarchical encoding level |
| IT | N 013409 | 91201373.7 | 03-Jun-91 | 0460764-A1 | 03-Sep-97 | 0460764 | 03-Jun-11 | Sector and word offset in video block header |
| IT | N 013709 | 91201317.2 | 03-Jun-91 | 0460751-A3 | 03-Sep-97 | 0460751 | 03-Jun-11 | Decoder delay in coded video frames |
| JP | D 066327 | 87-230864 | 14-Sep-87 | 68-132530 | 31-Oct-97 | 2711665 | 14-Sep-07 | Coefficient encoder in transform encoding |

*All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list.*

*Version date: 17 July 2003*

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra Video part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---|---|---|---|---|---|---|---|---|
| JP | D 067091 - | 85-109222 | 06-May-83 | 84-287166 | 21-Apr-87 | 2830626 | 04-May-08 | Motion estimation on superblocks |
| JP | N 013257 - | 91-47659 | 20-Feb-91 | 92-216238 | 30-Mar-01 | 3174566 | 20-Feb-11 | Image data block with hierarchical encoding level |
| JP | N 013257 A | 00-344804 | 13-Nov-00 | 01-186477 | | | 20-Feb-11 | Image data block with hierarchical annealing level |
| JP | N 013409 A | 01-151175 | 21-May-01 | 02-077794 | 24-Jan-03 | 3382134 | 04-Jun-11 | Sector and word offset in video block header |
| JP | N 013409 B | 00-387556 | 20-Dec-01 | 02-282242 | 24-Jan-03 | 3382842 | 04-Jun-11 | Sector and word offset in video block header |
| JP | N 013709 A | 00-393062 | 26-Dec-00 | 01-223048 | | | 04-Jun-11 | Decoder delay in coded video frames |
| JP | SSOPO340 - | 01-267044 | 14-Oct-89 | 03-129645 | | | 14-Oct-09 | Decoder delay in coded video frames |
| JP | S91P0278 - | 02-118904 | 09-May-90 | 04-014674 | | | 09-May-10 | Encoding method and apparatus for video signals |
| JP | S91P0278 - | 07-352315 | 09-May-90 | 08-265383 | | | 09-May-10 | Editing method and app. for coded video signals |
| JP | S91P0278 - | 07-352316 | 09-May-00 | 08-265384 | | | 09-May-10 | Coding method for video signals |
| KR | D 064327 - | 87-10122 | 12-Sep-87 | 97-4575 | 23-Jul-47 | 118696 | 09-May-10 | Decoding method and decoder for coded video signal |
| KR | H 013409 - | 91-6162 | 03-Jun-91 | | 82-Dec-98 | 0248982 | 17-Apr-12 | Coefficient encoder in transform encoding |
| KR | N 013709 - | 91-9187 | 04-Jun-91 | 92-1479 | 23-Oct-99 | 239837 | 03-Jun-11 | Sector and word offset in video block header |
| KR | S91P0278 - | 91-97406 | 09-May-91 | | | 221169 | 04-Jun-11 | Decoder delay in coded video frames |
| NL | D 064327 - | 872011717.3 | 10-Sep-87 | 0260743-A3 | 13-Jul-64 | 6260744 | 09-May-11 | Methods of recovering coded motion picture data |
| NL | N 013257 - | 912002020.0 | 18-Feb-91 | 0443675-A1 | 03-May-91 | 0443678 | 10-Sep-07 | Coefficient encoder in transform encoding |
| NL | N 013709 - | 912013237.2 | 03-Jun-91 | 0480781-A3 | 03-Sep-97 | 0480781 | 18-Feb-11 | Image data block with hierarchical annealing level |
| SE | D 064327 - | 872011717.3 | 10-Sep-87 | 0260743-A3 | 13-Jul-94 | 0260744 | 03-Jun-11 | Decoder delay in coded video frames |
| SE | N 013237 - | 912002020.0 | 18-Feb-91 | 0443675-A1 | 03-May-91 | 0443678 | 10-Sep-07 | Coefficient encoder in transform encoding |
| SE | N 013409 - | 912013737.7 | 03-Jun-91 | 0480784-A1 | 03-Sep-97 | 0480784 | 18-Feb-11 | Image data block with hierarchical annealing level |
| SE | N 013709 - | 912013237.2 | 03-Jun-91 | 0480781-A3 | 03-Sep-97 | 0480751 | 03-Jun-11 | Sector and word offset in video block header |
| SG | N 013257 - | 9690467.7 | 16-Feb-91 | | 28-May-96 | 30173 | 18-Feb-11 | Image data block with hierarchical annealing level |
| TW | D 064327 - | 76106691 | 23-Sep-87 | | 28-Mar-99 | 33580 | 23-Sep-07 | Coefficient encoder in transform encoding |
| US | D 064327 - | 07/096177 | 11-Sep-87 | | 13-Feb-90 | 4901075 | 11-Sep-07 | Coefficient encoder in transform encoding |
| US | N 013257 C | 08/047149 | 04-May-48 | | 15-Dec-87 | 5699476 | 15-Dec-14 | Image data block with hierarchical annealing level |
| US | N 013409 B | 08/762780 | 26-Nov-95 | | 25-Apr-48 | 3745841 | 21-Apr-15 | Sector and word offset in video block header |
| US | N 013709 C | 08/618951 | 11-Mar-96 | | 04-Mar-87 | 5899667 | 04-Mar-14 | Decoder delay in coded video frames |

*All corresponding patent applications, patents, divisions, divisions, continuations and related listed upon top of this patent applications or patents of this list are considered to be considered as an integral part of this list.*

Page 3 of 4

Version date : 17 July 2001

P 001356

Essential Philips and Sony patents relevant to CD-Disc / CD-Extra Video part

| COUNTRY | REFERENCE | FILING NR | FILING DATE | PUBLICATION NR | GRANT DATE | GRANT NR | EXPIRY DATE | TITLE |
|---------|-----------|-----------|-------------|----------------|------------|----------|-------------|-------|
| US | N 01570e  D | 08/707845 | 03-Sep-96 | | 01-Dec-98 | 5844987 | 01-Dec-15 | Decoder delay in coded Video frames |
| US | S90P0340 | 277143 | 19-Jul-94 | | | RE37222 | 12-Oct-10 | Video signal transmitting system |
| US | S91P0278 | 693707 | 30-Apr-91 | | | 5191436 | 30-Apr-11 | Methods of recording coded motion picture data |
| US | S91P0278 | 10/093005 (Rei.) | 07-Mar-02 | | | | | Methods of recording coded motion picture data |
| US | S92P0379 | 925735 | 07-Aug-92 | | | 5231485 | 01-Mar-94 | Data multiplexing and myplexi, data demultiplexing |

All corresponding patent applications, patents, divisions, continuations and reissues based upon any of the patent applications or patents of this list are considered to be concluded as an integral part of this list

Version date : 17 July 2003

P 001357

 **PHILIPS**

## Koninklijke Philips Electronics N.V.

P.O. Box 218 - 5600 MD Eindhoven - The Netherlands

Re. CD Disc Patent License Agreement                    Ref: 1203-1005
                                                        Date: December 1, 2004

Dear Sirs,

Reference is made to the CD Disc Patent License Agreement ("Agreement") between Cinram International Inc. and Koninklijke Philips Electronics N.V. ("Philips") covering the Territory of Canada and having an effective date of December 1, 2004 as well as the definitions used therein.

It is hereby agreed as follows:

1. This side letter ("Side Letter") shall constitute a legally binding and integral part of the Agreement and shall be effective as of the effective date thereof.

2. Philips, Cinram International Inc., Cinram Inc. (having an office at 1600 Rich Road, Richmond IN, USA 47374), Cinram Manufacturing Inc. (having an office at 1400 East Lackawanna Ave, Olyphant, PA 18448), and Cinram Latinoamericana, S.A. de C.V. (having an office at Avenida Tlahuac 6710, Col. San Francisco Tlaltenco, Delgacion Tlahuac, 13400 Mexico, D.F., Mexico) hereby acknowledge that the terms and conditions of the Agreement and this Side Letter extend to Cinram International Inc.'s entities Cinram Inc., Cinram Manufacturing Inc., and Cinram Latinoamericana, S.A. de C.V. (each of Cinram Inc., Cinram Manufacturing Inc., and Cinram Latinoamericana, S.A. de C.V. being a "Licensee" under this Agreement). Further, the Territory as defined in Clause 1.25 shall be amended as follows:

   (a) For Cinram Inc. and Cinram Manufacturing Inc.. the Territory shall be the United States of America, its territories and possessions;
   (b) For Cinram Latinoamericana. S.A. de C.V., the Territory shall be Mexico; and
   (c) For Cinram International Inc.. the Territory shall remain Canada.

   Philips and Cinram International Inc., Cinram Inc.. Cinram Manufacturing Inc. and Cinram Latinoamericana, S.A. de C.V. acknowledge that for the convenience of the parties only one Agreement and one Side Letter has been executed, but in legal effect the Agreement and Side Letter shall be treated as separate contracts between Philips and each respective one of Cinram International Inc., Cinram Inc., Cinram Manufacturing Inc. and Cinram Latinoamericana, S.A. de C.V. Unless otherwise agreed by Philips in writing, any obligation to be performed by Cinram International Inc. or its aforementioned entities shall be provided per Territory (e.g. royalty reports and payments for Canada, Mexico and the United States to be separately reported) and submitted to the respective local Philips licensing office in each Territory as designated by Philips.

3. The Agreement and this Side Letter supersedes and replaces the Comprehensive CD Disc License Agreement between U.S. Philips Corporation and Cinram Inc. having an effective date of August 15, 1998, the Comprehensive CD Disc License Agreement between

Koninklijke Philips Electronics N.V
Eindhoven The Netherlands
Commercial Register Eindhoven no 17001910

**P 001310**



Ref: 1203-1005
Page: 2

Koninklijke Philips Electronics N.V. and Cinram International Inc. having an effective date of December 15, 1998, and the Comprehensive CD Disc License Agreement between Koninklijke Philips Electronics N.V. and Cinram Latinoamericana, S.A. de C.V. having an effective date of February 27, 1997. The aforementioned agreements in this paragraph 3 are each terminated effective November 30, 2004.

4.  The term "patent lists" as referred to in the final paragraph of Clause 1.23 of the Agreement shall read "patent Exhibits".

5.  With reference to Clause 2.7 of the Agreement, for as long as Licensee is in full compliance with all material terms and conditions of the Agreement, Philips agrees not to assert against Licensee claims that are part of the Licensed Patents and which absent the License granted by this Agreement would be infringed by the manufacture of Licensed Products by Licensee, but only to the extent that Licensee can demonstrate by documentary and/or physical evidence that the processes covered by such claims were in use by Licensee as of the Effective Date of the Agreement.

6.  Licensee shall not be required to pay the initial fee set forth in Clause 5.1, as this fee was previously paid by Cinram International Inc.

7.  Provided that Licensee has already reported and paid the royalties accrued through September 30, 2004, Licensee shall not be required to make a report and payment pursuant to Clause 5.12.

8.  Notwithstanding the provisions of Clause 5.2, Licensee is not required to pay royalties on CD-Discs which are sold or otherwise disposed of to a third party and which are later returned as defective and destroyed by Licensee. If Licensee takes a credit for such Licensed Product, Licensee shall keep complete and accurate records of such defective and destroyed returns. No credit or other deduction is allowed for unpaid orders or other bad debt of Licensee's customers. Clause 5.2, penultimate paragraph, provides that no royalties are payable for Licensed Products purchased by Licensee on a "have made" basis in accordance with Clause 4 of the Agreement provided that Licensee demonstrates to Philips' satisfaction that royalties have been paid by the third party manufacturer. Philips further agrees to give Licensee reasonable and prompt cooperation in providing confirmation of payment by Licensee's "have made" suppliers upon request by Licensee.

9.  Notwithstanding the provisions of Clause 5.3 with respect to the time period for reporting and payment of royalties, Licensee shall report and pay the royalties due Philips within 45 days after the end of each calendar quarter. Accordingly, in Clause 5.4, the term "30 days" in the first and second lines is amended to read "45 days".

10. In view of Licensee's representation that it is not in the position to submit to Philips all trademarks used on or in connection with the CD-Discs as required under Clause 5.3 (3) (a) and (b) of the Agreement, Philips agrees that in lieu of reporting trademarks in the quarterly reports Licensee shall promptly submit to Philips title and trademark information of CD-Discs manufactured and sold by it upon Philips' request to receive such information. Should

P 001311





# PHILIPS

Ref: 1203-1005
Page: 3

Philips revoke the waiver of the trademark reporting requirement in the quarterly reports, Philips shall give Licensee 60 days written notice prior to the first day of the calendar quarter in which such reporting requirement will be re-instituted.

In view of the requirements to report sales by customers in Clause 5.3(3), in situations where Licensee has an existing supply arrangement requiring it to keep sales volumes for such customers confidential, Philips will assist Licensee in overcoming such restrictions by (i) providing a copy of our standard license agreement to such customer indicating that Licensee must disclose such sales in it royalty reporting forms in order for such sales to be licensed and (ii) where necessary, executing an appropriate non-disclosure agreement agreeing to keep such supply volumes of Licensee's customer confidential.

11. In relation to Licensee's obligations under Clause 5.4 of the Agreement (as amended by Paragraph 15 below), Philips agrees to notify Licensee for any late royalty reporting forms or royalty payments due by Licensee. Upon receipt of such notification, by Licensee, Licensee shall have 10 business days to remedy each such default respectively. If Licensee does not remedy its default under the Agreement within 10 business days of receipt of Philips' notification, such failure brings back into effect Licensee's obligations under Clause 5.4 of the Agreement, with all penalties and interest determined from the original due date of the overdue royalty payment and/or Advance.

12. Philips intends to audit each Licensee during calendar year 2005 under the provisions of clause 5.10. Provided that Licensee cooperates with such audit, Philips shall not require an audit statement pursuant to Clause 5.5 or Clause 5.12 (which would otherwise be duplicative).

13. In the first sentence of Clause 5.5, the phrase "complete and accurate in every respect" is amended to "complete and accurate in all material respects". In view of Licensee's past performance under other license agreements with Philips, notwithstanding the provisions of Clause 5.5 requiring the yearly submission of an audit statement in accordance with the Audit guidelines of Exhibit C1, Philips agrees to review this requirement on a yearly basis and may decide to waive the submission of the yearly audit statement provided that Licensee is fully compliant with all material obligations under the Agreement. In deciding whether to waive the requirement for a particular financial year, Philips will consider, inter alia, Licensee's compliance with its reporting and payment obligations under Clause 5.3, its reporting obligations under Clause 6.1, and consistency of such reports with market information available to Philips. Notwithstanding the foregoing, the decision to waive or not to waive the submission of the aforementioned audit statement is within Philips' sole discretion. If Philips decides not to waive the requirement, Philips will provide written notice to Licensee no later than January 15 of each year that it will require such statement within 90 days after the end of Licensee's financial year ending on December 30, in accordance with Clause 5.5; provided, however, that if Philips does not provide such notice by December 30 of each year, Licensee shall have 90 days from the date of such notice to provide such auditor's statement.

14. Notwithstanding the provisions of Clause 5.6 of the Agreement, within 6 months after expiration or termination of the Agreement Licensee shall submit to Philips a report certified by Licensee's external certified public auditor and indicating the following:

 

Ref: 1203-1005
Page: 4

(a) the number of CD- Discs sold that have not been previously reported to Philips;

(b) the number of CD-Discs that remained in stock upon expiration of the Agreement and which have been destroyed in the intervening 6 month period; and

(c) the number of CD-Discs remaining in stock with Licensee.

The above information shall be in accordance with the reporting requirements of Clause B.3. Concurrent with the submission of this report, royalties shall be paid in accordance with Clause 5.2 on the quantities of CD-Discs identified in subpart (a) and (c) of this Paragraph 14.

15. If any payments by Licensee under the Agreement are late by reason of Force Majeure and Licensee can demonstrate to Philips' satisfaction that the payments were late through no fault of Licensee, Philips agrees to grant Licensee a grace period of ten (10) business days from the cessation of the Force Majeure within which Licensee will be required to make the payment(s) due. The term "Force Majeure" shall be interpreted in accordance with generally accepted legal principles and thus include unforeseen circumstances or events beyond Licensee's or Philips' reasonable control which prevent the party concerned from performing its obligations under the Agreement. Force Majeure shall not include Licensee's inability to pay royalties as a consequence of cash flow problems or the situation where a creditor or other claimant takes possession of, or a receiver, administrator or similar officer is appointed over any of the assets of Licensee, nor the situation where Licensee makes any voluntary arrangement with its creditors or becomes subject to any court or administration order pursuant to any bankruptcy or insolvency law.

A party affected by an event of Force Majeure shall immediately notify the other Party of such event and report the relevant circumstances in detail in writing within 10 calendar days after the occurrence of the event.

In the event that either party is prevented from performing its obligations under this Agreement due to an event of Force Majeure, the other party shall be entitled to suspend the performance of its obligations under the Agreement, for the duration of the prevention or delay caused by such event of Force Majeure and the deadlines for compliance by either party with their respective obligations under this Agreement shall be extended accordingly.

In the event that either party is unable to perform any of its obligations due to an event of Force Majeure for more than 3 months, the other party shall be entitled to terminate this Agreement by written notice to the party affected by the event of Force Majeure and the party so terminating this Agreement shall not be liable for any damages to the other party in connection with such termination. The termination of this Agreement in accordance with the provisions of this paragraph shall not affect obligations or undertakings of either party surviving termination of this Agreement.

The provisions concerning Force Majeure as contained in this Clause shall not affect the obligations of either party, the performance of which is not affected by the situation of Force Majeure, nor the right of either party to terminate this Agreement in accordance with its provisions in situations other than Force Majeure.

 

Ref: 1203-1005
Page: 5

16. Notwithstanding the provisions of Clauses 5.3 and 5.8, all payments to be made by Licensee under the Agreement shall be made in U.S. Dollars.

17. Clause 5.9 of the Agreement is amended to read as follows:

"All costs, stamp duties, taxes and other similar levies arising from or in connection with the execution of this Agreement shall be borne by Licensee. However, in the event that the government of a country imposes any income taxes on payments made by Licensee to Philips hereunder and requires Licensee to withhold such tax from such payments, Licensee may deduct such tax from such payments. In such event, Licensee shall promptly provide Philips with tax receipts issued by the relevant tax authorities."

18. Clause 5.10 of the Agreement is amended to read as follows:

The phrase "at least seven (7) days prior to the inspection" is amended to read "at least 15 days prior to the inspection".

The last sentence is amended as follows:

"Philips' right of inspection as set out in this Clause 5.10 shall survive termination or expiration of this Agreement; provided, however, that such inspection must be initiated within five (5) years after termination of this Agreement."

19. Licensee's obligations under Clause 5.11 shall be limited only to the extent that Licensee shall have no obligation to provide to Philips all relevant additional information to enable Philips to ascertain which patents have been used in connection with such products. Instead, Licensee agrees that it will provide Philips with sample CD Discs manufactured by Licensee upon Philips' reasonable request.

20. Notwithstanding the provisions of Clause 6 pertaining to reporting of changes in Licensees' manufacturing equipment for Licensed Product upon each acquisition, transfer or disposal, Licensee shall be required only to submit a yearly report, which yearly report shall state the total number of CD-Disc replication lines in use by Licensee at the end of the calendar year, the number of CD-Disc replication lines acquired, transferred or disposed of, and the calendar quarter of each such acquisition, transfer or disposal. Such report shall be provided on a per plant basis, and certified by an officer of Licensee; provided, however, that if Philips requires a yearly audit statement pursuant to Clause 5.5, such report shall be further certified by Licensee's auditor.

21. An additional section (d) shall be inserted in Clause 9.2 as follows:

    and/or
    (d) is disclosed pursuant to the order or requirements of a court, a governmental administrative agency or other governmental body provided that such disclosure is subject to a protective order and Philips has been notified of such request in advance; provided,

**PHILIPS**

Ref: 1203-1005
Page: 6

however, that Licensee shall not be considered to be in breach of this subsection 9.2(d) in the event a governmental body or agency does not permit a protective order or advance notice to Philips."

22. The terms regarding confidentiality as referred to in Clause 9.2 and 9.4 shall be extended to 5 years, respectively.

23. The term "third party" in Clause 9.4 of the Agreement includes Sony.

24. Clause 9.4 is amended as follows:

Delete the sentence – "Philips' obligations set out in this paragraph shall not apply to information referred to in sections a, b and/or c of Clause 9.2." and insert the following:

"Philips' obligations set out in this paragraph shall not apply to the extent information so acquired:

    (a) was known to Philips prior to the date on which such information was acquired from Licensee or any of Licensees' Associated Companies, as shown by records of Philips or otherwise demonstrated to Licensees' satisfaction;

    (b) is or has become available to the public through no fault of Philips;

    (c) was or is received from a third party who was under no confidentiality obligation in respect of such information; and/or

    (d) is disclosed pursuant to the order or requirements of a court, a governmental administrative agency or other governmental body provided that such disclosure is subject to a protective order and Licensee has been notified of such request in advance; provided, however, that Philips shall not be considered to be in breach of this subsection 9.4(d) in the event a governmental body or agency does not permit a protective order or advance notice to Philips."

25. Clause 11.1 shall be amended to read as follows:

"This Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective assignees. It may not be assigned in whole or in part by Licensee without the prior written consent of Philips; provided, however, that in the event of sale of Licensee's entire CD business and CD production assets, such consent shall not be unreasonably withheld by Philips."

26. Clause 12.2 is amended as follows:

    (a) "Without prejudice to the provisions of Clause 12.3 through 12.6, each party may terminate this Agreement at any time by means of written notice to the other party in the event that the other party fails to perform any material obligation under this

**P 001315**



Ref: 1203-1005
Page: 7

Agreement and such failure is not remedied within 30 days after receipt of a notice
specifying the nature of such failure and requiring it to be remedied. Such right of
termination shall not be exclusive of any other remedies or means of redress to which
the non-defaulting party may be lawfully entitled and all such remedies shall be
cumulative. Any such termination shall not affect any royalties or other payment
obligations under this Agreement accrued prior to such termination.

Licensee may terminate this Agreement under this Clause 12.2 on thirty days written notice to
the other party."

27. In Clause 12.3, the term "over any of the assets" is amended to "over any major part of the
assets".

28. Notwithstanding the provisions of Clause 12.3, if Licensee becomes subject to any court or
administration order pursuant to any bankruptcy or insolvency law in the United States or
Canada, Philips' right of termination under Clause 12.3 if in conflict with the bankruptcy laws
of the United States or Canada, shall be governed, respectively, by the bankruptcy laws of the
United States or Canada.

29. Notwithstanding Clause 13.6 of the Agreement, Licensee and Philips agree that any dispute
between Licensee and Philips in connection with this Agreement shall be submitted to the
State or Federal courts in The State of New York.

30. Philips and Licensee agree to keep the terms of this Side Letter confidential and shall not
disclose it to third parties, except as may be necessary by either Philips or Licensee to enforce
its rights hereunder or to comply with a requirement of a competent court or governmental
body.

31. In Clause 12.4, the term "serious acts" is amended to "deliberate serious acts". Furthermore,
before exercising its termination rights under Clause 12.4, Philips agrees to meet with
Licensee to discuss the copyright violations of which Licensee has been convicted by a court
of competent jurisdiction, so as to be fully informed of all the facts regarding such violation in
determining whether such acts constitute "deliberate serious acts" giving rise to such right of
termination, and whether despite such right, other considerations warrant that Philips not
exercise such right.

If the above properly reflects our mutual understanding and agreement, please indicate so by signing
both copies of this Side Letter and returning these to us. Upon receipt thereof we will arrange for
countersignature on our part.

Yours sincerely,

Koninklijke Philips Electronics N.V.

Koninklijke Philips Electronics N.V.
Eindhoven The Netherlands
Commercial Register Eindhoven no. 17001910

P 001316



 **PHILIPS**

Ref: 1203-1005
Page: 8

Yours sincerely,

Koninklijke Philips Electronics N.V.

Name: R. PETERS
Title: BY PROXY
Date:

Read and Agreed:
Cinram Inc.

Name: Lewis Ritchie
Title: Vice President
Date: Dec. 22- 2004

Read and Agreed:
Cinram Manufacturing Inc.

Name: Lewis Ritchie
Title: Treasurer
Date: Dec- 22 - 2004

Read and Agreed:
Cinram LatinoAmericana S.A. de C.V.

Name: Lewis Ritchie
Title: Authorized officer
Date: Dec. 22 - 2004

Read and Agreed:
Cinram International Inc.

Name: John Bird
Title: Director of German Relations
Date: DEC 22/04

P 001317

# Exhibit C

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KONINKLIJKE PHILIPS ELECTRONICS
N.V. and U.S. PHILIPS CORPORATION,

      Plaintiffs,

   v.

CINRAM INTERNATIONAL INC., CINRAM
INC., CINRAM MANUFACTURING INC.,
and John Does No. 1 through 100,

      Defendants.

Civil Action No.
08 CV 00515 (CLB)(MDF)

## PLAINTIFFS KONINKLIJKE PHILIPS ELECTRONICS N.V. AND U.S. PHILIPS CORPORATION'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively "Philips") hereby serve this First Request for the Production of Documents and Things on Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively "Cinram"), and request that Cinram respond by producing the requested documents and things within thirty (30) days at the offices of Philips' counsel, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P., 901 New York Avenue NW, Washington, DC 20001-4413.

- 2 -

## DEFINITIONS AND INSTRUCTIONS

A.     "Defendants" or "Cinram" mean and refer to Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc., and their directors, officers, agents, employees, attorneys, partners, affiliates, parents, subsidiaries, and other representatives, or persons acting or purporting to act on their behalf, or within their control, and any person through whom or through which they conduct business.

B.     "Patent" means U.S. Patent No. 5,068,846.

C.     "Agreement" means the "CD Disc Patent License Agreement" and "Side Letter" referred to in ¶¶ 19-20 of the First Amended Complaint in this action.

D.     The term "concerning" means directly or indirectly mentioning, discussing, pertaining to, referring to, relating to, describing, embodying, evidencing, showing, reflecting, illustrating, constituting, memorializing, or being connected with a stated subject matter or any aspect thereof.

E.     "Person" or "Persons" means and includes natural persons as well as corporations, companies, partnerships, trusts, joint ventures, associations, and any other kind and form of entity.

F.     "Standard Specifications" means the CD-Disc Standard Specifications defined in the Agreement.

G.     "CD-Discs" means any CD-Audio Discs, CD-Audio Maxi-Singles, CD-ROM Discs, CD-ROM Disc mode 1, CD-ROM Disc mode 2, CD-ROM XA Disc sub-mode 1, CD-

ROM XA Disc sub-mode 2, CD Extra Discs, CD Extra Discs sub-mode 1, and CD Extra Discs sub-mode 2, as defined in the Standard Specifications.

H.    The term "documents" means all documents and things as defined in Fed. R. Civ. P. 34 and all writings and recordings as defined in Rule 1001 of the Federal Rules of Evidence, including but not limited to all original writings, documents, and recordings of any nature whatsoever, as well as all non-identical copies, in your possession, custody, or control, whether handwritten, typewritten, electronically stored, or otherwise prepared or memorialized. In particular, the term "document" includes but is not limited to: letters, faxes, telegrams, communications, memoranda, notes, reports, records, agreements, contracts, statements, advertisements, brochures, bulletins, circulars, pamphlets, flyers, lists, logs, system logs, studies, magazine and newspaper articles and reports, invoices, bills, statements, receipts, checks, check stubs, check registers, ledgers, accounting records, spreadsheets, journals, minutes, worksheets, vouchers, notebooks, diagrams, illustrations, photographs, videotapes, audiotapes, CDs, CD-ROMS, DVDs, legal pleadings and litigation papers, court orders, notices, discovery requests and responses, consent decrees, administrative orders, desk calendars, appointment books, databases, presentations, information stored in electronic form on computers servers, networks, hard drives, and other electronic storage media or devices, e-mail or voice mail files or printouts, Instant Messages (IMs), and any and all other papers, books, writings, or documents upon which any communication, idea, thought, sound, data, or information of any kind has been created, reproduced, recorded, or stored.

I.    Unless otherwise specified, all Documents stored in electronic form in the ordinary course of business shall be produced in compliance with the specifications attached as

Exhibit A to the parties' Supplemental Rule 26(f) Report and Stipulated Scheduling Order filed March 27, 2008.

J.    Unless otherwise noted, the following requests shall cover the time period of January 1, 2004 to the present.

## PRODUCTION REQUESTS

### Cinram

REQUEST NO. 1.

Cinram's annual report(s) for each year, beginning with the year 2003.

REQUEST NO. 2.

Organizational charts sufficient to identify the Cinram companies, business organizations, or divisions, and the current and former Cinram managerial personnel heading those companies, organizations, or divisions, working or involved in the design, development, research, engineering, manufacture, replication, mastering, testing, sales, importation, or marketing of any CD-Disc.

REQUEST NO. 3.

Documents sufficient to identify the organizational structure of Cinram, including directors, officers, employees, subsidiaries, parents, affiliates, joint ventures, and former, current, or future shareholders, including but not limited to any and all articles or certificates of incorporation, by-laws, and shareholder, partnership, intercompany, and joint venture agreements.

REQUEST NO. 4.

Documents sufficient to identify the current and former Cinram employees principally involved in the design, development, research, engineering, manufacture, replication, mastering, testing, sales, importation, or marketing of any CD-Discs.

REQUEST NO. 5.

All documents concerning Cinram's boards of directors and actions thereof concerning the Patent, the Agreement, and/or Philips, including but not limited to board membership, documents concerning resignations or terminations of any board member, minutes of board meetings, minutes in lieu of board meetings, board resolutions, and other records of board actions, regardless of date.

REQUEST NO. 6.

All documents concerning any communication between Cinram and Philips concerning the Agreement, CD-Discs, or the Patent, regardless of date.

REQUEST NO. 7.

All documents concerning any communication between Cinram and any other Person regarding this action, the Patent, the Agreement, or Philips, regardless of date.

REQUEST NO. 8.

Documents sufficient to identify each consultant who has communicated with Cinram, provided any services to Cinram, or provided any materials or information to Cinram with respect to CD-Discs, regardless of date.

REQUEST NO. 9.

All annual reports, financial statements, prospectuses, proxy statements, shareholder reports, incorporation documents, and SEC filings of Cinram concerning the Patent, the Agreement, Philips, and/or CD-Discs, regardless of date.

REQUEST NO. 10.

All documents concerning licensing (in-bound and out-bound) policies and practices of Cinram, regardless of date.

REQUEST NO. 11.

All documents concerning Cinram's policies and practices for avoiding infringement of patent rights of other Persons, regardless of date.

REQUEST NO. 12.

All documents concerning any document retention and/or destruction policies of Cinram, regardless of date.

REQUEST NO. 13.

All documents concerning the following U.S. patents, regardless of date:

4,041,530

3,876,342

3,626,386

3,636,526

3,665,425

3,696,344

**Philips**

REQUEST NO. 14.

All documents concerning watch lists, monitoring services, news searches, or litigation alerts, involving Philips or the Patent.

REQUEST NO. 15.

All documents concerning Philips, the Patent, or the Agreement, regardless of date.

**The Patent**

REQUEST NO. 16.

All documents concerning the Patent, regardless of date.

REQUEST NO. 17.

All documents, regardless of date, upon which Cinram relies for its contention, if any, that the Patent is invalid or unenforceable, or which Cinram contends is material to the patentability, construction, or interpretation of any claim of the Patent.

REQUEST NO. 18.

All documents concerning any allegation, suggestion, study, analysis, or opinion by any past or present Cinram officer, director, employee, agent, representative, contractor, consultant, or attorney with respect to the infringement or noninfringement of any claim of the Patent, the scope or construction of any claim of the Patent, the validity or invalidity of any claim of the Patent, the enforceability or unenforceability of any claim of the Patent, the need or lack of need to be licensed under the Patent, or the need or lack of need to pay royalties to Philips on the manufacture, replication, mastering, importation, and/or sale of any CD-Discs, regardless of date.

REQUEST NO. 19.

All documents concerning the inventors named on the Patent, regardless of date.

REQUEST NO. 20.

All documents concerning Cinram's knowledge or monitoring of the reexamination of the Patent, regardless of date.

- 8 -

REQUEST NO. 21.

     All documents concerning any litigation or disputes between Philips and other Persons concerning the Patent or the licensing thereof, regardless of date.

**Validity**

REQUEST NO. 22.

     All documents concerning the validity of the Patent, regardless of date.

REQUEST NO. 23.

     All documents concerning any allegation, suggestion, study, analysis, or opinion that any claim of the Patent is invalid, regardless of date.

REQUEST NO. 24.

     All documents concerning any patents, publications, uses, sales, or offers for sale known to Cinram as possible prior art to any claim of the Patent, regardless of date.

**Enforceability**

REQUEST NO. 25.

     All documents concerning the enforceability of the Patent, regardless of date.

REQUEST NO. 26.

     All documents concerning any allegation, suggestion, study, analysis, or opinion that any claim of the Patent is unenforceable, regardless of date.

**Licenses and Other Agreements**

REQUEST NO. 27.

All documents concerning any potential or actual contract, license, or agreement involving Cinram and Philips, regardless of date.

REQUEST NO. 28.

All documents concerning any negotiations for a license to the Patent, regardless of date.

REQUEST NO. 29.

All documents concerning any allegation, suggestion, study, analysis, or opinion that any claim of the Patent is or has been licensed, regardless of date.

REQUEST NO. 30.

All documents concerning any allegation, suggestion, study, analysis, or opinion that Cinram must pay and/or need not pay royalties for the manufacture, replication, mastering, importation, and/or sale of CD-Discs, regardless of date.

REQUEST NO. 31.

All documents concerning whether or not the Patent is "essential," as that term is used in Paragraph 1.23 of the Agreement, regardless of date.

REQUEST NO. 32.

All documents concerning any allegation, suggestion, study, analysis, or opinion with respect to whether Cinram and/or any CD-Disc is licensed under the Patent, regardless of date.

REQUEST NO. 33.

All documents concerning any allegation, suggestion, study, analysis, or opinion that Cinram can make, replicate, master, import, and/or sell CD-Discs without a license under any claim of the Patent, regardless of date.

REQUEST NO. 34.

All documents concerning any proposed, draft, executed, or unexecuted licenses, settlement agreements, or other contractual arrangement (including covenants not to sue) concerning the Patent or any CD-Disc, regardless of date.

REQUEST NO. 35.

All documents concerning any agreement, including indemnification, joint defense, community of interest, or other understanding concerning this action, the Patent, or any CD-Disc, regardless of date.

REQUEST NO. 36.

All documents concerning any and all indemnification agreements that Cinram has provided, or plans to provide, to customers, regardless of date.

REQUEST NO. 37.

All Cinram intercompany agreements concerning CD-Discs, regardless of date.

REQUEST NO. 38.

All documents concerning the licensing practices of any participants in the worldwide market for CD-Discs, regardless of date.

REQUEST NO. 39.

All documents concerning communications between Cinram and Persons to whom it sells CD-Discs concerning the Patent, this action, the Agreement, Philips, Cinram's nonpayment of royalties on CD-Discs, and/or increases or reductions in Cinram's prices for CD-Discs, regardless of date.

REQUEST NO. 40.

All documents concerning any allegation, suggestion, study, analysis, or opinion concerning any patent identified in the Agreement, regardless of date.

**Infringement**

REQUEST NO. 41.

      All documents concerning any allegation, suggestion, study, analysis, or opinion that Cinram or any CD-Disc does or does not infringe claims of the Patent, regardless of date.

REQUEST NO. 42.

      All documents concerning any effort or attempt by any Person, including Cinram, to design around the Patent, regardless of date.

REQUEST NO. 43.

      All documents concerning the scope or meaning of any claim, term, or claim limitation in the Patent, regardless of date.

REQUEST NO. 44.

      All documents concerning any investigation or analysis performed before or after the filing of this action as to whether Cinram or any CD-Disc infringes any claim of the Patent, regardless of date.

REQUEST NO. 45.

      All documents concerning any design alternative that was adopted or considered by Cinram in the development, manufacture, replication, or mastering of any CD-Discs, regardless of date.

REQUEST NO. 46.

All documents concerning any reason for rejecting any technology alternative considered but not adopted by Cinram in the development, manufacture, replication, or mastering of any CD-Discs, regardless of date.

REQUEST NO. 47.

All documents concerning Cinram's belief, if any, that any of the claims of the Patent would not prevent Cinram from making, replicating, mastering, importing, using, selling, or offering for sale any CD-Discs, regardless of date.

REQUEST NO. 48.

All documents concerning any manufacturing innovations made by Cinram that made it possible to manufacture CD-Discs that meet the Standard Specifications without infringing the '846 patent, regardless of date.


**CD-Discs**

REQUEST NO. 49.

All documents concerning any product embodying any of the inventions described or claimed in the Patent, regardless of date.

REQUEST NO. 50.

All documents concerning the design, configuration, structure, specifications, manufacture, replication, or mastering of any CD-Disc made by or for Cinram, regardless of date.

REQUEST NO. 51.

All documents concerning any research or development concerning any invention, method, product, or device described, claimed, or shown in the Patent, regardless of date.

REQUEST NO. 52.

All current and past promotional or marketing documents concerning any CD-Discs, including but not limited to advertisements, sales literature, brochures, catalogs, catalog sheets, bulletins, trade letters, press releases, circulars, and audio or video materials, regardless of date.

REQUEST NO. 53.

All documents concerning any actual or potential joint development for any CD-Disc, regardless of date.

REQUEST NO. 54.

All documents concerning any benefit of any design, feature, function, or material composition of any CD-Discs over any substitute or alternative design, feature, function, or material composition, regardless of date.

REQUEST NO. 55.

All documents concerning any testing of CD-Discs to determine if they are covered by any of the claims of the Patent, regardless of date.

REQUEST NO. 56.

One sample of each nonidentical Cinram CD-Disc, regardless of date.


**Manufacture and Sales**

REQUEST NO. 57.

Documents sufficient to identify the location(s) of all manufacturing, replication, and/or mastering facilities of CD-Discs made by or for Cinram.

REQUEST NO. 58.

Documents sufficient to identify any Person(s) involved in the manufacturing, replication, mastering, importation, export, lease, license, distribution, sale, or resale of Cinram CD-Discs and the role played by such Person(s).

REQUEST NO. 59.

All documents concerning Cinram's acquisition of any and all entities that produce(d), make or made, use(d), sell or sold, manufacture(d), replicate(d), master(ed), license(d), lease(d), import(ed), or export(ed) any CD-Discs, including but not limited to forecasts, valuations, due diligence, financial analyses, documents concerning legal claims and/or indemnifications, documents concerning notices of infringement, documents concerning licensing, documents concerning any Philips patent (including without limitation the Patent), and documents concerning any CD-Disc, regardless of date.

REQUEST NO. 60.

All documents concerning any study, survey, evaluation, or other analysis conducted by Cinram or any Person concerning the manufacture, replication, mastering, marketing, sale, importation, and/or distribution of any CD-Discs, regardless of date.  Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 61.

All documents concerning customer surveys, customer studies, customer feedback, market studies, or any other marketing-related communications concerning CD-Discs.  Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 62.

All documents concerning any marketing or sales analyses, evaluations of competing products, consumer studies, communications with resellers, or other information concerning the actual or potential demand and commercial value of CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 63.

All documents concerning any budgets or projection of sales, revenues, or profits concerning any CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 64.

All documents concerning Cinram's competitors in the manufacture, replication, mastering, importation, and/or sale of CD-Discs, including the following:

    a.   competitive intelligence;

    b.   comparative studies or analyses, including but not limited to comparisons of the performance, ease or cost of manufacturing, replicating, mastering, packaging, or price of any CD-Discs;

    c.   correspondence regarding any potential licenses; and

    d.   assessments of competitors' products.

Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 65.

All documents concerning any changes or trends in the industry or market for CD-Discs since 1990. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 66.

All manufacturing, replicating, mastering, importation, and/or sales forecasts concerning any CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 67.

All marketing plans, business plans, long-range plans, and strategic plans concerning the Patent and/or any CD-Disc. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 68.

All documents concerning any responses to requests for proposals concerning CD-Discs.

REQUEST NO. 69.

Cinram's financial books and records concerning CD-Discs, including but not limited to documents concerning the costs, revenues, and profits concerning the manufacture, replication, mastering, importation, packaging (including creating disc inserts), and/or sale of CD-Discs, including but not limited to purchase orders, general ledgers, internal budgets, accounts receivable and payable, income ledgers, summaries, and balance sheets. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 70.

All documents concerning quantities of CD-Discs made, replicated, mastered, used, sold, offered for sale, imported, leased, distributed, or licensed by or for Cinram. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 71.

Documents sufficient to determine the quantities of CD-Discs made, replicated, mastered, used, sold, offered for sale, imported, leased, distributed, or licensed by or for Cinram. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 72.

Documents sufficient to determine on a quarterly basis the unit volume and dollar value of Cinram's inventory in the United States of CD-Discs at each warehousing or other facility maintained by or on behalf of Cinram, and the address of each such facility. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 73.

Documents sufficient to determine on a quarterly basis the unit volume and dollar value of CD-Discs imported by or for Cinram into the United States. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 74.

Documents sufficient to determine on a quarterly basis each port of entry into the United States, Customs broker, and warehouse located in the United States used in the importation of CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 75.

Documents sufficient to determine on a quarterly basis Cinram's unit volume sales and average selling price for CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 76.

All documents concerning any payment invoiced, received, owing or owed, in connection with the manufacture, replication, mastering, sale, and/or importation of any CD-Discs, including but not limited to accounting records, computer records, invoices, credit memos, sales agreements, sales journals, purchase orders, production orders, CD replication order forms, customer files, correspondence files, shipping records, internal records, and summaries. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 77.

All documents concerning the fixed and variable costs and expenses incurred by Cinram in the manufacture, replication, mastering, importation, use, sale, or other disposal of CD-Discs, including but not limited to the purchase or other acquisition of raw materials (including but not limited to polycarbonate, plastics, or metals), the purchase or other acquisition of equipment, utility bills for use of electricity, and the lease or purchase of any commercial space. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 78.

All documents concerning the swapping, bartering for, or other non-monetary exchange of materials, commercial space, labor, and/or equipment used in the manufacture, replication, mastering, use, sale, or other disposal of CD-Discs.

REQUEST NO. 79.

All documents concerning the CD-Disc replication equipment currently being used by or for Cinram to manufacture and/or replicate CD-Discs, including but not limited to the quantity and location of all equipment, the date such equipment began to manufacture and/or replicate CD-Discs, and the brand name of each machine.

REQUEST NO. 80.

All documents concerning the ownership of Cinram's CD-Disc manufacturing, replication, and/or mastering machinery and equipment, including but not limited to the identity of the Person from whom the machinery and equipment was obtained, by purchase, lease, loan, or otherwise.

REQUEST NO. 81.

All documents concerning any company to whom Cinram has sold, transferred, leased or lent, or has plans to sell, transfer, lease, or lend, CD-Disc manufacturing, replication, and/or mastering equipment or machinery.

REQUEST NO. 82.

All documents concerning the monthly output from Cinram's manufacturing and/or replicating record systems and performance indicators, including but not limited to running time, rejections, daily output, machine service hours, idle hours, machine maintenance records, maintenance bills, schedules of operation, machine counter readings or logs from each machine,

and/or injection shot logs from each machine.  Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 83.

All documents concerning mastering machinery, including but not limited to mastering logs, mastering machine counters readings and/or logs, the date each machine was installed, and/ or the brand name of each machine.  Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 84.

All documents concerning printing machinery, including but not limited to machine logs or counters, the number of discs printed, printing machine counter readings and/or logs, the date each machine was installed, and/or the brand name of each machine.  Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 85.

All documents concerning supply contracts with customers.

REQUEST NO. 86.

All Cinram product catalogs and pricelists for CD-Discs.  Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 87.

All documents concerning the identity, ownership, management, and operations of other companies operating out of the same facility as Cinram.

REQUEST NO. 88.

All documents concerning sales tax payments by Cinram concerning CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 89.

All documents concerning any customer for which Cinram or anyone on Cinram's behalf has manufactured, replicated, or mastered CD-Discs, including but not limited to customer lists, customer names, customer addresses, customer phone numbers, customer contact information, and sales information. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 90.

Documents sufficient to identify on a quarterly basis each Person to which Cinram sold or distributed CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 91.

Documents sufficient to identify each of Cinram's customers for CD-Discs and the unit volume, dollar sales value, and unit price for CD-Discs sold to such customers. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 92.

All documents concerning communications from Cinram to any other Person informing such Person that Cinram will no longer manufacture, replicate, or master CD-Discs for such Person.

**This Action**

REQUEST NO. 93.

      All documents concerning Cinram's Initial Disclosure under Federal Rule of Civil

Procedure 26(a) in this action, regardless of date.  Any responsive documents in the form of

electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 94.

      All documents that Cinram intends to introduce at trial in this action, regardless of date.

REQUEST NO. 95.

      All documents concerning the factual basis of any denial by Cinram of the allegations set

forth in the First Amended Complaint, regardless of date.

REQUEST NO. 96.

      All documents concerning Cinram's contentions, if any, that this action is barred, in

whole or in part, and/or that Cinram has been damaged by Philips, whether based on alleged

patent misuse, inequitable conduct, lack of standing, tortious interference, failure to mitigate,

delay, waiver, estoppel, reliance, license (including express and implied licenses), prejudice,

unclean hands, laches, intervening rights, or on other grounds, regardless of date.

REQUEST NO. 97.

      All documents concerning, supporting or tending to support, and refuting or tending to

refute Cinram's affirmative defenses and counterclaims, regardless of date.

REQUEST NO. 98.

      All documents concerning any negotiations with Philips concerning the Patent, regardless

of date.

REQUEST NO. 99.

All documents concerning communications with experts Cinram has retained in connection with the subject matter of this action (hereinafter "Cinram's experts"), regardless of date.

REQUEST NO. 100.

All drafts of all testimony, reports, or other documents that Cinram's experts have prepared or participated in preparing in connection with the subject matter of this action. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

REQUEST NO. 101.

All prior testimony of Cinram's experts concerning CD-Discs, regardless of date.

REQUEST NO. 102.

All prior expert reports of Cinram's experts concerning CD-Discs, regardless of date.

REQUEST NO. 103.

All prior publications or presentations concerning CD-Discs written by Cinram's experts, regardless of date.

REQUEST NO. 104.

All documents concerning and/or identified in response to Philips' interrogatories to Cinram, regardless of date. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

Date: March 27, 2008                    Respectfully submitted,

Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2380
Fax: (212) 849-5830

Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
Tel: (650) 331-2000
Fax: (650) 331-2060

Vince P. Kovalick (*pro hac vice*)
John F. Hornick (*pro hac vice*)
Samuel C. Bass (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Tel: (202) 408-4000
Fax: (202) 408-4400

*Attorneys for Plaintiffs*
*Koninklijke Philips Electronics N.V. and*
*U.S. Philips Corporation*

# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.08-cv-0515 (CLB)(MDF) |
| | : | |
| v. | : | ECF Case |
| | : | |
| CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does No. 1 through 100, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS
KONINKLIJKE PHILIPS ELECTRONICS N.V. AND U.S. PHILIPS
CORPORATION'S FIRST
<u>REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS</u>**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively referred to as "Cinram"), hereby respond to plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively referred to as "Philips") First Request For Production Of Documents and Things (Nos. 1-104) as follows:

<u>**General Objections**</u>

1.   Cinram objects to Philips' First Request For Production Of Documents and Things (Nos. 1-104) ("the Document Requests") to the extent they seek the production of documents and things which may constitute one or more of the following (referred to as "privileged documents" hereafter):

a.   Work product or trial preparation materials of an attorney or Cinram itself;

1

    b.   Communications between officers, directors, agents, representatives or employees of Cinram and its attorneys;

    c.   Matters which are privileged pursuant to the Federal Rules of Civil Procedure or Federal Rules of Evidence or at Common Law;

    d.   Any other matters protected from discovery by any Federal or State statute or Common Law.

2.   Cinram objects to Philips' First Request For Production Of Documents and Things (Nos. 1-104) ("the Document Requests") to the extent they seek the production of documents and things which may constitute one or more of the following:

    a.   An undue burden, unnecessary expense, harassment, and/or annoyance; and

    b.   Any matters which are irrelevant, immaterial, and/or not reasonably calculated to lead to the discovery of admissible evidence.

3.   Cinram objects to the Document Requests to the extent that they seek the disclosure of documents containing confidential or proprietary business information, trade secrets, and/or like matter protected from disclosure under Federal Rule of Civil Procedure 26, absent the entry of a protective order or the execution of a suitable interim agreement among counsel.

4.   Cinram objects to the Document Requests to the extent that they require the production of documents and things beyond the scope of discovery as defined by the Federal Rules of Civil Procedure, and/or seek to impose a duty or obligation on Cinram beyond any duty or obligation contained in the Federal Rules of Civil Procedure.

5.   Cinram objects to Philips' Definitions as improperly attempting to impose

burdens and obligations upon Cinram beyond the requirements of the Federal Rules of Civil Procedure. Cinram will respond to the Document Requests in accordance with the Federal Rules of Civil Procedure.

6.   Cinram objects to the Document Requests to the extent that they seek production of documents and things that are not within Cinram's possession, custody or control.

7.   Cinram objects to any request to the extent it employs imprecise specifications of the documents or things sought. In particular, terms such as "consist of," "concern," "refer" and other like terms do not provide an adequate classification of the documents or things sought. Where such terms are used, Cinram will, therefore, provide only such documents or things that reasonably can be identified as responsive to the requests.

8.   Cinram objects to the Document Requests as overbroad and unduly burdensome. Pursuant to Federal Rule of Civil Procedure 26(b)(2)(iii), in responding to the Document Requests, Cinram will conduct a reasonable investigation under the circumstances, based on the burden and expense of searching for and collecting the documents sought, taking into account the needs of the case, the amount in controversy, the parties' (and particularly Cinram's) resources, the importance of the issues at stake, and the importance of the requested information in resolving the issues in this lawsuit.

9.   Cinram's response to the Document Requests is not intended to waive, and does not constitute waiver or, any and all objections which Cinram may have to the admissibility, authenticity, or relevance of the documents and things produced, or objections that Cinram may raise in a motion *in limine*. Cinram expressly reserves all such objections.

10.   Neither the General Objections, nor the Specific Responses set forth below, are

an admission relative to the existence of any documents or things sought, to the relevance or admissibility of any response, or to the truth or accuracy of any statement or characterization contained in any particular request.

11.  Cinram's investigation of this matter is ongoing.  Cinram's responses are based upon information presently available to Cinram.  Cinram reserves the right to amend or supplement its responses as additional information becomes known or available to it.

**Cinram's Responses And Specific Objections To The Document Requests**

Subject to the specific objections set forth below, and specifically incorporating each and every one of its General Objections into each Specific Response below, and without waiving said objections and responses, Cinram responds as follows:

**Cinram**

REQUEST NO. 1.

Cinram's annual report(s) for each year, beginning with the year 2003.

RESPONSE:

Subject to its General Objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 2.

Organizational charts sufficient to identify the Cinram companies, business organizations, or divisions, and the current and former Cinram managerial personnel heading those companies, organizations, or divisions, working or involved in the design, development, research, engineering, manufacture, replication, mastering, testing, sales, importation, or marketing of any CD-Disc.

RESPONSE:

Cinram objects to this request to the extent it seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 3.

Documents sufficient to identify the organizational structure of Cinram, including directors, officers, employees, subsidiaries, parents, affiliates, joint ventures, and former, current, or future shareholders, including but not limited to any and all articles or certificates of incorporation, by-laws, and shareholder, partnership, intercompany, and joint venture agreements.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request No. 2. Cinram further objects to this request on the grounds it is vague and ambiguous as it asks for "documents sufficient" and then includes broad categories of documents, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 4.

Documents sufficient to identify the current and former Cinram employees principally involved in the design, development, research, engineering, manufacture, replication, mastering, testing, sales, importation, or marketing of any CD-Discs.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request No. 2, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible

evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 5.

All documents concerning Cinram's boards of directors and actions thereof concerning the Patent, the Agreement, and/or Philips, including but not limited to board membership, documents concerning resignations or terminations of any board member, minutes of board meetings, minutes in lieu of board meetings, board resolutions, and other records of board actions, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad and unduly burdensome to the extent it is unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 6.

All documents concerning any communication between Cinram and Philips concerning the Agreement, CD-Discs, or the Patent, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad and unduly burdensome to the extent it is unlimited in time.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

<u>REQUEST NO. 7.</u>

All documents concerning any communication between Cinram and any other Person regarding this action, the Patent, the Agreement, or Philips, regardless of date.

<u>RESPONSE:</u>

Cinram objects to the extent this request seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to this request as overbroad, unduly burdensome and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

<u>REQUEST NO. 8.</u>

Documents sufficient to identify each consultant who has communicated with Cinram, provided any services to Cinram, or provided any materials or information to Cinram with respect to CD-Discs, regardless of date.

<u>RESPONSE:</u>

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search

REQUEST NO. 9.

All annual reports, financial statements, prospectuses, proxy statements, shareholder reports, incorporation documents, and SEC filings of Cinram concerning the Patent, the Agreement, Philips, and/or CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request No. 1. Cinram further objects to this request as overbroad, unduly burdensome and unlimited in time. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 10.

All documents concerning licensing (in-bound and out-bound) policies and practices of Cmram, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram further objects to the request to the extent it is, not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO.11.

All documents concerning Cinram's policies and practices for avoiding infringement of patent rights of other Persons, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome.  Cinram further objects to the request to the extent it is, not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 12.

All documents concerning any document retention and/or destruction policies of Cinram, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 13.

All documents concerning the following U.S. patents, regardless of date:

4,041,530

3,876,342

3,626,386

3,636,526

3,665,425

3,696,344

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome.  Cinram further objects to the request to the extent it may be not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

**Philips**

REQUEST NO. 14.

All documents concerning watch lists, monitoring services, news searches, or litigation alerts, involving Philips or the Patent.

RESPONSE:

Cinram objects to the extent this request seeks information within the scope of the attorney-client privilege and/or the work-product doctrine, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 15.

All documents concerning Philips, the Patent, or the Agreement, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request Nos. 6 and 7, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

**The Patent**

REQUEST NO. 16.

All documents concerning the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request Nos. 6, 7 and 15. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search

REQUEST NO. 17.

All documents, regardless of date, upon which Cinram relies for its contention, if any, that the Patent is invalid or unenforceable, or which Cinram contends is material to the patentability, construction, or interpretation of any claim of the Patent.

RESPONSE:

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 18.

All documents concerning any allegation, suggestion, study, analysis, or opinion by any past or present Cinram officer, director, employee, agent, representative, contractor, consultant, or attorney with respect to the infringement or noninfringement of any claim of the Patent, the scope or construction of any claim of the Patent, the validity or invalidity of any claim of the Patent, the enforceability or unenforceability of any claim of the Patent, the need or lack of need to be licensed under the Patent, or the need or lack of need to pay royalties to Philips on the manufacture, replication, mastering, importation, and/or sale of any CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 19.

All documents concerning the inventors named on the Patent, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram

13

will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 20.

All documents concerning Cinram's knowledge or monitoring of the reexamination of the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 21.

All documents concerning any litigation or disputes between Philips and other Persons concerning the Patent or the licensing thereof, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

**Validity**

REQUEST NO. 22.

All documents concerning the validity of the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request No. 17. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 23.

All documents concerning any allegation, suggestion, study, analysis, or opinion that any claim of the Patent is invalid, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request No. 18. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 24.

All documents concerning any patents, publications, uses, sales, or offers for sale known to Cinram as possible prior art to any claim of the Patent, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.


**Enforceability**

REQUEST NO. 25.

All documents concerning the enforceability of the Patent, regardless of date.

<u>RESPONSE:</u>

Cinram objects to this request to the extent it is duplicative of Request No. 17. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

<u>REQUEST NO. 26.</u>

All documents concerning any allegation, suggestion, study, analysis, or opinion that any claim of the Patent is unenforceable, regardless of date.

<u>RESPONSE:</u>

Cinram objects to this request to the extent it is duplicative of Request No. 18. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.


**<u>Licenses and Other Agreements</u>**

<u>REQUEST NO. 27.</u>

All documents concerning any potential or actual contract, license, or agreement involving Cinram and Philips, regardless of date.

<u>RESPONSE:</u>

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time. Cinram further objects to the extent the request seeks confidential or proprietary documents, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram

will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 28.

All documents concerning any negotiations for a license to the Patent, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time. Cinram further objects to the extent the request seeks confidential or proprietary documents.

Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 29.

All documents concerning any allegation, suggestion, study, analysis, or opinion that any claim of the Patent is or has been licensed, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request No. 18.

Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 30.

All documents concerning any allegation, suggestion, study, analysis, or opinion that Cinram must pay and/or need not pay royalties for the manufacture, replication, mastering, importation, and/or sale of CD-Discs, regardless of date.

RESPONSE:

 Cinram objects to this request to the extent it is duplicative of Request No. 18, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 31.

 All documents concerning whether or not the Patent is "essential," as that term is used in Paragraph 1.23 of the Agreement, regardless of date.

RESPONSE:

 Cinram objects to this request as overbroad, unduly burdensome and unlimited in time. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 32.

 All documents concerning any allegation, suggestion, study, analysis, or opinion with respect to whether Cinram and/or any CD-Disc is licensed under the Patent, regardless of date.

RESPONSE:

 Cinram objects to this request to the extent it is duplicative of Request No. 18, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram

will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 33.

All documents concerning any allegation, suggestion, study, analysis, or opinion that Cinram can make, replicate, master, import, and/or sell CD-Discs without a license under any claim of the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request No. 18 and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 34.

All documents concerning any proposed, draft, executed, or unexecuted licenses, settlement agreements, or other contractual arrangement (including covenants not to sue) concerning the Patent or any CD-Disc, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time. Cinram further objects to the extent the request seeks confidential or proprietary documents. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 35.

All documents concerning any agreement, including indemnification, joint defense, community of interest, or other understanding concerning this action, the Patent, or any CD-Disc, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 36.

All documents concerning any and all indemnification agreements that Cinram has provided, or plans to provide, to customers, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome, and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 37.

All Cinram intercompany agreements concerning CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time. Cinram further objects to the extent the request seeks confidential or proprietary documents, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 38.

All documents concerning the licensing practices of any participants in the worldwide market for CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request as overbroad, unduly burdensome and unlimited in time. Cinram further objects to the extent the request seeks confidential or proprietary documents, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 39.

All documents concerning communications between Cinram and Persons to whom it sells CD-Discs concerning the Patent, this action, the Agreement, Philips, Cinram's

nonpayment of royalties on CD-Discs, and/or increases or reductions in Cinram's prices for CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome, and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 40.

All documents concerning any allegation, suggestion, study, analysis, or opinion concerning any patent identified in the Agreement, regardless of date.

RESPONSE:

Cinram objects to this request to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence, and as seeking information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram will produce nonprivileged documents to the extent found after a reasonable search.

**Infringement**

REQUEST NO. 41.

All documents concerning any allegation, suggestion, study, analysis, or opinion that Cinram or any CD-Disc does or does not infringe claims of the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to this request as overbroad, unduly burdensome and unlimited in time. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 42.

All documents concerning any effort or attempt by any Person, including Cinram, to design around the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to this request as overbroad, unduly burdensome and unlimited in time. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 43.

All documents concerning the scope or meaning of any claim, term, or claim limitation in the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to this request as overbroad, unduly burdensome and unlimited in time. Subject to and

without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 44.

All documents concerning any investigation or analysis performed before or after the filing of this action as to whether Cinram or any CD-Disc infringes any claim of the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to the extent the request is duplicative of Request No. 41. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 45.

All documents concerning any design alternative that was adopted or considered by Cinram in the development, manufacture, replication, or mastering of any CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to this request as overbroad, unduly burdensome and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject

to and without waiving the foregoing objections, Cinram will produce responsive

nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 46.

All documents concerning any reason for rejecting any technology alternative

considered but not adopted by Cinram in the development, manufacture, replication, or

mastering of any CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope

of the attorney-client privilege and/or the work-product doctrine.  Cinram further objects

to this request as overbroad, unduly burdensome and unlimited in time, and to the extent

the request seeks documents in subject matter that is not related to claims or defenses in

this action and is not calculated to lead to the discovery of admissible evidence.  Subject

to and without waiving the foregoing objections, Cinram will produce responsive

nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 47.

All documents concerning Cinram's belief, if any, that any of the claims of the

Patent would not prevent Cinram from making, replicating, mastering, importing, using,

selling, or offering for sale any CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request Nos. 41

and 44 and incorporates herein the objections stated in its responses to Requests Nos. 41

and 44.  Cinram further objects to this request to the extent it seeks documents in subject

matter that is not related to claims or defenses in this action and is not calculated to lead

to the discovery of admissible evidence.  Subject to and without waiving the foregoing

objections, Cinram will produce responsive nonprivileged documents to the extent found

after a reasonable search.

REQUEST NO. 48.

     All documents concerning any manufacturing innovations made by Cinram that

made it possible to manufacture CD-Discs that meet the Standard Specifications without

infringing the '846 patent, regardless of date.

RESPONSE:

     Cinram objects to this request to the extent it is duplicative of Request No. 47 and

incorporates herein its objections to Request No. 47.  Subject to and without waiving the

foregoing objections, Cinram will produce responsive nonprivileged documents to the

extent found after a reasonable search.


**CD-Discs**

REQUEST NO. 49.

     All documents concerning any product embodying any of the inventions described

or claimed in the Patent, regardless of date.

RESPONSE:

     Cinram objects to this request to the extent it is overbroad, unduly burdensome,

and unlimited in time, and to the extent the request seeks documents in subject matter that

is not related to claims or defenses in this action and is not calculated to lead to the

discovery of admissible evidence.  Subject to and without waiving the foregoing

objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 50.

All documents concerning the design, configuration, structure, specifications, manufacture, replication, or mastering of any CD-Disc made by or for Cinram, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 51.

All documents concerning any research or development concerning any invention, method, product, or device described, claimed, or shown in the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome, and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 52.

All current and past promotional or marketing documents concerning any CD-Discs, including but not limited to advertisements, sales literature, brochures, catalogs, catalog sheets, bulletins, trade letters, press releases, circulars, and audio or video materials, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome, and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 53.

All documents concerning any actual or potential joint development for any CD-Disc, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome, and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 54.

All documents concerning any benefit of any design, feature, function, or material composition of any CD-Discs over any substitute or alternative design, feature, function, or material composition, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome, and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 55.

All documents concerning any testing of CD-Discs to determine if they are covered by any of the claims of the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to this request as overbroad, unduly burdensome and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

<u>REQUEST NO. 56.</u>

One sample of each nonidentical Cinram CD-Disc, regardless of date.

<u>RESPONSE:</u>

Cinram objects to this request to the extent it is overbroad, unduly burdensome, and unlimited in time, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

**<u>Manufacture and Sales</u>**

<u>REQUEST NO. 57.</u>

Documents sufficient to identify the location(s) of all manufacturing, replication, and/or mastering facilities of CD-Discs made by or for Cinram.

<u>RESPONSE:</u>

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 58.

Documents sufficient to identify any Person(s) involved in the manufacturing, replication, mastering, importation, export, lease, license, distribution, sale, or resale of Cinram CD-Discs and the role played by such Person(s).

RESPONSE:

Cinram objects to this request to the extent it is not overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 59.

All documents concerning Cinram's acquisition of any and all entities that produce(d), make or made, use(d), sell or sold, manufacture(d), replicate(d), master(ed), license(d), lease(d), import(ed), or export(ed) any CD-Discs, including but not limited to forecasts, valuations, due diligence, financial analyses, documents concerning legal claims and/or indemnifications, documents concerning notices of infringement, documents concerning licensing, documents concerning any Philips patent (including without limitation the Patent), and documents concerning any CD-Disc, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects

to the extent the request is overbroad and unduly burdensome.  Cinram also objects to the request to the extent the request is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 60.

All documents concerning any study, survey, evaluation, or other analysis conducted by Cinram or any Person concerning the manufacture, replication, mastering, marketing, sale, importation, and/or distribution of any CD-Discs, regardless of date. Any responsive documentsin the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine.  Cinram further objects to the extent the request is overbroad and unduly burdensome.  Cinram also objects to the request to the extent the request is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 61.

All documents concerning customer surveys, customer studies, customer feedback, market studies, or any other marketing-related communications concerning CD-Discs.

Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram also objects to the request to the extent the request is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 62.

All documents concerning any marketing or sales analyses, evaluations of competing products, consumer studies, communications with resellers, or other information concerning the actual or potential demand and commercial value of CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram also objects to the request to the extent the request is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 63.

All documents concerning any budgets or projection of sales, revenues, or profits concerning any CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram further objects to this request to the extent it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 64.

All documents concerning Cinram's competitors in the manufacture, replication, mastering, importation, and/or sale of CD-Discs, including the following:

a.    competitive intelligence;

b.    comparative studies or analyses, including but not limited to comparisons of the performance, ease or cost of manufacturing, replicating, mastering, packaging, or price of any CD-Discs;

c.    correspondence regarding any potential licenses; and

d.    assessments of competitors' products.

Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram further objects to this request to the extent it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 65.

All documents concerning any changes or trends in the industry or market for CD-Discs since 1990. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram further objects to this request to the extent it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 66.

All manufacturing, replicating, mastering, importation, and/or sales forecasts concerning any CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome.  Cinram further objects to the request to the extent the request is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence.  Cinram further objects to the extent the request is duplicative of Request No. 63.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 67.

All marketing plans, business plans, long-range plans, and strategic plans concerning the Patent and/or any CD-Disc. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request No. 61. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 68.

All documents concerning any responses to requests for proposals concerning CD-Discs.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome.  Cinram further objects to this request to the extent it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of

admissible evidence.  Subject to and without waiving the foregoing objections, Cinram

will produce responsive nonprivileged documents to the extent found after a reasonable

search.

REQUEST NO. 69.

Cinram's financial books and records concerning CD-Discs, including but not

limited to documents concerning the costs, revenues, and profits concerning the

manufacture, replication, mastering, importation, packaging (including creating disc

inserts), and/or sale of CD-Discs, including but not limited to purchase orders, general

ledgers, internal budgets, accounts receivable and payable, income ledgers, summaries,

and balance sheets. Any responsive documents in the form of electronically stored

spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram  objects  to  this  request  to  the  extent  it  is  overbroad  and  unduly

burdensome, and to the extent the request seeks documents in subject matter that is not

related to claims or defenses in this action and is not calculated to lead to the discovery of

admissible evidence.  Cinram further objects to the extent the request seeks confidential

or  proprietary  documents.   Subject  to  and  without  waiving  the  foregoing  objections,

Cinram  will  produce  responsive  nonprivileged  documents  to  the  extent  found  after  a

reasonable search.

REQUEST NO. 70.

All documents concerning quantities of CD-Discs made, replicated, mastered,

used, sold, offered for sale, imported, leased, distributed, or licensed by or for Cinram.

Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Cinram further objects to the extent the request seeks confidential or proprietary documents. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 71.

Documents sufficient to determine the quantities of CD-Discs made, replicated, mastered, used, sold, offered for sale, imported, leased, distributed, or licensed by or for Cinram. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram further objects to the extent the request seeks confidential or proprietary documents. Cinram further objects to the extent the request is duplicative of Request No.70. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 72.

Documents sufficient to determine on a quarterly basis the unit volume and dollar value of Cinram's inventory in the United States of CD-Discs at each warehousing or other facility maintained by or on behalf of Cinram, and the address of each such facility. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 73.

Documents sufficient to determine on a quarterly basis the unit volume and dollar value of CD-Discs imported by or for Cinram into the United States. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram

39

will produce responsive nonprivileged documents to the extent found after a reasonable

search.

REQUEST NO. 74.

Documents sufficient to determine on a quarterly basis each port of entry into the

United

States, Customs broker, and warehouse located in the United States used in the

importation of CD-Discs. Any responsive documents in the form of electronically stored

spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly

burdensome, and to the extent the request seeks documents in subject matter that is not

related to claims or defenses in this action and is not calculated to lead to the discovery of

admissible evidence.  Subject to and without waiving the foregoing objections, Cinram

will produce responsive nonprivileged documents to the extent found after a reasonable

search.

REQUEST NO. 75.

Documents sufficient to determine on a quarterly basis Cinram's unit volume sales

and average selling price for CD-Discs. Any responsive nonprivileged documents to the

extent found after a reasonable search in the form of electronically stored spreadsheets or

databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly

burdensome, and to the extent the request seeks documents in subject matter that is not

related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 76.

All documents concerning any payment invoiced, received, owing or owed, in connection with the manufacture, replication, mastering, sale, and/or importation of any CD-Discs, including but not limited to accounting records, computer records, invoices, credit memos, sales agreements, sales journals, purchase orders, production orders, CD replication order forms, customer files, correspondence files, shipping records, internal records, and summaries. Any responsive nonprivileged documents to the extent found after a reasonable search in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is duplicative of Request No.69 and incorporates herein its response to Request No. 69.  Cinram further objects to this request to the extent it seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence . Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 77.

All documents concerning the fixed and variable costs and expenses incurred by Cinram in the manufacture, replication, mastering, importation, use, sale, or other

disposal of CD-Discs, including but not limited to the purchase or other acquisition of raw materials (including but not limited to polycarbonate, plastics, or metals), the purchase or other acquisition of equipment, utility bills for use of electricity, and the lease or purchase of any commercial space. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 78.

All documents concerning the swapping, bartering for, or other non-monetary exchange of materials, commercial space, labor, and/or equipment used in the manufacture, replication, mastering, use, sale, or other disposal of CD-Discs.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

<u>REQUEST NO, 79.</u>

All documents concerning the CD-Disc replication equipment currently being used by or for Cinram to manufacture and/or replicate CD-Discs, including but not limited to the quantity and location of all equipment, the date such equipment began to manufacture and/or replicate CD-Discs, and the brand name of each machine.

<u>RESPONSE:</u>

Cinram objects to this request to the extent it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

<u>REQUEST NO. 80.</u>

All documents concerning the ownership of Cinram's CD-Disc manufacturing, replication, and/or mastering machinery and equipment, including but not limited to the identity of the Person from whom the machinery and equipment was obtained, by purchase, lease, loan, or otherwise.

<u>RESPONSE:</u>

Cinram objects to this request to the extent it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

<u>REQUEST NO. 81.</u>

All documents concerning any company to whom Cinram has sold, transferred, leased or lent, or has plans to sell, transfer, lease, or lend, CD-Disc manufacturing,

43

replication, and/or mastering equipment or machinery.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 82.

All documents concerning the monthly output from Cinram's manufacturing and/or replicating record systems and performance indicators, including but not limited to running time, rejections, daily output, machine service hours, idle hours, machine maintenance records, maintenance bills, schedules of operation, machine counter readings or logs from each machine, and/or injection shot logs from each machine. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 83.

All documents concerning mastering machinery, including but not limited to mastering logs, mastering machine counters readings and/or logs, the date each machine was installed, and/ or the brand name of each machine. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome.  Cinram further objects to the request to the extent the request is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 84.

All documents concerning printing machinery, including but not limited to machine logs or counters, the number of discs printed, printing machine counter readings and/or logs, the date each machine was installed, and/or the brand name of each machine. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome.  Cinram further objects to the request to the extent the request is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the

discovery of admissible evidence. Subject to and without waiving the foregoing

objections, Cinram will produce responsive nonprivileged documents to the extent found

after a reasonable search.

REQUEST NO. 85.

    All documents concerning supply contracts with customers.

RESPONSE:

    Cinram objects to this request to the extent it is overbroad and unduly

burdensome, and to the extent the request seeks documents in subject matter that is not

related to claims or defenses in this action and is not calculated to lead to the discovery of

admissible evidence. Subject to and without waiving the foregoing objections, Cinram

will produce responsive nonprivileged documents to the extent found after a reasonable

search.

REQUEST NO. 86.

    All Cinram product catalogs and pricelists for CD-Discs. Any responsive

documents in the form of electronically stored spreadsheets or databases should be

produced in native format.

RESPONSE:

    Cinram objects to this request to the extent it is overbroad and unduly

burdensome, and to the extent the request seeks documents in subject matter that is not

related to claims or defenses in this action and is not calculated to lead to the discovery of

admissible evidence.  Subject to and without waiving the foregoing objections, Cinram

will produce responsive nonprivileged documents to the extent found after a reasonable

search.

REQUEST NO. 87.

All documents concerning the identity, ownership, management, and operations of other companies operating out of the same facility as Cinram.

RESPONSE:

Cinram objects to this request to the extent it is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 88.

All documents concerning sales tax payments by Cinram concerning CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram further objects to the request to the extent the request is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 89.

All documents concerning any customer for which Cinram or anyone on Cinram's behalf has manufactured, replicated, or mastered CD-Discs, including but not limited to customer lists, customer names, customer addresses, customer phone numbers, customer

contact information, and sales information. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 90.

Documents sufficient to identify on a quarterly basis each Person to which Cinram sold or distributed CD-Discs. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 91.

Documents sufficient to identify each of Cinram's customers for CD-Discs and the unit volume, dollar sales value, and unit price for CD-Discs sold to such customers. Any

responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome, and to the extent the request seeks documents in subject matter that is not related to claims or defenses in this action and is not calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 92.

All documents concerning communications from Cinram to any other Person informing such Person that Cinram will no longer manufacture, replicate, or master CD-Discs for such Person.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome.  Cinram further objects to the request to the extent the request is not relevant to any claim or defense in this action, nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

**This Action**

REQUEST NO. 93.

All documents concerning Cinram's Initial Disclosure under Federal Rule of Civil Procedure 26(a) in this action, regardless of date. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome and unlimited in time. Cinram further objects to this request to the extent it is premature. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 94.

All documents that Cinram intends to introduce at trial in this action, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is premature. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 95.

All documents concerning the factual basis of any denial by Cinram of the allegations set forth in the First Amended Complaint, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram further objects to this request to the extent it is duplicative of other

requests. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 96.

All documents concerning Cinram's contentions, if any, that this action is barred, in whole or in part, and/or that Cinram has been damaged by Philips, whether based on alleged patent misuse, inequitable conduct, lack of standing, tortious interference, failure to mitigate, delay, waiver, estoppel, reliance, license (including express and implied licenses), prejudice, unclean hands, laches, intervening rights, or on other grounds, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram further objects to this request to the extent it is duplicative of other requests. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 97.

All documents concerning, supporting or tending to support, and refuting or tending to refute Cinram's affirmative defenses and counterclaims, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad and unduly burdensome. Cinram further objects to this request to the extent it is duplicative of other requests. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 98.

All documents concerning any negotiations with Philips concerning the Patent, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to the extent the request is duplicative of Request No. 28. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 99.

All documents concerning communications with experts Cinram has retained in connection with the subject matter of this action (hereinafter "Cinram's experts"), regardless of date.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to the extent the request is premature. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 100.

All drafts of all testimony, reports, or other documents that Cinram's experts have prepared or participated in preparing in connection with the subject matter of this action.

Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it seeks information within the scope of the attorney-client privilege and/or the work-product doctrine. Cinram further objects to the extent the request is premature. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 101.

All prior testimony of Cinram's experts concerning CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome and unlimited in time. Cinram further objects to this request to the extent it is duplicative of other requests. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 102.

All prior expert reports of Cinram's experts concerning CD-Discs, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome and unlimited in time. Cinram further objects to this request to the extent it is duplicative of other requests. Subject to and without waiving the foregoing objections, Cinram will

produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 103.

All prior publications or presentations concerning CD-Discs written by Cinram's experts, regardless of date.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome and unlimited in time. Cinram further objects to this request to the extent it is duplicative of other requests. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

REQUEST NO. 104.

All documents concerning and/or identified in response to Philips' interrogatories to Cinram, regardless of date. Any responsive documents in the form of electronically stored spreadsheets or databases should be produced in native format.

RESPONSE:

Cinram objects to this request to the extent it is overbroad, unduly burdensome and unlimited in time. Cinram further objects to this request to the extent it is duplicative of other requests. Subject to and without waiving the foregoing objections, Cinram will produce responsive nonprivileged documents to the extent found after a reasonable search.

COOPER & DUNHAM LLP

Date: May 15, 2008                     By:  /s/ Gregory J. Carbo
                                            Ivan S. Kavrukov
                                            William E. Pelton
                                            Tonia A. Sayour
                                            Gregory J. Carbo
                                            1185 Avenue of the Americas
                                            New York, New York 10036
                                            Telephone: (212) 278-0400
                                            ikavrukov@cooperdunham.com
                                            gcarbo@cooperdunham.com

                                            Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of May, 2008, a copy of the foregoing

DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS KONINKLIJKE

PHILIPS ELECTRONICS N.V. AND U.S. PHILIPS CORPORATION'S FIRST

REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS was served by

email and by First Class Mail, postage prepaid, on the following attorneys for plaintiffs,

Koninklijke Philips Electronics N.V. and U.S. Philips Corporation, addressed as follows:

Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
wjohnson@mayerbrown.com

Vince P. Kovalick
John F. Hornick
Samuel C. Bass
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
vince.kovalick@finnegan.com
John.Hornick@finnegan.com
Samuel.Bass@finnegan.com

Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
choupt@mayerbrown.com

 /s/ Gregory J. Carbo
Gregory J. Carbo

# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| KONINKLIJKE PHILIPS ELECTRONICS | : | |
| N.V. and U.S. PHILIPS CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.08-cv-0515 |
| | : | (CLB)(MDF) |
| | : | |
| v. | : | ECF Case |
| | : | |
| CINRAM INTERNATIONAL INC., | : | |
| CINRAM INC., CINRAM | : | |
| MANUFACTURING INC., and John Does | : | |
| No. 1 through 100, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COOPER & DUNHAM LLP'S AND IVAN S. KAVRUKOV, ESQ.'S OBJECTIONS TO PLAINTIFFS' SUBPOENAS *DUCES TECUM* DATED MAY 23, 2008

Non-parties Cooper & Dunham LLP ("Cooper & Dunham") and Ivan S. Kavrukov, Esq. ("Attorney Kavrukov") hereby object to Plaintiffs Koninklijke Philips Electronics, N.V.'s and U.S. Philips Corporation's (collectively referred to as "Philips") Subpoenas *Duces Tecum* (collectively referred to as "Philips Subpoenas"), each served on May 23, 2008, as follows:

### General Objections

Cooper & Dunham and Attorney Kavrukov incorporate each and every one of Defendants' General Objections To Plaintiffs First Request for the Production of Documents and Things into each of their responses to Philips' document requests, including, without limitation, objections to topics seeking information that is subject to attorney-client, work-product or other privileges and immunities.

1

## Specific Objections To The Documents To Be Produced

### Request No. 1

All DOCUMENTS and/or things RELATING TO U.S. Patent No. 5,068,846 ("the '846 Patent").

### Response To Request No. 1

Cooper & Dunham and Attorney Kavrukov object to this Request on the ground that it is unlimited in time, overbroad and unduly burdensome for a non-party and seeks information that is not related to the parties in this action or to the claims or defenses of the parties in this action and is not calculated to lead to the discovery of admissible evidence. Cooper & Dunham and Attorney Kavrukov further object to this Request to the extent it seeks information within the scope of the attorney-client privilege and/or work-product or other exemptions and immunities. Subject to and without waiving the foregoing objections, Cooper & Dunham and Attorney Kavrukov state that to the extent that any non-privileged information is relevant to this lawsuit, it should be sought from the parties to the lawsuit in the first instance, not from trial counsel.

### Request No. 2

Each COMMUNICATION between YOU and any other PERSON REGARDING the '846 Patent.

### Response To Request No. 2

Cooper & Dunham and Attorney Kavrukov object to this Request on the ground that it is unlimited in time, overbroad and unduly burdensome for a non-party and seeks information that is not related to the parties in this action or to the claims or defenses of the parties in this action and is not calculated to lead to the discovery of admissible evidence. Cooper & Dunham and Attorney Kavrukov further object to this Request to the extent it seeks information within the

scope of the attorney-client privilege and/or work-product or other exemptions and immunities. Subject to and without waiving the foregoing objections, Cooper & Dunham and Attorney Kavrukov state that to the extent that any non-privileged information is relevant to this lawsuit, it should be sought from the parties to the lawsuit in the first instance, not from trial counsel.

**Request No. 3**

Each COMMUNICATION between YOU and any PERSON who is not a CLIENT REGARDING the '846 Patent.

**Response To Request No. 3**

Cooper & Dunham and Attorney Kavrukov object to this Request on the ground that it is unlimited in time, overbroad and unduly burdensome for a non-party and seeks information that is not related to the parties in this action or to the claims or defenses of the parties in this action and is not calculated to lead to the discovery of admissible evidence.  Cooper & Dunham and Attorney Kavrukov further object to this Request to the extent it seeks information within the scope of the attorney-client privilege and/or work-product or other exemptions and immunities. Subject to and without waiving the foregoing objections, Cooper & Dunham and Attorney Kavrukov state that to the extent that any non-privileged information is relevant to this lawsuit, it should be sought from the parties to the lawsuit in the first instance, not from trial counsel.

**Request No. 4**

ALL DOCUMENTS and/or things RELATING TO the licensing of patented technology for the manufacture of CDs, including, but not limited to, any DOCUMENTS RELATING TO the licensing of patented CD technology by PHILIPS or the validity and/or enforceability of the '846 Patent.

**Response To Request No. 4**

Cooper & Dunham and Attorney Kavrukov object to this Request on the ground that it is unlimited in time, overbroad and unduly burdensome for a non-party and seeks information that is not related to the parties in this action or to the claims or defenses of the parties in this action and is not calculated to lead to the discovery of admissible evidence. Cooper & Dunham and Attorney Kavrukov further object to this Request to the extent it seeks information within the scope of the attorney-client privilege and/or work-product or other exemptions and immunities. Subject to and without waiving the foregoing objections, Cooper & Dunham and Attorney Kavrukov state that to the extent that any non-privileged information is relevant to this lawsuit, it should be sought from the parties to the lawsuit in the first instance, not from trial counsel.

**Request No. 5**

Each COMMUNICATION between YOU and any other PERSON RELATING TO the licensing of patented technology for the manufacture of CDs, including, but not limited to, COMMUNICATIONS RELATING TO the licensing of patented CD technology by PHILIPS or the validity and/or enforceability of the '846 Patent.

**Response To Request No. 5**

Cooper & Dunham and Attorney Kavrukov object to this Request on the ground that it is unlimited in time, overbroad and unduly burdensome for a non-party and seeks information that is not related to the parties in this action or to the claims or defenses of the parties in this action and is not calculated to lead to the discovery of admissible evidence. Cooper & Dunham and Attorney Kavrukov further object to this Request to the extent it seeks information within the scope of the attorney-client privilege and/or work-product or other exemptions and immunities. Subject to and without waiving the foregoing objections, Cooper & Dunham and Attorney

4

Kavrukov state that to the extent that any non-privileged information is relevant to this lawsuit, it should be sought from the parties to the lawsuit in the first instance, not from trial counsel.

**Request No. 6**

Each COMMUNICATION between YOU and any PERSON that is not a CLIENT RELATING TO the licensing of patented technology for the manufacture of CDs, including, but not limited to, COMMUNICATIONS RELATING TO the licensing of patented CD technology by PHILIPS or the validity and/or enforceability of the '846 Patent.

**Response To Request No. 6**

Cooper & Dunham and Attorney Kavrukov object to this Request on the ground that it is unlimited in time, overbroad and unduly burdensome for a non-party and seeks information that is not related to the parties in this action or to the claims or defenses of the parties in this action and is not calculated to lead to the discovery of admissible evidence. Cooper & Dunham and Attorney Kavrukov further object to this Request to the extent it seeks information within the scope of the attorney-client privilege and/or work-product or other exemptions and immunities. Subject to and without waiving the foregoing objections, Cooper & Dunham and Attorney Kavrukov state that to the extent that any non-privileged information is relevant to this lawsuit, it should be sought from the parties to the lawsuit in the first instance, not from trial counsel.

**Request No. 7**

Each COMMUNICATION between YOU and any other PERSON REGARDING the licensing of patented technology for the manufacture of CDs, including, but not limited to, PHILIPS's CD licensing program.

**Response To Request No. 7**

Cooper & Dunham and Attorney Kavrukov object to this Request on the ground that it is

5

unlimited in time, overbroad and unduly burdensome for a non-party and seeks information that is not related to the parties in this action or to the claims or defenses of the parties in this action and is not calculated to lead to the discovery of admissible evidence.  Cooper & Dunham and Attorney Kavrukov further object to this Request to the extent it seeks information within the scope of the attorney-client privilege and/or work-product or other exemptions and immunities. Subject to and without waiving the foregoing objections, Cooper & Dunham and Attorney Kavrukov state that to the extent that any non-privileged information is relevant to this lawsuit, it should be sought from the parties to the lawsuit in the first instance, not from trial counsel.

**Request No. 8**

To the extent not otherwise requested here, each ANALYSIS of the '846 Patent by YOU or by any other PERSON, including, but not limited to, opinions of counsel, prior art references, and drafts of, and revisions to, opinions of counsel.

**Response To Request No. 8**

Cooper & Dunham and Attorney Kavrukov object to this Request on the ground that it is unlimited in time, overbroad and unduly burdensome for a non-party and seeks information that is not related to the parties in this action or to the claims or defenses of the parties in this action and is not calculated to lead to the discovery of admissible evidence.  Cooper & Dunham and Attorney Kavrukov further object to this Request to the extent it seeks information within the scope of the attorney-client privilege and/or work-product or other exemptions and immunities. Subject to and without waiving the foregoing objections, Cooper & Dunham and Attorney Kavrukov state that to the extent that any non-privileged information is relevant to this lawsuit, it should be sought from the parties to the lawsuit in the first instance, not from trial counsel.

**Request No. 9**

To the extent not otherwise requested here, each ANALYSIS of patented technology for the manufacture of CDs by YOU or by any other PERSON, including, but not limited to, opinions of counsel, prior art references, and drafts of, and revisions to, opinions of counsel.

**Response To Request No. 9**

Cooper & Dunham and Attorney Kavrukov object to this Request on the ground that it is unlimited in time, overbroad and unduly burdensome for a non-party and seeks information that is not related to the parties in this action or to the claims or defenses of the parties in this action and is not calculated to lead to the discovery of admissible evidence.  Cooper & Dunham and Attorney Kavrukov further object to this Request to the extent it seeks information within the scope of the attorney-client privilege and/or work-product or other exemptions and immunities. Subject to and without waiving the foregoing objections, Cooper & Dunham and Attorney Kavrukov state that to the extent that any non-privileged information is relevant to this lawsuit, it should be sought from the parties to the lawsuit in the first instance, not from trial counsel.

COOPER & DUNHAM LLP

Dated:  June 6, 2008                    By: /s/ William E. Pelton
                                               Ivan Kavrukov (IK 4452)
                                               William E. Pelton (WP 1850)
                                               Tonia A. Sayour (TS 7208)
                                               Gregory J. Carbo (GC 8459)
                                               1185 Avenue of the Americas
                                               New York, New York 10036
                                               Tel:  (212) 278-0400
                                             Fax:  (212) 391-7550
                                             wpelton@cooperdunham.com
                                             ikavrukov@cooperdunham.com
                                             gcarbo@cooperdunham.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing **COOPER & DUNHAM LLP'S AND IVAN S. KAVRUKOV, ESQ.'S OBJECTIONS TO PLAINTIFFS' SUBPOENAS** *DUCES TECUM* **DATED MAY 23, 2008** was delivered by e-mail and first class mail this 6th day of June 2008, addressed as follows:

> Edward D. Johnson
> MAYER BROWN LLP
> Two Palo Alto Square, Suite 300
> 3000 El Camino Real
> Palo Alto, California 94306-2112
> wjohnson@mayerbrown.com
>
> Vince P. Kovalick
> John F. Hornick
> Samuel C. Bass
> FINNEGAN, HENDERSON, FARABOW,
>   GARRETT & DUNNER, L.L.P.
> 901 New York Avenue, N.W.
> Washington, D.C. 20001
> vince.kovalick@finnegan.com
> John.Hornick@finnegan.com
> Samuel.Bass@finnegan.com
>
> Christopher J. Houpt
> MAYER BROWN LLP
> 1675 Broadway
> New York, New York 10019
> choupt@mayerbrown.com

> /s/ Gregory J. Carbo
> Gregory J. Carbo

# Exhibit F

# COOPER & DUNHAM LLP

ATTORNEYS AT LAW

1185 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10036

TELEPHONE: (212) 278-0400

IVAN S. KAVRUKOV
PETER D. MURRAY
WILLIAM E. PELTON
ROBERT D. KATZ
PAUL TENG
WENDY E. MILLER
PETER J. PHILLIPS
RICHARD F. JAWORSKI
BRIAN J. AMOS
GREGORY J. CARBO
MICHAEL LIN*
JENNIFER RAK

NORMAN H. ZIVIN
JOHN P. WHITE
ROBERT B.G. HOROWITZ
ERIC D. KIRSCH
GARY J. GERSHIK
ROBERT T. MALDONADO
RICHARD S. MILNER
AUDE GERSPACHER
TONIA A. SAYOUR
HINDY R. DYM
LETITIA A. DEGRASSE*

*NEW YORK STATE BAR ADMISSION PENDING

June 2, 2008

FACSIMILE: (212) 391-0525
(212) 391-0526
(212) 391-0630
(212) 391-0631
(212) 827-0247

OF COUNSEL
CHRISTOPHER C. DUNHAM

SCIENTIFIC ADVISOR
JAMES R. MAJOR, D. PHIL.
PAMELA J. SAVAGE, PH.D.
JACK ROSA, PH.D.

REGISTERED PATENT AGENT
ANDREW CHUNG, B.E.

FOUNDED 1887
www.cooperdunham.com

## BY E-MAIL

John Hornick, Esq.
Finnegan Henderson Farabow
   Garrett & Dunner LLP
901 New York Avenue, NW
Washington, DC 20001-4413

Re:     Koninklijke Philips Electronics N.V., et al. v. Cinram International Inc. et al.,
        Civil Action No.: 08-00515 (CLB)

Dear John:

We write with regard to Philips' subpoenas *duces tecum* served on Cooper & Dunham and Ivan S. Kavrukov, Esq. on May 23, 2008. We believe that the information requested by the subpoenas violates Rue 45 of the Federal Rules of Civil Procedure as the requests are not only overly broad, unduly burdensome and irrelevant to the claims and defenses of the parties, but they seek information that is both work product and attorney-client privileged. Furthermore, the subpoenas seek information that could be obtained in the first instance from the parties in this action, and we don't see any legal basis to burden a non-party, especially, trial counsel, with such a request, particularly where discovery is in its initial stages.

Please let us know as soon as possible whether Philips will withdraw its subpoenas so that we can determine whether we will move to quash. We note that if Philips does not withdraw its subpoenas, we will ask the Court for appropriate relief, including our attorneys' fees in connection with resisting the subpoenas. We are generally available on Tuesday, June 3 and Wednesday, June 4 to discuss these issues. We look forward to hearing from you.

John Hornick, Esq.
June 2, 2008
Page 2

We look forward to your response.

Sincerely,

Gregory J. Carbo

Cc: Vince P. Kovalick, Esq. (by e-mail)
    Samuel C. Bass, Esq. (by e-mail)
    Edward D. Johnson, Esq. (by e-mail)
    Christopher P. Houpt, Esq. (by e-mail)

# Exhibit G



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER** LLP

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

VINCENT P. KOVALICK
202.408.4107
vince.kovalick@finnegan.com

June 5, 2008

Gregory Carbo, Esq.                                  **VIA FACSIMILE**
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, NY 10036

*Koninklijke Philips Electronics N.V., et al. v. Cinram International Inc. et al.,*
Civil Action No.: 08:00515 (CLB)

Dear Greg:

I am responding to your recent letters concerning the inventor depositions and our subpoenas to Ivan Kavrukov and Cooper & Dunham.

Concerning the inventor depositions, as I have previously explained, the inventors reside in the Netherlands and have long ago retired from Philips. Given their ages, the inventors do not feel comfortable traveling to the U.S. for a deposition. They have agreed, however reluctantly, to be deposed, but only in the Netherlands. Given their respective vacation plans in June, the dates in July that we have proposed are the first dates available for both depositions to occur in one trip. We will agree that the depositions can be used in all of the cases so that you can split the travel costs between the several defendants that you represent. Alternatively, we can arrange to conduct the depositions telephonically. Please let us know if you want to proceed on those dates so that we can finalize the schedule.

Concerning the deposition of Algy Tamoshunas, Mr. Tamoshunas has agreed to be deposed on either June 26 or 27th. Please let us know if you want to proceed on one of these dates so that we can finalize the schedule. Concerning the deposition of Simon Cohen, we will suggest deposition dates if and when we can confirm that Mr. Cohen is available.

Concerning the subpoenas to Ivan and Cooper & Dunham, Philips will not withdraw these subpoenas. As you know, patent cases present unique discovery issues for firms who both advise the industry on a patent and also litigate the patent. However, as a compromise, we would agree to narrow the topics for now. In particular, we would agree to limit the topics of documents to Request Nos. 1, 2, 3, and 7 in the subpoenas. Moreover, we would agree to limit topic 7 to "each communication between you and any other person regarding Philips' CD licensing program."

Gregory Carbo, Esq.
Cooper and Dunham, LLP
June 5, 2008
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

     We understand that Ivan, or other lawyers at Cooper & Dunham, have communicated with third party companies that are not firm clients concerning the '846 patent, and/or the Philips licensing program. Obviously, such communications are not privileged. Moreover, Ivan or other lawyers at Cooper & Dunham may have communicated with companies at a time before an attorney-client relationship was established. Again, such communications would not have been privileged. As to privileged documents, we can resolve any disputes after we review your privilege logs.

                     Sincerely,

                     Samuel C. Bass for
                     Vincent P. Kovalick

VPK/dl

cc:    John Hornick, Esq.
       Brian Wieghaus, Esq.
       Ward Johnson, Esq.

1611392_1