**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does No. 1 through 100,<br><br>Defendants and Counterclaim Plaintiffs. | Civil Action No.<br>08 CV 00515 (CLB)(MDF)<br><br>Magistrate Judge Mark D. Fox |

**MEMORANDUM OF LAW IN SUPPORT OF PHILIPS' MOTION TO DISMISS CINRAM'S SECOND AMENDED PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS**

# TABLE OF CONTENTS

I. INTRODUCTION ....1

II. ARGUMENT ....2

A. Cinram's Counterclaim For Patent Misuse Should Be Dismissed ....2

1. Cinram Fails to Plead the Elements of Patent Misuse ....2

2. Cinram's Nonessentiality Argument Does Not Plead Patent Misuse As a Matter of Law ....3

3. Cinram Alleges No Non-conclusory Anticompetitive Effect ....6

4. Cinram's Other Allegations Do Not Help to State the Claim....7

B. Cinram Failed to Plead Necessary Elements of Tortious Interference ....9

1. There is No Case or Controversy Regarding Counterclaim Count IV ....10

2. Cinram Failed To Allege That Any Specific Contracts or Business Relationships Have Been Damaged, in Counterclaim Counts IV & V....12

3. Cinram Failed to Plead Knowledge and Intentional Interference, in Counterclaim Counts IV & V ....15

4. Cinram Cannot State a Tortious Interference Claim Based on Philips' Patent Notice Letters ....16

5. Cinram's Allegations About Philips IPS and the '512 Patent Do Not Support These Claims ....19

III. CONCLUSION....19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................2

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007)....................2, 13

*Brulotte v. Thys Co.*,
379 U.S. 29, 13 L. Ed. 2d 99, 85 S. Ct. 176 (1964)....................4

*C.R. Bard, Inc. v. M3 Systems, Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)....................2, 8

*Church of Scientology of Cal. v. United States*,
506 U.S. 9, 121 L. Ed. 2d 313, 113 S. Ct. 447 (1992)....................12

*City of Erie v. Paps*,
529 U.S. 277 (2000)....................12

*County of Los Angeles v. Davis*,
*440 U.S. 625, 59 L. Ed. 2d 642, 99 S. Ct. 1379 (1979)*....................12

*Discover Group, Inc. v. Lexmark International, Inc.*,
333 F. Supp. 2d 78 (E.D.N.Y. 2004)....................10

*GP Industrial, Inc. v. Eran Industrial, Inc.*,
500 F.3d 1369 (Fed. Cir. 2007)....................16, 17, 18

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
362 F.3d 1367 (Fed. Cir. 2004)....................17

*Goldhirsh Group. v. Alpert*,
107 F.3d 105 (2d Cir. 1997)....................10

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007)....................2

*Leesona Corp. v. Varta Batteries, Inc.*,
522 F. Supp. 1304 (S.D.N.Y. 1981)....................9

*Mills v. Green*,
159 U.S. 651, 40 L. Ed. 293, 16 S. Ct. 132 (1895)....................12

*U.S. Philips Corp. v. International Trade Commission*,
424 F.3d 1179 (Fed. Cir. 2005)....................2, 3, 4, 5

*Powell v. McCormack*,
*395 U.S. 486, 23 L. Ed. 2d 491, 89 S. Ct. 1944 (1969)*....................12

*United States v. W. T. Grant Co.*,
*345 U.S. 629, 97 L. Ed. 1303, 73 S. Ct. 894 (1953)*....................12

*Va. Panel Corp. v. MAC Panel Co.*,
133 F.3d 860 (Fed. Cir. 1997)....................17

*Virtue v. Creamery Package Manufacturing Co.*,
227 U.S. 8 (1913)....................16

*White River Amusement Public, Inc. v. Town of Hartford*,
481 F.3d 163 (2d Cir. 2007)....................12

*Envirosource, Inc. v. Horsehead Res. Dev. Co.*,
No. 95 Civ. 5106 (TPG), 1997 WL 525403 (S.D.N.Y. Aug. 21, 1997)....................13

*Judkins v. HT Window Fashion Corp.*,
No. 2007-1434, 2008 WL 930501 (Fed. Cir. April 8, 2008)....................17

*Maalouf v. Salomon Smith Barney, Inc.*,
No. 02 Civ. 4770 (SAS), 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003)....................13

*U.S. Philips Corp. v. Princo Corp.*,
Nos. 02 Civ. 246, 04 Civ. 2825 (S.D.N.Y. Jan. 24, 2005)....................17

*Philips v. ADS et al.*,
Civ. No. 08-cv-4068 (CLB) (GAY) (S.D.N.Y.)....................1

*Philips v. Entertainment Distribution Co. et al.*,
Civ. No. 08-cv-4070 (SCR) (S.D.N.Y.)....................1

*Philips v. Optical Experts Manufacturing, Inc.*,
Civ. No. 08-cv-4071 (KMK) (S.D.N.Y.)....................1, 4

**FEDERAL STATUTES**

35 U.S.C. § 287....................16

Lanham Act, 15 U.S.C. §1125(a)....................17

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively, "Philips") move to dismiss the amended counterclaim for patent misuse and the two amended counterclaims for tortious interference with a business relationship filed by Cinram International, Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively "Cinram").

Philips moved to dismiss such counterclaims once before (Dkt. 21), after Cinram amended them once under Fed. R. Civ. P. 15(a)(1)(A). Cinram then moved for leave to amend the challenged counterclaims a second time and submitted with their motion a proposed pleading entitled "Second Amended Answer and Counterclaim" ("Motion for Leave," Dkt. 28). Philips and Cinram then stipulated that Cinram could file their Second Amended Answer and Counterclaim, and that Philips would withdraw its motion to dismiss, without prejudice to challenge Cinram's amended counterclaims (Dkt. 30). On July 17, 2008, the Court entered Cinram's Second Amended Answer and Counterclaim (Dkt. 42). Philips now renews its motion to dismiss Cinram's amended counterclaims for patent misuse and tortious interference. After amending twice, Cinram failed to state such claims, nor can they do so under applicable law, and therefore Counterclaim Counts III, IV, and V should be dismissed with prejudice.[1]

---

[1] Virtually identical counterclaims have been asserted in four actions co-pending in this Court. Specifically, such counterclaims are the subject of Philips' July 21, 2008 motions to dismiss pending before Judge Yanthis in *Philips v. ADS et al*, Civ. No. 08-cv-4068 (CLB) (GAY) (S.D.N.Y.), and before Judge Robinson in *Philips v. Entertainment Distribution Co. et al*, Civ. No. 08-cv-4070 (SCR) (S.D.N.Y.), and of Philips' request for a pre-motion conference to Judge Karas in *Philips v. Optical Experts Manufacturing, Inc.*, Civ. No. 08-cv-4071 (KMK) (S.D.N.Y.). On July 30, 2008, counsel for all parties in the *Philips v. Optical Experts* action (who are the same counsel for all parties in this (*Philips v. Cinram*) action and the *Philips v. Entertainment Distribution Co.* action, and for Philips and most of the defendants in the *Philips v. ADS* action) jointly submitted a letter to Judge Karas requesting that he consider having all of these cases transferred to him for coordination or consolidation (Bass Declaration, Ex. A).

## II. ARGUMENT

### A. Cinram's Counterclaim For Patent Misuse Should Be Dismissed

#### 1. Cinram Fails to Plead the Elements of Patent Misuse

Count III of Cinram's Second Amended Counterclaims accuses Philips of misusing the patent in suit, No. 5, 068,846 ("the '846 patent"). Cinram's twice-amended patent misuse counterclaim is now much longer, but still fails to allege patent misuse. The lynchpin of the amended counterclaim is that Philips allegedly misused the '846 patent by falsely claiming that the patent is essential for compliance with Philips' Standard Specifications for CD-Discs. Cinram requests a declaratory judgment that the '846 patent is unenforceable based on such alleged misuse. (Counterclaim ¶ 42) Cinram adds other allegations, discussed below, but they all depend on the lynchpin, as Cinram clearly recognized in their Motion for Leave (Dkt. 28 at 9-11).

Cinram's counterclaim for declaratory judgment of patent misuse should be dismissed because Cinram failed to plead the elements necessary to support such a claim. In determining the existence of patent misuse, "the key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005); *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). Moreover, the U.S. Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), requires plaintiffs to plead sufficient facts to make claims plausible on their face. The Second Circuit has adopted *Bell Atlantic* for all cases. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143, 155-58 (2d Cir. 2007). Despite its length, Cinram's twice-amended counterclaim fails to allege the elements of patent misuse.

### 2. Cinram's Nonessentiality Argument Does Not Plead Patent Misuse As a Matter of Law

Cinram alleges only that Philips misused its patent rights by claiming that the '846 Patent is essential for compliance with the Standard Specifications for CD-Discs, and that as a result of alleged manufacturing innovations by Cinram, the '846 Patent is no longer "essential" for manufacturing CD-Discs that meet the Standard Specifications. (Counterclaim ¶¶ 26, 28, 34, 37) Philips' alleged act cannot be the basis for a counterclaim of patent misuse, and Cinram's alleged innovation is irrelevant to the elements of a patent misuse claim. The Court of Appeals for the Federal Circuit has explained that a claim for patent misuse cannot be based on questions raised by technological advancements as to whether a particular patent within a package license is still "essential" for compliance with the relevant standards. *U.S. Philips*, 424 F.3d at 1189-90, 1196-98.

Philips made this point in its first motion to dismiss (Dkt. 22 at 2-3). Cinram responded that *U.S. Philips* does not apply, but admitted that "*U.S. Philips* dealt with whether it was patent misuse to include in a patent license both 'essential' and non-'essential' patents when it made no difference to the royalty rate or amount" (Dkt. 22 at 10), and that "[h]ere, while the '846 Patent had been part of a package license [as in *U.S. Philips*], all the other patents in the package have expired or were otherwise not relevant to the CDs in issue." *Id*. at 11. Because this case and *U.S. Philips* both involve a package license for essential patents, the *U.S. Philips'* ruling has as much force here as it did there. The fact that all of the relevant patents in the Cinram package license have expired, except the '846 Patent in suit (admitted by Cinram in Counterclaim ¶ 25), is irrelevant. In ¶¶ 26 and 28 of their patent misuse counterclaim, Cinram alleges not that Philips improperly designated the '846 Patent as essential, but that it is no longer essential because Cinram allegedly found a way to comply with the Standard Specifications without practicing the '846 Patent. How can Cinram's alleged innovation turn Philips' assertion of the '846 Patent's essentiality into patent misuse? The answer is that it cannot.

On July 18, 2008, Philips requested a pre-motion conference with Judge Karas in *Philips v. Optical Experts Manufacturing, Inc.*, Civ. No. 08-cv-4071 (KMK) (S.D.N.Y.), seeking permission to move to dismiss, *inter alia*, defendant Optical Experts Manufacturing, Inc.'s ("OEM") patent misuse counterclaim, which is essentially the same as Cinram's patent misuse counterclaim. Philips cited the *U.S. Philips* case, as it does here. OEM, which is represented by the same counsel as Cinram, responded as follows:

> Philips argues that it could not have misused the ['846 Patent] by continuing to list it as an "essential" member of a patent pool, thereby seeking to extend the life and scope of the patent pool, even if the patent has been made obsolete by advances in technology such that the patent is neither essential nor used by defendant. Philips relies for this remarkable contention solely on a case that actually refutes it: [*U.S. Philips*].
>
> Whereas in [*U.S. Philips*] the patent pool admittedly contained essential patents, and therefore the royalty would not change by the wrongful addition of an additional, non-essential, patent, in the case before this Court the '846 Patent is the only patent left in the pool. The other pool patents have expired or do not apply for other reasons. Thus, only the '846 Patent can extend the life and scope of the patent pool.
>
> [*U.S. Philips*] recognized this fundamental difference, and expressly stated that, as no party had addressed the impact of a potential temporal extension of the royalty obligation where the only unexpired patent remaining in the pool was a patent that was not in fact essential, this issue was not being addressed by [*U.S. Philips*]. *Id.* at 1195, FN 8.

Cinram's and OEM's counsel is wrong about the *U.S. Philips* case. In fact, footnote 8 of the *U.S. Philips* states as follows:

> In its amicus curiae brief, the New York Intellectual Property Association notes that, unlike the other three allegedly nonessential patents, the Iwasaki patent would expire after all of the undisputedly essential patents. As a result, the presence of the Iwasaki patent in a patent licensing package could have the effect of extending the obligation to pay royalties beyond the expiration date of the "essential" patents. A provision requiring that royalties be paid beyond the life of a patent has been held to be unenforceable. *See Brulotte v. Thys Co., 379 U.S. 29, 30, 13 L. Ed. 2d 99, 85 S. Ct. 176 (1964).* However, because neither the Commission nor the administrative law judge addressed the impact of that potential temporal extension of the royalty obligation, and none of the parties addressed that issue on appeal in their briefs, we do not address the issue here.

But the court did address the situation before this Court: a patent identified as essential under a package license, which was accepted by the licensee as essential for a period of time, is later challenged by the licensee as no longer essential because of the **licensee's** alleged

technological innovations that render inessential the admittedly once-essential patent. Specifically, the *U.S. Philips* court stated as follows with respect to *per se* patent misuse:

> Under the Commission's approach, an agreement that was perfectly lawful when executed could be challenged as per se patent misuse due to developments in the technology of which the patentees are unaware, or which have just become commercially viable. Such a rule would make patents subject to being declared unenforceable due to developments that occurred after execution of the license or were unknown to the parties at the time of licensing. Not only would such a rule render licenses subject to invalidation on grounds unknown at the time of licensing, but it would also provide a strong incentive to litigation by any licensee, since the reward for showing that even a single license in a package was "nonessential" would be to render all the patents in the package unenforceable. For that reason as well, we reject the Commission's ruling that package agreements of the sort entered into by Philips and the intervenors must be invalidated on the ground that they constitute per se patent misuse.

424 F.3d at 1197. With respect to patent misuse under a rule of reason analysis, the court also said:

> The Commission also did not address the problem, noted above, that changes in the technology for manufacturing compact discs could render some patents that were indisputably essential at the time of licensing arguably nonessential at some later point in the life of the license. To hold that a licensing agreement that satisfied the rule of reason when executed became unreasonable at some later point because of technological development would introduce substantial uncertainty into the market and displace settled commercial arrangements in favor of uncertainty that could only be resolved through expensive litigation.

*Id.* at 1198.

These principles cannot change if the formerly essential patent happens to be the last patent in a package license to expire. Thus, even in the unlikely event that the ‘846 Patent is found by this Court no longer to be essential, Cinram (and the defendants in the other three actions identified in footnote 1, *supra*) may not be in breach of the license agreement, may not owe delinquent royalties, and may not be infringing the ‘846 Patent, but Philips will **not** have committed patent misuse. In footnote 8 of *U.S. Philips*, the court did not say that a formerly essential **patent** would be unenforceable if it had the effect of extending the obligation to pay royalties beyond the expiration of the essential patents in a package license. Rather, the court said that “A **provision** requiring that royalties be paid beyond the life of a patent has been held to

be unenforceable." (Emphasis added). Thus, in view of the principles announced in *U.S. Philips*, Cinram has not and cannot state a patent misuse counterclaim.

### 3. Cinram Alleges No Non-conclusory Anticompetitive Effect

Moreover, Cinram still fails to allege an anticompetitive effect, facts supporting such an allegation, or a nexus between their allegations and patent misuse. Paragraph 30 alleges that Philips "has attempted to divert a Cinram customer to another supplier of CDs," but provides no facts to make such an allegation plausible on its face, as required by *Bell Atlantic*, or to link such alleged diversion to patent misuse. Cinram failed to identify such alleged Cinram customer, and does not allege that the customer was actually diverted, that such alleged diversion was the result of patent misuse and was anticompetitive, that Cinram was damaged by such alleged act, or that such damage resulted from patent misuse.

Paragraph 36, which contains the only other allegation of anticompetitive effect, suffers the same defect:

> The effect of plaintiffs' wrongful behavior is to restrain competition in the market of the CD types at issue by diverting Cinram customers to other suppliers on false pretenses, with the intention of putting Cinram out of the business of making and selling the CD types at issue.

Cinram alleges no facts to support such allegation, or a nexus between the bare allegation and patent misuse. Where has competition been restrained? Which Cinram customers have been diverted to other suppliers? Who are the suppliers? What are the false pretenses? What is the nexus between the alleged patent misuse and the alleged diversion and damage? How does Philips' desire that Cinram honor their CD-Disc patent license agreement -- which Philips has not terminated -- evidence an intention to put Cinram out of the business of making and selling CD Discs? The quoted allegation is contrary to the facts alleged in Philips' First Amended Complaint, which simply seeks royalties for CD-Discs imported, made, and/or sold by Cinram that comply with the Standard Specifications. How does this restrain competition, divert customers under false pretenses, attempt to put Cinram out of the CD business, or evidence

Philips' alleged intent to do so? Clearly, it does not. Thus, Cinram's allegation of anticompetitive effect is not plausible on its face and was cobbled together solely for the sake of attempting to assert a counterclaim.

**4. Cinram's Other Allegations Do Not Help to State the Claim**

Cinram has also tried to beef up their patent misuse claim in several other ways, asserting that:

- the wrong Philips entity is the licensor of the '846 Patent (Counterclaim ¶ 23);
- a Philips division (Philips IPS) acts on behalf of Philips with respect to enforcement of the patent in suit (Counterclaim ¶¶ 28-33);
- Philips is attempting to extend the monopoly of the expired patents in the Cinram package license, by claiming that the '846 Patent is essential, by falsely representing to Cinram customers that royalties are due under the '846 Patent for all types of CDs, and by alleging to Cinram's customers (Eagles and H&R Block) that Cinram does not pay royalties on all CDs made and sold by Cinram (Counterclaim ¶¶ 37, 38, 40); and
- Philips misused the '846 Patent by falsely representing that royalties are due to Philips for another Philips patent (the '512 Patent), not in suit (Counterclaim ¶ 39).

As Philips mentioned above, all of these allegations depend on the lynchpin: but for the dispute between Philips and Cinram regarding the essentiality of the '846 Patent, there would be no claims and no counterclaims. But for Cinram's allegation that the '846 Patent is not essential, none of these allegations could stand on their own and establish patent misuse.

Moreover, the first two types of allegations are irrelevant to a patent misuse defense. They support none of the elements of patent misuse. What difference does it make which Philips entity owns the patent or enforces the '846 Patent, as long as the patent owner is a plaintiff in this action? Regardless of which Philips company asserts the '846 Patent, how do such allegations support a counterclaim that Philips is improperly imposing conditions that derive their force from the patent, or that Philips has impermissibly broadened the scope of the patent grant with anticompetitive effect? Cinram does not and cannot assert that neither Philips entity owns the

'846 Patent, or that Cinram never had a valid license. Thus, such allegations add no plausibility to a patent misuse counterclaim.

Cinram's allegations that Philips is somehow attempting to extend the monopoly of the expired patents in the Cinram package license are convoluted, but one thing is clear: Cinram hopes to save their patent misuse counterclaim by invoking some magic words of patent misuse jurisprudence, namely "seeking falsely to extend the temporal monopoly U.S. Philips claimed for the expired Philips Patents from the original package license" (Counterclaim ¶ 40, see almost identical wording in ¶¶ 37 and 38). But Cinram failed to provide any facts to make plausible on its face the allegation that Philips' assertion of the essentiality of the '846 Patent (Counterclaim ¶ 37), or Philips' alleged attempts to collect royalties for all types of CDs (Counterclaim ¶¶ 38, 40), somehow extend unidentified expired patents. Moreover, this raw allegation adds nothing to the counterclaim, which rises and falls on whether Philips improperly did anything to broaden the scope of the '846 Patent with anticompetitive effect. Again, such allegations add no plausibility to this counterclaim.

Finally, patent misuse is a viable defense only until the alleged misuse has been purged. *C.R. Bard*, 157 F.3d at 1372. This requirement kills Cinram's remaining allegations, namely, that Philips allegedly misused the '846 Patent by attempting to extend the expired patents, by allegedly telling Eagles and H&R Block that Cinram does not pay CD royalties (Counterclaim ¶ 40), and that Philips misused the '846 Patent by representing to Eagles and H&R Block that royalties are owed to Philips under another Philips patent, not in suit (Counterclaim ¶ 39). As Cinram admitted in their opposition to Philips' first motion to dismiss this counterclaim (Dkt. 28 at 8):

> At the direction of the Court [during the March 7, 2008 hearing], the parties met privately in a jury room and resolved the issue in part. Philips agreed to send to those customers of Cinram who received such letters [i.e., Eagles and H&R Block], new letters limited to . . . [the] '846 Patent . . . and without the false statements. Philips agreed that all future letters would be limited to the '846 Patent and would not contain the other false and misleading statements about which Cinram complained. However, Philips would not agree to admit to the recipients that any statements contained in those letters were false or misleading.

In view of Cinram's admission that any case or controversy between Cinram and Philips relating to Philips' letters to Eagles and H&R Block was resolved before Cinram filed their patent misuse counterclaim, any alleged patent misuse based on these facts was purged.[2]

Thus, such allegations do not support a patent misuse counterclaim or make Cinram's misuse counterclaim any more plausible. Even if Philips and Cinram had not resolved this issue, Cinram failed to provide any allegations showing a nexus between such alleged acts and the elements of a patent misuse defense. Such allegations do not state a claim that Philips imposed any conditions that derive their force from the patent, or that Philips impermissibly broadened the scope of the patent grant with anticompetitive effect.

For these reasons, Cinram's twice-amended counterclaim for declaratory judgment of patent misuse should be dismissed with prejudice.

**B. Cinram Failed to Plead Necessary Elements of Tortious Interference**

In Count IV of their Second Amended Counterclaims, Cinram accuses Philips of tortious interference with a business relationship, based on letters Philips sent to two companies who allegedly purchased CD-Discs from Cinram, stating that royalties were owed to Philips on those CD-Discs. In Counts IV and V of their Second Amended Counterclaims, Cinram accuses Philips of tortious interference with a business relationship based on the alleged removal of Cinram from a list maintained on Philips' website.

Cinram asserted Counterclaim Count IV in their original Answer, then amended it and added Count V. Philips then moved to dismiss. Cinram then amended these counterclaims

---

[2] Moreover, the '512 Patent is not in suit. Only the patent in suit can be subject to a patent misuse defense, and the '846 Patent cannot be held unenforceable based on the alleged misuse of a different patent. *Leesona Corp. v. Varta Batteries, Inc.*, 522 F. Supp. 1304 (S.D.N.Y. 1981). Moreover, Cinram makes no allegations regarding the '512 Patent that they do not also assert regarding the '846 Patent, and therefore the '512 Patent adds nothing to Cinram's patent misuse counterclaim, which is inadequate for the reasons set forth in this motion. Thus, the '512 Patent is irrelevant.

again, but failed to fix their defects. Because Cinram failed to plead the necessary elements of a tortious interference claim, and obviously cannot do so after three tries, Counts IV and V of their counterclaims should be dismissed with prejudice.

Under New York law, to plead a valid claim of tortious interference with business relations, Cinram must allege that "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Discover Group, Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 86 (E.D.N.Y. 2004) (quoting *Goldhirsh Group. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997)).

Cinram's counterclaims for tortious interference with a business relationship should be dismissed for four independent reasons, namely, (1) there is no case or controversy between Philips and Cinram with respect to Counterclaim Count IV, (2) Cinram failed to identify any specific contracts that have been breached or specific business relationships that have been damaged due to Philips' alleged actions with respect to Counterclaim Counts IV and V, (3) Cinram failed to allege that Philips had knowledge of contracts or business relationships and intentionally interfered with them with respect to Counterclaim Counts IV and V, and (4) Philips' patent notice letters, about which Cinram complains, are protected unless objectively baseless, and Cinram has not and cannot make any such allegations.

**1. There is No Case or Controversy Regarding Counterclaim Count IV**

Paragraphs 44, 45, 47-52, and 57 of Counterclaim Count IV are based on a January 31, 2008 letter Philips sent to Eagles Recording Company and a February 13, 2008 email Philips sent to H&R Block, who Cinram alleges are their customers. Cinram alleges that such communications contained false statements that tortiously interfered with Cinram's business. On February 21, 2008, Cinram sent this Court a letter complaining about those very communications and requesting a pre-motion conference "to discuss their proposed motion for

preliminary relief directing plaintiffs to refrain from sending misleading threats to defendants' customers and to produce copies of such communications to allow for remedial advice to customers." (Bass Declaration, Ex. B)

On March 7, 2008, the Court held such pre-motion conference on the record, and sent the parties into the jury room to attempt to resolve this problem. As Cinram admitted in their opposition to Philips' first motion to dismiss this counterclaim (Dkt. 28 at 8):

> At the direction of the Court [during the March 7, 2008 hearing], the parties met privately in a jury room and resolved the issue in part. Philips agreed to send to those customers of Cinram who received such letters [i.e., Eagles and H&R Block], new letters limited to . . . [the] '846 Patent . . . and without the false statements. Philips agreed that all future letters would be limited to the '846 Patent and would not contain the other false and misleading statements about which Cinram complained. However, Philips would not agree to admit to the recipients that any statements contained in those letters were false or misleading.

Before leaving the courthouse on March 7, Philips and Cinram reported to the Court that they had resolved the dispute and that no further action would be requested or required from the Court. On March 20, 2008, the Court made the following minute entry "Discovery Hearing held on 3/7/2008. Discovery issues are resolved by the Court." Although the Court referred to a "discovery hearing," Cinram's pre-motion conference was the only issue before the Court that day. Thus, from the Court's perspective, and Philips' perspective, and even from Cinram's perspective as quoted above, this problem was resolved on March 7, 2008.

Philips then memorialized the jury-room agreement (Bass Decl., Ex. C), sent new letters to Eagles and H&R Block (consistent with the March 7, 2008 agreement), and heard no complaints from Cinram that such letters were inaccurate, improper, or not in compliance with the parties' agreement, and Cinram's counterclaim does not mention the later letters. Thus, Philips' and Cinram's agreement eliminated any case or controversy between them with respect to the Eagles and H&R Block letters.[3]

---

[3] Cinram mentions one other Philips letter, namely, Philips' alleged April 30, 2008 letter to Digital Excellence LLC (Counterclaim ¶ 53). However, Cinram does not allege that Digital Excellence is a Cinram customer, that such letter contained any incorrect statements, or that

(continued on next page)

Absent a case or controversy between Philips and Cinram, Counterclaim Count IV must be dismissed. *City of Erie v. Paps*, 529 U.S. 277 (2000). In *City of Erie*, the U.S. Supreme Court stated as follows:

> "'[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *County of Los Angeles v. Davis, 440 U.S. 625, 631, 59 L. Ed. 2d 642, 99 S. Ct. 1379 (1979)* (quoting *Powell v. McCormack, 395 U.S. 486, 496, 23 L. Ed. 2d 491, 89 S. Ct. 1944 (1969))*. The underlying concern is that, when the challenged conduct ceases such that "'there is no reasonable expectation that the wrong will be repeated,'" *United States v. W. T. Grant Co., 345 U.S. 629, 633, 97 L. Ed. 1303, 73 S. Ct. 894 (1953)*, then it becomes impossible for the court to grant "'any effectual relief whatever' to [the] prevailing party," *Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 121 L. Ed. 2d 313, 113 S. Ct. 447 (1992)* (quoting *Mills v. Green, 159 U.S. 651, 653, 40 L. Ed. 293, 16 S. Ct. 132 (1895))*. In that case, any opinion as to the legality of the challenged action would be advisory.

529 U.S. at 287; *accord White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 167-68 (2d Cir. 2007). The issues here are no longer live and Cinram has no reasonable expectation that they will be repeated. Importantly, the reason Cinram has no reasonable expectation that this problem will be repeated is that Cinram sought relief from the Court and the parties worked out a deal. Cinram could have chosen not to accept any deal, and to insist on litigating the alleged wrong. Instead, they chose to compromise, and therefore Counterclaim Count IV is now moot.

### 2. Cinram Failed To Allege That Any Specific Contracts or Business Relationships Have Been Damaged, in Counterclaim Counts IV & V

To satisfy the first element of a claim for tortious interference with a business relationship, Cinram must allege that a valid third party contract was breached or that a specific business relationship was damaged as a result of Philips' conduct. *Maalouf v. Salomon Smith*

(continued from previous page)
Cinram was damaged by such letter in any way. Thus, Cinram also alleges no case or controversy between Philips and Cinram with respect to the Digital Excellence letter.

*Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2003 WL 1858153, at *8 (S.D.N.Y. Apr. 10, 2003); *Envirosource, Inc. v. Horsehead Res. Dev. Co.*, No. 95 Civ. 5106 (TPG), 1997 WL 525403, at *2 (S.D.N.Y. Aug. 21, 1997) (finding vague allegation that party interfered with "at least 5 prospective customers" inadequate as a matter of law). Again, *Bell Atlantic* requires enough facts to make the claim plausible on its face. 127 S. Ct. at 1974.

Cinram has not and cannot plead such facts in Counterclaim Counts IV or V. Cinram failed to allege that even one contract was breached or that any specific business relationship was damaged as the result of Philips' alleged letters. In fact, Cinram failed to allege even that their alleged business relationships with Eagles or H&R Block -- who are identified in Counterclaim Count IV -- were harmed in any way. Although Cinram alleges that Philips' statements contained in the January 30, 2008 letter were "designed" or "intended" "to harm and disrupt Cinram's business relationship with Eagles" and for "frightening Eagles into changing its supplier for CDs" (Counterclaim ¶¶ 49, 50, 51), they carefully avoid alleging any actual harm or disruption of such relationship, or that Eagles actually changed suppliers. Similarly, Cinram alleges that "Philips improperly attempted to divert H&R Block to another supplier . . . based on the allegations made in its February 13 letter" (Counterclaim ¶ 52), but failed to allege that H&R Block actually changed suppliers.

Cinram's only allegation of actual harm is the following, which concludes this counterclaim:

> As a direct result of the knowingly false and misleading allegations caused by plaintiffs to be made, Cinram's business relationship with its customers and Cinram's good will have been harmed causing Cinram damages of a currently unknown amount.

(Counterclaim ¶ 57). Such allegation fails to identify any valid third party contract that was breached or any specific business relationship damaged as a result of Philips' conduct, and the detailed allegations of this counterclaim -- discussed above -- clearly show that no such breach or damage can be alleged. Because Cinram failed to identify any breached third party contracts or

specific damaged business relationships, Cinram's Counterclaim IV for tortious interference with a business relationship should be dismissed on this basis alone.

With respect to Counterclaim Count V, which relates to Philips' alleged removal of Cinram from a website list (Cinram does not allege what kind of list), Cinram alleges no valid third party contract that was breached or a specific business relationship they claim was damaged as a result of Philips' conduct. Counterclaim ¶ 60 alleges that Philips made "threats against customers who may consider buying CDs from companies not on" Philips' website list, but identifies no such threats or customers. If Cinram can truthfully plead that such threats occurred, then they can and should identify the threatened companies in their allegations. But Cinram has failed to do so in two attempts, and should not get another chance.

In Counterclaim ¶ 63, Cinram alleges that "[a]s a direct result of" Philips' removal of Cinram's name from Philips' website list "Cinram's business relationship with its customers and Cinram's good will have been harmed." Again, Cinram identifies no such customers, no contracts breached by such customers as the alleged result of Philips' actions, and no specific business relationships damaged thereby.[4]

Cinram's Counterclaim Counts IV and V suffered these same defects in their prior incarnations, and Philips moved to dismiss them, making the same arguments. Cinram opposed the motion to dismiss. More importantly, Cinram amended these counterclaims after Philips challenged them with these same arguments, but failed to provide any specifics. This can only mean that Cinram is incapable of identifying any customer relationships that have been harmed

[4] In Counterclaim Count IV, Cinram alleged that Philips sent a letter to Digital Excellence (Counterclaim ¶ 53), and that such letter states that manufacturers who have breached their license agreements have been removed from Philips' licensee database (Counterclaim ¶ 55). Cinram also alleges that Philips' removal of Cinram from the licensee database has "prejudiced [Cinram] in its business and customer relationships" (Counterclaim ¶ 56). However, Cinram failed to allege that Digital Excellence is a Cinram customer or that Cinram's business relationship with Digital Excellence -- if it had one -- was harmed. Thus, Counterclaim paragraphs 53-56 relating to Digital Excellence do not help or save Counterclaim V.

by Philips' alleged actions, and therefore Counterclaim Counts IV and V should be dismissed with prejudice.

### 3. Cinram Failed to Plead Knowledge and Intentional Interference, in Counterclaim Counts IV & V

Cinram also failed to plead the second element of a tortious interference claim in both Counterclaim Counts IV and V, namely, that Philips knew of the specific customer relationship identified under the first element and intentionally interfered with it. Although Cinram alleges in Counterclaim Count IV, ¶ 44, that "Plaintiffs know that Eagles Recording Company . . . is a customer of Cinram for the CD types at issue," the Second Amended Counterclaims contain no facts backing up this conclusory allegation. Cinram made no such allegation in the original version of this Counterclaim, and clearly added it by amendment in an attempt to use all of the proper magic words to invoke a tortious interference claim. And they did so knowing the allegation is false. Not only does Philips' letter to Eagles fail to mention Cinram, but Philips stated on the record of the March 7, 2008 pre-motion conference that Philips did not know Eagles was a Cinram customer when it sent the January 30, 2008 letter. Cinram can make no truthful allegations to the contrary.

Cinram makes no such allegation with respect to H&R Block or Digital Excellence, and therefore this counterclaim should be dismissed because Cinram has failed to plead the knowledge and intent element of a tortious interference claim.

With respect to Counterclaim Count V, which relates to Philips' alleged removal of Cinram from a website list, Cinram makes no allegations that Philips was aware of any particular business relationships between Cinram and customers, with which Philips intentionally interfered. Although paragraphs 53-56 of Counterclaim IV allege that Philips notified Digital Excellence that Cinram's name was removed from Philips' licensee database, Philips has already pointed out that Cinram failed to allege that Digital Excellence is a Cinram customer or that Cinram's business relationship with Digital Excellence -- if it had one -- was harmed (see

footnote 4, *supra*). Moreover, Cinram failed to allege that Philips knew that Digital Excellence was or is a Cinram customer -- which may or may not be true -- and that Philips intentionally interfered with such customer, if it was one.

Again, Cinram's Counts IV and V suffered these same defects in their prior incarnations, Philips made the same arguments in its motion to dismiss, and Cinram failed to provide any specifics when they amended these counterclaims a second time. This can only mean that Cinram is incapable of alleging such facts, and therefore Counterclaim Counts IV and V should be dismissed with prejudice.

#### 4. Cinram Cannot State a Tortious Interference Claim Based on Philips' Patent Notice Letters

Cinram's tortious interference counterclaims are based on Philips' letters to Eagles and H&R Block notifying them of Philips' patent rights, and such third parties' infringement of such rights. Such letters cannot be the basis of a tortious interference claim. For the reasons set forth below, Cinram failed to state claims for tortious interference and the legal deficiency of such claims cannot be fixed.

The U.S. patent laws not only permit, but *encourage*, the patent owner to makes its rights known. *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) ("the patent laws permit a patentee to inform a potential infringer of the existence of its patent"); *see also* 35 U.S.C. § 287 (authorizing a patentee to "give notice to the public" of a patent); *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts."); *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."). Indeed, "This Court recognizes a patent holder's property interest in its lawful monopoly. . . . Because of

the excessive transactional costs of litigation, including attorney's fees, loss of a company's good will and other potential risks to business, *attempts to resolve claims or disputes by demand letter prior to filing suit are encouraged*." *U.S. Philips Corp. v. Princo Corp.*, Nos. 02 Civ. 246, 04 Civ. 2825, slip op. at 9-10 (S.D.N.Y. Jan. 24, 2005) (emphasis added).

Recognizing the importance of such communications, the Federal Circuit requires that a "plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were *objectively baseless*." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (emphasis added); *Judkins v. HT Window Fashion Corp.*, No. 2007-1434, 2008 WL 930501, at *7 (Fed. Cir. April 8, 2008) (citing *Globetrotter's* objectively baseless standard with approval and affirming denial of preliminary injunction against a patent owner accused of violating § 43(a) of the Lanham Act, 15 U.S.C. §1125(a), by sending patent infringement notice letters to defendants' actual and prospective customers). To meet this standard, a plaintiff must set forth "convincing objective factors" to show that the communication complained of lacked any objective basis. *GP Indus.*, 500 F.3d at 1375 ("subjective considerations and unconvincing objective factors" are not sufficient). According to the Federal Circuit, "objectively baseless" means that "no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent." *Judkins*, 2008 WL 930501, at *3.

Here, Cinram not only failed to acknowledge the "objectively baseless" standard, but also failed to allege the "convincing objective factors necessary to state a claim." *See id.* at 1375. Instead of alleging facts showing why Philips is not a reasonable litigant and cannot realistically expect to prevail in infringement actions against recipients of its patent infringement notice letters, Cinram makes vague, conclusory, and subjective allegations about Philips' communications with Eagles and H&R Block. For example, Cinram alleges that Philips falsely stated in its letter to Eagles that the '846 Patent is not "essential" (Counterclaim ¶ 47), and that Philips knows that the '846 Patent is not essential (Counterclaim ¶ 49). But Cinram makes no attempt to explain why the essentiality of the '846 Patent is allegedly objectively baseless. Such

omission is inexcusable here because Cinram's belief that the '846 Patent is not essential is the **ENTIRE** basis for their allegations that the statements set forth in the Eagles and H&R Block letters regarding their infringement of the '846 Patent (Counterclaim ¶¶ 47, 49, 51), and that Cinram's CD-Discs are not licensed by Philips (Counterclaim ¶¶ 47, 50, 51, 52, 56), are "false and misleading".

Cinram also asserts that Philips made such communications *subjectively* "knowing that [the statements were] false and misleading". (Counterclaim ¶ 57) However, the mere allegation that communications were made "in disregard of the truth or falsity of the purported infringement" is not sufficient to show that the assertions were objectively baseless. *GP Indus.*, 500 F.3d at 1375. As the Federal Circuit explained: "Subjective considerations of bad faith are irrelevant if the assertions are not objectively baseless." *Id.*

Cinram's vague and conclusory statements are not the convincing allegations of objective fact necessary to show that Philips' communications were objectively baseless. *See GP Indus.*, 500 F.3d at 1375. Similarly, Cinram's allegations in Counterclaim Count IV, ¶ 56 and Count V, ¶ 62 that Philips de-listed Cinram also are inadequate.

As this Court has recognized, conclusory claims are insufficient to establish that customer communications are unlawful. *Princo*, slip op. at 10. In short, Cinram has not made the allegations necessary to challenge "the essential fact that Philips is permitted to protect its property interest in its patents by communicating with alleged infringers and informing them that Philips may pursue litigation if they do not stop their infringing activities." *Id.* Nor can Cinram do so.

For these reasons, Cinram's two tortious interference counterclaims should be dismissed, and leave to amend should not be granted because Cinram cannot plead facts to support the objectively baseless standard no matter how many times their counterclaims are rewritten.[5]

[5] Cinram's Counterclaim Count V is directed to Philips' alleged removal of Cinram from a list maintained on Philips' website, not Philips' patent infringement notice letters, as in Count IV. However, Defendants appear to allege in Counterclaim Count V that the absence of a CD-Disc

(continued on next page)

**5. Cinram's Allegations About Philips IPS and the '512 Patent Do Not Support These Claims**

Cinram repeats in their two tortious interference counterclaims the allegations about Philips IPS set forth in their patent misuse counterclaim, namely, that Philips is acting in the name of Philips IPS (Counterclaim ¶¶ 46, 47, 52, 53, 57). Cinram also repeats the allegation that Philips' '512 Patent was incorrectly mentioned in the Eagles and H&R Block letters (Counterclaim ¶¶ 47, 48). Such allegations add nothing to the tortious interference counterclaims, and are irrelevant to the legal elements of such a claim.

## III. CONCLUSION

Cinram's patent misuse and tortious interference counterclaims are clearly asserted solely for the sake of attempting to subject Philips to counterclaims. For this reason, and for the reasons set forth in this motion, Cinram's counterclaim seeking a declaration of patent misuse and their two counterclaims for tortious interference with a business relationship should be dismissed with prejudice.

Date: August 4, 2008

/s/ Christopher J. Houpt
Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2380
Fax: (212) 849-5830

(continued from previous page)
manufacturer from Philips' website list constitutes notice by Philips that such manufacturer is not licensed, and therefore is infringing one or more Philips patents. Such an allegation would be inaccurate, but Philips does not wish to argue the merits here. To the extent that Defendants are asserting, in substance, that the absence of a manufacturer from Philips' website list constitutes notice of patent infringement, the objectively baseless standard, and Cinram's failure to plead sufficient facts to meet it, apply equally to Philips' motion to dismiss Cinram's Counterclaim Count V.

Vince P. Kovalick (*pro hac vice*)
John F. Hornick (*pro hac vice*)
Samuel C. Bass (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Tel: (202) 408-4000
Fax: (202) 408-4400

Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
Tel: (650) 331-2000
Fax: (650) 331-2060

*Attorneys for Plaintiffs*
*Koninklijke Philips Electronics N.V. and*
*U.S. Philips Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 4, 2008.

/s/ Christopher J. Houpt