UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.08-cv-0515 (CS)(MDF) |
| | : | |
| v. | : | ECF Case |
| | : | |
| CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does No. 1 through 100, | : | |
| | : | |
| Defendants. | : | |

**CINRAM'S MEMORANDUM IN OPPOSITION TO PHILIPS' MOTION TO DISMISS PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS**

# TABLE OF CONTENTS

I.    INTRODUCTION………………………………………………………………...1

II.    ARGUMENT………………………………………………………………………...3

    A.    The Standard for Rule 12(b)(6) Motions………………………….................3

    B.    Cinram Has Alleged Sufficient Facts To State A Plausible Claim For Patent
          Misuse Of The '846 Patent By Philips……………………………….…………4

        1.    Philips' Reliance On U.S. Philips v. ITC As Support
              For Its Claim Is Misplaced……………………………………………………6

        2.    Cinram Has Alleged Sufficient Anticompetitive Effects
              In Its Patent Misuse Counterclaim……………………………………………9

    C.    Cinram Has Pled All of the Elements Required to Maintain a Claim For Tortious
          Interference………..……………………………………………………… 12

        1.    The Controversy Has Not Been Resolved…………………………….13

        2.    Cinram Has Alleged That Business Relations
              Have Been Damaged……………………………………………………..13

        3.    Philips Had Knowledge Of Cinram's Customers and
              Intentionally Took Actions That it Knew Would Harm
              Cinram's Relationships With These Customers…………………………15

        4.    Philips' Patent "Notice" Letters Were Objectively Baseless……………16

III.    CONCLUSION…………………………………………………………………...18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,*
531 F. Supp. 2d 620 (S.D.N.Y. 2008)……………………………………………………………6,10

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007)…………………………………………………………………………3, 6

*Brulotte v. Thys. Co.*,
379 U.S. 29 (1964)………………………………………………………………………… 4, 5, 8

*C.R. Bard, Inc. v. M3 Systems, Inc.,*
157 F.3d 1340 (Fed. Cir. 1998) , *cert denied*, 526 U.S. 1130 (1999)……………………………9

*Davis v. Monroe Count Bd. Of Educ.*,
526 U.S. 629 (1999)…………………………………......................................................................4

*Envirosource, Inc. v. Horsehead Res. Dev. Co.*,
1997 U.S. Dist. LEXIS 12570 (S.D.N.Y. Aug. 21, 1997)…………………………………………15

*Etna Products Co., Inc. v. Harold Finney*,
1993 U.S. Dist. LEXIS 2796 (S.D.N.Y. March 8, 1993)…………………………………………..16

*Globetrotter Software, Inc. v. Elan Computer Group, Inc*.,
362 F.3d 1367 (Fed. Cir. 2004)…...............................................................................................16

*Golan v. Pingel Enter., Inc.,*
310 F.3d 1360 (Fed.Cir. 2002)……………………………………………………………...16

*Goldhirsh Group v. Alpert*,
107 F.3d 105 (2d Cir. 1997)…………………………………………………………………... 12

*GP Indus., Inc. v. Eran Indus., Inc.*,
500 F.3d 1369 (Fed. Cir. 2007)…………………….....................................................16, 17

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
50 N.Y.2d 183 (1980)……………….......................................................................................15

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007)………………………………………………………………4, 6

*In re Verestar, Inc.*,
343 B.R. 444 (Bankr. S.D.N.Y. 2006)…………………………………………………………..14

*Lucasey Mfg. Corp. v. Anchor Pad Intern., Inc.*,
698 F.Supp. 190 (N.D. Cal. 1988)…………................................................................................16

*Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.*,
2006 WL 3290413 (N.D. Cal Nov. 13, 2006)……………………………………………………6

*Patane v. Clark*,
508 F.3d 106 (2d Cir. 2007)………………………………………………………………………4

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
128 S.Ct. 2109 (2008)……………………….............................................................................10

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
317 F.Supp. 2d 301 (S.D.N.Y. 2003)……..................................................................................14

*Scheuer v. Rhodes*,
416 U.S. 232 (1974)………………………………………………………………………....4

*Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*,
202 F. Supp.2d 228 (S.D.N.Y. 2002).......................................................................................4, 14

*SLM, Inc. v. Shelbud Prod. Corp.*,
1993 U.S. Dist. LEXIS 5171 (S.D.N.Y. Apr. 20, 1993)…………………………………………14

*Takeda Chemical Industries, Ltd. v. Takeda Pharmaceuticals, North America, Inc.*,
2004 U.S. Dist. LEXIS 16584 (S.D.N.Y. August 19, 2004)…………………………………6, 10

*T.J. Roaco, Ltd. v. Syntex Pharmaceuticals Int'l, Ltd.*,
227 U.S.P.Q. 1033 (D.N.J. 1985)……..........................................................................................16

*U.S. Philips Corp. v. Int'l Trade Comm'n*,
424 F.3d 1179 (Fed. Cir. 2005)……………..............................................................................1, 6

**RULES**

Fed. R. Civ. Pro. 12(b)(6)……………………………………………………………...........4

Defendants Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively referred to as "Cinram"), hereby oppose plaintiffs Koninklijke Philips Electronics N.V. ("Philips N.V.") and U.S. Philips Corporation's ("U.S. Philips") (collectively referred to as "Philips") Motion To Dismiss Cinram's Second Amended Patent Misuse And Tortious Interference Counterclaims.

## I.    INTRODUCTION

The Supreme Court in *Brulotte v. Thys. Co.*, 379 U.S. 29 (1964), has held that it is patent misuse to continue to extract royalties from a licensee when the only unexpired patents of a pool of licensed patents do not cover the licensed products. With only one subsisting patent that does not cover any CDs at issue, this is exactly what Philips is doing in this case and exactly what Cinram has averred in its patent misuse counterclaim.

Philips cannot question the *Brulotte* holding and instead relies heavily on *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005) (the "ITC Action"), claiming that the case somehow gives Philips an exemption. However, the ITC Action actually confirms Cinram's position and refutes Philips' position. The patent pool in the ITC Action included subsisting patents that admittedly covered the licensed product and had not expired. The Court held that the inclusion of patents in the pool that may not cover the product made no difference because of the fact that the pool included subsisting patents that did cover the product. As a result, there was no economic effect on the licensee of the inclusion of patents that did not cover the product.

The facts in this case are the opposite of the facts in the ITC Action and are indistinguishable from *Brulotte*. Here, there are no subsisting patents that Philips contends apply to the CDs at issue except for the '846 Patent, which Cinram has averred it does not use in the

manufacture of the CDs at issue. Where for the purposes of this motion, Cinram's averments must be taken as true, the inclusion of the '846 Patent in the pool makes all the difference between paying royalties and not paying royalties. As in *Brulotte*, seeking royalties for a patent pool where none of the subsisting patents are actually used constitutes patent misuse.

Indeed, the Court in the ITC Action expressly pointed out that difference, when stating that it was not faced with and was not deciding a case in which all other patents in the licensed pool had expired and the remaining subsisting patent did not cover the product at issue. *Id.* at 1195, n.8.

Philips contends that the averments contained in Counts III (Declaratory Judgment of Patent Misuse) and Counts IV and V (Tortious Interference With Business Relationship) of Cinram's Second Amended Counterclaims are insufficient under Fed.R.Civ.P 12(b)(6) and should be dismissed. (Dkt #42, July 17, 2008, Cinram's Second Amended Answer and Counterclaims). However, Cinram has properly alleged claims for patent misuse and tortious interference with business relationships. As stated below, Cinram has alleged specific facts that clearly demonstrate the nature and effects of Philips' actions constituting patent misuse as well as the harm suffered by Cinram as a result of Philips' interference with its business relationships. Accordingly, Philips' motion to dismiss these counterclaims should be denied.

Philips' suggestion that Cinram's counterclaims should be dismissed because they are similar to the counterclaims that Philips moved to dismiss once before in this action ignores the facts. Philips fails to mention that its own subsequent wrongful acts forced Cinram to amend its counterclaims in the first place. For example, Philips wrongfully removed Cinram's name from

a website identifying licensed CD replicators to potential and current customers and subsequently refused to identify the entity that controlled the website. [1]

## II.     ARGUMENT

### A.     The Standard for Rule 12(b)(6) Motions

To survive a motion to dismiss pursuant to Rule 12(b)(6), Cinram "need not provide detailed factual allegations" but rather must simply allege facts sufficient "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint [or counterclaims] are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). As interpreted by the Second Circuit, *Twombly* did not announce a "universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those

---

[1] Cinram filed an original Answer and Counterclaims on March 24, 2008 (Dkt#14). Afterwards, Cinram discovered that an entity using the name "Philips Intellectual Property and Standards" "Philips IPS") had removed Cinram's name from a website identifying licensees of the '846 Patent.   In response, Cinram filed a first Amended Answer and Counterclaims on April 9, 2008, adding Philips IPS as a party and asserting a clam of tortious interference with business relationships against Philips IPS. (*See e.g.,* Dkt# 20, ¶¶ 8 and 34-39, First Amended Counterclaims).   Counsel for Philips thereafter informed Cinram that Philips IPS was "not a legal entity with an independent existence" and a motion to dismiss would be filed unless Cinram removed Philips IPS as a counterclaim defendant. (Sayour Decl., Exh. 1).   Despite Cinram's repeated requests that Philips identify the structure of Philips IPS, only in its opening brief does Philips refer to Philips IPS as a "division" of Philips.   (Philips' Opening Brief, pg. 7). But again, Philips does not reveal the structure of Philips IPS and does not even specify which Philips entity Philips IPS is allegedly a division of.   Based on Philips' representation that Philips IPS is not a corporate entity, Cinram offered to amend its counterclaims to drop Philips IPS as a party if Philips identified which entity controlled the Philips IPS website.   (Sayour Decl., Exh. 2-3).   Philips chose instead to file a motion to dismiss.   In response to Philips' motion to dismiss, Cinram filed a motion to amend its counterclaims to remove Philips IPS as a party and more clearly state its counterclaims.   (*See e.g.,* Dkt# 42, ¶ 29, Count III of Second Amended Counterclaims).   Philips then withdrew its motion to dismiss and agreed to Cinram's filing of its Second Amended Answer and Counterclaims.   Contrary to Philips' assertions, Cinram did not repeatedly attempt to "beef up" its counterclaims.   Rather, Philips' ongoing attempts to harm Cinram's business relationships as well as Philips' refusal to identify the entity that controlled its website forced Cinram to amend.

contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). In other words, the question is whether the pleading alleges "'enough facts to state a claim for relief that is plausible on its face.'" *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the challenged allegations must be taken as true and should be construed in the light most favorable to the pleader. *See Davis v. Monroe Count Bd. Of Educ.*, 526 U.S. 629, 633 (1999); *Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp.2d 228, 235 (S.D.N.Y. 2002). All reasonable inferences that can be drawn from the allegations should be drawn in favor of the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### B.  Cinram Has Alleged Sufficient Facts To State A Plausible Claim For Patent Misuse Of The '846 Patent By Philips

It has long been established that it is patent misuse to continue extracting royalties when the only unexpired patents of a pool of licensed patents do not cover licensed products. In *Brulotte v. Thys. Co.*, 379 U.S. 29 (1964), the Supreme Court found it to be patent misuse to extract royalties on patents in a licensed pool that did not cover the product (e.g., were "non-essential"), when the other patents in licensed pool that did cover the product (e.g., were "essential") had expired.[2]

This is exactly the case here. Philips licensed Cinram under a pool of patents. Only one patent remains that Philips claims covers the compact discs (CDs) at issue in this action, namely, the '846 Patent. All the other patents have expired or are admittedly not relevant to the CDs at

---

[2] The licensed pool in *Brulotte* consisted of twelve total patents, where seven patents were "essential" and five patents were "non-essential." *Id.* at 29-30. The patent owner demanded royalties even after the seven "essential" patents had expired and only the five "non-essential" patents were still subsisting. The licensee in *Brulotte* had stopped payments on the ground that no subsisting patent covered the product.

issue.[3]  In other words, the '846 Patent is the sole subsisting patent and Philips demands royalties from Cinram under the pool license based solely on that patent by claiming that the '846 Patent is allegedly "essential."[4]

In its patent misuse counterclaim, Cinram has averred that the '846 Patent is not essential, that no valid claim of the '846 Patent covers the CDs at issue, and as a result, that it stopped royalty payments that were solely due to the '846 Patent.  (Dkt #42, Count III of Second Amended Counterclaims, ¶26).  Because Cinram avers that the '846 Patent is not "essential" and does not cover the CDs at issue and because there are no other "essential" remaining patents in the pool that Philips alleges apply to the CDs at issue, Cinram's allegations sufficiently plead patent misuse.  Philips is seeking royalties from Cinram to impermissibly extend the life and scope of the patent grant when no "essential" pool patent is used by Cinram or actually applies to the products at issue.[5]  *See Brulotte v. Thys. Co.*, 379 U.S. 29 (1964) (holding that seeking royalties for a patent pool wherein none of the subsisting patents are actually used constitutes patent misuse).

Assuming that Cinram's factual allegations are true (which the Court should do in connection with a motion to dismiss), Cinram has properly alleged enough facts to "raise a right

---

[3] A second patent in the Patent Pool, U.S. Patent No. 5,305,301 (the "'301 Patent"), which is not asserted by Philips in this action, expires after the '846 Patent.  The '301 Patent is not relevant as it is not used by the CDs at issue, nor has Philips claimed that it is used.

[4] The license agreement and side letter dated December 1, 2004 between Cinram and plaintiff Philips N.V. states that the only subsisting patent at issue, the '846 Patent, is allegedly an "essential" pool patent to be used for making CDs.  (Dkt#4, First Amended Complaint ¶¶19-23). The Cinram-Philips N.V. license agreement also states that a royalty payment would be due for each CD sold in a country where a Licensed Patent "essential" to making a CD exists and covers the CDs.  *(Id.* at ¶30).

[5] Moreover, Philips ignores the facts stated in the counterclaims that clearly allege that Philips *continues* to falsely claim that the '846 Patent is "essential" and, therefore, should remain in the pool, even after it knew or should have known that it is not.

to relief [for patent misuse by Philips] above the speculative level." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. at 1964-65 (2007). Philips' motion is nothing more than a complaint that Cinram should meet a standard of heightened fact pleading. However, this is not how the Second Circuit has interpreted *Twombly*. *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Indeed, the standard for sufficiency of Cinram's patent misuse pleading is adequate notice under Rule 8, and Cinram has met that standard. *See e.g., Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,* 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008).[6] *See also, Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.*, 2006 WL 3290413, at * 2 (N.D. Cal Nov. 13, 2006) ("Patent misuse counterclaims are judged under the standard of FRCP 8(a).").

    1.   Philips' Reliance On *U.S. Philips v. ITC* As Support For Its Claim Is Misplaced

Philips relies on *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005) to support its contention that it could not have misused the '846 Patent even if it is not "essential" and even if it is the only remaining patent for which Philips seeks to extract royalties on behalf of the patent pool. However, Philips' reliance on the ITC Action is entirely misplaced. The ITC Action expressly refutes the position Philips is taking in this case.[7]

Unlike the facts in this case, the patent pool in the ITC Action admittedly contained subsisting "essential patents" covering the licensed product in addition to patents that Philips

---

[6] The facts of this case are unlike the facts of *Aspex,* where the counterclaim asserted "no facts" in support thereof, and as a result, did not meet Rule 8(a)'s liberal pleading standard. Similarly, this case is also unlike *Takeda Chemical Industries, Ltd. v. Takeda Pharmaceuticals, North America, Inc.*, 2004 U.S. Dist. LEXIS 16584, at * 4-5 (S.D.N.Y. August 19, 2004), where the counterclaim was two paragraphs long, alleged conclusory statements, and "no general facts to support the claim." Cinram's counterclaim alleges general facts that support its claim.

[7] The ITC Action was a tying case that involved a patent pool organized by Philips for different products, namely, recordable/rewritable CDs, none of which are involved in this lawsuit.

asserted were "essential," but which were later determined to be "non-essential" by the ITC.[8]  *Id.* at 1183-1184.   The Federal Circuit determined that the royalty in the ITC Action would have been unchanged by the purported wrongful addition of a non-essential patent to a series of essential patents.  *Id.* at 1191.  It was for that reason that the Court did not find per se patent misuse or patent misuse under the rule of reason.

Philips' conclusory statement that the ITC Action governs this case even "if the formerly essential patent happens to be the last patent in a package license to expire" is unsupported by any law and should be disregarded.  (Philips' Opening Brief, pg. 5).  Philips overlooks that the ITC Action explicitly recognized the fundamental difference between, on the one hand, the addition of a non-essential patent to a pool that contains essential patents (where there is no financial consequence)[9] and, on the other hand, a case in which the allegedly "essential" patent is the only basis for a wrongful attempt to extract royalties by extending the temporal scope of the pool.  Specifically, the Court in the ITC Action expressly stated that it was not addressing the issue of the impact of a potential temporal extension of the royalty obligation in a situation where the only unexpired patent remaining in the pool was a patent that was not in fact essential.  *Id.* at 1195, fn. 8.  Specifically, the Court noted:

> [U]nlike the other three allegedly nonessential patents, the Iwasaki patent would expire after all of the undisputed essential patents.  As a result, the presence of the Iwasaki patent in a patent licensing package could have the effect of extending the obligation to pay royalties beyond the expiration date of the 'essential' patents.

[8] The Federal Circuit determined that the ITC's non-essentiality determination was based upon an insufficient factual record and rejected the invalidation of the package agreement as *per se* patent misuse and patent misuse under the rule of reason.  However, this determination does not change the fact that the ITC action involved a package license with a pool of patents that were both essential and non-essential.

[9] *See e.g., Id.* at 1191 ("A patent that is nonessential because it covers technology that can be fully replaced by alternative technology that is available for free is essentially valueless.").

*Id.* (emphasis added). The issue not addressed by the Federal Circuit in the ITC Action is the issue currently before this Court. Here, there is only **one** relevant patent that is left in the pool, the '846 Patent. The other pool patents have expired or do not apply for other reasons. Only the '846 Patent can extend the life and scope of the patent pool. Plaintiffs claim no royalty for the types of CDs at issue under any other patent. This is not a situation where "showing that even a single license in a package was 'nonessential' would be to render all the patents in the package unenforceable." *Id.* at 1197 (emphasis added). The other patents in the pool are not at issue here. Instead, Cinram's misuse counterclaim alleges that Philips misused the one relevant patent left in the pool by knowingly misrepresenting that it is "essential," in a wrongful attempt to temporally extend the expired patents in the pool and to extend their scope to the products at issue.[10] The Supreme Court has held that this very conduct constitutes patent misuse. *Brulotte v. Thys. Co.*, 379 U.S. 29 (1964) (holding that seeking royalties for a patent pool wherein none of the subsisting patents are actually used constitutes patent misuse). In fact, the ITC Decision relied on by Philips cites *Brulotte* for this proposition.

Philips also attempts to shield its wrongful demands for royalties under the '846 Patent based on maintaining that the patent is "essential" by relying on alleged "essentiality" at the time the license agreements were signed. (Philips' Brief at 4). However, Philips ignores the fact that even now it *continues* to maintain that the '846 Patent is "essential" when it threatens Cinram's

---

[10] Philips' attempt to characterize the Court's footnote 8 as not applicable to patent unenforceability is irrelevant. (Philips' Opening Brief, pg. 5). Through this lawsuit, Philips seeks royalties for alleged use of the '846 Patent that is beyond the expiration of the essential patents in the package license. Because the '846 Patent is the only relevant patent remaining in the pool, this clearly has the same effect as "a provision requiring that royalties be paid beyond the life of a patent," which has been determined to be patent misuse by the Supreme Court in *Brulotte*.

customers with infringement lawsuits if they do not agree to pay for this unused patent or, alternatively, switch to suppliers that Philips selects.  (Counterclaim, ¶¶ 30, 36-37).  Philips' continued attempts to extend the temporal scope of its patent pool, now that Philips knows or should know that the '846 Patent is not "essential," constitutes patent misuse.  (Counterclaim, ¶¶ 36-42).

    2.   <u>Cinram Has Alleged Sufficient Anticompetitive Effects In Its Patent Misuse Counterclaim</u>

The key inquiry to determining if there is patent misuse "is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect."  *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998), *cert. denied*, 526 U.S. 1130 (1999).  Contrary to Philips' claim, Cinram has pled a legally cognizable claim of patent misuse in Count III: that Philips impermissibly broadened the scope of the patent grant of the '846 Patent with an anticompetitive effect by maintaining to Cinram and its customers that the '846 Patent is an "essential" pool patent requiring royalty payments for the types of CDs at issue made by Cinram, when in fact such a representation is false.  (Dkt# 42, Counterclaim Count III, ¶¶ 26-42).

Not only is the anticompetitive effect of improperly asserting the '846 Patent obvious and inherent in Cinram's detailed allegations, but Cinram's allegations go far beyond bare conclusory allegations of anticompetitive effects and demonstrate its right to relief beyond a speculative level.  Specifically, Paragraph 36, as cited by Philips states:

> The effect of plaintiffs' wrongful behavior is to restrain competition in the market of the CD types at issue **by diverting Cinram customers to other suppliers on false pretenses, with the intention of putting Cinram out of the business of making and selling the CD types at issue.**

(Dkt#42, Counterclaim Count III, ¶36) (emphasis added). Philips cannot seriously contend that such facts are insufficient notice pleading or that it does not understand Cinram's claim of "false pretenses," especially when detailed allegations of "false pretenses" are set forth in detail the preceding paragraphs of Cinram's Counterclaim and such customers are identified. *See* (Dkt#42, Counterclaim Count III, ¶28-35, 40). Unlike the *Aspex* and *Takeda* cases discussed above in ft. 2, which involved pleadings with absolutely no factual basis for their conclusory allegations of patent misuse, Cinram's pleadings refer to the specific conduct upon which it bases its patent misuse claim and resulting anticompetitive effects. To the extent that Philips seeks more detail about "who," "what," "where" "how" and "which" as set forth in its brief, it can obtain that information through discovery.[11]

Cinram has pled that Philips sent false and misleading letters to Cinram's customers, who purchase licensed CDs from Cinram, threatening those customers with suits for infringing the '846 Patent based on false allegations that licensed sales can constitute infringement and that the '846 Patent remains "essential."[12] (Dkt# 42, Counterclaim Count III, ¶¶28-30, 39). Philips included statements in these letters that imply that Cinram is a "deadbeat" who does not pay any royalties under its license agreement, even though Cinram continues to pay royalties to Philips on other patents for other types of CDs that are not involved in this action. (Dkt# 42,

---

[11] In fact, Philips' contentions that Cinram's customers and the suppliers to whom Philips is diverting sales have not been identified by Cinram are disingenuous. Paragraph 40 of Count III in the Second Amended Complaint clearly identifies two customers of Cinram, namely, Eagles Recording Company and H&R Block. Similarly, Paragraph 52 of Count IV in the Second Amended Complaint references a letter to Cinram's customer where Philips identified by name the alternate supplier and the supplier to whom the customer was directed was the other member of the patent pool that Philips controls.

[12] Philips states in its opening brief (pg. 6) that, Cinram remains licensed under the '846 Patent. Therefore, Cinram's sales of CDs to its customers are authorized and non-infringing sales. As a result, Cinram's customers have purchased licensed CDs and cannot be subject to the infringement charge with which Philips has threatened them. *See Quanta Computer, Inc. v. LG Electronics, Inc.,* 128 S.Ct. 2109 (2008).

Counterclaim Count III, ¶¶27, 40).  Moreover, the non-entity website manipulator Philips IPS improperly removed Cinram from a list of licensees under the '846 Patent, thereby falsely informing the public that those who were removed are not licensed under the '846 Patent.  (Dkt# 42, Counterclaim Count III, ¶40).  Contrary to the arguments made in Philips' motion to dismiss, Cinram alleged that Philips knew these actions were improper, but undertook them anyway to harm Cinram's business if it did not pay royalties on the '846 Patent, which it does not use and which Philips knew was not "essential."  (Dkt# 42, Counterclaim Count III, ¶¶ 36-37, 41).

By claiming that the '846 Patent is essential and by threatening Cinram's customers, Philips has represented that Cinram has no alternative but to use the '846 Patent to make CDs because customers must purchase CDs only from suppliers who use the '846 Patent to make them.   This has an anticompetitive effect because it inhibits Cinram's ability to compete with CD manufacturers that Philips has not threatened.  Cinram is forced to either pay for a patent that it does not use or lose customers who are fearful of ruinous, but meritless, litigation with Philips.  (Counterclaim ¶¶ 30, 36-38).  These activities as averred by Cinram demonstrate the effects of the action that Philips has knowingly and willfully undertaken and which constitutes patent misuse.

Finally, Philips contends that it has "purged" its patent misuse as of a March 7, 2008 hearing that was held in this case.  The March 7, 2008 hearing to which Philips refers was held at Cinram's request, where it sought to enjoin Philips from sending letters to its customers containing baseless and demonstrably untrue allegations, thereby harming Cinram's business.  At the direction of the court and following a discussion among the parties, Philips agreed to send new letters to those customers that did not contain the false statements.  Philips does not state that it actually sent such letters out and Philips still has not retracted the false and misleading

statements it included in its original threatening letters. (Philips' Opening Brief at 8 (quoting Cinram, Dkt. 28 at 8)). Philips cannot legitimately claim that it "purged" these false statements simply because if new letters were sent out, they did not reiterate the false statements. The doctrine of patent misuse would be transformed into a toothless defense if that was all that was required to "purge" a patent holder's misuse.

For all of these reasons, Philips' motion to dismiss Cinram's patent misuse claim should be denied.

### C. Cinram Has Pled All of the Elements Required to Maintain a Claim For Tortious Interference

Philips contends that the averments of tortious interference with business relationships contained in Counts IV and V of Cinram's counterclaims are insufficient under Federal Rule 12(b)(6) and should be dismissed. Specifically, Philips argues that any controversy regarding Count IV has been resolved, business relationships have not been identified, and Philips' knowledge of business relationships and Philips' intent to interfere with them have not been averred. This is not so.

Under New York law, a claim of tortious interference with business relations requires a plaintiff to allege that "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Group v. Alpert*, 107 F.3d 105, 108-109 (2d Cir. 1997). Contrary to Philips' contentions, Cinram has pled all of these elements.

As stated above, Philips' argument that Cinram repeatedly amended its counterclaims in an attempt to "beef them up" is disingenuous. Philips' removal of Cinram from the Philips IPS

website, as well as Philips' refusal to identify which Philips entity controlled that website, is what forced Cinram to amend its counterclaims.

### 1.    The Controversy Has Not Been Resolved

Philips' interference with Cinram's relationships with its customers has not been resolved. Philips argues that its agreement to stop sending objectively baseless letters to Cinram's customers, such as Eagles and H&R Block, somehow resolved the controversy such that it is no longer live. Philips ignores the fact that it has *already* harmed the alleged business relationships, for which redress is sought. Moreover, as discussed above, Philips refused to retract, in communications to the recipients of the harmful letters, the false and misleading representations in those letters. (Plaintiffs' Opening Brief, at 11). Cinram's relationships continue to be harmed as the false and misleading threats stand. (*See e.g.,* Sayour Decl., ¶ 7). Indeed, Philips ignores the fact that it has intimidated not only Eagles and H&R Block[13] (Sayour Decl., Exhs. 4-5), but also similarly situated potential and current customers of Cinram, and that it expressly declined an invitation to represent at the hearing that these were the only letters it has sent. Discovery should eventually reveal the full scope of the Philips misrepresentations to the industry, and shed light on Philips' refusal to state in Court that these were the only such letters to customers.

Philips' claim that there is no longer a case or controversy must fail.

### 2.    Cinram Has Alleged That Business Relations Have Been Damaged

Philips argues that the tortious interference claims alleged against them in Counts IV and V should be dismissed because Cinram "has not and cannot" plead that a business relationship

---

[13] In a recently filed Complaint against H&R Block and others, Philips alleged that H&R Block purchased CDs from Cinram. (Complaint, Civil Action No. 08-7351 (GEL), ¶14).

has been damaged. (Plaintiffs' Opening Brief, at 13). Philips ignores the fact that Cinram has so

pled. Philips also ignores the counterclaim allegations that Philips had knowledge of Cinram's

business relationships with its customers and potential customers, such as Eagles Recording

Company and H&R Block, all of whom purchase CD-Discs made by the processes used by

Cinram, and that Philips' misrepresentations harmed those relationships. (Dkt. 42, Counterclaim

Count IV, ¶¶ 44-45, 52-53, 57).

While Cinram's counterclaims have identified several business relationships that were

interfered with, the "fact that [a] complaint fails to identify the relationships that were interfered

with is of no consequence" at this stage of litigation.[14] *Shred-It, USA, Inc. v. Mobile Data Shred,*

*Inc.*, 202 F. Supp.2d 228, 236-37 (S.D.N.Y. 2002). Instead, the party alleging this tort "may use

the discovery period to identify the specific relationships at issue." *SLM, Inc. v. Shelbud Prod.*

*Corp.*, 1993 U.S. Dist. LEXIS 5171, at *5 (S.D.N.Y. Apr. 20, 1993).

Courts have routinely refused to dismiss counts for tortious interference with business

relations simply because specific business relations were not disclosed. *See Reading Int'l, Inc. v.*

*Oaktree Capital Mgmt. LLC*, 317 F.Supp. 2d 301, 335 (S.D.N.Y. 2003) (refusing to dismiss a

count for tortious interference with business relations where specific relations weren't identified,

holding that "it would be unreasonable to require more specific pleadings prior to discovery.").

A party "need only meet the pleading requirements of Rule 8(a) with respect to this claim." *In re*

*Verestar, Inc.*, 343 B.R. 444, 485 (Bankr. S.D.N.Y. 2006) (stating that even though the party

asserting the claim "has not identified all relevant business relations by name, it has alleged facts

demonstrating interference with [the aggrieved party's] relations with its vendors and customers.

These allegations fairly place [the interfering party] on notice, and there can be further

---

[14] Cinram's counterclaim Counts IV and V are based on tortious interference with business
relations and prospective business relations. (Dkt#42, Counterclaim, ¶¶56-57, 61-63).

identification of the specific contracts and relationships at issue during the course of discovery.").

Philips' reliance on *Envirosource, Inc. v. Horsehead Res. Dev. Co.*, 1997 U.S. Dist. LEXIS 12570 (S.D.N.Y. Aug. 21, 1997) is misplaced because in that case a party had been put on notice by a prior ruling in the case to identify current business relationships but, after months of discovery, sought to add a counterclaim that still referred to speculative potential future customers. Plaintiffs Brief at 12-13. In the case before this Court, Cinram identified current customers, including Eagles and H&R Block, and alleged that its relationships with such customers were wrongfully harmed by false and misleading threatening letters by Philips to such customers. (Dkt#42, Counterclaim, ¶¶ 44-45, 52-53, 57).

>   **3.    Philips Had Knowledge Of Cinram's Customers and Intentionally Took Actions That it Knew Would Harm Cinram's Relationships With These Customers**

Philips misconstrues the "intent" element of the cause of action by reading a requirement for malicious conduct into it. However, no such requirement exists. Under New York law, Cinram need only allege that Philips intended to take the actions that resulted in the interference, with the knowledge that the interference is substantially certain to occur as a result of its actions. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 189 (1980) (relying on the Restatement (Second) of Torts). This is what Cinram has alleged.

At no point has Philips asserted that its actions were unintentional. For instance, Philips does not argue that Cinram's name was inadvertently removed from the Philips IPS website or that Philips was unaware that Cinram's name had been removed. Nor does Philips dispute that it intentionally sent the misleading letters to H&R Block and Eagles; in fact, Philips still seems to contend that it had a right to send such letters. (Philips' Opening Brief, at 16). Moreover, some

of Philips' "patent notice letters" were intended to completely destroy the relationship with a customer by, *inter alia*, diverting the customer to other suppliers of CD-Discs. (Dkt#42, Counterclaim, ¶¶ 30, 36, 43). Accordingly, Cinram's allegations meet the "knowledge" and "intent" requirements of the second element of its tortious interference claims.

### 4.    Philips' Patent "Notice" Letters Were Objectively Baseless

Although patent owners may send factually accurate patent notice letters to potential infringers in good faith, they may *not* send knowingly false letters to customers in an attempt to coerce them into paying royalties for a patent that is not utilized, which is precisely what Philips did.

Cinram does not dispute that a patent holder can write to potential infringers to inform them "of the existence of its patent." *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007). Courts have allowed patent holders to do so. *See, e.g. Golan v. Pingel Enter., Inc.,* 310F.3d 1360, 1371 (Fed.Cir. 2002); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004). However, courts have routinely granted injunctions against sending letters that include objectively baseless threats against customers. *See, e.g. Etna Products Co., Inc. v. Harold Finney*, 1993 U.S. Dist. LEXIS 2796, *9-10 (S.D.N.Y. Mar. 8, 1993); *Lucasey Mfg. Corp. v. Anchor Pad Intern., Inc.*, 698 F.Supp. 190, 193 (N.D. Cal. 1988); *T.J. Roaco, Ltd. v. Syntex Pharmaceuticals Int'l, Ltd.*, 227 U.S.P.Q. 1033, 1036 (D.N.J. 1985).

In this case, the letters sent by Philips contained numerous false statements and other misleading allegations. Contrary to Philips's contentions in its motion to dismiss, these letters are baseless not only because they falsely assert that the '846 Patent is essential but also because of numerous other objectively false statements. For instance, one such letter falsely states that U.S. Patent No. 5,790,512 (the "'512 Patent") is "essential" for the manufacture of CDs, without

exception, even though Philips' own publications acknowledge that the '512 Patent does not apply to the CDs distributed by the customer who received that letter. (Dkt#42, Counterclaim Count IV, ¶¶47-49). Some of the letters sent by Philips also falsely imply that Cinram does not pay any royalties for CDs, even though Cinram continues to make royalty payments to Philips to this day under the same license agreements, for CDs not involved in this lawsuit. (Dkt#42, Counterclaim Count IV, ¶51-52).

These objectively baseless comments go well beyond what is permitted by *GP Indus., Inc.* Therefore, as these letters can form the basis of a tortious interference claim, Philips' motion to dismiss on these grounds should be denied.

## III.    CONCLUSION

For the reasons stated above, Cinram's counterclaims state sufficient facts to support their patent misuse and tortious interference with business relationships counts.    Accordingly, Philips' Motion to Dismiss these claims should be denied.

<div style="margin-left: 40%;">

Respectfully submitted,

COOPER & DUNHAM LLP

</div>

Dated:  August 28, 2008

<div style="margin-left: 45%;">

 s/ Ivan Kavrukov _____

Ivan Kavrukov (IK 4452)
William E. Pelton (WP 1850)
Tonia A. Sayour (TS 7208)
Gregory J. Carbo (GC 8459)
1185 Avenue of the Americas
New York, New York 10036
Tel:  (212) 278-0400
Fax:  (212) 391-7550
ikavrukov@cooperdunham.com
wpelton@cooperdunham.com
tsayour@cooperdunham.com
gcarbo@cooperdunham.com

Attorneys for Defendants
Cinram International Inc., Cinram Inc. and
Cinram Manufacturing Inc.

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of August, 2008, a copy of the foregoing **CINRAM'S MEMORANDUM IN OPPOSITION TO PHILIPS' MOTION TO DISMISS PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS** was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
choupt@mayerbrown.com

Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
wjohnson@mayerbrown.com

Vince P. Kovalick
John F. Hornick
Samuel C. Bass
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
vince.kovalick@finnegan.com
John.Hornick@finnegan.com
Samuel.Bass@finnegan.com

Attorneys for Plaintiffs

  s/ Ivan Kavrukov
Ivan Kavrukov