UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION,<br><br>  Plaintiffs,<br><br>  v.<br><br>CINRAM INTERNATIONAL INC., CINRAM INC., CINRAM MANUFACTURING INC., and John Does No. 1 through 100,<br><br>  Defendants. | Civil Action No.<br>08 CV 00515 (CS)<br><br>ECF Case |

**KONINKLIJKE PHILIPS ELECTRONICS N.V.'s AND U.S. PHILIPS CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF THE MOTION TO <u>DISMISS PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................................1

II. ARGUMENT..................................................................................................................1

    A. Cinram Mistakenly Relies on Brulotte v. Thys Co.............................................1

    B. U.S. Philips v. ITC Eliminates Any Possible Patent Misuse Defense By Cinram..................................................................................................................3

    C. Cinram Has Not Shown That They Alleged The Elements Of Patent Misuse ..................................................................................................................6

    D. Cinram's Tortious Interference With Business Relations Counterclaims Must Be Dismissed ..............................................................................................9

        1. Cinram Fails To Identify Any Damaged Business Relationships .............10

        2. Cinram Misconstrues Philips' "Intent" Argument.....................................11

III. CONCLUSION.............................................................................................................12

## TABLE OF AUTHORITIES

*Advanced Cardiovascular Systems, Inc. v. Scimed Systems, Inc.*,
    40 U.S.P.Q.2d 1291, 1996 WL 467277 (N.D. Cal. 1996) ......................................................6

*Allen v. WestPoint-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991)..................................................................................................8

*Brulotte v. Thys Co.*,
    379 U.S. 29 (1964)..........................................................................................................1, 2

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006)..............................................................................................8

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*,
    45 F.3d 1550 (Fed. Cir. 1995)...........................................................................................2

*U.S. Philips Corp. v. International Trade Commission*,
    424 F.3d 1179 (Fed. Cir. 2005)..................................................................................1, 3, 5

*Reading International, Inc. v. Oaktree Capital Management LLC*,
    317 F.Supp.2d 301 (S.D.N.Y. 2003)................................................................................11

*Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*,
    202 F. Supp.2d 228 (S.D.N.Y. 2002)...............................................................................10

*Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.*,
    2004 WL 1872707 (S.D.N.Y. 2004).................................................................................6

**I.     INTRODUCTION**

In their opposition to Plaintiffs Koninklijke Philips Electronics N.V.'s and U.S. Philips Corporation's (collectively "Philips") Motion to Dismiss, Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively "Cinram") assert a variety of arguments to bootstrap their deficient patent misuse and tortious interference counterclaims, but fail to respond to Philips' arguments. Cinram responds by eluding to facts absent from their counterclaim for patent misuse and applying inapplicable law, and by misstating the law applicable to their tortious interference counterclaim. As demonstrated below and in Philips' opening brief, Cinram has not stated their counterclaims under applicable law, and therefore Counterclaim Counts III, IV, and V-- which counsel have now unsuccessfully tried to state three times -- should be dismissed with prejudice.

**II.    ARGUMENT**

    **A.     Cinram Mistakenly Relies on Brulotte v. Thys Co.**

In an attempt to evade the impact of *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005), Cinram mistakenly relies on *Brulotte v. Thys Co.*, 379 U.S. 29 (1964). Specifically, Cinram argues that *Brulotte* stands for the proposition that it is patent misuse to continue extracting royalties when the only unexpired patents of a pool of licensed patents do not cover licensed products. Cinram further argues that this is what Philips is doing in this case. Nothing could be further from the truth.

Cinram's attempt to apply *Brulotte* to this case is flawed for at least three reasons. First, the Supreme Court in *Brulotte* found patent misuse when the plaintiff attempted to extend the temporal scope of various **expired** patents. The Supreme Court stated, "The exaction of royalties for use of a machine *after* the patent has expired is an assertion of monopoly power in the post-expiration period when, as we have seen, the patent has entered the public domain." *Id*.

1

at 33 (emphasis added). Here, Cinram alleges that Philips is misusing U.S. Patent No. 5,068,846 ("the '846 Patent"), which is a valid and **unexpired** patent. For this reason alone, the Court should find that *Brulotte* is completely inapposite here.

Second, *Brulotte*'s holding was predicated on the plaintiff's *intent* to extend a license agreement beyond the expiration of the patents. *See Brulotte*, 379 U.S. at 30. Patent misuse requires bad faith and some improper purpose by the patent holder. *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995). Nowhere in Cinram's patent misuse counterclaim do they allege that Philips believes that the '846 Patent is not essential to the CD-Disc Standard Specifications. Cinram merely argues that the '846 Patent is non-essential due to an allegedly "alternative economically viable and practicable method of making the CD types at issue . . . which [does] not require the `846 Patent . . . " (Dkt. 42, ¶ 26), but provides no justification for their belief. Cinram's belief that the '846 Patent is not essential to making the CD-Discs in suit is irrelevant to whether Philips' conduct constitutes patent misuse.

Third, *Brulotte*'s holdings on patent misuse assumed there were no remaining "essential" patents in the pool. *See Brulotte*, 379 U.S. at 30. In this case, however, an essential patent does remain and it is only Cinram's bald allegation that the '846 Patent is not essential.[1] Cinram's position on whether the '846 Patent is essential is irrelevant because in accordance with the CD Disc Patent License Agreement signed by Cinram, the essentiality determination is to be made by an independent patent expert commissioned by Philips. (First Am. Compl., Ex. B ¶ 1.23, Dkt.

---

[1] Cinram argues that their allegations must be taken as true (see, e.g., Opposition at 5). But Philips' point here is a legal one: under *U.S. Philips*, Cinram's allegations cannot state a claim for patent misuse. Moreover, even if Cinram's allegations must be taken as true, a licensee's alleged innovations cannot make the patent owner guilty of patent misuse, which circles back to the legal question.

2

4). The independent expert commissioned by Philips in fact determined that the '846 Patent is essential to the CD-Disc Standard Specifications. (First Am. Compl. ¶ 26).

For these reasons, *Brulotte* does not apply here.

### B. U.S. Philips v. ITC Eliminates Any Possible Patent Misuse Defense By Cinram

Cinram erroneously contends that *U.S. Philips* actually refutes Philips' position. Because this case and *U.S. Philips* both involve a package license for essential patents, the *U.S. Philips'* ruling is applicable to the present case. It is irrelevant that all of the relevant patents in the package license have expired, except the '846 Patent in suit (admitted by Cinram in their Counterclaim ¶ 25). Cinram contends that the '846 Patent is no longer essential because Cinram allegedly found an economical alternative method to comply with the Standard Specifications without practicing the patent. (Dkt. 42, Counterclaim ¶ 26). Cinram fails, however, to provide any explanation of how such an innovation would turn Philips' assertion of the '846 Patent's essentiality into patent misuse.

In support of their contention, Cinram asserts:

> Philips relies on *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005) to support its contention that it could not have misused the '846 Patent even if it is not "essential" and even if it is the only remaining patent for which Philips seeks to extract royalties on behalf of the patent pool. However, Philips' reliance on the ITC Action is entirely misplaced. The ITC Action expressly refutes the position Philips is taking in this case.
>
> Unlike the facts in this case, the patent pool in the ITC Action admittedly contained subsisting "essential patents" covering the licensed product in addition to patents that Philips asserted were "essential," but which were later determined to be "non-essential" by the ITC. *Id.* at 1183-1184. The Federal Circuit determined that the royalty in the ITC Action would have been unchanged by the purported wrongful addition of a non-essential patent to a series of essential patents. *Id.* at 1191. It was for that reason that the Court did not find per se patent misuse or patent misuse under the rule of reason.
>
> Philips' conclusory statement that the ITC Action governs this case even "if the formerly essential patent happens to be the last patent in a package license

3

> to expire" is unsupported by any law and should be disregarded. (Philips' Opening Brief, pg. 5). Philips overlooks that the ITC Action explicitly recognized the fundamental difference between, on the one hand, the addition of a non-essential patent to a pool that contains essential patents (where there is no financial consequence) and, on the other hand, a case in which the allegedly "essential" patent is the only basis for a wrongful attempt to extract royalties by extending the temporal scope of the pool. Specifically, the Court in the ITC Action expressly stated that it was not addressing the issue of the impact of a potential temporal extension of the royalty obligation in a situation where the only unexpired patent remaining in the pool was a patent that was not in fact essential. . . . The issue not addressed by the Federal Circuit in the ITC action is the issue currently before this Court.

(Dkt. 50 at 6-8).

Cinram is simply wrong about the *U.S. Philips* case. As explained in Philips' opening brief, *U.S. Philips* is relevant to the facts of this case because in both cases a patent was identified as essential under a package license, was acknowledged and accepted by the licensee as essential for the duration of the license, and was later challenged by the licensee as no longer essential because of the licensee's alleged technological innovations that rendered inessential the admittedly once-essential patent. It is immaterial that all of the relevant patents in the package license have expired, except the '846 Patent in suit. Thus, it is inexplicable why Cinram asserts "Because the '846 patent is the only relevant patent remaining in the pool, this clearly has the same effect as a 'provision requiring that royalties be paid beyond the life of a patent,' which has been determined to be patent misuse by the Supreme Court in *Brulotte*." (Dkt. 50 at 8 n.10). Not only is *Brulotte* inapplicable, as explained above, but Cinram misreads footnote 8 of the *U.S. Philips* case. In footnote 8 of *U.S. Philips*, the court said that "A <u>provision</u> requiring that royalties be paid beyond the life of a patent has been held to be unenforceable." (Emphasis added). Contrary to Cinram's argument, the *U.S. Philips* court, in footnote 8, did not say that a formerly essential <u>patent</u> would be unenforceable if it had the effect of extending the obligation to pay royalties beyond the expiration of the essential patents in a package license.

4

Moreover, Cinram fails to respond to any of Philips' arguments in its opening brief quoting the *U.S. Philips* court's rejection of *per se* patent misuse and rule-of-reason patent misuse due to developments in the technology of which patentees are unaware or which have just become commercially viable. *Id.* at 1198. The reasoning of *U.S. Philips* cannot change if the formerly essential patent happens to be the last patent in a package license to expire. Cinram's allegation that "this reasoning should be disregarded" and is "unsupported by any law" is directly contrary to the *U.S. Philips* case. Patent misuse cannot be based on questions raised by technological advancements as to whether a particular patent is still "essential" for compliance with the relevant standards. *U.S. Philips Corp.,* 424 F.3d at 1189-90, 1196-98. If this were so, the question of whether a patent owner has misused its patent would be entirely in the hands of its licensees.

Cinram also argues that Philips is misusing the '846 Patent because it now knows the patent is not essential but did not remove it from the pool. (Opp. at 4-5, 8-9). Philips knows nothing of the sort. Cinram, as well as the manufacturing defendants in the other three lawsuits involving the '846 Patent co-pending in this Court, stopped paying royalties based on a legal opinion prepared by Cinram's counsel, Cooper & Dunham. Philips has never seen that opinion, and therefore does not know the manufacturers' rationale for believing that the '846 Patent is no longer essential. Philips attempted to subpoena the opinion directly from Cooper & Dunham in this action. Cooper & Dunham moved to quash, however, arguing that because Cinram had not decided whether to rely on the opinion as a defense, providing the opinion to Philips would be premature. (Dkt. 31). As the result of a July 11, 2008 conference with Magistrate Judge Fox, Philips withdrew the subpoena, without prejudice to seek the opinion later in discovery. Thus,

5

there is no basis for Cinram's argument that Philips knows that the '846 Patent is no longer essential.

      **C.    Cinram Has Not Shown That They Alleged The Elements Of Patent Misuse**

Cinram's counterclaim for declaratory judgment of patent misuse should also be dismissed because it fails to plead the necessary elements of such a claim. In their opposition, Cinram cites conclusory allegations from their counterclaim in an attempt to breath life into the claim. But conclusory allegations are not enough. In *Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.,* 2004 WL 1872707 (S.D.N.Y. 2004), a plaintiff moved to strike a patent misuse affirmative defense. The court held that the defendants' allegations failed to meet the Rule 8 requirements of notice pleading because "the defendants merely parrot the elements of a claim for patent misuse, without alleging even general facts to support that claim." *Id*. at *1. The Court went on to note that conclusory references to "anti-competitive effect" and "improper restraint on competition" were insufficient to give the plaintiff sufficient notice of the alleged misconduct. *Id*. Additionally, a federal court in California held that "Given the specific exceptions to patent misuse provided by Congress, defendant must plead more than a **conclusory** allegation of patent misuse in order to provide fair notice of the nature of the defense. Defendant must state how the plaintiff has attempted to broadly and impermissibly construe its patent such as to cause an anticompetitive effect…." *Advanced Cardiovascular Systems, Inc. v. Scimed Systems, Inc.*, 40 U.S.P.Q.2d 1291, 1996 WL 467277, *3 (N.D. Cal. 1996) (emphasis added). These are precisely the defects of Cinram's patent misuse counterclaim, as discussed in greater detail in Philips' opening brief. Cinram attempts to bootstrap their opposition by introducing new allegations instead of showing where and how they asserted the necessary facts in their counterclaim.

6

Cinram's failure to address the shortcomings of the counterclaim, as highlighted by Philips, shows that they have no response and that their patent misuse defense is fatally flawed. Specifically, Cinram fails to allege an anticompetitive effect, facts supporting such an allegation, and a nexus between their allegations and patent misuse.  Counterclaim ¶ 30 alleges that Philips "has attempted to divert a Cinram customer to another supplier of CDs," but provides no facts to make such an allegation plausible on its face, as required by *Bell Atlantic*, or to link such alleged diversion to patent misuse.  Cinram failed to identify such allegedly diverted Cinram customer, and does not allege that the customer was actually diverted, that such alleged diversion was the result of patent misuse and was anticompetitive, that Cinram was damaged by such alleged act, or that such damage resulted from patent misuse.

Counterclaim ¶ 36, which contains the only other allegation of anticompetitive effect, suffers the same defect:

> The effect of plaintiffs' wrongful behavior is to restrain competition in the market of the CD types at issue by diverting Cinram customers to other suppliers on false pretenses, with the intention of putting Cinram out of the business of making and selling the CD types at issue.

Cinram alleges no facts to support such allegation, or a nexus between the bare allegation and patent misuse. Where has competition been restrained? Which Cinram customers have been diverted to other suppliers? Who are the suppliers? What are the false pretenses? What is the nexus between the alleged patent misuse and the alleged diversion and damage? How does Philips' desire that Cinram honor their CD-Disc patent license agreement -- which Philips has not terminated -- evidence an intention to put Cinram out of the business of making and selling CD-Discs? The quoted allegation is contrary to the facts alleged in Philips' First Amended Complaint, which simply seeks royalties for CD-Discs imported, made, and/or sold by Cinram

7

that comply with the Standard Specifications. How does this restrain competition, divert customers under false pretenses, attempt to put Cinram out of the CD business, or evidence Philips' alleged intent to do so? Clearly, it does not. Thus, Cinram's allegation of anticompetitive effect is not plausible on its face and was cobbled together solely for the sake of attempting to assert a counterclaim.

> Rather than addressing such shortcomings, Cinram argued that:
>
> Philips cannot seriously contend that such facts are insufficient notice pleading or that it does not understand Cinram's claim of "false pretenses," especially when detailed allegations of "false pretenses" are set forth in detail the preceding paragraphs of Cinram's Counterclaim and such customers are identified. See (Dkt#42, Counterclaim Count III, ¶28-35, 40). . . . To the extent that Philips seeks more detail about "who," "what," "where" "how" and "which" as set forth in its brief, it can obtain that information through discovery.

(Dkt. 50 at 10). It is irrelevant for purposes of this motion what Philips was or was not aware of with respect to Cinram's supposed customers or what details Philips might learn through discovery. The question for this Court is "what did they plead?" A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991); *accord, e.g.*, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Cinram obviously failed to state which Cinram customers have been diverted to other suppliers, which other suppliers such Cinram customers have been diverted to, what the false pretenses are, or what the anticompetitive effect is. If Cinram could have truthfully identified any such diverted customers, suppliers, anticompetitive effect, supporting facts, a nexus, or damages, they certainly would have done so, especially after three attempts to plead this counterclaim.

8

Thus, for the reasons presented in Philips' opening brief, Cinram's counterclaim fails to state facts making its bare allegations plausible on their face, or to link any alleged customer diversion to patent misuse. Because Cinram's counsel have now tried and failed three times to assert this counterclaim, Cinram's patent misuse counterclaim should be dismissed with prejudice.

### D. Cinram's Tortious Interference With Business Relations Counterclaims Must Be Dismissed

For the reasons presented in Philips' opening brief, there is no case or controversy between Philips and Cinram regarding Counterclaim Counts IV and V. Cinram responds, circularly, that "Philips ignores the fact that it has *already* harmed the alleged business relationships, for which redress is sought" (Opp. at 13, emphasis in original). But it is Cinram who ignores the facts: Philips and Cinram resolved any alleged tortious interference identified in Count IV during the parties' private meeting at the March 7, 2008 hearing. Thus, Count IV should be dismissed with prejudice for the reasons set forth in Philips' opening brief.[2]

Cinram also failed to show that Philips' patent notice letters were objectively baseless. Cinram made virtually no attempt to respond to Philips' arguments on this point, and therefore Philips stands on the arguments set forth in its opening brief.

Cinram also has not pleaded the elements of a claim of tortious interference with business relationships. As discussed in Philips' opening brief, and as Cinram admitted (Opp. at 12), New York law requires four elements for a properly pleaded claim for tortious interference with business relations. Cinram must allege 1) that there is a business relationship between the plaintiff and third party; 2) the defendant, knowing of the relationship, intentionally interferes

---

[2] For the same reason, any alleged patent misuse based on such letters has been purged, as discussed in detail in Philips' opening brief.

9

with it; 3) the defendants act with the sole purpose of harming the Plaintiff, or failing that level of malice, use dishonest, unfair, or improper means; and 4) the relationship is injured. As described below, not only has Cinram misstated the law, they have also failed to plead sufficient facts to sustain their claim.

### 1.     Cinram Fails To Identify Any Damaged Business Relationships

Cinram attempts to justify their failure to plead crucial facts by arguing that "the fact that the complaint fails to identify the relationships that were interfered with is of no consequence at this stage of litigation," citing *Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp.2d 228, 236 (S.D.N.Y. 2002). However, Cinram confuses the elements of a claim for interference with actual business relations, which their counterclaim attempts to plead, and the elements of a claim for interference with prospective business relations (see Counterclaim ¶¶ 56 and 57). *Shred-It* actually supports Philips' position that to state a claim for tortious interference with actual business relations Cinram must identify a valid third party contract that was breached, or a <u>specific</u> business relationship that was damaged as a result of Philips' alleged conduct. In examining the defendant's Complaint, the *Shred-It* Court stated that "it is unclear from the complaint whether Shred-It alleges interference with existing contractual relations or prospective business relations. Because Count Five does not identify any contract that was interfered with, the Court presumes that Shred-It's claim in this count is based on interference with prospective business relations." *Id.* To support their position, Cinram quotes the portion of the *Shred-It* opinion stating that "The fact that the complaint fails to identify the relationships that were interfered with is of no consequence," (Dkt. 50 at 14), but they omit the preceding sentence in the opinion, which states that "Shred-It's complaint states a proper claim for tortious interference with **prospective business relations**." *Shred-It, USA, Inc.*, 202 F.Supp.2d at 237 (emphasis added).

Cinram's citation of *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F.Supp.2d 301, 335 (S.D.N.Y. 2003), for the proposition that courts routinely refuse to dismiss counts for tortious interference with business relations simply because specific business relations were not disclosed before discovery, is also misplaced. The *Reading Int'l c*ourt found that because plaintiffs had alleged facts that would satisfy all four elements of wrongful interference with **prospective contractual relations**, defendants' motion to dismiss plaintiffs' twelfth claim for relief was denied. *Reading Int'l, Inc.,* 317 F.Supp.2d at 335. Therefore, Cinram has confused the elements of these two different claims and have failed to plead the elements of tortious interference with actual business relationships.

Cinram's argument that they should be allowed to develop their counterclaim in discovery should be rejected for at least two reasons: (1) such an argument is based on case law relating to a claim for interference with prospective business relations, not actual relations, and (2) Cinram is in a position to know if any of their actual business relationships have been harmed, as they merely allege in conclusory fashion.

For these reasons and the reasons set forth in Philips' opening brief, Cinram has failed to plead an existing business relationship with a third party, and therefore Counterclaim Counts IV and V should be dismissed.

### 2. Cinram Misconstrues Philips' "Intent" Argument

Cinram also contends that they can maintain a claim for tortious interference with business relations because, under New York law, they need only allege that Philips intended to take the actions that resulted in the interference, with the knowledge that the interference is substantially certain to occur as a result of its actions. (Dkt. 50 at 15). This argument misses Philips' point, and is not responsive. Philips' argument is not about the proper degree of intent that Cinram must allege (e.g., whether or not malice must be alleged). Philips' argument is that

11

Cinram failed to plead the second element of a tortious interference claim in both Counterclaim Counts IV and V, namely, that Philips knew of specific customer relationships identified under the first element and intentionally interfered with them. (See Philips' opening brief at 15-16).

Although Cinram alleges in Counterclaim Count IV, ¶ 44, that "Plaintiffs know that Eagles Recording Company . . . is a customer of Cinram for the CD types at issue," the Second Amended Counterclaims contain no facts backing up this conclusory allegation. Cinram made no such allegation in the original version of this Counterclaim, and clearly added it by amendment in an attempt to use all of the proper magic words to invoke a tortious interference claim. And they did so knowing the allegation is false (see Philips' opening brief at 15).

Cinram has now failed to state a claim for tortious interference three times. This can only mean that Cinram is incapable of alleging such facts, and therefore Counterclaim Counts IV and V should be dismissed with prejudice.

## III. CONCLUSION

For these reasons and the reasons set forth in Philips' opening brief, Philips respectfully urges this Court to grant Philips' Motion to Dismiss Counterclaim Counts III, IV, and V, with prejudice.

Date:   September 8, 2008

        */s/ Samuel C. Bass*
        Vince P. Kovalick    (*pro hac vice*)
        John F. Hornick     (*pro hac vice*)
        Samuel C. Bass     (*pro hac vice*)
        Ali I. Ahmed
        FINNEGAN, HENDERSON, FARABOW,
         GARRETT & DUNNER, L.L.P.
        901 New York Avenue, N.W.
        Washington, D.C. 20001-4413
        Tel: (202) 408-4000
        Fax: (202) 408-4400

        Edward D. Johnson
        MAYER BROWN LLP
        Two Palo Alto Square, Suite 300
        3000 El Camino Real
        Palo Alto, California 94306-2112
        Tel: (650) 331-2000
        Fax: (650) 331-2060

        Christopher J. Houpt
        MAYER BROWN LLP
        1675 Broadway
        New York, New York 10019
        Tel: (212) 506-2380
        Fax: (212) 849-5830

        *Attorneys for Plaintiffs*
        *Koninklijke Philips Electronics N.V. and*
        *U.S. Philips Corporation*

CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2008, a copy of the foregoing

**KONINKLIJKE PHILIPS ELECTRONICS N.V.'s AND U.S. PHILIPS CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS**

was electronically filed with the Clerk of the Court using the CM/ECF system, which will notify the following attorneys for Cinram of such filing:

Ivan Kavrukov
William E. Pelton
Tonia A. Sayour
Gregory J. Carbo
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, NY 10036

                              */s/ Samuel C. Bass*