IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action Nos. |
| CINRAM INTERNATIONAL INC., et al., | : : | 08CV0515 (RGS) |
| THE ADS GROUP, et al., | : : | 08CV4068 (RGS) |
| ENTERTAINMENT DISTRIBUTION COMPANY (USA) LLC, et al., and | : : : | 08CV4070 (RGS) |
| | : : | 08CV 4071 (RGS) |
| OPTICAL EXPERTS MANUFACTURING INC., et al. | : : : | |
| | : | ECF Case |
| Defendants. | : : | |

**DEFENDANTS' POST-HEARING SUBMISSION
REGARDING A *MARKMAN* ISSUE**

Defendants bring to the Court's attention case law to assist in resolving whether the prosecution history would allow construing non-transmissive as "sufficiently reflective to permit the unimpeded reading of the information on the disc." (Hearing transcript, January 26, 2010, 220:10-18.)

"Non-transmissive" is a creature of the prosecution history. The term does not appear in the specification and is not discussed there. "Non-transmissive" is defined only by the patentee's explanation throughout prosecution about what the term means, why the specification supports it, and why it defines a property that is different from and in addition to whether or not the optical structure is sufficiently reflective.

1

In the absence of a discussion of claim language in the written description, the court may derive a definition from how a term is used during prosecution. Special weight must be given to the prosecution history in this case because 1) it is the only place that defines the term "non-transmissive", and thus provides the public notice function of patent claims, and 2) the patentee added the term "non-transmissive" by amendment, explained what it meant, and relied on the new claim limitation and its explanation to overcome prior art rejections.

The Federal Circuit must give weight to a claim term added by amendment to gain allowance. *Jansen v. Rexall Sundown, Inc.,* 342 F.3d 1329, 1333 (Fed. Cir. 2003) (The claim terms being construed "were added to gain allowance of the claims after almost twenty years of repeatedly unsuccessful attempts to gain allowance of claims without those phrases. We must therefore give them weight, for the patentability of the claims hinged upon their presence in the claim language.").[1] The term "non-transmissive" also was added by amendment to a claim that already recited that the optical structure is sufficiently reflecting (and so addressed a different property of the structure). Importantly, the addition of this term overcame a rejection over Feinleib '425 while otherwise comparable claims without this limitation remained rejected and later were abandoned. FH 0492-0493, 0565-0567.

Giving weight to the file history applies with special force when the added term is not present in the patent specification, as is the case with "non-transmissive." Absent a discussion of the term in the specification, the explanation the patentee gave in

---

[1] In Jansen, the term "to a human in need thereof," on which the grant of summary judgment of non-infringement turned, was not in Jansen's patent specification. Similarly, the term "non-transmissive" is not in Philips' patent specification.

prosecution defines the term's meaning. In *Schoenhaus v. Genesco, Inc.,* 440 F.3d 1354 (Fed. Cir. 2006), the court rejected construing "rigid" as semi-rigid, because the specification language "was insufficient to 'clearly set forth a different definition' from the conventional usage of 'rigid,'" but the prosecution history supported a construction that rigid meant rigid, not semi-rigid. *Schoenhaus,* 440 F.3d at 1358. "Even interpreting the specification language to permit semi-rigid material elsewhere, the language of claim 1 requires the *heal seat portion* of the orthotic device be 'rigid.' Thus, plaintiff surrendered coverage of orthotic devices with semi-rigid heel seats." *Id*. at 1359 (emphasis in original). In this case, even if the specification itself might allow for an optical structure that is partially transmissive, the patentee surrendered any scope other than no transmission by amending the claim and explaining that "non-transmissive" means that the incident beam does not permeate the optical structure and that no incident light is transmitted. E.g., FH 0392-0393, 0622.

A patentee disclaims other possible meanings of a term by arguing in prosecution for a specific meaning in order to overcome a rejection. In *Norian Corp. v. Stryker Corp.,* 432 F.3d 1356 (Fed. Cir. 2005), the court held that a claim amendment to a solution of water and "a sodium phosphate" narrowed the claim to using a single type of sodium phosphate because, in the course of amending, the patentee "spoke to the meaning of the amended claim, noting that it was limited to a single solute," even though the specification may have allowed using multiple solutes and the patentee may have thus surrendered more than it had to in order to overcome the rejection. *Norian Corp.,* 432 F.3d at 1361-62. In this case, the patentee overcame a prior art rejection over a "partially transmissive" disc by arguing that the non-transmissive amendment means no

3

transmission (e.g., FH 0492-0493, 0565-0567), and overcame a rejection under 35 USC § 112 against the use of "non-transmissive" as indefinite by arguing that it "does not see how one can state more clearly that the 'optical structure' does not transmit radiation incident on it than by saying that it is 'non-transmissive'" ( FH 0622). This prosecution history precludes giving "non-transmissive" a meaning different from its argued meaning of no transmission of incident radiation.

Finally, a patent claim is to be construed as written. This is the case even when the limitation is not needed for carrying out a function disclosed in the specification and even when the limitation is contrary to such a function. In *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004), a claim reciting that cookie dough was heated <u>to</u> a temperature of 400-850ºF was confined to meaning just that, although heating <u>to</u> such temperature would burn the dough to a crisp instead of carrying out the specification's function of achieving a light texture. *Chef America,* 358 F.3d at 1373-74. In *Electa Instrument S.A. v. O.U.R Scientific Int'l, Inc.*, 214 F.3d 1302(Fed. Cir. 2000), the court found that it was reversible error to construe a claim not as written, but by giving it a broader meaning so as not to exclude the sole disclosed embodiment. *Electa,* 214 F.3d at 1307-1308. In *Lucent Technologies, Inc. v. Gateway, Inc.*, 525 F.3d 1200 (Fed. Cir. 2008), the court cited to *Chief America* in construing a claim as written although this excluded the sole disclosed embodiment, because to do otherwise would interfere with the public notice function of patent claims. *Lucent,* 525 F.3d at 1215.

In this case, "non-transmissive" is what the claim states, even if the patentee now may wish to allow for some transmission in a process of reading the disc in reflection. In *International Rectifier Corp. v. IXYS Corp.,* 361 F.3d 1363(Fed. Cir. 2004), the court

4

reversed a construction of the term "polygonal" as including a device with rounded sides, even though the disclosed doping process of making the device resulted in rounded sides. *International Rectifier,* 361 F.3d at 1370-1371. Specifically, the court held that "[t]he patentee, being fully aware of the effects of the doping process, could have claimed the regions more broadly, but chose to use the word "polygonal" without modification or qualification. The district court was not free to attribute new meaning to the term or to excuse the patentee from the consequences of its word choice." *Id*. at 1371-72. In this case, the patentee chose the term non-transmissive without any modification or qualification that may have allowed for incident light to permeate the optical structure or be transmitted through it. E.g., FH 0392-0393, 0622.

Appendix A attached hereto identifies some of the portions of the prosecution history pertinent to resolving the issue and some portions of the transcript of the *Markman* hearing held on December 2, 2009. The entire file history is of record (see 08cv0515(RGS), Dkt. #126, Ex. 14).

Respectfully submitted,

COOPER & DUNHAM LLP

Dated: January, 28, 2010

/s Ivan S. Kavrukov/
Ivan S. Kavrukov (IK 4452)
William E. Pelton (WP 1850)
Tonia A. Sayour (TS 7208)
Gregory J. Carbo (GC 8459)
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 278-0400
Fax: (212) 391-7550
ikavrukov@cooperdunham.com
wpelton@cooperdunham.com
tsayour@cooperdunham.com
gcarbo@cooperdunham.com
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of January, 2010, a copy of the foregoing **DEFENDANTS' POST-HEARING SUBMISSION REGARDING A *MARKMAN* ISSUE** was served by email and first class mail, postage pre-paid, on the following attorneys for plaintiffs, addressed as follows:

Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
wjohnson@mayerbrown.com

Vince P. Kovalick
John F. Hornick
Samuel C. Bass
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
vince.kovalick@finnegan.com
John.Hornick@finnegan.com
Samuel.Bass@finnegan.com

Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
choupt@mayerbrown.com

    /s Gregory J. Carbo/
Gregory J. Carbo

# APPENDIX A

Prosecution History of U.S. Patent No. 5,068,846

*Application No. 772,914*

**Amendment filed August 16, 1978**

Claim 13, line 6, after "reflecting" add --non-transmissive-- **[FH 0392]**

Remarks

"The essential characteristic for achieving dust immunity, however, as indicated on page 4, lines 23 through 27, that the additional layer (10 in Fig. 2) is not traversed by the read beam. This information is reiterated on page 8, lines 23 through 26. Obviously, *the read beam does not pass through the layer 10 because it does not permeate the non-transmissive information layer 9*." **(signed Simon L. Cohen) [FH 0392]-[FH 0393]** (emphasis added)


*Markman* **hearing, December 2, 2009, transcript**

MR. KOVALICK: "There was a brief point in the prosecution history where one of the lawyers attempted to use a quantitative interpretation by saying no light goes through. . . .

THE COURT: That was Mr. Cohen.

MR. KOVALICK: Mr. Cohen. Light cannot pass through that. . . . Now if – when he had said no light passes through, our position is, if the Patent Office would have allowed the claims, we might have had a problem. Because that was essentially their position. . . ." [TR 50:16-51:4]

MR. KOVALICK: "And on the next page, 393 . . . [Mr. Cohen] again says, 'Obviously, the read beam does not pass through the layer 10,' which is the additional layer, 'because it does not permeate the nontransmissive information layer 9." So that's why – *he's definitely saying 'nontransmissive' means no light goes through that layer*." **[TR 69:11-17]** (emphasis added)

1

**Amendment Filed July 23, 1979**

Remarks

"[T]he information structure as indicated in claim 13 is a radiation reflecting non-transmissive structure. The importance of the non-transmissive carrier of the information structure in applicant's disc is that ***after the beam passes through the substrate and is intercepted by the information structure it cannot thereafter continue through the information structure*** to the backside of the record carrier where dust particles may also deposit."

**(signed Simon L. Cohen)[FH 0492]** (emphasis added)

***Markman*** **hearing, December 2, 2009, transcript**

MR. KOVALICK: [quoting above passage at FH 492] "[H]e seems to have the impression that the metal has to be completely blocking of all light; otherwise, dust and bubbles on the other side are going to interfere with the read operation. So we have to take that at face value, as part of the prosecution history, that Philips put in."

"And as I said earlier, having said that, Philips may have a problem if the Patent Office would have allowed the claim based on these remarks, because it's clearly quantitative. He's saying absolutely no light goes through there." **[TR 71:9-18]**

*Note: The argument by Mr. Cohen in the Amendment in the '919 patent application relied on the "non-transmissive" limitation to overcome a rejection based on the Feinleib '425 patent as the primary reference. Although the Examiner repeated the rejection in a final Office Action following the Amendment, the applicant did not respond to that rejection but instead filed a new continuation (the '554 application), and Feinleib '425 was never thereafter applied against the claims.*

*Application No. 146,554*

**Brief on Appeal mailed 4/20/83**

"The second ground for the Section 112 rejection given by the Examiner is that the recitation calling for a 'non-transmissive' optical structure is a 'negative limitation' which allegedly renders the claims 'indefinite'. Applicant would not have thought that it would be necessary to appeal such a rejection since 'negative limitations' as a basis for a rejection has been laid to rest a long time ago [citing *In re Barr*, 170 U.S.P.Q. 330, 337 (C.C.P.A. 1971) for the proposition that 'The real issue in any such case is . . . whether those skilled in the relevant art can determine what the claim does or does not read on.']."

"Applicant does not see how one can state more clearly that ***the 'optical structure' does not transmit radiation incident on it*** than by saying that it is 'non-transmissive' in the manner specified in the claims. Nor can applicant understand how it could be seriously contended that a man skilled in the art would not be able to determine the meaning of that expression"
**(signed Algy Tamoshunas) [FH 0621]-[FH 0622].** (emphasis added)

> *Note: Insofar as the ordinary meaning of "non-transmissive" is now argued by the plaintiffs as something other or broader than "does not transmit radiation incident on it," this statement in the prosecution history constitutes an express and unambiguous prosecution disclaimer of any such other or broader meaning. It was asserted during prosecution, to overcome a rejection relating to patentability, and it did in fact overcome that rejection, as shown by the fact that the Section 112 rejection was never again asserted against the claims.*