UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, <br><br>  Plaintiffs, <br><br>  v. <br><br> CINRAM INTERNATIONAL INC., et al. <br><br> THE ADS GROUP, et al. <br><br> ENTERTAINMENT DISTRIBUTION COMPANY (USA) LLC, et al., and <br><br> OPTICAL EXPERTS MANUFACTURING INC., et al. <br><br>  Defendants. | Civil Action Nos. <br><br> 08 CV 00515 (RGS) <br><br> 08 CV 04068 (RGS) <br><br> 08 CV 04070 (RGS) <br><br> 08 CV 04071 (RGS) <br><br> ECF Cases |

**PHILIPS' RESPONSE TO THE DEFENDANTS' POST-HEARING SUBMISSION REGARDING A MARKMAN ISSUE**

**I.     INTRODUCTION**

The Defendants have submitted another post-Markman hearing brief, this time to address prosecution history issues. The Defendants cite several new cases in their attempt to influence the Court. Because the law of claim construction has not changed in the few months since the issues were fully briefed and argued at the Markman hearing, not surprisingly, this new submission and the newly cited cases add no new perspective. Four of the seven new cases cited by the Defendants are pre-*Phillips*[1] decisions, and none of these cases support the Defendants' deliberate and restrictive reading of the claims.

**II.    ARGUMENT**

Philips has briefed the Court twice on the analysis of the prosecution history as a whole. Moreover, Philips reviewed the prosecution history in detail with the Court during the Markman hearing and identified the critical communications between Philips and the Examiner that support Philips' position that: 1) the Patent Office expressly rejected a restrictive, quantitative construction as now proffered by the Defendants, and 2) Philips and the Examiner used the claim language in a qualitative sense to define the read operation of the disc and to distinguish the Feinleib prior art. For the sake of brevity, Philips will not here repeat its arguments, but will respond only to the Defendants new arguments. Philips respectfully directs the Court's attention to its Opening and Rebuttal Briefs on Claim Construction as well as pages 61 to 86 of the Markman hearing transcript[2] for Philips' detailed analysis.

---

[1] *Phillips v. AWH Corp.,* 376 F.3d 1382 (Fed. Cir. 2004).

[2] A full copy of the Markman hearing transcript is attached to Defendants' brief at Civ. No. 08CV0515, Dkt. No. 138, Ex. 1.

The Defendants refer to only a single statement made by Philips' attorney, Mr. Algy Tamoshunas, to support their argument:

> Applicant does not see how one can state more clearly that the "optical structure" does not transmit radiation incident on it than by saying that it is "non-transmissive" in the manner specified in the claims.

(FH 0622, Applicant's April 20, 1983 Brief on Appeal to the Patent and Trademark Office Board of Patent Appeals and Interferences.) The Defendants conclude that this statement means that Mr. Tamoshunas was characterizing the optical properties of the optical structure and suggesting that no light can pass through it. The Defendants, however, fail to consider the proper context of this statement, which leads to a very different conclusion. This statement was made in the context of distinguishing the Feinleib prior art, and expressly refers to the rest of the claim as giving the term its context. Recall that by this point in the prosecution history (April 1983), the Examiner had long since rejected any argument that non-transmissive meant that none of the read radiation could pass through the metal on the optical structure. For example, in 1979, the Examiner expressly told the Philips lawyer that the specification did not support an interpretation where "non-transmissive" meant that no light passed through the optical structure:

> Further, the term "reflective", at least to those skilled in the art, implies non-transmissive. Applicant's own specification uses the term "reflective" or "reflecting" and thus only *implies* non-transmissive. Note page 6, line 26, "highly reflecting" does not say completely reflecti*i*ng and since nothing is completely reflective it could not say that a thin metal layer could be a total reflector.

(FH 0500.) Rather, Mr. Tamoshunas and the Examiner were now using the term in a qualitative sense to distinguish Feinleib based on the read operations of the respective optical structures. For example, in responding to a rejection of the claims based on Feinleib, Mr. Tamoshunas argued:

> Feinleib is devoide of any showing of a record carrier wherein the information is stored in tracks having a plurality of depression spaced apart by intermediate areas as called for in the claims. In fact, Feinlieb does not even disclose a reflective optical structure since his memory is read in the transmission mode by detecting variations in a beam passing through the memory.

(FH 0561, Philips' Oct. 1, 1981 Amendment.) Thus, a quantitative interpretation was not even an issue in April 1983. Instead, Mr. Tamoshunas was simply pointing out that the case law permitted negative limitations when the claims were otherwise clear, and to his thinking, the claims language was clear. Indeed, he specifically uses the phrase "in the manner specified in the claims" to help explain his use of the term. The entirety of the claim defines how the "transmissive" substrate transmits the read radiation to and from the optical structure. By comparison, the "non-transmissive, radiation reflecting optical structure" does not transmit the read radiation. Rather, it modulates the radiation and reflects it back through the "transmissive" substrate to effect the read operation. The terms "transmissive," "non-transmissive" and "reflective" are not used quantitatively, but qualitatively as words of comparison with respect to each other to define the read operation.

Philips was also using the term "non-transmissive" to distinguish read operations of the Feinleib prior art, specifically, to make clear that the claimed optical structure could be read in the reflection mode, but not in the transmission mode, unlike the Feinlieb optical structure which

could be read in either mode. The claimed optical structure simply does not transmit the radiation for reading, it reflects it. Thus, the single statement in the prosecution history that the Defendants point to does not support their contention that Philips was commenting on the physics of the optical structure or quantifying its optical properties. In hindsight, of course, faced with the present dispute, Mr. Tamoshunas could very likely come up with different words. But at that time, he was comfortable that the claims were clear and understandable. This statement was followed by years of further prosecution history with Philips, the Examiner, the Board of Appeals, and even the Federal Circuit referring to these terms qualitatively to describe the read operation of the invention and to distinguish the Feinleib prior art. For example, several years later, Mr. Tamoshunas still differentiated Feinleib based on the read operation:

> In applicant's disc the optical structure is <u>non-transmissive and reflective</u>. Feinleib's entire memory unit is <u>transmissive</u> (he recovers the information by detecting intensity variations of the light after it has passed through the medium).

(FH 0751, Appellant's August 9, 1990 Brief on Appeal to the Federal Circuit.) Finally, the Federal Circuit clearly "got it" and interpreted the claims at the qualitative, functional or operative level, not a quantitative, restrictive level:

> The claimed invention as a whole in this case is a record carrier which employs <u>depressions formed on a radiation-transmitting substrate</u> as the optical structure and yet operates <u>reflectively</u> by employing a reflective layer on one side of the optical structure. The substrate itself acts as one layer to protect the optical structure from dust from one side, and a second layer protects the optical structure from the other side.

(FH 0902, *In re Pieter Kramer*, No. 90-1369, slip op. at 2 (Fed. Cir. Jan. 17, 1991).) Indeed, during the prosecution history, Philips expressly noted that its claims covered Laser discs and CDs, both of which are partially transmissive to some light, but which both operate in the reflective mode and not in the transmissive mode. (FH 0672, Applicant's May 11, 1987 Brief on Appeal to the Patent and Trademark Office Board of Patent Appeals and Interferences.) Had Philips or the Patent Office understood the term "non-transmissive" to be quantitatively restrictive, it could not have made these statements. Alternatively, Philips could have deleted the term from the claims if it believed that the term defined an absolute or restrictive optical property.

The Defendants' reliance on *Chef America* and other cases to support its "tough luck" argument misses the point. (*See* Civ. No. 08 CV 00515, Dkt. No. 140 at p. 4 (citing *Chef America, Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371 (Fed. Cir. 2004); *Lucent Technologies, Inc. v. Gateway, Inc.,* 525 F.3d 1200 (Fed. Cir. 2008)). Unlike those cases, this is not a case where the patentee is asking the court to have mercy on its poor choice of claim terms or to correct through claim construction an obvious mistake. In *Chef America* and the other "tough luck" cases, the claim term in question must be "susceptible to only one reasonable construction." *See e.g., Chef America*, 358 F.3d at 1374; *Lucent Technologies*, 525 F.3d at 1215. For example, in *Chef America*, the patentee asked the court to change "heated to," as it related to an object being cooked, to "heated at." The Federal Circuit ruled that it could not rewrite the claims as asked, because the term "heated to," as it related to the object being cooked, had a well understood meaning that was susceptible to only one reasonable construction, which was different than "heated at." *Chef America,* 358 F.3d at 1374. *Chef America* is a pre-*Phillips* decision, and it is only useful here in that it points out the difference between interpreting an ordinary term ("to")

that can only be construed "quantitatively" and a term of art (like "non-transmissive") that is subject to a qualitative interpretation and is understood in context.

The Defendants' other cases also miss the mark. *Electa Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,* 214 F.3d 1302 (Fed. Cir. 2000) --also a pre-*Phillips* decision-- concerned a very specific claimed numerical range. Thus, the claim language itself dictated a quantitative interpretation. *International Rectifier Corp. v. IXYS Corp.,* 361 F.3d 1363 (Fed. Cir. 2004)) -- also a pre-*Phillips* decision-- is far from relevant. In that case, the claim term "polygonal" had an ordinary dictionary definition that was consistent with the uses in the patent specification, and the rest of the claim failed to provide any context for the term. Moreover, the parties in that case agreed that the prosecution history was not relevant to the claim construction.

The Defendants cite *Jansen v. Rexall Sundown, Inc.* 342 F.3d 1328, 1333 (Fed. Cir. 2003) --another pre-*Phillips* case--for the proposition that courts should give weight to a claim term added by amendment to gain allowance. Philips does not dispute this proposition. Indeed, courts should give weight to all the words of a claim. However, the *Jansen* case is not particularly relevant to this case, because the term "non-transmissive" was not added to the claims to gain allowance. Rather, it was part of the claim when rejected and continued to be in the rejected claims until the Federal Circuit reversed the prior art rejection.

*Schoenhaus v. Genesco, Inc.,* 440 F.3d 1354 (Fed. Cir. 2006), where the court refused to read the term "rigid" to mean "semi-rigid," is distinguishable because in *Schoenhaus*, the intrinsic evidence distinguished these two terms and the prosecution history made clear that both the Examiner and the patentee were using the terms quantitatively. Also, the Examiner only agreed to allow the claims if the term "rigid" was added to the claims. *Norian Corp. v. Stryker Corp.,* 432 F.3d 1356 (Fed. Cir. 2005) is less relevant and is simply an example of a case where

the claim language, the patent specification, and the prosecution history limited the term "a"--which normally means one or more--to mean only one.

Finally, *Lucent Technologies, Inc. v. Gateway, Inc.,* 525 F.3d 1200 (Fed. Cir. 2008) actually supports Philips' argument that the prosecution history as a whole should be considered, not just snippets, and that only a clear disavowal in the prosecution history can support a construction that restricts the full scope of a claim. In *Lucent,* the defendants argued that certain statements made during the prosecution history to distinguish technical features in the prior art amounted to an unqualified disclaimer of "all host processor control," not just "some control." The Federal Circuit looked at the prior art and the specific technical arguments made during the prosecution as a whole to distinguish the claimed and prior art operations, and concluded that the arguments were not a clear disavowal of any and all host processor control. The court expressly stated that "[the] statements by the applicant must be read in the context of its overall argument distinguishing the claimed method from the method disclosed in [the prior art]." *Id.* at 1211. The same holds true in this case as to Philips' use of the term "non-transmissive, radiation reflecting optical structure" and its arguments to distinguish the Feinleib prior art based on the different configurations and read operations.

This Court knows well that the scope of any alleged disclaimer must be clearly articulated consistently throughout the entire prosecution history. *Abbott labs. v. Imclone Sys., Inc.*, 554 F. Supp. 2d 91, 95-96 (D. Mass. 2008) (Stearns, J.). Even if an isolated statement appears to disclaim subject matter, the prosecution history as a whole must be consulted to determine the proper claim construction, because the prosecution history as a whole may demonstrate that the applicant committed no clear and unmistakable disclaimer. *Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371-73 (Fed. Cir. 2007). Again, *Ecolab, Inc.*

*v. FMC Corp.*, 569 F.3d 1335 (Fed. Cir. 2009), is particularly relevant to this case. In *Ecolab*, the Federal Circuit found that no prosecution history disclaimer had resulted. In response to a rejection, the patent applicant in *Ecolab* had said that its invention uses only one antimicrobial agent. *Id.* at 1343. The Examiner responded that the claims say "consisting essentially of" and thus were not limited to a single composition. *Id.* The applicant never again made the same argument, i.e., never repeated the allegedly disclaiming statements, but made other arguments. *Id.* For these reasons, a reasonable reader could conclude that the applicant's initial statements were hyperbolic or erroneous, that the Examiner corrected the error, and that the applicant never again repeated or relied upon the erroneous rationale. *Id.* Thus, the claims were allowed for other reasons. *Id.*

### III. CONCLUSION

In the end, the Defendants' Post Hearing Submission is not persuasive and adds little to the record that has not already been considered and addressed.

Date: February 1, 2010

*/s/ Samuel C. Bass*
Vince P. Kovalick (*pro hac vice*)
John F. Hornick (*pro hac vice*)
Samuel C. Bass (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Tel: (202) 408-4000
Fax: (202) 408-4400

Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2380
Fax: (212) 849-5830

Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
Tel: (650) 331-2000
Fax: (650) 331-2060

*Attorneys for Plaintiffs*
*Koninklijke Philips Electronics N.V. and*
*U.S. Philips Corporation*

# CERTIFICATE OF SERVICE

   I hereby certify that on February 1, 2010, a copy of the foregoing **PHILIPS' RESPONSE TO THE DEFENDANTS' POST-HEARING SUBMISSION REGARDING A MARKMAN ISSUE** was served by email on the following attorneys for Defendants, addressed as follows:

   Ivan S. Kavrukov
   ikavrukov@cooperdunham.com
   William E. Pelton
   wpelton@cooperdunham.com
   Tonia A. Sayour
   tsayour@cooperdunham.com
   Gregory J. Carbo
   gcarbo@cooperdunham.com
   Cooper and Dunham, LLP
   30 Rockefeller Plaza
   New York, New York 10112


          */s/ Jennifer Hibner-Spencer*
          Jennifer Hibner-Spencer, Paralegal