```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
```

Koninklijke Philips Electronics N.V., et al.,

               Plaintiffs,

  -against-

| | |
|---|---|
| Cinram International Inc., et al. | 08 Civ 00515 (RGS) |
| The ADS Group, et al. | 08 Civ 04068 (RGS) |
| Entertainment Distribution Company (USA) LLC, et al. | 08 Civ 04070 (RGS) |
| Optical Experts, et al. | 08 Civ 04071 (RGS) |

**ORDER**

```
------------------------------------
```

**RICHARD G. STEARNS, United States District Judge.**[1]

In response to claims of breach of contract and infringement of U.S. Patent No. 5,068,846 ('846 Patent), brought by Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively, Philips), several defendants have asserted counterclaims.[2] Philips moves to dismiss all counterclaims

---

[1] Of the District of Massachusetts, sitting by designation.

[2] Plaintiffs filed five related cases in the Southern District of New York. This Memorandum and Order, however impacts only four of these cases and the following defendants. They are 08-cv-0515: Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively, Cinram) (Docket # 44); 08-cv-4068: The ADS Group (ADS), American Media International, Ltd. (AMI), MTI Acquisition, Inc., Inoveris LLC and Zomax Incorporated (collectively, Zomax), and Metatec International, Inc. (Docket #

alleging patent misuse and tortious interference with business relations. A hearing on the motion to dismiss was held in the Southern District of New York on January 26, 2010.[3]

## BACKGROUND

Counterclaims IV and V assert claims for tortious interference with business relationships.[4] In Counterclaim IV, defendants/plaintiffs-in-counterclaims (defendants) allege that on January 31, 2008, Philips Intellectual Property & Standards (Philips IPS) sent a letter to one of Cinram's customers, Eagles Recording Company (Eagles).[5] According to defendants, despite Philips' claim that Philips IPS is a non-entity, it has acted in the name of Philips IPS in executing a wrongful and deceptive scheme to collect royalties for patents that are not being practiced by defendants. Eagles was known by Philips to be one of

---

67); 08-cv-4070: Entertainment Distribution Company (USA) LLC and Entertainment Distribution Company (Docket # 27); and 08-cv-4071: Optical Experts Manufacturing, Inc. (Docket # 51).

[3]Philips has filed motions to dismiss with respect to all defendants. As the motions are identical in substance, the court will refer to them in the singular.

[4]Counterclaim III seeks a declaratory judgment of patent misuse. However, because the '846 Patent has expired, counsel for defendants conceded at the hearing that the claim was essentially moot. Given that concession, this opinion will focus on the tortious interference claims.

[5]The allegations asserted by the numerous defendants are virtually identical. In some cases, reference will be made to Cinram's Counterclaims as an exemplar. Any relevant differences among the allegations advanced by individual defendants will be noted where appropriate.

Cinram's customers.

The letter stated, in pertinent part, that every CD manufactured in (or imported into) the United States or Canada was covered by the patents contained in an attached list of "essential" patents. The '846 Patent was among the patents listed.[6] The letter falsely identified Cinram as an unlicensed seller and claimed that the CDs sold by Cinram to Eagles infringed the '846 and '512 Patents. Cinram claims that Philips knew that the '846 Patent was not an "essential" patent for the manufacture of all CDs. The letter also falsely implied that because Cinram had not paid royalties on the CDs, Eagles itself was liable for infringement of the "patents belonging to Philips and others." Countercl. IV ¶ 51. According to Cinram, the implication that it was unlicensed and not paying royalties was false and misleading. Cinram claims that the letter was intended to harm and disrupt Cinram's relationship with Eagles and to intimidate Eagles into switching CD suppliers.

Two additional communications are at issue. On February 13, 2008, Philips, upon information and belief, caused Philips IPS to send an email to H&R Block, a purchaser of CDs made by Cinram. According to Cinram, the email falsely alleged that all of the CDs purchased by H&R Block had been unreported and that the royalties

---

[6]The letter additionally asserted that U.S. Patent No. 5,790,512 (the '512 Patent) was essential. The '512 Patent is not a patent-in-suit.

3

owing to Philips had not been paid.  In addition, Philips improperly attempted to persuade H&R Block to transfer its business to another supplier of CDs.

Finally, on April 30, 2008, Philips, upon information and belief, caused Philips IPS to send a letter to Digital Excellence LLC, stating that Philips owned "essential" patents on all types of CDs and DVDs.  The letter asserted that licensed manufacturers of CDs were listed on a publicly available Licensee Database from which manufacturers who had breached their license(s) had been delisted.  Purchasers and distributors of CDs often refer to the Licensee Database before choosing a CD supplier.  Cinram, ADS, Inoveris, Metatec, MTI, and Zomax all allege that although they are licensed CD suppliers, Philips has removed them from the Licensee Database.  According to defendants, this deliberate act of removal by Philips caused them to be prejudiced in their business and customer relationships and damaged their goodwill.

In Count V, Cinram alleges, upon information and belief, that Philips N.V. and/or U.S. Philips caused a list of companies to be published on a website identified with Philips N.V., implicitly threatening prospective customers who might consider purchasing CDs from companies not on the list.[7]  Cinram claims, on information and belief, that its existing and prospective customers periodically

---

[7]Counterclaim V is asserted in all of the cases covered by this Order with the exception of 08-cv-4071.

4

consult the website to confirm that Cinram is on the list. As of at least April 3, 2008, however, Cinram had been removed from the list. Cinram claims that the removal was made for the sole purpose of harming Cinram. "As a direct result of such change, Cinram's business relationship with its customers and Cinram's good will have been harmed, causing Cinram damages of a currently unknown amount." Cinram's Countercl. V ¶ 63.

## DISCUSSION

To state a claim for tortious interference with business relations under New York law, Cinram must allege that "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108-109 (2d Cir. 1997). It is not sufficient to simply allege the existence of a business relationship. To maintain a claim for interference with an existing relationship, a plaintiff must "identify a . . . specific client relationship with which defendants interfered." Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009). See also Universal Marine Med. Supply, Inc. v. Lovecchio, 8 F. Supp. 2d 214, 221 (E.D.N.Y. 1998)(dismissing claim for tortious interference

after finding that plaintiff had not pled "any specific business relations with a third party, nor does it allege any harm to such a relationship. Rather, plaintiff states only that defendants interfered with business relations between itself and 'its customers.' Such a barebones allegation is insufficient to set forth a cause of action for tortious interference with business relations . . . .").

Under the Goldhirsh standard, Cinram has pled sufficient facts to support an inference that its existing relationships with Eagles and H&R Block have been harmed.  Although there are no allegations that either Eagles or H&R Block switched its business elsewhere, the threat remains that they may do so in response to the communications from Philips. Here, defendants have alleged enough "by way of factual content to nudge [their] claim . . . across the line from conceivable to plausible." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1952 (2009)(citation and quotation marks omitted).

The court further finds that the non-Cinram defendants also have stated a claim for interference with prospective business relationships with regard to the communications to Eagles and H&R Block. Contrary to Philips' suggestion, it is not fatal to defendants' counterclaims that they did not specify whether they meant to bring claims for interference with actual or prospective business relationships. See Shred-It, USA, Inc. v. Mobile Data Shred, Inc., 202 F. Supp. 2d 228, 236 (S.D.N.Y. 2002) ("[I]t is

unclear from the complaint whether [plaintiff] alleges interference with existing contractual relations or prospective business relations. Because [the Complaint] does not identify any contract that was interfered with, the Court presumes that [plaintiff's] claim in this count is based on interference with prospective business relations.").

The non-Cinram defendants have offered facts to support their theory that they could be harmed by the communications Philips caused to be sent to Eagles and H&R Block. They claim, for example, that Philips stated in the letters that every CD manufactured and sold in the United States and Canada was covered by its "essential" patents. Philips also implied in the letters that the CDs at manufactured and sold by the defendants were infringing and therefore unlawful products.

To survive a motion to dismiss, the factual allegations must "possess enough heft" to set forth "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 559 (2007). Here, it is not beyond the realm of plausibility that Eagles and H&R Block will be discouraged from purchasing CDs from defendants in the future because of the communications from Philips.

Next, all of the defendants, with the exception of the two identified *infra* at footnote eight, have pled enough facts in Counterclaim IV with regard to the communication sent by Philips to

Digital Excellence.  According to Counterclaim IV, Philips' letter directed Digital Excellence to the Licensee Database and stated that "unauthorized" manufacturers of CDs had been removed from the Database for alleged breaches of their licenses.  Cinram, ADS, Inoveris, Metatec, MTI, and Zomax all allege that they were wrongfully removed from the Licensee Database.[8]  They additionally allege that many purchasers and distributors of CDs refer to the Licensee Database when selecting a supplier.  It stands to reason that if these defendants' names are not on the list, a potential customer who might otherwise have purchased their CDs will not do so.  Here, defendants have limned sufficient facts (if barely so) to state a viable claim under Rule 12(b)(6).  The motion to dismiss Counterclaim IV will therefore be **DENIED** insofar as it alleges harms from the communications sent by Philips to Eagles and H&R Block and **DENIED** with respect to the letter sent to Digital Excellence (with the exception of defendants AMI and OEM).

In Counterclaim V, Cinram alleges that its relationships with various unidentified "existing and prospective" customers have been harmed.  Countercl. V ¶¶ 61, 63.  This statement is presumably meant to plant a flag warning that Cinram intends to bring a future claim for interference with prospective business relationships with

---

[8]AMI (in 08-cv-4068) and OEM (in 08-cv-4071) do not allege that they were removed from the Licensee Database.  Therefore, they cannot maintain a claim for tortious interference based on the letter to Digital Excellence.

undiscovered or unrevealed potential customers. See Shred-It, 202 F. Supp. 2d at 236. However, the claim as pled is pitifully vague. Cinram alleges only, on information and belief, that Philips N.V. and/or U.S. Philips caused "a list of companies to be published on a website identified with Philips N.V." Countercl. V ¶ 60. Cinram adds the equally naked allegation that plaintiffs have caused "threats against customers who may consider buying CDs from companies not on the [Philips] list." Id. Cinram fails to identify either the website or the list at issue. Moreover, Cinram does not identify with specificity any alleged threat that has been made, whether to existing or prospective customers. Nor do the other defendants offer any supplemental details. Federal Rule 12(b)(6) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal, 129 S.Ct. at 1949 (internal citations and quotation marks omitted). Because Counterclaim V offers nothing but a vaporous constellation of unsubstantiated allegations, it will be DISMISSED.

ORDER

For the foregoing reasons, Philips' motion to dismiss the Counterclaims for patent misuse and tortious interference with business relationships is ALLOWED in part and DENIED in part. In

9

08-cv-4068 and 08-cv-4071, AMI's and OEM's Counterclaim IV is DISMISSED only insofar as it relates to the letter to Digital Excellence. In all other respects, and with regard to all other defendants, the motion to dismiss Counterclaim IV is DENIED. The motion is ALLOWED with respect to Counterclaim V, which is DISMISSED in its entirety.

    SO ORDERED.

Dated: March 5, 2010

/s/ Richard G. Stearns
Richard G. Stearns
United States District Judge